**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 17-24284-CIV-KING/SIMONTON**

**MICHAEL FOX,**
**on behalf of himself and**
**all others similarly situated,**

       **Plaintiff,**

**vs.**

**THE RITZ-CARLTON**
**HOTEL COMPANY, LLC,**

       **Defendant.**

_____/

**<u>DEFENDANT'S MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT</u>**

**Richard C. Hutchison**
**Scott D. Ponce**
**Rodolfo Sorondo, Jr.**
**HOLLAND & KNIGHT LLP**
**701 Brickell Avenue**
**Suite 3300**
**Miami, Florida 33131**
**Tel: (305) 374-8500**
**Fax: (305) 789-7799**

***Attorneys for Defendant***

## TABLE OF CONTENTS

<b>Page</b>

TABLE OF AUTHORITIES ...................................................................................... ii

DEFENDANT'S MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT .......... 1

    Introduction ...................................................................................................... 1

    Background ........................................................................................................ 1

    Argument .......................................................................................................... 3

    I.       This Court lacks subject-matter jurisdiction because Plaintiff lacks standing. .................................................................................................. 3

    II.      Plaintiff's individual claims must be dismissed for failure to state a cause of action. ........................................................................................... 7

          A.     Counts I and II fail to state a claim for violations of FDUTPA. ........................................................................................ 7

               1.    Count I, For *Per Se* Violations Of FDUTPA, Fails To State A Claim. ...................................................... 8

               2.    Count II, For Traditional Violations Of FDUTPA, Fails To State A Claim. ................................... 11

          B.     Count III fails to state a claim for violation of Rule 12A-1.0115, which does not provide a private right of action, and because Plaintiff failed to exhaust his administrative remedies. .................................................................................... 14

          C.     Count IV fails to state a claim for declaratory relief. .............................. 17

          D.     Count V fails to state a claim for injunctive relief. .................................. 18

    Conclusion ...................................................................................................... 18

CERTIFICATE OF SERVICE ............................................................................... 19

## TABLE OF AUTHORITIES

**CASES**                                                                 **Page(s)**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................7

*Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cnty., Inc.*,
    169 So. 3d 164 (Fla. 4th DCA 2015) ....................................................12

*Cone Corp. v. Fla. Dep't of Transp.*,
    921 F.2d 1190 (11th Cir. 1991) ..........................................................3, 4

*Cross v. Point & Pay, LLC*,
    616CV1182ORL41KRS, 2017 WL 1196676 (M.D. Fla. Mar. 31, 2017) ...................8, 10

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006)..................................................................................4

*Dep't of Revenue v. Nemeth*,
    733 So. 2d 970 (Fla. 1999).....................................................................16

*DiMaio v. Democratic Nat'l Comm.*,
    520 F.3d 1299 (11th Cir. 2008) ..............................................................4

*Dolphin LLC v. WCI Communities, Inc.*,
    715 F.3d 1243 (11th Cir. 2013) ..............................................................7

*Grifin v. Dugger*,
    823 F.2d 1476 (11th Cir. 1987) ..............................................................6

*Hassen v. Mediaone of Greater Florida, Inc.*,
    751 So. 2d 1289 (Fla. 1st DCA 2000) ..................................................13

*Hucke v. Kubra Data Transfer Ltd., Corp.*,
    160 F. Supp. 3d 1320, 1327–28 (S.D. Fla. 2015) ...............................9, 10

*In re: Takata Airbag Prods. Liab. Litig.*,
    No. 15-md-2599, 2016 WL 1266609 (S.D. Fla. March 11, 2016) ....................4

*Intercoastal Realty, Inc. v. Tracy*,
    706 F. Supp. 2d 1325 (S.D. Fla. 2010) ................................................11

## TABLE OF AUTHORITIES

**CASES**                                                                 **Page(s)**

*Klay v. United Healthgroup, Inc.*,
    376 F. 3d 1092 (11th Cir. 2004) .......................................................................18

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994)...........................................................................................4

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)........................................................................................4, 5

*Ministerio Evangelistico Int'l v. United Specialty Ins. Co.*,
    16-25313-CIV, 2017 WL 1363344 (S.D. Fla. Apr. 5, 2017)............................17

*P.R. Mktg. Grp., Inc. v. GTE Fla., Inc.*,
    747 So. 2d 962 (Fla. 2d DCA 1999) ...............................................................16

*Parr v. Maesbury Homes, Inc.*,
    No. 609CV-1268-ORL-19GJK,
    2009 WL 5171770 (M.D. Fla. Dec. 22, 2009)...................................................8

*Penzer v. Ford Motor Credit Co.*,
    319 F. Supp. 2d 1351 (S.D. Fla. 2004) .....................................................16, 18

*Perret v. Wyndham Vacation Resorts, Inc.*,
    889 F. Supp. 2d 1333 (S.D. Fla. 2012) ...........................................................17

*PNR, Inc. v. Beacon Prop. Mgmt., Inc.*,
    842 So. 2d 773 (Fla. 2003)..............................................................................12

*Sarnoff v. Fla. Dep't of Highway Safety & Motor Vehicles*,
    825 So. 2d 351 (Fla. 2002)..............................................................................16

*Se. Distributors, Inc. v. United Specialty Ins. Co.*,
    16-24549-CIV, 2017 WL 960300 (S.D. Fla. Mar. 13, 2017) ..........................17

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016).....................................................................................4, 6

*State Farm Mut. Auto. Ins. Co. v. Med. Serv. Ctr. of Fla., Inc.*,
    103 F. Supp. 3d 1343, 1354 (S.D. Fla. 2015) .................................................11

*Warth v. Seldin*,
    422 U.S. 490 (1975).........................................................................................4

*Washington v. LaSalle Bank Nat'l Ass'n*,
    817 F. Supp. 2d 1345 (S.D. Fla. 2011) ...........................................................11

# **TABLE OF AUTHORITIES**

**CASES**                                                                                                **Page(s)**

*Westgate Resorts, Ltd. v. Castle Law Group, P.C.*,
   617CV1063ORL31DCI, 2017 WL 6512552 (M.D. Fla. Dec. 20, 2017) .........................18

**CONSTITUTION**

Article 3, Section 2, United States Constitution ....................................................................3, 4, 5

**CODES**

Title 28, United States Code, Section 1341 (2017) ................................................................16, 18

**STATUTES**

Section 72.011, Florida Statutes ...........................................................................................15, 16

Section 212.02(5), Florida Statutes.............................................................................................15

Section 212.151, Florida Statutes ...............................................................................................15

Section 212.151(1), Florida Statutes ...........................................................................................15

Section 215.26, Florida Statutes .................................................................................................15

Section 215.26(1), Florida Statutes..............................................................................................15

Section 215.26(2), Florida Statutes .............................................................................................15

Section 501.202(2), Florida Statutes............................................................................................11

Section 501.203(3)(c), Florida Statutes .........................................................................................8

Section 501.204(1), Florida Statutes............................................................................................11

Section 501.211, Florida Statutes ...........................................................................................17, 18

Section 509.214, Florida Statutes ...................................................................................8, 9, 10, 11

Section 560.204, Florida Statutes .................................................................................................9

## **TABLE OF AUTHORITIES**

**RULES**                                                                                                    **Page**

Rule 12(b)(1), Federal Rules of Civil Procedure ..........................................................................1, 4

Rule 12(b)(6), Federal Rules of Civil Procedure ...........................................................................1

Florida Administrative Code, Rule 12A-1.014(4) ....................................................................15, 16

Florida Administrative Code, Rule 12A-1.0115.....................................................................6, 14, 15

Florida Administrative Code, Rule 12A-1.0115(1)(a)...................................................................15

Florida Administrative Code, Rule 12A-1.0115(7) ..................................................................14, 15

Florida Administrative Code, Rule 12-26.002(2) ....................................................................14, 15

**COUNTY ORDINANCES**

Miami-Dade County Code of Ordinances, Section 8A-110.1(1) ...................................................8

Miami-Dade County Code of Ordinances, Section 8A-110.1(3) ............................................9, 10

**DEFENDANT'S MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT**

Defendant, The Ritz-Carlton Hotel Company, LLC, pursuant to Rules 12(b)(1) and (6), Federal Rules of Civil Procedure, moves to dismiss the amended class action complaint for lack of subject-matter jurisdiction as Plaintiff lacks standing to pursue the claims alleged and for failure to state a claim upon which relief can be granted.

## Introduction

Based upon a single visit to three restaurants in one Ritz-Carlton hotel in Florida, Plaintiff attempts to assert—on behalf of a putative class of individuals—claims against Defendant for its operation of every restaurant in each of the ten Ritz-Carlton hotels in Florida.  Besides failing to allege any concrete or particularized injury-in-fact that would confer standing upon him to sue, Plaintiff also fails to allege any actual facts from which a reasonable inference can be drawn that Defendant violated Florida law, requiring dismissal of the Amended Complaint.

## Background[1]

Plaintiff, a New York resident, alleges that he dined at the Key Pantry restaurant located at The Ritz-Carlton Key Biscayne hotel in Florida on April 5, 2017.  *See* Am. Compl. [Dkt. 17] at ¶ 16.  When he was done eating, Plaintiff was presented the bill (the "check"), which included an automatic gratuity of 18%.  *Id*. at ¶¶ 17-19.  According to Plaintiff, there was no mention of an automatic gratuity charge on either the menu presented to the Plaintiff or on the menu posted online on the hotel's website. *Id*. at ¶ 20.  Plaintiff paid the check in full. *Id*. at ¶ 22.

That same day, Plaintiff dined at the Cantina Beach Restaurant, also located at The Ritz-Carlton Key Biscayne. *Id*. at ¶ 23.  The menu stated in smaller and different font than the rest of

---

[1]   The allegations set forth in this Background section derive from the Amended Complaint. Defendant does not admit any of these allegations.

1

the menu that, "A suggested 18% gratuity will be added to your check for your convenience." *Id.* at ¶ 25.  When he was done eating, Plaintiff was presented the check, which included the automatic gratuity of 18%.  *Id.* at ¶¶ 26-27.  Plaintiff claims that he was "unaware" that an automatic gratuity would be added to the check.  *Id.* at ¶ 28.

On April 6, 2017, Plaintiff dined at the Lightkeepers restaurant at The Ritz-Carlton Key Biscayne hotel.  *Id.* at ¶ 30.  The menu stated in small, italicized type, "A suggested 18% gratuity will be added to your check. Please feel free to raise, lower, or remove this gratuity at your discretion."  *Id.* at ¶ 32.  According to Plaintiff, the check included a mandatory 18% service charge, which was included in the calculation of the charged taxes.  *Id.* at ¶¶ 34-35.  Below the check total, there was an extra line for Plaintiff to add an "Additional Gratuity." *Id.* at ¶ 36.  Plaintiff claims that he was "unaware" that an automatic gratuity or service charge would be added to the check.  *Id.* at ¶ 37.   Plaintiff paid the check in full. *Id.* at ¶ 38.  Nowhere in the Amended Complaint does Plaintiff allege that he attempted (unsuccessfully or otherwise) to reduce the gratuity charge provided on any of the checks with which he was presented at any of the restaurants.

Although Plaintiff's claims are premised on his dining experience at three restaurants located at the Key Biscayne Ritz-Carlton hotel, Plaintiff purports to assert a consumer class action on behalf of all persons who purchased food and/or drinks at a restaurant, bar, mini-bar, lounge, and/or other public food service establishment in any of the ten specifically identified Ritz-Carlton hotels located throughout Florida (*id.* at ¶¶ 1, 7-8, 14-15) and who were allegedly charged a gratuity or service charge. Plaintiff alleges that Defendant violated Florida law in its public food service establishments by:

(i) failing to provide any or adequate notice on the restaurant's menu that an automatic gratuity or service charge would be added to a customer's check,

(ii) to the extent there was notice on the menu, failing to provide adequate notice because the notice was written in small italicized font and found on the last page of a multi-page menu,

(iii) providing notice on the restaurant menu that a suggested gratuity could be raised, lowered, or removed at the customer's discretion but, when the check arrives, there is an automatic gratuity or service charge added,

(iv) labeling the automatic gratuity as a "service charge" with a line below the total allowing a customer to add an "Additional Gratuity",

(v) providing notice in the customer's hotel room that drinks and snacks taken from the mini-bar would include an automatic gratuity or service charge, but no bill or check for these charges is ever provided to the customer;[2] and

(vi) charging tax on gratuities that are automatically added to a customer's check.

*Id*. at ¶¶ 14-15.

Based on those allegations, Plaintiff asserts five claims against Defendant: Count I for *per se* violation of §§ 501.201 *et seq*., Florida Statutes, the Florida Deceptive and  Unfair Trade Practices Act ("FDUTPA"); Count II for traditional violations of FDUTPA; Count III for violation of Rule 12A-1.0115 of the Florida Administrative Code; Count IV for declaratory judgment; and Count V for injunctive relief.  As explained below, each of these counts should be dismissed as Plaintiff lacks standing to assert the claims and has failed to state a claim upon which relief can be granted on any of these theories.

## Argument

### I.    This Court lacks subject-matter jurisdiction because Plaintiff lacks standing.

Article III of the U.S. Constitution limits federal court jurisdiction to actual cases and controversies. *See* U.S. Const. art. 3, § 2; *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1204 (11th Cir. 1991). "The standing doctrine is an aspect of this case or controversy requirement

---

[2]  Nowhere in the Amended Complaint does Plaintiff allege that he purchased anything from any mini-bar, bar, or lounge located in any Ritz-Carlton hotel in Florida.

and has its origins in 'both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.'" *Cone Corp.*, 921 F.2d at 1204 (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). A plaintiff fails to sufficiently allege Article III standing unless he alleges a "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006) (internal quotation marks omitted).

Thus, constitutional standing has three elements: (1) that Plaintiff "suffered an injury in fact—an invasion of a judicially cognizable interest, which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical," (2) "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant," and (3) it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks, citations, and brackets omitted).

"[S]tanding is a jurisdictional threshold question," *DiMaio v. Democratic Nat'l Comm.*, 520 F.3d 1299, 1301 (11th Cir. 2008) and "[b]ecause standing is jurisdictional, a dismissal for lack of standing is essentially the same as a dismissal for want of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *In re: Takata Airbag Prods. Liab. Litig.*, No. 15-md-2599, 2016 WL 1266609, at *2 (S.D. Fla. March 11, 2016). The party invoking federal jurisdiction has the burden of proving standing. *See Lujan*, 504 U.S. at 561; *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). When ruling on a Rule 12(b)(1) motion "it is to be presumed that a cause lies outside [a federal court's] limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "Since they are not mere pleading requirements but rather an indispensable

part of the plaintiff's case, each element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." *Lujan*, 504 U.S. at 561.

In this case, the Amended Complaint does not allege a concrete and particularized injury to satisfy the injury-in-fact requirement for Article III standing. Specifically, Plaintiff purports to bring claims based on conduct that supposedly occurs at every restaurant, lounge, grill, and in-room mini-bar at every Ritz-Carlton in Florida.  Yet, Plaintiff alleges that he visited only three restaurants in only one of the ten Ritz-Carlton hotels identified in the Amended Complaint, and he does not allege that he ever consumed drinks or snacks from a hotel room's mini-bar.  This means that Plaintiff did not suffer, and could not have suffered, an injury-in-fact with respect to such other restaurants and mini-bars—he could not have been injured at restaurants he did not visit or by mini-bars he did not use.[3]  Plaintiff  lacks standing to assert claims relating to anything other than the three restaurants he visited (Key Pantry, Cantina Beach, and Lightkeepers).

Perhaps Plaintiff hopes that members of his putative class can provide the standing he lacks because they collectively visited all of the other restaurants at all of the Ritz-Carlton hotels in Florida (Am. Compl. at ¶¶ 56, 68).  Any such hope is soundly dashed by the fact that standing simply does not work that way:

> If [a plaintiff] cannot show personal injury, then no article III case or controversy exists, and a federal court is powerless to hear his grievance. This individual injury requirement is not met by alleging "that injury has been suffered by other, unidentified members of the class to which [the plaintiff] belong[s] and which [he] purport[s] to represent." *Warth v. Seldin,* 422 U.S. 490, 502, 95 S. Ct. 2197, 2207, 45 L.Ed.2d 343 (1975); *see also Minority Police Officers Ass'n v. City of South Bend,* 721 F.2d 197, 202 (7th Cir. 1983) ("Feelings of solidarity do not confer standing to sue."). Thus, a plaintiff cannot include class action allegations in a complaint and expect to be relieved of personally meeting the requirements of constitutional standing, "even if the persons described in the class definition would

---

[3] Indeed, because he did not visit any other restaurants, he does not and cannot allege that any other restaurant at a Ritz-Carlton in Florida adds a gratuity or service charge or, if they do, how such charges are disclosed in a menu or presented on a check.

have standing themselves to sue." *Brown v. Sibley,* 650 F.2d 760, 771 (5th Cir. Unit A July 1981); *see also Vuyanich v. Republic Nat'l Bank,* 723 F.2d 1195, 1200 (5th Cir.), *cert. denied,* 469 U.S. 1073, 105 S. Ct. 567, 83 L.Ed.2d 507 (1984). A named plaintiff in a class action who cannot establish the requisite case or controversy between himself and the defendants simply cannot seek relief for anyone—not for himself, and not for any other member of the class. *O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S. Ct. 669, 675, 38 L.Ed.2d 674 (1974). Moreover, it is not enough that a named plaintiff can establish a case or controversy between himself and the defendant by virtue of having standing as to just one of many claims he wishes to assert. Rather, each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim.

*See Grifin v. Dugger*, 823 F.2d 1476, 1482–83 (11th Cir. 1987).

Plaintiff's standing problems do not end there, however, because he has an independent and additional standing problem even with respect to the three restaurants he allegedly visited. Plaintiff claims that Defendant violated Florida law by adding an automatic gratuity charge to the check at those three restaurants. While Plaintiff makes the conclusory allegation that the gratuity was mandatory and that he paid the checks in full, he does not allege any facts that he asked for the gratuity to be removed or reduced but was not allowed to do so. Thus, Plaintiff has not alleged any facts that the gratuity was, in fact, mandatory and has not alleged that he suffered an injury-in-fact that is concrete and particularized. *Spokeo*, 136 S. Ct. at 1548 ("A 'concrete' injury must be '*de facto*'; that is, it must actually exist.").

In addition, as described more fully in Section II below, there is no private right of action under Rule 12A-1.0115, Fla. Admin. Code, as asserted in Count III. Only the Florida Department of Revenue can bring suit for a purported violation of the tax code. Moreover, the administrative code requires that an aggrieved consumer first request a refund from the dealer (*i.e.*, The Ritz-Carlton Hotel Key Biscayne) before raising the issue of a purportedly improper tax imposed on a gratuity). *See* Section II(B), below. The Amended Complaint does not allege that a refund was

requested or the administrative procedure was followed.  Thus, Plaintiff does not have standing to assert, and this Court does not have subject-matter jurisdiction over, Count III.

Each of Plaintiff's claims, to the extent they are premised upon mini-bars and "public food service establishments" other than the three he visited, must be dismissed for lack of subject-matter jurisdiction because Plaintiff lacks standing.

## II.    Plaintiff's individual claims must be dismissed for failure to state a cause of action.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although Rule 8 "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (internal quotations omitted). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Put simply, the factual allegations in a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the claim are true." *Id.*

This is now Plaintiffs' second attempt to plead a claim against the Defendant.  As with the first complaint, however, the allegations of the Amended Complaint fall woefully short of this minimum threshold.

### A.    Counts I and II fail to state a claim for violations of FDUTPA.

To state a FDUTPA claim, a plaintiff "must allege (1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages." *Dolphin LLC v. WCI Communities, Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013). The first element may be satisfied in one of two ways: a *per se*

violation or a traditional violation. *See, e.g.*, *Parr v. Maesbury Homes, Inc.*, No. 609CV-1268-ORL-19GJK, 2009 WL 5171770, at *7 (M.D. Fla. Dec. 22, 2009).  The difference between *per se* and traditional violations is the source of the prohibition of the conduct being challenged.

Count I of the Amended Complaint is premised upon supposed *per se* violations of FDUTPA, and Count II is premised upon supposedly traditional violations of FDUTPA.  Plaintiff has failed to state a claim under either theory.

### 1.      Count I, For *Per Se* Violations Of FDUTPA, Fails To State A Claim.

With respect to a *per se* violation, § 501.203(3)(c) provides that a violation of any "law, statute, rule, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices" may serve as a predicate for a FDUTPA claim.  Fla. Stat. § 501.203(3)(c). Statutes may serve as predicates for a FDUTPA claim under § 501.203(3)(c) in one of two ways:

1.  The text of the statute may expressly state that it is to serve as a FDUTPA predicate; or

2.  A court may find that a statute proscribes unfair and deceptive trade practices and therefore operates as an implied FDUTPA predicate.

*Parr,* 2009 WL 5171770, at *7.

In Count I, Plaintiff alleges that his purported claim for *per se* violations of FDUTPA is premised upon alleged violations of Miami-Dade County Code of Ordinances, Sec. 8A-110.1(1) and § 509.214, Fla. Stat. Neither the ordinance nor the statute provide that they may serve as a FDUTPA predicate.  The question, then, is whether this statute and ordinance proscribe unfair and deceptive trade practices such that they can operate as an implied FDUTPA predicate for purposes of alleging a *per se* violation of FDUTPA.  The answer is "no."

In *Cross v. Point & Pay, LLC*, 616CV1182ORL41KRS, 2017 WL 1196676, at *6 (M.D. Fla. Mar. 31, 2017), the district court noted that only one of plaintiff's FDUTPA claims was

allowed to go forward because it was based on a statute that made it unlawful for a person to disseminate any misleading advertisement and thereby proscribed an unfair or deceptive trade practice.  But the court dismissed the plaintiff's second FDUTPA claim, which was based on a violation of § 560.204, Fla. Stat. (the Money Transmitter Statute), which prohibits an unlicensed person from engaging in or advertising that they are engaged in the selling or issuing of payment instruments. *Id*. The court held that violations of this statute could not serve as a predicate for a FDUTPA claim because the statute did not proscribe any unfair methods of competition or unfair, deceptive, or unconscionable acts or practices.  *Id*.

Similarly, in *Hucke v. Kubra Data Transfer Ltd., Corp.*, 160 F. Supp. 3d 1320, 1327–28 (S.D. Fla. 2015), the district court dismissed with prejudice a FDUTPA claim that was based on an alleged violation of the Money Transmitter Statute because although the statute protects the public by banning unlicensed persons from providing or advertising specific commercial services, the statute does not proscribe a deceptive or unfair practice or act.  In *Hucke*, the district court adopted the magistrate judge's reasoning in his Report and Recommendation that, to state a claim for a *per se* violation of FDUTPA, there must be "more than a *general, indirect* link between the subject statute[ ] and consumer protection goals."  *Id*. at 1328.  Thus, the district court dismissed the FDUTPA claim.

Here, Plaintiff alleges *per se* violations of FDUTPA based on Miami-Dade County Code of Ordinances, Sec. 8A-110.1(3), which provides:

> Each business shall provide notice of (A) whether the business includes an automatic tip in its bill, and if so, the amount or method of calculation of the automatic tip. . . .  This notice shall be posted conspicuously, ***either on a sign or in a statement on the business's menu or price listing in the same form and manner as the other items on the menu or price listing***, and written in a legible manner in English, Spanish and Creole. (Ord. No. 99-163, § 1, 12-7-99).

Plaintiff also alleges *per se* violations of FDUTPA based on § 509.214, Fla. Stat., which provides:

> Every public food service establishment which includes an automatic gratuity or service charge in the price of the meal shall include on the food menu and on the face of the bill provided to the customer notice that an automatic gratuity is included.

Fla. Stat. § 509.214.  As in *Cross* and *Hucke*, neither the ordinance nor the statute specifically proscribe a deceptive or unfair trade practice.  Although requiring disclosure of an automatic tip in a menu or on a sign posted on the premises might have a "general, indirect link" to consumer protection goals, that is insufficient to permit the ordinance and statute to serve as a basis for a *per se* violation of FDUTPA because the ordinance and statute do not themselves proscribe a deceptive or unfair trade practice.  *Hucke*, 160 F. Supp. 3d at 1328.

Furthermore, Plaintiff fails to allege that the Miami-Dade County ordinance was violated by The Ritz-Carlton, thereby requiring dismissal of Count I to the extent it is based on this ordinance.  The ordinance is written in the conjunctive and provides for compliance through *either* a sign on the premises *or* notice on the menu. Plaintiff does not allege that the three restaurants he visited failed to have a sign posted notifying customers of the automatic gratuity.  On this ground alone, the *per se* FDUTPA claim fails to state a cause of action to the extent it is premised upon this ordinance.  In addition, Plaintiff admits in the Amended Complaint that both the Cantina Beach and Lightkeepers restaurants contained a notice on their menus that an automatic gratuity would be added.  Am. Compl. at ¶¶ 25, 32.  With respect to these menus, Plaintiff alleges that the notice of automatic gratuity was written in small, italicized font, but the ordinance requires only that the notice be made "in the same form and manner as the other items on the menu ***or price listing***."  Miami-Dade County Code of Ordinances, Sec. 8A-110.1(3) (emphasis added).  The Amended Complaint is silent as to whether the notice was provided in the same form and manner as the price listing on the menu, which is often in smaller and italicized fonts on restaurant menus.  On this alternative ground, Plaintiff's *per se* FDUTPA claim based on this ordinance fails.

Nor has Plaintiff alleged a violation of § 509.214, Fla. Stat., with respect to his dining experience at Cantina Beach and Lightkeepers restaurants. The Florida Statute states only that notice must be provided on the menus, and the Amended Complaint acknowledges that notice was provided on the menus. Am. Compl. at ¶¶ 25, 32. Whether the font was small and italicized or on the last page of the menu is irrelevant as the statute does not require that any particular font or format be used in providing the notice on the menu.

In short, neither the ordinance nor the statute specifically proscribe a deceptive or unfair trade practice and thus cannot serve as a basis for a *per se* violation of FDUTPA. In addition, the Amended Complaint fails to allege a violation of the underlying ordinance with respect to any of the restaurants visited by Plaintiff and fails to allege a violation of the statute with respect to the Cantina Beach and Lightkeepers restaurants. Accordingly, Count I should be dismissed for failure to state a claim upon which relief can be granted.

### 2. Count II, For Traditional Violations Of FDUTPA, Fails To State A Claim.

A *traditional* violation is based on an allegation that the defendant engaged in "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." *See* Fla. Stat. § 501.204(1). "A deceptive act or practice is 'one that is likely to mislead consumers and an unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.' " *State Farm Mut. Auto. Ins. Co. v. Med. Serv. Ctr. of Fla., Inc.,* 103 F. Supp. 3d 1343, 1354 (S.D. Fla. 2015) (quoting *Washington v. LaSalle Bank Nat'l Ass'n,* 817 F. Supp. 2d 1345, 1350 (S.D. Fla. 2011)). Although the statute does not define "unfair and deceptive act or practice," the provisions of the act are to be "construed liberally." *Intercoastal Realty, Inc. v. Tracy*, 706 F. Supp. 2d 1325, 1333 (S.D. Fla. 2010) (quoting Fla. Stat. § 501.202(2)). A practice

is unfair under FDUTPA if it "offends established public policy" or is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003). A deceptive act occurs when a defendant makes "a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cnty., Inc.*, 169 So. 3d 164, 169 (Fla. 4th DCA 2015).

In Count II, Plaintiff alleges that Ritz-Carlton committed a traditional violation of FDUTPA by:

    a)  adding automatic gratuities or service charges without adequate disclosure to customers;

    b)  adding automatic gratuities or service charges without adequate disclosure because the notice is written in small, difficult to read type that is only found on the last page of a multi-page menu;

    c)  stating on a restaurant menu that a suggested gratuity would be added to the customer's check that the customer could raise, lower or remove at their discretion, however, when the check arrives, the added gratuity or service charge is mandatory;

    d)  referring to an automatic gratuity on the check as a service charge, with a line below the total allowing a customer to add an "Additional Gratuity" and causing confusion about the nature of the charge;

    e)  falsely representing that higher charges for food and beverages were part of the cost of the food and/or beverages ordered by Plaintiff and the Plaintiff class;

    f)  failing to disclose the automatic gratuities or service charges; and

    g)  failing to disclose the nature of the automatic charges added to a customer's check, whether a service charge paid to the restaurant or a gratuity paid to the restaurant server;

*See* Am. Compl. at ¶ 66. Keeping in mind that Count II is based on alleged traditional violations of FDUTPA—that is, conduct that is unfair or deceptive without reference to the requirements of a statute—Plaintiff has failed to state a claim.

Plaintiff alleges that the check he received in the first restaurant included an automatic gratuity of 18%, but the menu did not indicate that an automatic gratuity would be added. *Id.* at ¶¶ 19-20. But because Count II is for a traditional violation, this allegation is insufficient to state a claim because there is nothing unfair or deceptive about adding a gratuity to a check, especially where Plaintiff does not allege that he tried unsuccessfully to reduce the amount of the gratuity or even raised the issue with the restaurant. Indeed, Plaintiff alleges that, despite the menu not telling him that a gratuity would be added to his bill, he nonetheless "paid the check in full" after seeing that an 18% service charge had been added. *Id.* at ¶ 22. Far from stating a claim for an alleged FDUTPA violation, this actually requires dismissal under the voluntary payment doctrine. *See, e.g., Hassen v. Mediaone of Greater Florida, Inc.*, 751 So. 2d 1289, 1290 (Fla. 1st DCA 2000) (affirming dismissal of complaint under voluntary payment doctrine) ("It does not matter that payment may have been made upon a mistaken belief as to the enforceability of the demand, or liability under the law, as long as payment is made with knowledge of the factual circumstances. And . . . payment should ordinarily be deemed voluntary unless the circumstances present some constraint or compulsion of such a degree as to impose a necessity of payment sufficient to overcome the mind and will of a person of ordinary firmness.") (internal citations omitted).

With respect to the second and third restaurants (Cantina Beach and Lightkeepers restaurants, respectively), Plaintiff admits that the menus provided notice that an automatic gratuity would be added. Am. Compl. at ¶ 25, 32. Plaintiff further admits that both menus stated that the gratuity was "*suggested*" and that the Lightkeepers' menu further added that the amount of the gratuity could be changed at the diner's discretion. *Id.* Remarkably, Plaintiff nonetheless tries to create a FDUTPA claim out of this by alleging that the notice was inadequate because it was in small, italicized font and located on the last page of a multi-page menu. The notion that

13

this is capable of supporting a claim for a traditional violation is belied by the fact that Plaintiff admits that the menus contained the notice. *Id.*   Moreover, and putting aside, for a moment, the traditional versus *per se* dichotomy, there simply is no statutory, regulatory, or judge-made authority governing the size, font, and location of disclosures regarding automatic gratuities.

Plaintiff also alleges that the gratuity that was included on his check at the third restaurant was labeled a service charge and included in the calculation for taxes.  *Id*. at ¶ 35. Plaintiff does not, however, allege that he suffered any damages (*i.e.*, had to pay a greater amount of taxes than he otherwise would have) as a result of this calculation. Nor does Plaintiff allege that he tried to reduce the amount of gratuity provided and ask for a recalculation of the bill and the taxes charged.

In short, Plaintiff does not sufficiently allege any actual facts from which a reasonable inference can be drawn that Defendant violated FDUTPA.  Accordingly, Count II should be dismissed for failure to state a cause of action.

   **B.     Count III fails to state a claim for violation of Rule 12A-1.0115, which
            does not provide a private right of action, and because Plaintiff failed
            to exhaust his administrative remedies.**

Rule 12A-1.0115, Fla. Admin. Code, which clarifies the application of tax on food products, does not create a private right of action, requiring dismissal of Count III.  In addition, the Department of Revenue has created an administrative process that consumers claiming to have overpaid sales tax must follow. The failure to exhaust these administrative remedies is jurisdictional and requires dismissal of Count III.

Rule 12A-1.0115 governs how restaurants should tax gratuities. Fla. Admin. Code Ann. r. 12A-1.0115(7). The purpose of Rule 12A-1.0115 "is to clarify the application of tax on food products generally served, prepared, or sold in or by restaurants, lunch counters, cafeterias, caterers, hotels, taverns, or other like places of business where food products are sold for immediate consumption on the seller's premises or packaged or wrapped and taken away from the

seller's premises." Fla. Admin. Code Ann. r. 12A-1.0115(1)(a).  In his amended complaint, Plaintiff invokes subsection 7 of Rule 12A-1.0115, which deals with gratuities. Fla. Admin. Code Ann. r. 12A-1.0115(7).  Nowhere in Rule 12A-1.0115, however, is there any language indicating that a private cause of action has been created.  Rather, enforcement of the rule lies with the Department of Revenue.  Specifically, Rule 12A-1.0115 modifies Chapter 212, Florida Statutes, which governs "Tax on Sales, Use, and Other Transactions."  Pursuant to section 212.151, enforcement of that chapter lies with the Department of Revenue.  Fla. Stat. § 212.151(1) (noting that "**the department**" can bring suit "against any retailer, dealer, or vendor for any violation of this chapter, and for the purpose of effecting collection of any tax due from any dealer"); Fla. Stat. § 212.02(5) ("The term 'department' means the Department of Revenue.").

The Amended Complaint attempts to use Rule 12A-1.014(4) as a basis of maintaining a private right of action against The Ritz-Carlton, but this, too, fails. Specifically, Plaintiff cites to Rule 12A-1.014(4) for the proposition that a taxpayer who has overpaid tax to a dealer, or who has paid tax to a dealer when no tax is due, must secure a refund of the tax from the dealer and not from the Department of Revenue. Am. Compl. ¶ 81.  But this rule is part of the statutorily-mandated process that consumers must follow to obtain a refund of improperly assessed sales tax. Section 215.26, Florida Statutes, establishes the exclusive procedure for tax refunds under Florida law.  Fla. Stat. § 215.26(1) and (2) (permitting the state's CFO to delegate to state agencies the authority to accept applications for refunds); Fla. Admin. Code R. 12-26.002(2), 69I-44.020 (delegating to Department of Revenue requests for sales tax refunds); Fla. Admin. Code R. 12A-1.014(4) (Department of Revenue regulation providing that requests for sales tax refunds are to be made to the dealer); Fla. Stat. § 72.011 (authorizing lawsuits **once refund process has been exhausted** and making compliance with refund process jurisdictional).

15

Put simply, the administrative code creates an administrative process whereby a consumer who believes he has overpaid tax must first make a request *to the dealer* of a refund.  Fla. Admin. Code R. 12A-1.014(4).  If the dealer refuses to provide the refund, then a lawsuit is authorized.  Fla. Stat. § 72.011.  The failure to follow this exclusive procedure requires dismissal. *Sarnoff v. Fla. Dep't of Highway Safety & Motor Vehicles*, 825 So. 2d 351, 353, 355 (Fla. 2002).

In this case, Plaintiff does not allege that he (or anyone in the purported class) requested a refund from anyone of the sales tax that he claims was improperly assessed and collected from him by The Ritz-Carlton.  And he does not and cannot allege that a request for a refund has been denied. Because he has not made a request for a refund that has been denied, Plaintiff has failed to allege an injury-in-fact and does not have standing to assert his claim.  In addition, Plaintiff fails to state a cause of action as he has not complied with the administrative process and exhausted his administrative remedies.  Accordingly, this Court must dismiss Count III.  *Sarnoff*, 825 So. 2d at 353, 355; *Dep't of Revenue v. Nemeth*, 733 So. 2d 970, 974 (Fla. 1999) (holding that a taxpayer is required to first apply for a refund pursuant to the relevant statute before filing suit unless the claim is based solely upon the tax being unconstitutional); *P.R. Mktg. Grp., Inc. v. GTE Fla., Inc.*, 747 So. 2d 962, 963 (Fla. 2d DCA 1999) (rejecting sales-tax refund claim by taxpayers who had not first sought refunds).

Even if Plaintiff had exhausted his administrative remedies, which he has not, this Court does not have subject matter jurisdiction over such a claim. Under the Federal Tax Injunction Act, "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341 (2017); *Penzer v. Ford Motor Credit Co.*, 319 F. Supp. 2d 1351, 1353 (S.D. Fla. 2004) (finding that court lacked subject matter jurisdiction under the Federal Tax Injunction Act

16

as to plaintiffs' claim against automotive leasing companies, alleging that they improperly collected state sales taxes at the expiration of the relevant car leases).  On this additional ground, Count III must be dismissed.

> **C.**   **Count IV fails to state a claim for declaratory relief.**

In Count IV, Plaintiff seeks declaratory relief under FDUTPA, which provides that "anyone aggrieved by a violation of this part may bring an action to obtain declaratory judgment that an act or practice violates this part." Fla. Stat. § 501.211.  As stated above, Plaintiff has not sufficiently stated a claim for either a *per se* or traditional violation of FDUTPA.  Accordingly, Count IV should be dismissed.

In addition, Count IV should be dismissed because it is duplicative of the other counts and does not seek relief beyond what is requested in the other counts of the Amended Complaint. *Perret v. Wyndham Vacation Resorts, Inc.*, 889 F. Supp. 2d 1333, 1346–47 (S.D. Fla. 2012) (dismissing declaratory action with prejudice because "a court should not entertain an action for declaratory relief when the issues are properly raised in other counts of the pleadings and are already before the court" and "the declaration sought is essentially the same as the relief sought in Plaintiffs' fraud, FDUTPA, and breach of contract claims"); *see also Ministerio Evangelistico Int'l v. United Specialty Ins. Co.*, 16-25313-CIV, 2017 WL 1363344, at *2 (S.D. Fla. Apr. 5, 2017) (dismissing declaratory action as duplicative because the plaintiff would be able to secure full, adequate, and complete relief through the breach of contract claim); *Se. Distributors, Inc. v. United Specialty Ins. Co.*, 16-24549-CIV, 2017 WL 960300, at *5–6 (S.D. Fla. Mar. 13, 2017) (dismissing declaratory action where the plaintiff could not point to any declaratory relief that it could not obtain through resolution of its breach of contract claim).

Because Plaintiff has failed to allege a claim for either a *per se* or traditional violation of FDUTPA and because the declarations sought by Plaintiff form the basis for and are duplicative

of Plaintiff's other claims, Count IV should be dismissed for failure to state a claim upon which relief can be granted.

> **D.  Count V fails to state a claim for injunctive relief.**

In Count V, Plaintiff seeks injunctive relief pursuant to FDUTPA, which provides that "anyone aggrieved by a violation of this part may bring an action . . . to enjoin a person who has violated, is violating, or is otherwise likely to violate this part."  Fla. Stat. § 501.211.  As stated above, however, Plaintiff has not sufficiently stated a claim for either a *per se* or a traditional violation of FDUTPA.  Thus, Count V should be dismissed.

In addition, Plaintiff's claim for an injunction ignores the often overlooked fact that injunctive relief is a remedy and not a cause of action.  *Klay v. United Healthgroup, Inc.*, 376 F. 3d 1092, 1097–98 (11th Cir. 2004).  On this ground alone, Count V should be dismissed.  *See, e.g., Westgate Resorts, Ltd. v. Castle Law Group, P.C.*, 617CV1063ORL31DCI, 2017 WL 6512552, at *5 (M.D. Fla. Dec. 20, 2017) (dismissing claim for "temporary and permanent injunctive relief" because it "is a remedy, not a cause of action") (citing *Klay*).

Finally, under the Federal Tax Injunction Act, this Court does not have subject matter jurisdiction to enjoin conduct with respect to the collection of a tax under state law, as Plaintiff seeks in Count V.  28 U.S.C. § 1341 (2017); *Penzer*, 319 F. Supp. 2d at 1353. Accordingly, Count V should be dismissed.

<u>Conclusion</u>

For the reasons set forth above, the Amended Complaint must be dismissed for lack of subject-matter jurisdiction as Plaintiff has not met his burden of showing that he suffered a concrete and particularized injury-in-fact sufficient to confer standing upon him to assert claims relating to every restaurant at every Ritz-Carlton in Florida.  In addition, Plaintiff fails to include any specific factual allegations to support his conclusory allegations that Defendant violated

Florida law in any way. Thus, the Complaint should also be dismissed for failure to state a cause of action.

WHEREFORE, Defendant, The Ritz-Carlton Hotel Company, LLC, respectfully requests that the Court dismiss the Complaint.

Respectfully submitted,

HOLLAND & KNIGHT LLP
*Attorneys for Defendant*
701 Brickell Avenue, Suite 3300
Miami, Florida 33131
(305) 374-8500 (telephone)
(305) 789-7799 (facsimile)

By: s/Scott D. Ponce
    Richard C. Hutchison (FBN 709360)
    rick.hutchison@hklaw.com
    Scott D. Ponce (FBN 0169528)
    sponce@hklaw.com
    Rodolfo Sorondo, Jr. (FBN 287301)
    rodolfo.sorondo@hklaw.com

## CERTIFICATE OF SERVICE

I HEREBY certify that on **March 12, 2018,** I electronically filed the foregoing document with the Clerk of the Court CM/ECF.

By: s/Scott D. Ponce