# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

## CASE NO. 1:17-CV-24284-KING/SIMONTON

**MICHAEL FOX**,
on behalf of himself and all others similarly
situated,

       *Plaintiff*,

   v.

**THE RITZ-CARLTON HOTEL
COMPANY, LLC,**

      *Defendant*.

_____

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S
## MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Dated: April 9, 2018

**SMITHMARCO, P.C.**
David M. Marco
55 W. Monroe Street, Suite 1200
Chicago, IL 60603
T: (312) 546-6539

**FRANCIS & MAILMAN, P.C.**
James A. Francis (*pro hac vice*)
John Soumilas (*pro hac vice*)
David A. Searles (*pro hac vice*)
Land Title Building, Suite 1902
100 South Broad Street
Philadelphia, PA 19110
T: (215) 735-8600

**LEWIS SAUL & ASSOCIATES, P.C.**
Lewis J. Saul (*pro hac vice*)
Edward A. Coleman (*pro hac vice*)
29 Howard Street, 3rd Floor
New York, NY 10013
T: (212) 376-8450

*Attorneys for Plaintiff and the Class*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................................ ii

I.   INTRODUCTION ................................................................................................................... 1

II.  LEGAL STANDARD ............................................................................................................. 2

    A.   Rule 12(b)(1) ............................................................................................................... 2

    B.   Rule 12(b)(6) ............................................................................................................... 2

III. ARGUMENT .......................................................................................................................... 3

    A.   Plaintiff Has Standing To Sue Independently And On Behalf Of All
        Consumers Harmed By Defendant's Pattern And Practice At Its Florida
        Restaurants ................................................................................................................... 3

        1.   *Spokeo* Supports a Finding That Plaintiff Has Standing ............................. 3

        2.   Standing Does Not Require Plaintiff to Satisfy Rule 23 at This
                Stage ................................................................................................................. 6

        3.   Standing is Not a Rule 12(b)(6) Issue ........................................................... 7

    C.   The Amended Complaint States Two Claims For Violation Of The
        FDUTPA ..................................................................................................................... 9

        1.   Plaintiff Has Alleged Violation Of Florida Statutes Section
                509.214 And Miami-Dade County Code Of Ordinances, Sec. 8A-
                110.1(3) ........................................................................................................... 9

        2.   The Amended Complaint Sufficiently Alleges Plaintiff's
                Traditional FDUTPA Claims ...................................................................... 14

    D.   Count III Alleges A Violation Of Fla. Admin. Code Rule 12A-1.0115 And
        No Barriers To Plaintiff's Pursuit Of A Refund Pursuant Thereto Exist ............ 15

    E.   Plaintiff Permissibly Alleges Separate Counts for Declaratory and
        Injunctive Relief ...................................................................................................... 18

IV.  CONCLUSION ..................................................................................................................... 19

## **TABLE OF AUTHORITIES**

### **CASES**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).....................................................................................................3

*Bennett v. Spear*,
    520 U.S. 154 (1997).....................................................................................................4

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*,
    116 F.3d 1364 (11th Cir. 1997) ..................................................................................3

*Cableview Comm'ns of Jacksonville, Inc. v. Time Warner*,
    2014 WL 1268584 (M.D. Fla. March 27, 2014).......................................................15

*Cross v. Point & Pay, LLC*,
    274 F. Supp. 3d 1289 (M.D. Fla. 2017).......................................................11, 12, 13

*Davis v. Powertel, Inc.*,
    776 So.2d 971 (Fla. 1st Dist. Ct. App. 2000) ........................................................8, 14

*Deere Constr., LLC v. Cemex Constr. Materials Fla., LLC*,
    198 F. Supp. 3d 1332 (S.D. Fla. 2016) ..................................................................4, 5

*Dep't of Rev. v. Nemeth*,
    733 So. 2d 970 (Fla. 1999) .......................................................................................16

*Diamond Resorts Int'l, Inc. v. Aaronson*,
    2018 WL 735627 (M.D. Fla. Jan. 26, 2018).............................................................5

*Focus on the Family v. Pinellas Suncoast Transit Auth.*,
    344 F.3d 1263 (11th Cir. 2003) ................................................................................4

*Hucke v. Kubra Data Transfer, Corp.*,
    160 F. Supp. 3d 1320 (S.D. Fla. 2015) ......................................................11, 12, 13

*Ibarra v. Swacina*,
    2009 WL 4506544 (S.D. Fla. Dec. 3, 2009)............................................................2

*Jackson v. U.S. Bank, N.A.*,
    2014 WL 4179867 (S.D. Fla. Aug. 22, 2014)..........................................................15

*James D. Hinson Elec. Contracting Co., Inc. v. BellSouth Telecommunications, Inc.*,
    2008 WL 360803 (M.D. Fla. Feb. 8, 2008) .............................................................18

*James D. Hinson Elec. Contracting Co., Inc. v. BellSouth Telecommunications, Inc.*,
   275 F.R.D. 638 (M.D. Fla. 2011) .......................................................................... 8

*Latman v. Costa Cruise Lines, N.V.*,
   758 So.2d 699 (Fla. 3d Dist. Ct. App. 2000) ....................................................... 5

*Lewis v. Casey*,
   518 U.S. 343 (1996) ............................................................................................. 6

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   134 S.Ct. 1377 (2014) .......................................................................................... 4

*Massachusetts Mut. Life Ins. Co. v. Switlyk*,
   2014 WL 3894342 (M.D. Fla. Aug. 8, 2014) ..................................................... 15

*Mgmt Computer Controls, Inc. v. Charles Perry Const., Inc.*,
   743 So.2d 627 (Fla. 1st Dist. Ct. App. 1999) .................................................... 14

*MJS Music Publ'n, LLC v. Hal Leonard Corp.*,
   2006 WL 1208015 (M.D. Fla. May 4, 2006) ...................................................... 14

*Morgan v. Pub. Storage*,
   2015 WL 11233111 (S.D. Fla. Aug. 17, 2015) ..................................................... 5

*Motmanco, Inc. v. McDonald's Corp.*,
   2005 WL 1027261 (M.D. Fla. Mar. 30, 2005) ................................................... 14

*Neale v. Volvo Cars of N. Am., LLC*,
   794 F.3d 353 (3d Cir. 2015) ................................................................................. 6

*P.R. Mktg. Grp., Inc. v. GTE Fla., Inc.*,
   747 So. 2d 962 (Fla. 2d Dist. Ct. App. 1999) .................................................... 16

*Penzer v. Ford Motor Credit Co.*
   319 F. Supp. 2d 1351, 1353-54 (S.D. Fla. 2004) ............................................... 17

*Pincus v. Speedpay, Inc.*
   161 F. Supp. 3d 1150 (S.D. Fla. 2015) ........................................................ 12, 13

*Prado-Steiman ex rel. Prado v. Bush*,
   221 F.3d 1266 (11th Cir. 2000) ............................................................................ 6

*Salvors, Inc. v. Unidentified Wrecked & Abandoned Vessel*,
   861 F.3d 1278 (11th Cir. 2017) ............................................................................ 4

*Samuels v. King Motor Co. of Fort Lauderdale*,
   782 So.2d 489 (Fla. 4th Dist. Ct. App. 2001) ................................................... 14

iii

*Sarnoff v. Fla. Dep't of Highway Safety & Motor Vehicles*,
   825 So. 2d 351 (Fla. 2002)............................................................................16

*Schojan v. Papa John's Int'l Inc.*,
   34 F. Supp. 3d 1206 (M.D. Fla. 2014)....................................................15, 16, 18

*Schojan v. Papa John's Int'l, Inc.*,
   2014 WL 6886041 (M.D. Fla. Dec. 8, 2014)......................................................14

*Siever v. BWGaskets, Inc.*,
   669 F.Supp.2d 1286 (M.D. Fla. 2009)..............................................................14

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016)..........................................................................3, 5, 9

*Taylor, Bean & Whitaker Mort. Corp. v. GMAC Mortg. Corp.*,
   2007 WL 1114045 (M.D. Fla. April 12, 2007)....................................................15

*Third Party Verification, Inc. v. Signaturelink, Inc.*,
   492 F.Supp.2d 1314 (M.D. Fla. 2007)..............................................................14

*Zamber v. American Airlines, Inc.*,
   2017 WL 4712576 (S.D. Fla. Oct. 16, 2017)........................................................5

## STATUTES

Federal Tax Injunction Act, 28 U.S.C. § 1341 ..............................................17, 18

Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. 501.201 *et seq.*.............. *passim*

Fla. Stat. § 215.26 ........................................................................................16

Fla. Stat. § 501.203(3)(c) ..........................................................................10, 13

Fla. Stat. § 501.204(1) ..................................................................................14

Fla. Stat. § 509.214 ................................................................................ *passim*

Fla. Stat. § 560.103(7), (25) ...........................................................................12

Fla. Stat. §§ 560.105, 560.113, 560.114 ...........................................................12

Fla. Stat. § 560.204 ......................................................................................11

Fla. Stat. § 560.204(1) ..................................................................................12

Fla. Stat. § 817.41(1) ....................................................................................12

Miami-Dade County Code of Ordinance § 8A-110.1.................................10, 11, 13

## FEDERAL RULES

Fed. R. Civ. P. 12(b)(1) ................................................................................................2

Fed. R. Civ. P. 12(b)(6) .............................................................................................3, 7

Fed. R. Civ. P. 12(h)(3) ...............................................................................................2

Fed. R. Civ. P. 23 .....................................................................................................3, 6

## CONSTITUTIONAL PROVISIONS

Article III ...........................................................................................................4, 5, 6, 7

## OTHER AUTHORITIES

1988 Fla. Sess. Law Serv. 88-16 .................................................................................10

1990 Fla. Sess. Law Serv. 90-339 ...............................................................................10

Fla. Admin. Code Chapter 12–26 ................................................................................16

Fla. Admin. Code R. 12A-1.0115 ............................................................................1, 16

Fla. Admin. Code R. 12A-1.014 ............................................................................16, 17

Laws 1986, c. 86-24, § 1 .............................................................................................10

Los Angeles Times, "Unusual Dinner Tab Brings Outcry Over Stigma of 'Dining
    While Black,'" available at
    http://articles.latimes.com/print/1999/nov/14/news/mn-33487 (Nov. 14, 1999) ....................11

Miami-Dade County Commission Legislative Item File Number 993136
    (available at
    http://www.miamidade.gov/govaction/matter.asp?matter=993136&file=false
    &fileAnalysis=false&yearFolder=Y1999) ............................................................................11

## I.        **INTRODUCTION**

Plaintiff Michael Fox has filed a detailed Amended Complaint (ECF 17, hereinafter "AC") that clearly describes the conduct that gives rise to his claims under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.* ("FDUTPA"), Rule 12A-1.0115 of the Florida Administrative Code, and for declaratory and injunctive relief.

The AC details a variety of deceptive practices employed by the Defendant that improperly took money out of its customers' pockets: failing to provide *any* notice or otherwise disclose on restaurant menus that an automatic gratuity or service charge of any amount would be added to customers' checks; failing to provide *adequate* notice on restaurant menus that an automatic gratuity or service charge of any amount would be added to customers' checks; presenting checks that added automatic service charges as well as a line below the total allowing customers to add an "Additional Tip," causing confusion about the nature of the charges; falsely representing that higher charges for food and beverages were part of the cost of the food and/or beverages ordered by customers; failing to disclose the nature of the automatic charges added to customers' checks, whether a service charge paid to the restaurant or a gratuity paid to the restaurant server; and, improperly charging tax on gratuities that are automatically added to customers' checks or bills.

Contrary to the arguments in the Motion to Dismiss (ECF 22, "Def. Mem.") filed by Defendant Ritz-Carlton Hotel Company, LLC ("Ritz-Carlton" or "Defendant"), the AC sufficiently alleges particularized and concrete harm to Plaintiff, providing him with standing to bring this action, and gives Defendant fair notice of the claims asserted against it and the grounds on which the claims rest. The AC makes clear that Defendant is alleged to have violated Florida law at its restaurants by failing to provide adequate notice on menus that automatic gratuities or service charges would be added to diners' checks, by unfairly and deceptively overcharging customers for food and beverages, and by subjecting non-taxable gratuities to sales tax.

As discussed below, Plaintiff Fox has plausibly described in the AC a pattern and practice of unfair and deceptive business practices by the Defendant. Plaintiff and those he seeks to represent are restaurant customers that chose to dine at Defendant's restaurants, believing that the items they would order would cost the amount disclosed on the menus. Instead, when the bill was presented at the conclusion of the meal, it included an automatic gratuity or service charge that, in the case of Plaintiff Fox, increased the bill by eighteen percent (18%).

The AC presents a concise, straightforward claim of improper business practices that costs consumers money. There is no ambiguity, vagueness or other significant defect in Plaintiff's pleading. Defendant's Motion should be denied.

## II.   LEGAL STANDARD

### A.   Rule 12(b)(1)

A court must dismiss a complaint, or portions thereof, if it determines at any time that it lacks subject-matter jurisdiction over a claim being asserted. *See* Fed. R. Civ. P. 12(h)(3). Challenges to subject-matter jurisdiction can be either factual or facial. *See Ibarra v. Swacina*, No. 09–22354–CIV, 2009 WL 4506544, *4 (S.D. Fla. Dec. 3, 2009).

> A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [the plaintiff's] complaint are taken as true for the purposes of the [Rule 12(b)(1)] motion. A factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic to the pleadings, such as affidavits or testimony.

*Id*. (citing *Stalky v. Orlando Reg'l Healthcare Sys.,* 524 F.3d 1229, 1232–33 (11th Cir. 2008). Defendant's challenge to Plaintiff's standing is a facial one as it did not present extrinsic evidence in support of its argument.

### B.   Rule 12(b)(6)

On a motion to dismiss, a court construes the complaint in the light most favorable to the

plaintiff and accepts its factual allegations as true. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citing *SEC v. ESM Grp., Inc.*, 835 F.2d 270, 272 (11th Cir. 1988)). This pleading standard does not require detailed factual allegations, but the complaint must state claims that are plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

## III.   ARGUMENT

### A.   Plaintiff Has Standing To Sue Independently And On Behalf Of All Consumers Harmed By Defendant's Pattern And Practice At Its Florida Restaurants

Defendant's standing arguments are flawed and provide no basis for dismissal of Plaintiff's claims. Rather, Plaintiff's standing to bring suit against Defendant is plain and supported by the Eleventh Circuit's readings of *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), because Plaintiff clearly alleged a concrete injury—economic loss—as a result of dining at three of Defendant's restaurants. Defendant, forced to concede these facts (*see* Def. Mem. at 5), challenges Plaintiff's standing through the lenses of the requirements of Fed. R. Civ. P. 23, arguing that Plaintiff does not have standing to represent diners tricked by Defendant at any of its dozens of other public eating establishments, and separately, the requirements of Fed. R. Civ. P. 12(b)(6), arguing that failure to state a claim is synonymous with a lack of standing. As explained within, each argument fails.

#### 1.   *Spokeo* Supports a Finding That Plaintiff Has Standing

Defendant's reliance on *Spokeo* is misplaced as it supports a finding of standing in this case, as does post-*Spokeo* Eleventh Circuit law. The year after *Spokeo* was decided, the Eleventh Circuit held that the "well-settled test for establishing Article III standing includes three basic requirements." *Salvors, Inc. v. Unidentified Wrecked & Abandoned Vessel*, 861 F.3d 1278, 1290

(11th Cir. 2017). First, there must be an injury in fact, "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id*. (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (quotations, citations, and footnote omitted)). Second, there must be "a causal connection between [a plaintiff's] injury and the defendant's conduct." *Id*. Third and finally, it must be "likely – and not merely speculative – that a favorable decision by the court will redress the injury." *Id*. (citing *Duty Free Americas, Inc. v. Estée Lauder Cos.*, 797 F.3d 1248, 1271 (11th Cir. 2015). Plaintiff easily clears these hurdles because (1) he suffered an injury in fact, namely the economic loss[1] associated with payment of improperly disclosed service charges and improperly assessed sales taxes; (2) his injury is fairly traceable[2] to Defendant's failure to comply with the requirements of Florida law; and, (3) his injury may be redressed by a favorable decision, namely the recovery of funds he paid.[3] Article III requires nothing more.

Federal courts in Florida have addressed Article III standing in the context of FDUTPA claims since *Spokeo*. Each decision has affirmed that the wrongful payment of money constitutes a concrete and particularized injury for the purposes of Article III standing. *See Zamber v.*

---

[1]    Throughout the AC, Plaintiff alleges the loss of money because of Defendant's conduct. *See* AC at ¶¶ 22, 29, 38. Economic loss is an injury-in-fact sufficient for standing. *Deere Constr., LLC v. Cemex Constr. Materials Fla., LLC*, 198 F. Supp. 3d 1332, 1340 (S.D. Fla. 2016).

[2]    Defendant does not contest that Plaintiff's injury is fairly traceable to their conduct, but in any case, this is a "relatively modest" burden, *Bennett v. Spear*, 520 U.S. 154, 171 (1997), and "even harms that flow indirectly from the action in question can be said to be 'fairly traceable' to that action for standing purposes." *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1273 (11th Cir. 2003). The Supreme Court has made it clear that "[p]roximate causation is not a requirement of Article III standing, which requires only that the plaintiff's injury be fairly traceable to the defendant's conduct." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1391 n. 6 (2014).

[3]    Similarly, Defendant does not contest that a decision in Plaintiff's favor will redress the injury he suffered. *See Deere Constr., LLC,* 198 F. Supp. 3d at 1340 (recovery of monies paid based on deceptive representations and omissions sufficient for redressability).

*American Airlines, Inc.*, No. 16-23901-CIV-MARTINEZ-GOODMAN, 2017 WL 4712576 (S.D. Fla. Oct. 16, 2017) (passenger's payment of travel insurance premiums retained by the airline alleged to be illegal kickbacks was an injury in fact); *Diamond Resorts Int'l, Inc. v. Aaronson*, No. 6:17-cv-1394-Orl-37-DCI, 2018 WL 735627, *2 (M.D. Fla. Jan. 26, 2018) (timeshare owners' allegations that that they suffered "an injury to commercial and reputational interest based on [Defendant's] misrepresentation, false, and deceptive statements about [Plaintiffs]" was sufficient for standing).

Prior to *Spokeo*, courts throughout Florida had rejected standing challenges to FDUTPA claims in which plaintiffs had parted with money pursuant to unfair conduct or deceptive representations. *See, e.g., Deere Constr., LLC*, 198 F. Supp. 3d at 1340 (rejecting standing challenge where plaintiffs sought recovery of money paid "for what [plaintiffs] believed were charges associated with fuel and environmental costs [because of Defendant's alleged unfair and deceptive practices], when in fact those charges were merely ways for Defendants to make additional profit."); *Morgan v. Pub. Storage*, No. 14-cv-21559, 2015 WL 11233111, *1 (S.D. Fla. Aug. 17, 2015) (rejecting standing challenged to FDUTPA claim to recover certain fees "paid back to Public Storage out of the [insurance] premiums based on Public Storage's alleged deceptive practice of representing that the [insurance] premium is transferred to a third party, but is actually largely retained by Public Storage."); *Latman v. Costa Cruise Lines, N.V.*, 758 So.2d 699, 703 (Fla. 3d Dist. Ct. App. 2000) ("[D]amages are sufficiently shown by the fact that the passenger parted with money for what should have been a 'pass-through' port charge, but the cruise line kept the money.").

The Plaintiff's allegations that he "paid the check in full" (AC at ¶¶ 22, 29, 38) at each of the restaurants he visited easily satisfy the injury-in-fact requirements of Article III.

### 2.     <u>Standing Does Not Require Plaintiff to Satisfy Rule 23 at This Stage</u>

Next, Defendant inaccurately—and without citation to authority—attempts to insert the requirements of Rule 23 into the requirements of Article III standing when it argues that "Plaintiff did not suffer, and could not have suffered, an injury-in-fact with respect to such other restaurants and mini-bars. . . he did not visit or . . . did not use." Def. Mem. at 5. As demonstrated above, there is nothing about *where* Defendant's allegedly illegal conduct took place that is dispositive of Plaintiff's standing. This argument is a red herring that attempts to have this Court prematurely focus on issues related to class certification without the benefit of a factual record after discovery is complete and dedicated class certification briefing.

Contrary to Defendant's suggestion, the only relevant consideration at this point in the case is whether the Plaintiff *himself* has standing with respect to the claims that he raises. The law is clear that "named plaintiffs who represent a class must allege and show that they *personally* have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (emphasis added); *see also Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 362 (3d Cir. 2015) ([U]nnamed, putative class members need not establish Article III standing. Instead, the 'cases or controversies' requirement is satisfied so long as a class representative has standing, whether in the context of a settlement or litigation class."). This requirement applies to all the claims that a plaintiff seeks to bring in a representative capacity. *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1280 (11th Cir. 2000) ("It is not enough that a named plaintiff can establish a case or controversy between himself and the defendant by virtue of having standing as to one of many claims he wishes to assert. Rather, each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim.") (internal quotation and citation omitted).

6

Therefore, the AC contains clear allegations as to the *kinds of conduct* that violated the law with respect to Plaintiff and upon which he bases his claims. These include (1) Defendant's failure to notify him of the automatic gratuity at the Key Pantry restaurant (AC at ¶ 20); (2) Defendant's inadequate disclosure of the automatic gratuity at the Cantina Beach restaurant (AC at ¶ 25); and (3) at the Lightkeepers restaurant, Defendant's inadequate disclosure of the automatic gratuity (AC at ¶ 32); the misleading characterization of a service charge as a "suggested gratuity" (AC at ¶¶ 32, 34); and, the inclusion of that amount within the taxable portion if his bill (AC at ¶ 35).

Plaintiff then alleges the extent to which Defendant engages in the allegedly illegal conduct. *See* AC at ¶ 56 (regarding failure to disclose automatic gratuities on a menu) and ¶ 68 (regarding traditional unfair and deceptive practices concerning inadequate disclosures of gratuities automatically added to diners' bills). Discovery will bear out whether these policies and procedures are employed at all of Defendant's dining establishments. This and other questions of fact relating to class certification are ill-suited of resolution on a motion to dismiss and without the benefit of any discovery whatsoever. They are certainly not standing issues. This argument should be rejected.

### 3.   <u>Standing is Not a Rule 12(b)(6) Issue</u>

In a final attempt to shade the requirements of Article III in its favor, Defendant argues that

> While Plaintiff makes the conclusory allegation that the gratuity was mandatory and that he paid the checks in full, he does not allege any facts that he asked for the gratuity to be removed or reduced but was not allowed to do so. Thus, Plaintiff has not alleged any facts that the gratuity was, in fact, mandatory and has not alleged that he suffered an injury-in-fact that is concrete and particularized.

Def. Mem. at 6. In doing so, Defendant implicitly argues that in order to have standing to bring a claim for violation of Fla. Stat. § 509.214, a plaintiff must have relied on a defendant's deception and disputed the subject charge. Defendant cite to no authority to support this argument because none exists. As set forth above, case law is clear that the dispositive act for standing for claims

7

based upon the imposition of an unlawful charge or overcharge is whether the plaintiff paid the charge in question. Moreover, FDUTPA does not require a plaintiff to prove reliance on a deceptive act to recover. *Davis v. Powertel, Inc.,* 776 So.2d 971, 975 (Fla. 1st Dist. Ct. App. 2000) ("Because proof of reliance is unnecessary [in FDUPTA case], the plaintiffs' inability to show reliance in every case cannot be used to justify a finding that individual issues will predominate over the class claims. Issues pertaining to the proof of the alleged deceptive practice and issues relating to causation and damages will be common to all members of the class.").

Defendant's invented standing requirements demonstrate a misapprehension of Plaintiff's claims and the nature of a violation of Fla. Stat. § 509.214's notice requirement. First, the typical consumer presented with such a check does not know that the automatic service charge is illegal. Consumers have the right to presume that a business is treating them fairly and properly under the law. The fact that Mr. Fox saw the charge on his bill does not mean that he knows it is unlawful. Moreover, Plaintiff's subjective knowledge of the service charge is immaterial to compliance with Fla. Stat. § 509.214 and provides no defense to Defendants' violation. *See, e.g.*, *James D. Hinson Elec. Contracting Co., Inc. v. BellSouth Telecommunications, Inc.*, 275 F.R.D. 638, 644–46 (M.D. Fla. 2011) (plaintiff's awareness of defendant's allegedly unlawful overcharging was "simply not relevant to the issue of whether [defendant] was deceptive by charging amounts that it was not entitled to recover under Florida law."). Second, the fact that the charge is disclosed to the consumer only *after* the meal and added to the bill at the time of presentment, with no prior notice, means that it is involuntary. In doing so, Defendant deprived Plaintiff and all subject class members the right to consent to the charge or find a different place to eat, which is what Fla. Stat. § 509.214's notice requirement is meant to provide. There is no support for Defendant's contention that it is the responsibility of the layperson consumer to object and point out the illegality at the

time the check is presented to recover.

In addition to the out-of-pocket economic loss alleged in the AC, standing is also supported by the Supreme Court's emphasis in *Spokeo* that the *risk* of real harm can satisfy the requirement of concrete injury. 136 S.Ct. at 1549. Defendant created that risk by not providing the statutorily required notice and by deceptively hiding the service charges. This led to the risk of real harm that customers would not realize their meals would be more expensive.

For the above reasons, Plaintiff has adequately alleged his standing to bring this case in federal court.

**C.** **The Amended Complaint States Two Claims For Violation Of The FDUTPA**

The AC clearly lays out two categories of FDUTPA violations by Defendant. The first is the *per se* violation of Fla. Stat. § 509.214, committed at those restaurants (AC at ¶ 56) where the menu contains no notice of any kind that there will be an automatic gratuity or service charge added to the bill. The second category is a broader, "traditional" violation of FDUTPA, alleging that even where a restaurant's menu contains some notice of an automatic gratuity or service charge being added to the bill, such notice is nevertheless inadequate and amounts to an unfair and deceptive practice because it is presented in a manner that is intentionally difficult to read or otherwise hidden from the customer. Both claims are adequately pled, and this Court should deny Defendant's motion to dismiss.

**1.** **Plaintiff Has Alleged Violation Of Florida Statutes Section 509.214 And Miami-Dade County Code Of Ordinances, Section 8A-110.1(3)**

The statute and ordinance that Plaintiff alleges Defendant violated may serve as a predicate for a FDUTPA claim because they both proscribe "unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices." Fla. Stat. § 501.203(3)(c). Defendant's argument to the contrary lacks credibility in the face of the history and underpinnings of each.

The legislative history of Fla. Stat. § 509.214 makes its consumer-protection focus clear. Since its passage in 1986, the Florida legislature has repeatedly amended it to sharpen its focus on preventing the sort of harm at issue here. In its original form, the law read as follows:

> Every public food service establishment shall include on the face of the bill provided to the customer notice of whether or not an automatic gratuity is included.

Laws 1986, c. 86-24, § 1. Two years later, the legislature amended the law to read as follows:

> Every public food service establishment *which includes an automatic gratuity charge in the price of the meal* shall include on the face of the bill provided to the customer notice *that* an automatic gratuity is included.

1988 Fla. Sess. Law Serv. 88-16 (West) (edited for readability) (emphasis added). Having removed the phrase "whether or not," the legislature made it clear that the statute was not about creating an additional hoop for restaurants to jump through, but rather about putting diners on notice that part of the bill they were being presented included a gratuity. Finally, in 1990, the legislature amended the statute again, adding a critical phrase that makes its intention unmistakable:

> Every public food service establishment which includes an automatic gratuity *or service* charge in the price of the meal shall include on the *food menu and on the* face of the bill provided to the customer notice that an automatic gratuity is included.

1990 Fla. Sess. Law Serv. 90-339 (West) (edited for readability) (emphasis added). Thus, the legislature clearly emphasized the importance of providing notice of automatic gratuities or service charges *before* consumers were presented with their bills.

The Miami-Dade County Code of Ordinance § 8A-110.1 (the "Ordinance") goes even further in the direction of consumer protection. The Ordinance has its origins in an ugly series of incidents in which a restaurant owner would, without notifying customers, apply automatic

gratuities to the bills of black diners and not to those of white diners.[4] In the minutes of the December 7, 1999 meeting of the Miami-Dade County Board of Commissioners, the commissioners expressly acknowledged this connection and the board unanimously adopted the Ordinance.[5] It expressly prohibits "any tip based upon an individual's [race, color, religion, ancestry, national origin, age, sex, sexual orientation, pregnancy, disability, marital status or familial status of an individual or any person associated with that individual.]" Sec. 8A-110.1(c), (d). Moreover, the Ordinance requires businesses to "conspicuously" post a notice of "whether the business includes an automatic tip in its bill, and if so, the amount or method of calculation of the automatic tip" and additional language relating to the prohibition of status-based discrimination. Sec. 8A-110.1(3) The notice shall be posted "conspicuously, either on a sign or in a statement on the business's menu or price listing in the same form and manner as the other items on the menu or price listing, and written in a legible manner in English, Spanish and Creole." *Id.*

Defendant's reliance upon *Hucke v. Kubra Data Transfer, Corp.*, 160 F. Supp. 3d 1320 (S.D. Fla. 2015), and *Cross v. Point & Pay, LLC*, 274 F. Supp. 3d 1289 (M.D. Fla. 2017), for the proposition that Fla. Stat. § 509.214 and the Ordinance cannot serve as predicates for *per se* FDUTPA liability is misplaced. Those matters involved alleged violations of an entirely different provision, the Money Transmitter Statute ("MTS"), which provides that ". . . a person may not engage in, or in any manner advertise that they engage in, the selling or issuing of payment instruments or in the activity of a money transmitter, for compensation, without first obtaining a

---

[4]     *See* Los Angeles Times, Unusual Dinner Tab Brings Outcry Over Stigma of 'Dining While Black,' available at http://articles.latimes.com/print/1999/nov/14/news/mn-33487 (Nov. 14, 1999) (last accessed April 5, 2018).

[5]     Miami-Dade County Commission Legislative Item File Number 993136 (available at http://www.miamidade.gov/govaction/matter.asp?matter=993136&file=false&fileAnalysis=false &yearFolder=Y1999 (last accessed April 5, 2018).

license under this part." Fla. Stat. § 560.204(1). The MTS is enforced by the Office of Financial Regulation of the Financial Services Commission. *See* Fla. Stat. §§ 560.105, 560.113, 560.114; *see also* Fla. Stat. § 560.103(7), (25) (definitions).

The *Hucke* court reasoned that because the plaintiff's FDUTPA claim involved "nothing more than a general, indirect link between the [MTS] and consumer protection goals," if could not serve as a predicate for a *per se* FDUTPA violation. 160 F. Supp. 3d at 1328. The *Cross* court, too, declined to find that a violation of the MTS could serve as a predicate for a *per se* FDUTPA claim; but it did *not* dismiss a *per se* FDUTPA violation premised upon a violation of a misleading advertisements law which makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the general public of the state, or any portion thereof, any misleading advertisement." 274 F. Supp. 3d at 1297 (citing Fla. Stat. § 817.41(1)). The court found that "[t]he type of activity proscribed by section 817.41—misleading advertising—is precisely the type of unfair and deceptive trade practice that is prohibited by FDUTPA." *Id.* (collecting cases).

*Hucke* and *Cross*, however, are not representative of the entire debate whether the MTS may serve as a predicate for a *per se* FDUTPA violation. In *Pincus v. Speedpay, Inc.*, the court held that a violation of the MTS may serve as a predicate for *per se* FDUTPA liability. 161 F. Supp. 3d 1150, 1154-55 (S.D. Fla. 2015).[6] The *Pincus* court, relying upon the "extremely broad" FDUTPA, "designed to protect the consuming public from those who engage in deceptive or unfair trade practices," declined to dismiss the plaintiff's FDUTPA claim predicated upon violation of

---

[6]    When presented with the ruling in *Hucke* on a motion for reconsideration, the *Pincus* court noted that the *Hucke* decision had ignored "well settled common law principles in Florida that renders a transaction with an unlicensed person void, even in the absence of a statutory or regulatory provision expressly dictating such a result." *Pincus*, 161 F. Supp. 3d at 1160 (collecting cases). The voidness of the transaction brought the MTS violation within the ambit of a *per se* FDUTPA violation. *Id.*

the MTS and other common law theories. *Id*. at 1157 (citing *Day v. Le–Jo Enterprises, Inc.*, 521 So.2d 175, 178 (Fla. 3d Dist. Ct. App. 1988)).

In any case, *Cross* and *Hucke* do not support dismissal of Plaintiff's *per se* FDUTPA claim because the MTS is entirely distinct from the Florida statute and the Miami-Dade County Ordinance that underlie Plaintiff's *per se* FDUTPA claim. As noted above, the legislative history and the language of Fla. Stat. § 509.214 and the Ordinance make it clear that both measures proscribe "unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices" (Fla. Stat. § 501.203(3)(c)) and may serve as predicates for a *per se* FDUTPA violation. Defendant's arguments to the contrary are unavailing and highly distinguishable;

Moreover, the AC clearly alleges Defendant's violation of both Fla. Stat. § 509.214 and the Ordinance with respect to those restaurants, listed in Count I (AC at ¶ 56), that failed to give notice in *both* required locations: (1) the menu *and* (2) the bill. Plaintiff alleged that "[t]here was no mention on the restaurant's menu, neither on the hard copy provided to Plaintiff in the restaurant nor on the menu posted online on the hotel's website, that an automatic gratuity or service charge of any amount would be added to Plaintiff's check." AC at ¶ 20 (regarding Plaintiff's meal at Key Pantry); ¶¶ 57, 59 (alleging violations of Fla. Stat. § 509.214 and the Ordinance, respectively). Irrespective of the presence of notice on the bill Plaintiff received, Defendant had already violated section 509.214 and the Ordinance by its failure to include the notice on the restaurant's menu. By the time the bill came, the harm that the statute and the ordinance was intended to prevent was already done. This Court should ignore Defendant's irrelevant arguments concerning Plaintiff's traditional FDUTPA allegations vis-à-vis his dining experience at the Cantina Beach and Lightkeepers restaurants (*see* Def. Mem. at 10) as those allegations pertain to Count II.

13

2.     **The Amended Complaint Sufficiently Alleges Plaintiff's
       Traditional FDUTPA Claims**

In addition to the *per se* violations described above, FDUTPA proscribes any unfair or deceptive acts or practices committed in the conduct of any trade or commerce. Fla. Stat. § 501.204(1). "To state a claim under the FDUTPA, a party must plead: (1) a deceptive or unfair practice; (2) causation; and (3) actual damages." *Third Party Verification, Inc. v. Signaturelink, Inc.*, 492 F.Supp.2d 1314, 1326 (M.D. Fla. 2007). The FDUTPA should be applied in a liberal manner. *Motmanco, Inc. v. McDonald's Corp.*, No. 3:04-CV-270-J-99HTS, 2005 WL 1027261, *8–9 (M.D. Fla. Mar. 30, 2005). The FDUTPA is "designed to protect not only the rights of litigants, but also the rights of the consuming public at large." *Davis*, 776 So.2d at 975; *see also Mgmt Computer Controls, Inc. v. Charles Perry Const., Inc.*, 743 So.2d 627, 632 (Fla. 1st Dist. Ct. App. 1999) (FDUTPA "does not arise out of the contract, nor does it exist solely for the benefit of the parties to the contract."); *Samuels v. King Motor Co. of Fort Lauderdale*, 782 So.2d 489, 499 (Fla. 4th Dist. Ct. App. 2001) (FDUTPA is to be liberally construed to protect the consuming public at large).

"[W]hen considering whether a defendant's actions support a finding of unfair methods of competition, unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce, courts have regarded the concept as extremely broad." *MJS Music Publ'n, LLC v. Hal Leonard Corp.*, No. 8:06–cv–488–T30EAJ, 2006 WL 1208015, *2 (M.D. Fla. May 4, 2006) (internal quotation marks omitted). Whether particular conduct constitutes an unfair or deceptive trade practice is a question of fact. *Siever v. BWGaskets, Inc.*, 669 F.Supp.2d 1286, 1292–93 (M.D. Fla. 2009). Courts decline to make fact-intensive determination of whether a defendant's act was deceptive or unfair prior to summary judgment. *Schojan v. Papa John's Int'l, Inc.*, No. 8:14-CV-1218-T-33MAP, 2014 WL 6886041, *6 (M.D. Fla. Dec. 8, 2014).

14

Defendant's assertion of the voluntary payment defense is untenable. Def. Mem. at 13. That doctrine requires the party asserting it to show that the person who made the payment had *full knowledge of the relevant facts, including allegedly wrongful conduct,* which is not the case here. The doctrine is ordinarily treated as an affirmative defense that may not be raised on a motion to dismiss. *Jackson v. U.S. Bank, N.A.,* No. 14–21252, 2014 WL 4179867, *4 (S.D. Fla. Aug. 22, 2014). *See also Schojan*, 34 F. Supp. 3d at 1211 (whether plaintiffs paid the sales tax with full knowledge of the situation is a question of fact that cannot be reconciled on a motion to dismiss); *Massachusetts Mut. Life Ins. Co. v. Switlyk,* No. 8:13–CV–3243–T–33MAP, 2014 WL 3894342, *3 (M.D. Fla. Aug. 8, 2014) ("determination of the doctrine's application to this case to be inappropriate" at the motion to dismiss stage and is better suited to summary judgment); *Cableview Comm'ns of Jacksonville, Inc. v. Time Warner*, No. 3:13–cv–306–J–34JRK, 2014 WL 1268584, *20 (M.D. Fla. March 27, 2014) ("the voluntary payment doctrine does not warrant dismissal at this motion to dismiss stage of the proceedings"); *Taylor, Bean & Whitaker Mort. Corp. v. GMAC Mortg. Corp.*, No. 5:05-cv-260-Oc-GRJ, 2007 WL 1114045, *6 (M.D. Fla. April 12, 2007) ("the voluntary payment doctrine is an affirmative defense that normally should not be considered on a motion to dismiss").

Plaintiff's allegations are more than clearly laid out in his Count II in the AC. AC at ¶ 66 (ten subparts alleging deceptive acts and practices of Defendant) and dismissal of this fact-intensive claim is inappropriate at this stage.

**D.      Count III Alleges A Violation Of Fla. Admin. Code Rule 12A-1.0115 And No Barriers To Plaintiff's Pursuit Of A Refund Pursuant Thereto Exist**

Defendant fails to convincingly argue that Plaintiff may not sue it to recover those sums wrongfully included within sales tax that were associated with non-taxable gratuities paid by diners like Plaintiff and the proposed class in violation of Fla. Admin. Code R. 12A-1.0115. Defendant's

argument that Plaintiff has failed to request the refund he seeks "from the dealer," *i.e.*, from Defendant, robbing this Court of jurisdiction, is meritless. The Court need not enter the administrative morass into which Defendant has invited it.

In the only decision directly on point—which Defendant neglects to bring to the Court's attention—a Florida federal court rejected Defendant's reading of Fla. Stat. § 215.26 and adopted Plaintiff's view concerning the process of seeking a refund for violations of Fla. Admin. Code R. 12A-1.0115. *Schojan*, 34 F. Supp. 3d at 1212. The *Schojan* court, examining the provision upon which Defendant focuses here, acknowledged that plaintiffs aggrieved by a pizza delivery chain's illegal application of tax to delivery fees had to seek a refund *directly from the restaurant chain*, not the Florida Department of Revenue; with no state administrative remedy to pursue, the plaintiffs had none to exhaust. *Id.* (citing Fla. Admin. Code R. 12A-1.014(4)). Plaintiff Fox's situation is remarkably similar. Like the *Schojan* plaintiff, he is not a "'business or individual who ha[ve] made a payment directly to the Florida Department of Revenue.' Therefore, [he does] not fall into the category required by Chapter 12–26 of the Florida Administrative Code to submit the form to obtain any refund claimed for sales tax." *Id.* This dispenses with Defendant's challenge to Plaintiff's Count III.

The *Schojan* court's ruling makes perfect sense, even in light of cases like *Sarnoff v. Fla. Dep't of Highway Safety & Motor Vehicles*, 825 So. 2d 351 (Fla. 2002), *Dep't of Rev. v. Nemeth*, 733 So. 2d 970 (Fla. 1999), and *P.R. Mktg. Grp., Inc. v. GTE Fla., Inc.*, 747 So. 2d 962 (Fla. 2d Dist. Ct. App. 1999) that appear to support Defendant's argument for the simple reason that Fla. Admin. Code R. 12A-1.014 was promulgated in 2003,[7] years after those cases were decided. It

---

[7]     Florida Administrative Code Rule 12A-1.014, available at https://www.flrules.org/gateway/RuleNo.asp?title=SALES%20AND%20USE%20TAX&ID=12A-1.014 (last visited April 9, 2018).

16

establishes that "A taxpayer who has overpaid tax to a dealer, or who has paid tax to a dealer when no tax is due, must secure a refund of the tax from the dealer and not from the Department of Revenue." Fla. Admin. Code R. 12A-1.014(4). This paragraph is not remarkable in its larger context as dealers who refund the sales price of a purchase to a customer must also refund the sales tax the customer paid. *Id*. at 1.014(1). Moreover, the regulation places the onus of seeking refunds of sales tax from the Department of Revenue *on the dealer*. *Id*. at 1.014(3) ("Whenever a dealer credits a customer with tax on returned merchandise or for tax erroneously collected, the dealer must refund such tax to the customer before the dealer's claim to the State for credit or refund will be approved."); *see also id.* at 1.014(5)(a) ("Any dealer entitled to a refund of tax paid to the Department of Revenue may seek a refund by filing an Application for Refund-Sales and Use Tax . . . with the Department within 3 years after the date the tax was paid."). Defendant cannot avoid the responsibility of repaying Plaintiff and members of the proposed class if it has improperly collected sales tax as alleged.

Neither can the Federal Tax Injunction Act ("FTIA") deprive this Court of jurisdiction over Plaintiff's claims. The FTIA states that: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law *where a plain, speedy and efficient remedy may be had in the courts of such State*." 28 U.S.C. § 1341 (emphasis added). The FTIA does not apply here for two reasons. First, Defendant has misrepresented the thrust of the relief sought by Plaintiff regarding those amounts Defendant have improperly collected as tax. Plaintiff is not seeking to "enjoin, suspend or restrain the assessment, levy or collection of any tax under State law" by Defendant. Rather, Plaintiff has alleged that Defendant have *historically* collected too much, which amounts should be refunded as damages to diners like Plaintiff. Second, even if Plaintiff were seeking to "enjoin, suspend or restrain the assessment, levy or collection of any tax

under State law," which Plaintiff denies, Defendant fails to show that a "plain, speedy and efficient remedy may be had" in Florida courts to obtain the refund remedy that Plaintiff seeks. 28 U.S.C. § 1341. Indeed, *Schojan* instructs that the opposite is true. 34 F. Supp. 3d at 1212. For this reason, *Penzer v. Ford Motor Credit Co.* is distinguishable because the Court found that plain, speedy and efficient remedy did exist in state court, namely the parties' agreement to arbitrate their dispute. 319 F. Supp. 2d 1351, 1353-54 (S.D. Fla. 2004). Plaintiff and Defendant herein do not have such an agreement and Defendant has not carried its burden in demonstrating the existence of a state court remedy.

This Court should reject Defendant's arguments concerning the applicability of the FTIA and reject Defendant's arguments concerning the dismissal of Count III.

**E.      Plaintiff Permissibly Alleges Separate Counts for Declaratory and Injunctive Relief**

In its final pair of arguments concerning Counts IV and V, Defendant argues for dismissal of Plaintiff's requests for declaratory and injunctive relief. Def. Mem. at 17-18. However, Counts IV and V simply set forth, for purposes of clear pleading, that Plaintiff seeks equitable relief from Defendant's violations as described in the previous counts in the AC. In the interest of preserving the particulars of the claims alleged in the AC and the remedies that Plaintiff seeks, the Court should decline Defendant's request. *See James D. Hinson Elec. Contracting Co. v. BellSouth Telecommunications, Inc.*, 2008 WL 360803, *4 (M.D. Fla. Feb. 8, 2008) (declining to dismiss count for declaratory and injunctive relief brought pursuant to FDUTPA while acknowledging that "it would have been better not to plead this as a separate count.")

## IV.    CONCLUSION

Based on the foregoing, Defendant's motion to dismiss Plaintiff Fox's Amended

Complaint should be denied.

Dated: April 9, 2018                          Respectfully submitted,

                                             **MICHAEL FOX**

                       By:    */s/ David M. Marco*
                              David M. Marco
                              IL Bar No. 6273315/FL Bar No. 125266
                              **SMITHMARCO, P.C.**
                              55 W. Monroe Street, Suite 1200
                              Chicago, IL 60603
                              T: (312) 546-6539
                              F: (888) 418-1277
                              dmarco@smithmarco.com

                              **FRANCIS & MAILMAN, P.C.**
                              James A. Francis (*pro hac vice*)
                              John Soumilas (*pro hac vice*)
                              David A. Searles (*pro hac vice*)
                              Trial Counsel
                              Land Title Building, Suite 1902
                              100 South Broad Street
                              Philadelphia, PA 19110
                              T: (215) 735-8600
                              F: (215) 940-8000
                              jfrancis@consumerlawfirm.com
                              jsoumilas@consumerlawfirm.com
                              dsearles@consumerlawfirm.com

                              **LEWIS SAUL & ASSOCIATES, P.C.**
                              Lewis J. Saul (*pro hac vice*)
                              Edward A. Coleman (*pro hac vice*)
                              29 Howard Street, 3rd Floor
                              New York, NY 10013
                              T: (212) 376-8450
                              F: (212) 376-8447
                              lsaul@lewissaul.com
                              ecoleman@lewissaul.com

                              *Attorneys for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 9, 2018, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified below via CM/ECF.

Richard C. Hutchison (FBN 709360)
Scott D. Ponce (FBN 0169528)
Rodolfo Sorondo, Jr. (FBN 287301)
HOLLAND & KNIGHT LLP
701 Brickell Avenue, Suite 3300
Miami, Florida 33131
Tel: (305) 374-8500
Fax: (305) 789-7799
rick.hutchison@hklaw.com
sponce@hklaw.com
rodolfo.sorondo@hklaw.com

*/s/ David M. Marco*
David M. Marco