**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 1:17-CV-24284-COOKE/O'SULLIVAN**

MICHAEL FOX, on behalf of himself
and all others similarly situated,

      Plaintiff,

v.

THE RITZ-CARLTON HOTEL
COMPANY, LLC,

      Defendant.

<u>**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**</u>

## **TABLE OF CONTENTS**

I.      INTRODUCTION ......................................................................................................... 1

II.     STATEMENT OF FACTS ........................................................................................... 3

     A.     Plaintiff Filed Two FDUTPA Claims and Moved for Class Certification
           Based on Several Demonstrably False Allegations, Including that He Was
           Provided No Notice of the Automatic Suggested Gratuities. ........................ 3

     B.     Ritz-Carlton Provided Plaintiff with Written Notice of the Automatic
           Suggested Gratuities on All Three Restaurant Menus. ................................. 4

     C.     Ritz-Carlton Also Provided Plaintiff with Written Notice of the Automatic
           Suggested Gratuities on His Restaurant Bills and Receipts. ......................... 6

     D.     Ritz-Carlton Provided Plaintiff with Multiple Opportunities to Remove or
           Reduce the Automatic Suggested Gratuities, which He Declined. ................ 6

III.    THE LEGAL STANDARD ......................................................................................... 7

IV.     ARGUMENT ............................................................................................................... 8

     A.     Ritz-Carlton Is Entitled to Summary Judgment Under FDUTPA's Safe
           Harbor. .......................................................................................................... 8

     B.     Plaintiff's FDUTPA Claims Fail on the Merits. ........................................... 9

           1.     Ritz-Carlton Is Entitled to Summary Judgment on Plaintiff's Per Se
                 Claim Because No Valid Predicates Support It. ............................... 10

                 a.     Fla. Stat. § 509.214 and the Ordinance Are Not Valid
                     FDUTPA Predicates Because They Do Not "Proscribe" Any
                     Conduct. ............................................................................ 10

                 b.     The Ordinance Is Not Valid FDUTPA Predicate for the
                     Independent Reason That Florida Law Preempts It. ........... 12

            2.     Plaintiff's Traditional FDUTPA Claim Fails. .................................. 13

           3.     Plaintiff Cannot Prove He Suffered Any Loss "As a Result of" Ritz-
               Carlton's Allegedly Deceptive Practices. ......................................... 15

     C.     Plaintiff's Claims are Barred by the Voluntary Payment Doctrine. ............. 17

     D.     Plaintiff Lacks Article III Standing. ............................................................ 18

     E.     Plaintiff's Counsel Tacitly Conceded this Case Lacks Merit by Dismissing
           Three Copy-Cat Lawsuits Asserting the Same FDUTPA Claims. ............... 19

V.      CONCLUSION ......................................................................................................... 20

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Berenguer v. Warner-Lambert Co.*,
  2003 WL 24299241 (Fla. Cir. Ct. July 31, 2003)............................................................. 9

*Brink v. Raymond James & Assocs., Inc.*,
  341 F. Supp. 3d 1314 (S.D. Fla. 2018) ................................................................... 17, 18

*Calvo v. B & R Supermarket, Inc.*,
  63 F. Supp. 3d 1369 (S.D. Fla. 2014) ............................................................................ 8

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)......................................................................................................... 7

*Charbonnet v. Omni*,
  2020 WL 7385828 (S.D. Cal. Dec. 16, 2020)................................................................14

*City of Miami Beach v. Fla. Retail Fed'n, Inc.*,
  233 So. 3d 1236 (Fla. 3rd DCA 2017) ..........................................................................12

*City of Miami v. AIRBNB, Inc.*,
  260 So. 3d 478 (Fla. Dist. Ct. App. 2018)....................................................................12

*Classy Cycles, Inc. v. Bay Cnty.*,
  201 So. 3d 779 (Fla. Dist. Ct. App. 2016)....................................................................12

*CWELT-2008 Series 1045 LLC v. PHH Corp.*,
  2020 WL 2744191 (S.D. Fla. May 27, 2020) ...............................................................17

*De Lara v. Edition Management LLC*,
  2019 WL 11321026 (S.D. Fla. Feb. 5, 2019) .........................................................2, 11

*Deere Constr., LLC v. Cemex Constr. Materials Fla., LLC*,
  2016 WL 2770537 (S.D. Fla. May 12, 2016) ...............................................................14

*Double AA International Investment Group, Inc. v. Swire Pacific Holdings, Inc.*,
  674 F. Supp. 2d 1344 (S.D. Fla. 2009) .........................................................................11

*Easter v. City of Orlando*,
  249 So. 2d 723 (Fla. 5th DCA 2018) ............................................................................17

*Eirman v. Olde Discount Corp.*,
  697 So. 2d 865 (Fla. 4th DCA 1997) ............................................................................. 8

*Ezcurra v. Monsanto Co.*,
    2020 WL 5491428 (S.D. Fla. Aug. 7, 2020)..............................................................8, 9

*Germak v. Hilton*,
    No. 20-CV-24511 (S.D. Fla.) ...........................................................................................19

*Germak v. Hyatt*,
    No. 20-CV-24341 (S.D. Fla.) ...........................................................................................19

*Germak v. Marriott*,
    No. 20-CV-24533 (S.D. Fla.) ...........................................................................................19

*Hall v. Humana Hosp. Daytona Beach*,
    686 So. 2d 653 (Fla. Dist. Ct. App. 1996).......................................................................18

*Harris v. Las Vegas Sands*,
    2013 WL 5291142 (C.D. Cal. Aug. 16, 2013)..................................................................15

*Hassen v. Mediaone of Greater Fla., Inc.*,
    751 So. 2d 1289 (Fla. Dist. Ct. App. 2000) .....................................................................18

*Hodge v. Orlando Utils. Comm'n*,
    2011 WL 250400 (M.D. Fla. Jan. 26, 2011) ..................................................................... 8

*Holt v. Noble House Hotels & Resort, Ltd.*,
    370 F. Supp. 3d 1158 (S.D. Cal. 2019) ............................................................................15

*Horne v. Potter*,
    392 F. App'x 800 (11th Cir. 2010)...................................................................................19

*Hucke v. Kubra Data Transfer Corp.*,
    160 F. Supp. 3d 1320 (S.D. Fla. 2015) .............................................................. 9, 10, 13

*Kissner v. McDonald's Corp.*,
    2018 WL 5832979 (S.D. Fla. Nov. 2, 2018) ....................................................................18

*Kuenzig v. Hormel Foods Corp.*,
    505 F. App'x 937 (11th Cir. 2013)................................................................................... 9

*Lake Hamilton Lakeshore Owners Ass'n, Inc. v. Neidlinger*,
    182 So. 3d 738 (Fla Dist. Ct. App. 2015)........................................................................12

*Lombardo v. Johnson & Johnson Consumer Cos.*,
    124 F. Supp. 3d 1283 (S.D. Fla. 2015) ............................................................................15

*Maor v. Dollar Thrifty Auto. Grp., Inc.*,
    2018 WL 4698512 (S.D. Fla. Sept. 30, 2018)..................................................................17

*Marrero v. State*,
    71 So. 3d 881 (Fla. 2011) ...................................................................................10

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ........................................................................................ 8

*Pace v. Capobianco*,
    283 F.3d 1275 (11th Cir. 2002) .......................................................................20

*Parr v. Maesbury Homes, Inc.*,
    2009 WL 5171770 (M.D. Fla. Dec. 22, 2009) ............................................... 9

*Plain Bay Sales, LLC v. Gallaher*,
    2019 WL 3429137 (S.D. Fla. May 3, 2019) .................................................. 9

*Sarasota Alliance For Fair Elections, Inc. v. Browning*,
    28 So.3d 880 (Fla. 2010) .................................................................................12

*State, Office of the Att'y Gen. v. Com. Com. Leasing, LLC*,
    946 So. 2d 1253 (Fla. 1st DCA 2007) ........................................................... 8

*Stewart Agency, Inc. v. Arrigo Enters., Inc.*,
    266 So. 3d 207 (Fla. Dist. Ct. App. 2019) ....................................... 13, 14, 16

*Torjagbo v. United States*,
    285 F. App'x 615 (11th Cir. 2008) ................................................................. 8

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) .............................................................................. 10, 18

*Washington v. LaSalle Bank Nat. Ass'n*,
    817 F. Supp. 2d 1345 (S.D. Fla. 2011) .........................................................14

*Zlotnick v. Premier Sales*,
    480 F.3d 1281 (11th Cir. 2007) .............................................................. 13, 14

**Statutes**

Fla. Stat. § 501.203(3)(c) ........................................................................... 9, 10, 11

Fla. Stat. § 501.211(2) ......................................................................................15

Fla. Stat. § 501.212(1) ...................................................................................... 8

Fla. Stat. § 509.032(7)(a) ............................................................................. 2, 12

Fla. Stat. § 509.032(7)(b) ..................................................................................12

Fla. Stat. § 509.214 ................................................................................................*passim*

Fla. Stat. § 718.202 ....................................................................................................11

Miami Dade Ord. Sec. 8A-110.1(3) ....................................................................2, 3, 10, 11

**Other Authorities**

Comment, *Summary Judgment*, 25 WASH. L. REV. 71, 74 (1950) ......................................... 8

WRIGHT & MILLER, FED. PRAC. & PROC. CIV. § 2712 n. 4 (4th ed.) ................................... 8

## I.    INTRODUCTION

The undisputed evidence conclusively demonstrates that Plaintiff's Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") claims fail as a matter of law for several independent reasons and must be dismissed.   Although Plaintiff claimed in his Complaint and Class Certification Motion that he received no or inadequate notice of the automatic suggested gratuities included on the bills for three meals he had at The Ritz-Carlton, Key Biscayne, these allegations were exposed as false during Plaintiff's deposition. There, he admitted that: (1) he received notice on his restaurant and hotel bills; and (2) he could not recall whether he looked at the restaurant menus, each of which disclosed the automatic suggested gratuities.   Despite his dispositive admissions, Plaintiff persists in attempting to recover from Ritz-Carlton the automatic suggested gratuities he paid during his stay, even though 100% of those gratuities were paid to hotel staff, not Ritz-Carlton itself.  The total amount he claims he is owed is $41.85.

The undisputed facts show that Plaintiff's claims are frivolous, and Ritz-Carlton is entitled to judgment as a matter of law for at least four reasons.  First, the FDUTPA safe harbor bars Plaintiff's claims because Ritz-Carlton disclosed the automatic suggested gratuity on Plaintiff's menus and bills as "required or specifically permitted by federal or state law."   In fact, the undisputed evidence confirms that Plaintiff was provided written, unambiguous notice of the automatic suggested gratuities at least 12 times during his visit to the Ritz-Carlton as follows:

- On each of the menus Ritz-Carlton presented to him at the three outlets where he dined (one of which he dined at twice);
- On each bill Ritz-Carlton presented to him at those outlets, each of which he signed, charging the meal to his room; and
- On each receipt Ritz-Carlton provided to him at those outlets.

As Ritz-Carlton provided Plaintiff with notice at each outlet where he dined—exactly as Florida Statute § 509.214 requires—it is entitled to summary judgment on all Plaintiff's claims on this ground alone.

Second, Ritz-Carlton is also entitled to judgment as a matter of law on Plaintiff's FDUTPA claims because the undisputed evidence confirms that he cannot prove a single element of those claims: (1) a deceptive act or unfair practice, (2) causation, or (3) actual

damages.

As to the first element, Plaintiff can show neither the violation of a "per se" FDUTPA predicate (which suffices to establish the first element), nor that Ritz-Carlton's automatic-gratuity practices are likely to mislead a reasonable customer (which is required to establish the first element in the absence of a per se violation). Plaintiff's asserted "per se" FDUTPA claim based on violations of Fla. Stat. § 509.214 and Miami Dade Ordinance Sec. 8A-110.1(3) ("the Ordinance") fails because those provisions cannot serve as predicates for a FDUTPA claim as a matter of law, including because they do not "prohibit" any conduct.[1] Similarly, the Ordinance cannot be a predicate for the additional, independent reason that it is explicitly preempted by Section 509.032(7)(a) of the Florida Statutes. In any event, the undisputed facts show that Ritz-Carlton's practices with respect to automatic suggested gratuities are not at all deceptive; they are fair and transparent, which Plaintiff's own testimony about his experiences at the hotel demonstrates.

And even assuming Plaintiff could put forth any evidence of a deceptive act or practice, he undisputedly cannot show that he suffered any actual damages caused by any such practice (or by a per se violation of any predicate statute). Indeed, Plaintiff's testimony establishes that he received unambiguous, express written notice that automatic suggested charges had been applied to his restaurant bills. This written notice informed him that the automatic suggested gratuities were not mandatory, but could be lowered or raised as he wished, and Plaintiff admits he knew about the charges before he actually paid for any of his meals upon checking out of the hotel. Moreover, Plaintiff admittedly does not look for notice of automatic charges on his bills, had no specific recollection about any of the content of any of the menus Ritz-Carlton provided him, and could not even remember whether he looked at a menu *at all* at two of the three restaurants he dined at. Thus, any purported damage Plaintiff claims to have suffered resulting from the payment of those charges (there is none) was not caused by the Ritz-Carlton's actions, but by Plaintiff's intentional decision to ignore the language on the menus and pay the charges with full knowledge they had been imposed.

---

[1] *De Lara v. Edition Management LLC*, No. 18-22630, 2019 WL 11321026, at *6–7 (S.D. Fla. Feb. 5, 2019) (holding Fla. Stat. § 509.214 and Miami Dade Ordinance Sec. 8A-110.1(3) are not valid FDUTPA predicates because neither *proscribes* any unfair or deceptive trade practice, as required by Florida law).

Third, and relatedly, Plaintiff's claims are barred by Florida's voluntary payment doctrine, which precludes Plaintiff's recovery of sums he paid voluntarily with full knowledge of the surrounding circumstances.  Again, Plaintiff's own testimony confirms that he *knew* the automatic charges had been applied to his bills before his final meal and, more importantly, when he checked out of the hotel and was asked to pay them.  He cannot now seek to recover those payments on the ground that they were not disclosed or not adequately disclosed, particularly given he had been notified the charges were merely suggested and could thus be lowered at his request.  Permitting recovery in such circumstances would be nonsensical.

Fourth, and in any case, Plaintiff lacks Article III standing.  Just as he cannot show that he suffered any actual damages as result of Ritz-Carlton's supposedly deceptive practices, he cannot show that he suffered a concrete and particularized injury that is fairly traceable to any of Ritz-Carlton's practices.  This also entitles Ritz-Carlton to summary judgment, under recent Supreme Court precedent.

Finally, in addition to the undisputed evidence exposing Plaintiff's claims as frivolous, Plaintiff's counsel's actions in other cases underscore this conclusion. Specifically, Plaintiff's counsel tacitly acknowledged the frivolousness of Plaintiff's claims by dismissing three copy-cat lawsuits asserting identical FDUTPA claims against other hotel chains (Marriott, Hilton, and Hyatt) in a transparent attempt to avoid adverse rulings that would be damaging to Plaintiff's prospects in this case.

For all these reasons, Ritz-Carlton is entitled to judgment as a matter of law, and this Court should grant the motion for summary judgment.

## II.  STATEMENT OF FACTS

**A.**   **Plaintiff Filed Two FDUTPA Claims and Moved for Class Certification Based on Several Demonstrably False Allegations, Including that He Was Provided No Notice of the Automatic Suggested Gratuities.**

In the First Amended Complaint ("FAC"), Plaintiff asserts two FDUTPA claims, alleging Ritz-Carlton violated two provisions that purport to require notice of automatic gratuities: Fla. Stat. § 509.214 and Miami Dade Ordinance Sec. 8A-110.1(3).  Plaintiff contends these laws are predicates for a "per se" FDUTPA claim.  ECF 17 ("FAC") ¶¶ 52– 73.  They provide in relevant part as follows:

**Fla. Stat. § 509.214**: Every public food service establishment which includes an automatic gratuity or service charge in the price of the meal shall include on the food menu and on the face of the bill provided to the customer notice that an automatic gratuity is included.

**Miami Dade Ord. Sec. 8A-110.1(3)**: *Posting of Tipping Policies.* Each business shall provide notice of (A) whether the business includes an automatic tip in its bill, and if so, the amount or method of calculation of the automatic tip; . . . This notice shall be posted conspicuously, either on a sign or in a statement on the business's menu or price listing in the same form and manner as the other items on the menu or price listing, and written in a legible manner in English, Spanish and Creole.

To support these claims, the Plaintiff alleged in the FAC that: (1) the menus at two Ritz-Carlton Key Biscayne restaurants had inadequate notices of the automatic gratuities and one menu had no notice; (2) the checks at all three restaurants included mandatory automatic gratuity charges; and (3) Plaintiff "was not aware" he would be charged an automatic gratuity. FAC ¶¶ 18–20, 25–27, 32–35, 55–56, 66.

After litigating this putative class action lawsuit for four years, Plaintiff's counsel filed a motion for class certification doubling down on these allegations with no evidence from Plaintiff himself. *Id.* ¶ 42; ECF 77 at 4. Instead, one of Plaintiff's attorneys (Mr. Francis) cited his own declaration (but failed to file or serve it), purporting to describe Plaintiff's experiences at the Ritz-Carlton, consistent with Plaintiff's allegations in the FAC.

However, Plaintiff's own deposition testimony, along with other undisputed evidence, exposed these allegations as manufactured and patently false. In reality, and as discussed below: (1) Plaintiff received written notice of the automatic suggested gratuity at least 12 times (on the menus, checks, and receipts); (2) he knew about the automatic suggested gratuity charges before meeting with his attorney and before paying his hotel bill; and (3) he nevertheless chose to pay his bill without asking the charges be lowered or removed, which the notices expressly informed him he was permitted to do.

**B.     Ritz-Carlton Provided Plaintiff with Written Notice of the Automatic Suggested Gratuities on All Three Restaurant Menus.**

Plaintiff stayed at the Ritz-Carlton Key Biscayne in Miami, Florida, (the "Hotel") from April 4 through April 7, 2017. Declaration of Ryan Watstein ("Watstein Decl."), Ex. A ("Fox Dep.") at 24:6–10. While there, he dined four times at restaurants in the Hotel. On every occasion, and contrary to the false allegations on which he premised his FAC and

4

Certification Motion, he received notice on the menus "that an automatic gratuity is included"—exactly as the relevant Florida statute requires (which preempts other laws)—as follows:

---

*Consumer Advisory - consuming raw or undercooked meats, poultry, seafood, shellfish, or eggs may increase your risk of foodborne illness.*
*A suggested 18% service charge will be added to your check. Please feel free to raise, lower, or remove this service charge at your discretion. Prices exclude 9% sales tax.*

Figure 1 – Lightkeepers menu. Fox Dep., Ex. 3.



GF = Gluten Free
Consuming Raw or Undercooked Meats, Poultry, Seafood, Shellfish, or Eggs may increase your Risk of Foodborne Illnesses.
A suggested 18% gratuity will be added to your check for your convenience.
Prices exclude 9% sales tax.

Figure 2 – Cantina Beach menu.  Fox Dep., Ex. 6.

A 9% tax and an 18% gratuity will be added to your check.

Figure 3 – Key Pantry menu.  ECF 75-16 ("Tamajon Decl."), Ex. C.

As shown above, the menu for two of the meals (at Lightkeepers[2]) explicitly notified Plaintiff that "[a] suggested 18% gratuity will be added to your check.  Please feel free to raise, lower, or remove this gratuity at your discretion" (despite his counsel's false assertion that the charge was "mandatory").  FAC ¶ 32; Fox Dep. 77:2–21, Ex. 3; ECF 75-16 ("Tamajon Decl.") ¶¶ 14–15, Ex. F.  And as Plaintiff conceded at deposition, this notice was not ambiguous.  Fox Dep. 77:14–21.  Similarly, the menu for the third meal (at Cantina Beach) notified Plaintiff that "[a] suggested 18% gratuity will be added to your check for your convenience."  FAC ¶ 25; Fox Dep., Ex. 6; Tamajon Decl. ¶ 16, Ex. G.  As to the fourth meal (at Key Pantry), the menu used during Plaintiff's visit, which Plaintiff cannot recall (and for which his only "evidence" is a menu his attorney downloaded "online shortly after Plaintiff's stay" (ECF 67 at 3 n. 5)), explicitly stated that "an 18% gratuity will be added to your check."  Tamajon Decl. ¶¶ 5, 9–10; Fox Dep. 46:3–15, 105:8–23.  Plaintiff

---

[2]      Plaintiff dined at Lightkeepers twice and was provided notice on the menu both times.  Fox Dep. 95:20–96:17, Ex. 2.

couldn't remember whether he even looked at menus for three of the four meals (at Lightkeepers and Key Pantry). *See, e.g.*, Fox Dep. 97:3–17 (discussing Plaintiff could not be sure he looked at a Lightkeepers menu because he ordered the complimentary buffet both times), 48:23–50:11 (same for Key Pantry because he ordered only two bottles of water and two candy bars, neither of which were listed on the menu).

### C.   Ritz-Carlton Also Provided Plaintiff with Written Notice of the Automatic Suggested Gratuities on His Restaurant Bills and Receipts.

Not only did Plaintiff receive express written notice of the suggested 18% automatic gratuity on all menus, he also received notice on: (1) the bills presented to him before agreeing to pay; and (2) the receipts he signed.  Fox Dep. 53:22–24, 54:20–24, 111:7–16. These documents again notified Plaintiff in capital letters of the "18%" "ADDED GRAT" or "SERVICE CHARGE," and contained a separate line for "ADDITIONAL GRATUITY."  Tamajon Decl. ¶ 20, Ex. B.  For example, Plaintiff signed the following three bills:



*Id.* at ¶¶ 9, 12, Ex. B.  Although Plaintiff did not read the notices on his bills, he declined to leave an additional gratuity on one bill and elected to tip more on two others, as shown above.  *Id.* at ¶¶ 9, 12, Ex. B; Fox Dep. 56:10–13.

### D.   Ritz-Carlton Provided Plaintiff with Multiple Opportunities to Remove or Reduce the Automatic Suggested Gratuities, which He Declined.

Ritz-Carlton also provided Plaintiff multiple opportunities to remove or reduce the automatic suggested gratuities during his restaurant visits.   Specifically, Ritz-Carlton expressly and repeatedly notified Plaintiff that the 18% automatic gratuity was "suggested." FAC ¶¶ 25, 32; Fox Dep. 77:2–21, Exs. 3, 6; Tamajon Decl. ¶¶ 14–16, Exs. F–G.  Ritz-

Carlton further expressly notified him that he was free "to raise, lower, or remove" the gratuities at his "discretion." Fox Dep. 77:14–21. Plaintiff did not ask to remove or reduce the automatic suggested gratuities when he charged the meals to his room. *Id.* at 36:18–25.

After receiving his restaurant bills, Ritz-Carlton provided Plaintiff with another opportunity to remove or reduce the automatic suggested gratuities when he checked out of the hotel. *Id.* at 36:4–37:15, 91:13–93:25. Specifically, because Plaintiff charged all his meals to his room, he did not pay for them until he checked out. *Id.* By then, Plaintiff admittedly knew about the suggested gratuities. *Id.* After consulting with his counsel—the same attorney representing him in this case—over dinner, however, he decided not to ask to remove or reduce them at checkout. *Id.* at 36:4–37:15, 91:13–93:25, 177:7–17. Instead, he paid his hotel bill voluntarily, with full knowledge that the gratuities had been included, and despite being repeatedly advised in writing that they were suggested and could be removed or lowered. *Id.*; Tamajon Decl. ¶ 13, Ex. E. Further, because his Lightkeepers meals were comped by the hotel, he was never actually charged an automatic suggested gratuity for his two meals at that restaurant. *See* Tamajon Decl., Ex B; Fox Dep. 75:4–25, 90:12–19.

In sum, Plaintiff received written notice of the automatic suggested gratuity at least 12 times during his stay at the Ritz-Carlton Key Biscayne, and he voluntarily paid the charges despite multiple opportunities to remove them and with full knowledge that they had been applied.

## III.   THE LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is also warranted where the plaintiff, who carries the ultimate burden of proving his action, "fails to make a showing sufficient to establish the existence of an element essential to [his] case." *Id.* at 322–23. Once the moving party identifies those portions of the record that show the absence of any genuine issue of material fact, the burden shifts to the non-movant to show specific facts (*i.e.*, more than a "scintilla of evidence") demonstrating a genuine issue for trial. *Id.* at 323. If he cannot do so, the moving party "is entitled to a judgment as a matter of law." *Id.* at 322–23.

In meeting this burden, the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Thus, a plaintiff's inability to remember facts critical to his claims does not create a genuine dispute precluding summary judgment. *Torjagbo v. United States*, 285 F. App'x 615, 619 (11th Cir. 2008); *Hodge v. Orlando Utils. Comm'n*, No. 6:09-CV-1059-ORL-19, 2011 WL 250400, at *13 (M.D. Fla. Jan. 26, 2011). Nor can a plaintiff's vague and self-serving attempts to later contradict his deposition testimony. *Calvo v. B & R Supermarket, Inc.*, 63 F. Supp. 3d 1369, 1371 (S.D. Fla. 2014) (collecting cases). "The great value of summary judgment lies in the fact that it puts an end to useless and expensive litigation where there is no genuine issue of material fact." Wright & Miller, Fed. Prac. & Proc. Civ. § 2712 n. 4 (4th ed.) (quoting Comment, *Summary Judgment*, 25 Wash. L. Rev. 71, 74 (1950)).

## IV.  ARGUMENT

### A.  Ritz-Carlton Is Entitled to Summary Judgment Under FDUTPA's Safe Harbor.

FDUTPA contains a safe harbor precluding claims asserting liability for "[a]n act or practice required or specifically permitted by federal or state law." Fla. Stat. § 501.212(1). As courts in this district have recognized, the safe harbor "bars claims relating to alleged deceptive omissions" in disclosures that are permitted or required by law. *Ezcurra v. Monsanto Co.*, No. 9:20-CV-80524, 2020 WL 5491428, at *3 (S.D. Fla. Aug. 7, 2020) (citing *Eirman v. Olde Discount Corp.*, 697 So. 2d 865 (Fla. 4th DCA 1997)). "The purpose of the statute is obvious: it would be unacceptably inconsistent for one statute to penalize conduct mandated [or specifically permitted] elsewhere." *Ezcurra*, 2020 WL 5491428, at *4 (quoting *State, Office of the Att'y Gen. v. Com. Com. Leasing, LLC*, 946 So. 2d 1253, 1258 (Fla. 1st DCA 2007)).

Here, it is undisputed that Ritz-Carlton disclosed the automatic suggested gratuity on Plaintiff's menus and bills as "required or specifically permitted by federal or state law," such that the safe harbor bars his FDUTPA claims. Fla. Stat. § 501.212(1). Specifically, the hotels "included on the food menu and on the face of the bill provided to the customer notice that an automatic gratuity is included"—exactly as Fla. Stat. § 509.214 requires. Fox Dep. 53:22–24, 54:20–24, 77:2–21, 105:8–23, 111:7–16; FAC ¶¶ 25, 32; Tamajon Decl. ¶¶ 5, 9–18, Exs. B–C, F–G.

Thus, as a threshold matter, FDUTPA's safe harbor requires summary judgment in Ritz-Carlton's favor on both Plaintiff's per se and traditional FDUTPA claims. *Berenguer v. Warner-Lambert Co.*, No. 02-05242, 2003 WL 24299241, at *3 (Fla. Cir. Ct. July 31, 2003) (granting summary judgment on FDUTPA claim under safe harbor where plaintiff alleged deceptive advertisements because challenged statement was "'required or specifically permitted' by Florida law"); *see also Ezcurra*, 2020 WL 5491428, at *4 (granting motion to dismiss FDUTPA under safe harbor where plaintiff alleged deceptive omission on labeling because the labeling was "specifically permitted by federal and state law"); *Kuenzig v. Hormel Foods Corp.*, 505 F. App'x 937, 939 (11th Cir. 2013) (affirming dismissal of FDUTPA claims with prejudice "pursuant to the FDUTPA's safe harbor provision" because allegedly deceptive food labels "complied with federal regulations").

## B. Plaintiff's FDUTPA Claims Fail on the Merits.

Even if the Court were to examine the substantive merits of Plaintiff's FDUTPA claims despite the safe harbor, Plaintiff cannot prove any of the three elements of those claims. To prove a FDUTPA claim, a plaintiff must show "(1) a deceptive act or unfair practice, (2) causation, and (3) actual damages." *Hucke v. Kubra Data Transfer Corp.*, 160 F. Supp. 3d 1320, 1328 (S.D. Fla. 2015) (quotation omitted). For a so-called "per se" claim, a violation of "[a]ny law, statute, rule, regulation, or ordinance" may serve as a predicate to establish the first element of a FDUTPA claim if "the text of a statute [] expressly state[s] that it is to serve as a FDUTPA predicate [or the] statute proscribes unfair and deceptive trade practices and therefore operates as an implied FDUTPA predicate." *Id.* (quoting *Parr v. Maesbury Homes, Inc.*, No. 6:09-cv-1268-Orl-19GJK, 2009 WL 5171770, at *7 (M.D. Fla. Dec. 22, 2009)); *see also* Fla. Stat. § 501.203(3)(c); *Plain Bay Sales, LLC v. Gallaher*, No. 18-80581, 2019 WL 3429137, at *4 (S.D. Fla. May 3, 2019) (valid FDUTPA predicate must "proscribe[] unconscionable, deceptive, or unfair acts or practices").[3]

Plaintiff can show neither that Ritz-Carlton engaged in any "deceptive act or unfair practice" nor that he suffered any actual damages as a result of the allegedly deceptive

---

[3]    Even where a plaintiff can satisfy the first element of FDUTPA by showing the violation of a proper predicate, he must still establish causation and damages as separate elements. *Plain Bay Sales*, 2019 WL 3429137, at *4. As discussed below, Plaintiff cannot do so here.

practice he identifies.

> **1.** **Ritz-Carlton Is Entitled to Summary Judgment on Plaintiff's Per Se Claim Because No Valid Predicates Support It.**

Plaintiff purports to assert a per se FDUTPA claim predicated upon Fla. Stat. § 509.214 and Miami Dade Ordinance Sec. 8A-110.1(3), Ord. No. 99-163. FAC ¶¶ 52–63. This claim fails because neither Fla. Stat. § 509.214 nor Miami Dade Ordinance Sec. 8A-110.1, Ord. No. 99-163 are valid FDUTPA predicates.[4]

> **a.** **Fla. Stat. § 509.214 and the Ordinance Are Not Valid FDUTPA Predicates Because They Do Not "Proscribe" Any Conduct.**

Neither of Plaintiff's two alleged predicates, Fla. Stat. § 509.214 or the Ordinance, "expressly state[s]" that it will "serve as a FDUTPA predicate." *Hucke*, 160 F. Supp. 3d at 1328 (quotation omitted). Thus, these laws can only support a FDUTPA claim as "implied" predicates if they "proscribe[] unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices." Fla. Stat. § 501.203(3)(c); *Hucke*, 160 F. Supp. 3d at 1328.

But neither Fla. Stat. § 509.214 nor Miami Dade Ordinance Sec. 8A-110.1(3) "proscribe" *any* "acts or practices," dooming Plaintiff's claims. Fla. Stat. § 501.203(3)(c). Instead, they affirmatively require restaurants to "*include* on the food menu and on the face of the bill provided to the customer *notice* that an automatic gratuity is included," Fla. Stat. § 509.214 (emphasis added), and to "*provide notice*" of "whether the business includes an automatic tip in its bill," Miami Dade Ordinance Sec. 8A-110.1(3) (emphasis added). Because these laws require restaurants to provide notice and do not "proscribe" any "acts or practices," they cannot be implied FDUTPA predicates under the plain meaning of Fla. Stat. § 501.203(3)(c). *See Marrero v. State*, 71 So. 3d 881, 886–87 (Fla. 2011) (plain meaning controls under Florida law).

Another court in this district recently held that Fla. Stat. § 509.214 and Miami Dade

---

[4]     Plaintiff also lacks Article III standing to assert a per se FDUTPA claim predicated on the Miami-Dade Ordinance on the ground that Ritz-Carlton failed to provide notice in English, Spanish and Creole. Plaintiff speaks English, not Spanish or Creole, and he therefore suffered no injury traceable to Ritz-Carlton's alleged failure to provide written notice of an automatic suggested gratuity in those languages. Fox Dep. 139:16–19; *see TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).

Ordinance Sec. 8A-110.1(3) are not valid FDUTPA predicates for precisely this reason, and the Court should reach the same conclusion here. Specifically, in *De Lara v. Edition Management LLC*, the plaintiff—represented by the same counsel as Plaintiff here—brought a class action complaint against a hotel company alleging that it failed to provide notice of "an automatic service charge or gratuity." No. 18-22630, 2019 WL 11321026, at *1 (S.D. Fla. Feb. 5, 2019) (Martinez, J.). As here, the plaintiff asserted "Florida Statute 509.214 and Miami-Dade County Ordinance 8A-110.1" as predicates for a FDUTPA claim. *Id.* The *De Lara* court held that these laws were not express predicates and "could not serve as an implied FDUTPA predicate," either. *Id.* at *7. "[T]here is no activity proscribed by section 509.214," the court explained, because it merely requires restaurants to "include" notice of an automatic gratuity. *Id.* at *6. The ordinance likewise "fails to proscribe an unfair or deceptive trade practice." *Id.* at *7. Accordingly, the court dismissed the plaintiff's per se FDUTPA claims.

Similarly, in *Double AA International Investment Group, Inc. v. Swire Pacific Holdings, Inc.*, the plaintiff sued a condominium developer asserting various claims, including a per se FDUTPA violation. 674 F. Supp. 2d 1344, 1357–59 (S.D. Fla. 2009) (Altonaga, J.). The predicate for the FDUTPA claim was a purported violation of Fla. Stat. § 718.202, which required the developer to establish "two separate escrow accounts" to hold the deposit plaintiff paid. *Id.* at 1349; *see also* Fla. Stat. § 718.202(1)–(2). The *Double AA* court held that Fla. Stat. § 718.202's requirement to take the affirmative step of "establish[ing] two separate escrow accounts" does not "proscribe unfair or deceptive trade practices" and thus "does not fall within the ambit of the FDUTPA." *Double AA*, 674 F. Supp. 2d at 1358. Likewise, here, Fla. Stat. § 509.214 and Miami Dade Ordinance Sec. 8A-110.1(3)'s notice requirements do not "proscribe unfair or deceptive trade practices," and they are not valid FDUTPA predicates. *Id.*[5]

---

[5] There is no predicate to support the per se FDUTPA claim for additional reasons, as well. Neither law regulates "unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices." Fla. Stat. § 501.203(3)(c). The ordinance, for example, is an anti-discrimination law, as the full text reveals: "IT IS ILLEGAL IN MIAMI-DADE COUNTY FOR ANY BUSINESS TO CONDONE IN ANY MANNER TIPPING BASED ON THE RACE, COLOR, RELIGION . . . ." Miami Dade Ordinance Sec. 8A-110.1(3).

### b.     The Ordinance Is Not Valid FDUTPA Predicate for the Independent Reason That Florida Law Preempts It.

"A local government enactment may be inconsistent with state law if . . . the Legislature has preempted a particular subject area." *Sarasota Alliance For Fair Elections, Inc. v. Browning*, 28 So.3d 880, 886 (Fla. 2010) (quotation marks omitted).  Here, the Florida legislature expressly preempted the Ordinance's subject area: "The regulation of . . . public food service establishments . . . is preempted to the state."  Fla. Stat. § 509.032(7)(a).  The *only* authority Florida law does not preempt in this area is "the authority *of a local government . . . to conduct inspections* of public lodging and public food service establishments for compliance with the Florida Building Code and the Florida Fire Prevention Code."  Fla. Stat. § 509.032(7)(a) (emphasis added).   Miami Dade Ordinance Sec. 8A-110.1(3)'s requirement to notify customers of an automatic tip is therefore plainly preempted.  *Cf. City of Miami v. AIRBNB, Inc.*, 260 So. 3d 478 (Fla. Dist. Ct. App. 2018) (holding that Fla. Stat. § 509.032(7)(b), a provision similar to § 509.032(7)(a) that preempts laws related to rental properties, preempted a city's interpretation of an ordinance); *City of Miami Beach v. Fla. Retail Fed'n, Inc.*, 233 So. 3d 1236, 1239–40 (Fla. 3rd DCA 2017) (holding that Florida minimum wage statute preempts City of Miami Beach minimum wage ordinance).

Further, Section 509.214—which explicitly regulates the same subject matter covered by the Ordinance—confirms that the Florida legislature's express preemption of the regulation of the entire field of "public food service establishments" includes regulation of the sort of automatic-gratuity practices at issue in this case.  *See Lake Hamilton Lakeshore Owners Ass'n, Inc. v. Neidlinger*, 182 So. 3d 738, 742 (Fla Dist. Ct. App. 2015) ("implied preemption" under Florida law includes situations where "the legislative scheme is so pervasive as to evidence an intent to preempt the particular area" (internal quotation marks omitted)).  The state legislature's decision to regulate public food service establishments (including by regulating automatic-gratuity practices) through a comprehensive legislative scheme means that even in the absence of the express preemption language in § 509.032(7)(a), the Ordinance is impliedly preempted.  *See Classy Cycles, Inc. v. Bay Cnty.*, 201 So. 3d 779, 788 (Fla. Dist. Ct. App. 2016) (local ordinances impliedly preempted where ordinances constituted "an attempt to regulate in an area well-covered by existing [state]

statutes").

Accordingly, Plaintiff's per se FDUTPA claim fails because it is not based on valid predicates.

### 2.    Plaintiff's Traditional FDUTPA Claim Fails.

Plaintiff also purports to assert a "traditional" FDUTPA claim, asserting that, regardless of Ritz-Carlton's compliance with Florida law or the Miami-Dade Ordinance, its practices with respect to automatic suggested gratuities were deceptive or unfair.  In the absence of a valid FDUTPA predicate, a deceptive act requires "a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances," to the consumer's "detriment." *Zlotnick v. Premier Sales*, 480 F.3d 1281, 1284 (11th Cir. 2007). That requires a showing of "probable, not possible, deception that is likely to cause injury to a reasonable relying consumer" *Id.* "[A]n *unfair* practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Hucke*, 160 F. Supp. 3d at 1328 (emphasis added) (quotation omitted).

Here, it is indisputable that the automatic suggested gratuities Ritz-Carlton applied to Plaintiff's bills were not deceptive.  The undisputed evidence shows that, notwithstanding Plaintiff's demonstrably false allegations in his complaint and his motion for class certification that he was not made aware of any of the automatic charges he ultimately paid, Ritz-Carlton provided Plaintiff with plain, "unambiguous"—in Plaintiff's words—written notice of the 18% automatic suggested gratuities it applied to his bills ***no fewer than 12 times***. Fox Dep. 77:14–21.  Specifically, Ritz-Carlton provided notice to Plaintiff of an 18% automatic suggested gratuity on (1) each of the three menus it provided to Plaintiff, (2) on the each of the bills Plaintiff received, and (3) on each of the receipts Plaintiff signed charging his meals to his room.  Tamajon Decl. ¶¶ 9–10, 12–14, 17–18, 20, Exs. B–C, E–G. And Plaintiff was admittedly aware that the automatic suggested charges had been added to his restaurant bills before he paid those charges upon checking out of the hotel, confirming that Ritz-Carlton's multiple disclosures of those charges were effective and not at all deceptive.  Fox Dep. 36:18–20, 177:06–17.  These undisputed facts—of which Plaintiff and his counsel have been aware since the outset of this case but nonetheless tried to cover up via false allegations in pleadings—require summary judgment standing alone.  *See Stewart*

*Agency, Inc. v. Arrigo Enters., Inc.*, 266 So. 3d 207, 212 (Fla. Dist. Ct. App. 2019) (summary judgment appropriate where plaintiff could not show defendant car dealership failed to disclose recall to consumer); *Washington v. LaSalle Bank Nat. Ass'n*, 817 F. Supp. 2d 1345, 1350 (S.D. Fla. 2011) (plaintiff's FDUTPA claim based on charging excessive closing fee subject to summary judgment where "[t]he Fee was disclosed on the settlement statement that Plaintiff saw at the closing and Plaintiff has not alleged or otherwise shown that she was misled by the fee").

Indeed, Ritz-Carlton's explicit, repeated disclosure of its automatic suggested gratuities in compliance with Florida law is the opposite of a "deceptive" practice that would "mislead" a reasonable consumer—*i.e.*, it is fair and transparent.  *See Deere Constr., LLC v. Cemex Constr. Materials Fla., LLC*, No. 15-24375, 2016 WL 2770537, at *2–3 (S.D. Fla. May 12, 2016) (plaintiff failed to allege deceptive practice where surcharges plaintiff complained of were disclosed before they were charged, as well as on invoices); *Stewart*, 266 So. 3d at 212 (no deceptive act where existence of recall disclosed to all consumers); *Zlotnick*, 480 F.3d at 1284 ("[D]eception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." (citation omitted)).  This is doubly true given that not only did Ritz-Carlton disclose the precise percentage it was applying as a gratuity—it paid every penny of the gratuity to Plaintiff's servers.  *See, e.g.*, Tamajon Decl. ¶ 23 ("One hundred percent of the 18% automatic suggested gratuity goes to restaurant staff, and none of it goes to the hotel."); *see Deere*, 2016 WL 2770537, at *3 (rejecting plaintiff's argument that line items deceptively "characterize[d]" charges "as something other than what they actually are").  These undisputed facts preclude a finding that a "reasonable relying consumer" would "probabl[y]" and "likely" be deceived by Ritz-Carlton's express written notice to its customers of automatic suggested gratuities.  *Zlotnick*, 480 F.3d at 1284.

Other courts across the country have dismissed similar deceptive trade practices claims where, as here, the plaintiffs received clear notice of the price of goods or services such that "a reasonable consumer would not likely be misled."  *Id.* at 1284–85; *accord Charbonnet v. Omni*, No. 20-cv-01777, 2020 WL 7385828, at *4 (S.D. Cal. Dec. 16, 2020) (dismissing claims under California's analogous Unfair Competition Law ("UCL") because plaintiff failed to allege that a hotel "fee was in fact hidden from consumers" and "the total

price [was] disclosed to the consumer" before booking a room); *Harris v. Las Vegas Sands*, No. CV 12-10858, 2013 WL 5291142, at *2–4 (C.D. Cal. Aug. 16, 2013) (dismissing UCL claim where hotel defendant "presented" plaintiff with "final bill" including "mandatory" resort fee "[u]pon checking out" because hotel "explicitly disclosed" the fee); *Holt v. Noble House Hotels & Resort, Ltd.*, 370 F. Supp. 3d 1158, 1167 (S.D. Cal. 2019) (granting summary judgment in favor of defendant because reasonable customer would not be misled by hotel's practice of including a "surcharge" at certain restaurants, where hotel disclosed surcharge on signs, menus, and on each patron's bill, which lists the cost of the surcharge as a separate line item).

The same result should obtain here.  In fact, the same result is even *more* appropriate in this case.  The above-cited cases concern various hotel "fees" and "surcharges" that, unlike a gratuity, a customer would not necessarily know to look for on a bill.  Courts have nonetheless found no deceptive act where the fees or charges were disclosed prior to payment, even where a consumer received only a single notice that the fees or charges were included.  Here, in contrast, Ritz-Carlton disclosed the automatic suggested gratuities to Plaintiff *repeatedly* and in *several* ways, including on Plaintiff's bills and receipts—precisely where a reasonable consumer would expect to see such a charge.

### 3.  Plaintiff Cannot Prove He Suffered Any Loss "As a Result of" Ritz-Carlton's Allegedly Deceptive Practices.

Even if Plaintiff could show that Ritz-Carlton engaged in a deceptive act (he cannot), he has not shown that Ritz-Carlton caused him any damage, thereby dooming his claim for failure to establish FDUTPA's second and third elements.  *Lombardo v. Johnson & Johnson Consumer Cos.*, 124 F. Supp. 3d 1283, 1290 (S.D. Fla. 2015) ("causation is a necessary element of the FDUTPA claim, and causation must be direct rather than remote or speculative") (quotation marks omitted); *see also* Fla. Stat. § 501.211(2) ("[A] person who has suffered a loss *as a result of* a violation of this part . . . may recover actual damages . . . .").  Any "damages" Plaintiff suffered in the form of payment of automatic suggested gratuities was not a direct result of Ritz-Carlton's alleged failure to adequately disclose those charges.[6]  This is because Plaintiff undisputedly paid the charges after

---

[6]      Plaintiff's behavior *after* he undisputedly became aware that automatic suggested gratuities were being added to his bills confirms he suffered no loss as the result of the

becoming aware they had been included on his bills and subsequently meeting with his attorney in this case, and despite being repeatedly and expressly informed that the charges were "suggested" and that he could "raise, lower, or remove" them at his discretion.   Fox Dep., Ex. 3, 6; Fox Dep. 36:18–20, 177:06–17, 91:13–24, 93:08–15; Tamajon Decl. ¶¶ 13, 21.   Thus, Plaintiff would have paid the disputed amounts regardless of Ritz-Carlton's particular practices, and he therefore cannot show he suffered a loss "as a result" of those practices.  *See Stewart*, 266 So. 3d at 213 (summary judgment appropriate where undisputed facts showed plaintiff would have suffered alleged loss "regardless of [defendant's] actions" and therefore suffered no direct damages as a result of the alleged deceptive act).

In fact, any purported damage Plaintiff claims to have suffered was self-inflicted—*i.e.*, the result of his own initial failure to read Ritz-Carlton's repeated written notices of the automatic suggested gratuities and his subsequent conscious choice to pay the charges he knew about in order to manufacture a lawsuit after a meeting with his attorney.   Despite affirmatively alleging (both in his complaint and his subsequent motion for class certification) that Ritz-Carlton failed to provide him any or adequate notices of the automatic charges, Plaintiff admitted in deposition he does not look for notice of automatic charges on his bills and had no specific recollection about any of the content of any of the menus Ritz-Carlton provided him.  Fox Dep. 45:20–46:15, 56:10–13, 116:16–23, 141:09–16. In fact, for two of the three restaurants he dined at, he could not remember whether he looked at the restaurant menu *at all*.  *Id.* at 97:3–17, 48:23–50:11.  Plaintiff therefore could

---

application of those charges.  During his first dining experience at Lightkeepers, he left an additional tip of more than 20%, which he claims was the entire amount he intended to leave.  Fox Dep. 75:4–25. On his second visit to Lightkeepers (after he claims he became aware of the automatic charges) Plaintiff left no additional tip and so was only charged an 18%.  Fox. Dep. 90:12–19; Tamajon Decl., Ex. B.  On both occasions, Plaintiff ordered the same menu item, "The Galley."  Tamajon Decl., Ex. B.  This suggests Ritz-Carlton's automatic-gratuity policy actually *saved* Plaintiff money during his second visit to Lightkeepers.

Moreover, Plaintiff's hotel bill indicates that his check (including any automatic gratuities) was comped both times he dined at Lightkeepers, and he therefore did not even pay the automatic suggested gratuity that he was charged at that restaurant on either occasion.  *See* Tamajon Decl., Ex. E; Fox Dep. 166:2–168:2.  The only amount he actually paid upon checking out of the hotel was the $9 additional gratuity he left on his first visit. Plaintiff therefore suffered no injury resulting from Ritz-Carlton's practices with respect to the automatic suggested gratuities it added to his bills at Lightkeepers.

not have been injured by any notice or lack thereof of the automatic suggested gratuities, as he did not or would not have looked at it in any event. *See CWELT-2008 Series 1045 LLC v. PHH Corp.*, 2020 WL 2744191, at *6 (S.D. Fla. May 27, 2020) (plaintiff failed to establish causation where he "did not see or read the alleged misrepresentation") (citing *Maor v. Dollar Thrifty Auto. Grp., Inc.*, 2018 WL 4698512, at *6 (S.D. Fla. Sept. 30, 2018)). Accordingly, and as Plaintiff and his counsel have long been aware, Plaintiff cannot show Ritz-Carlton caused him any loss given that Ritz-Carlton properly notified him of the automatic suggested charges, which he ignored or cannot remember.

Because Plaintiff cannot establish either that Ritz-Carlton engaged in any deceptive act or unfair practice or that he suffered any damage or loss as a result of Ritz-Carlton's purportedly deceptive conduct, Ritz-Carlton is entitled to judgment as a matter of law on all of Plaintiff's claims, and this Court should grant Ritz-Carlton's motion for summary judgment.

## C.     Plaintiff's Claims are Barred by the Voluntary Payment Doctrine.

Ritz-Carlton is also entitled to summary judgment on all of Plaintiff's claims for the independent reason that those claims are barred by Florida's voluntary payment doctrine. That doctrine expresses the common-sense idea that where an individual is made aware of a charge and chooses to pay it with full knowledge of the factual circumstances, he cannot later seek to recover payment on the ground that the charge was illegal without showing that he objected to the charge and was nonetheless coerced or compelled to pay. *Easter v. City of Orlando*, 249 So. 2d 723, 727 (Fla. 5th DCA 2018). "The theory behind the doctrine is that if a party would resist an unjust demand of payment, he must do so at the threshold." *Brink v. Raymond James & Assocs., Inc.*, 341 F. Supp. 3d 1314, 1319 (S.D. Fla. 2018) (internal quotation marks omitted).

Plaintiff confirmed at his deposition that, at a minimum, he was aware that an automatic charge had been applied to his restaurant bills before he checked out of the hotel and paid those charges. Fox Dep. 36:18–20, 177:06–17. And because he charged his meals to his room and did not **pay** the bills until he checked out of the hotel, Plaintiff undisputedly had full knowledge of the automatic charges when he paid them. *Id.* at 92:3–16. Despite being admittedly aware of the automatic charges, and despite being expressly informed that the charges were "suggested" and that he could "raise, lower, or remove" the charges at his

17

discretion, Plaintiff made no effort to "resist" Ritz-Carlton's "demand" for payment of those charges. *Brink*, 341 F. Supp. 3d at 1319; Fox Dep., Ex. 3, 6; Fox Dep. 36:18–37:06; 91:19–24; 93:08–15 (Plaintiff never inquired as to whether the charges could be removed or otherwise raised the issue with the hotel). Notably, too, Plaintiff's conscious decision to not lower or remove these charges immediately followed a dinner he attended with one of his attorneys in the case—a dinner that would itself result in the filing of identical claims against another hotel. Fox. Dep. 26:1–9, 44:4–8, 90:12–19, 134:4–135:6.

The law is well established that where, as here, an individual receives a bill and, without coercion, agrees to pay the charges on that bill, he cannot later seek to recover all or a portion of that payment on the ground that certain charges were illegally assessed. *See, e.g.*, *Hall v. Humana Hosp. Daytona Beach*, 686 So. 2d 653, 655–56 (Fla. Dist. Ct. App. 1996) (voluntary payment doctrine barred recovery of alleged overcharges on hospital bills presented to patients after treatment was completed). As in *Hall*, Ritz-Carlton here presented Plaintiff with a bill for goods and services rendered, and, as in *Hall*, Plaintiff paid the full amount with full knowledge of what the charges entailed. Like the patients in *Hall*, then, Plaintiff cannot now seek recovery based on a post-hoc assertion that the amounts he paid were excessive or otherwise illegal. *Id.*; *see also Kissner v. McDonald's Corp.*, No. 18-CV-61026-WPD, 2018 WL 5832979, at *4 (S.D. Fla. Nov. 2, 2018) (plaintiff's claims he was unfairly overcharged for menu item barred by voluntary payment doctrine); *Hassen v. Mediaone of Greater Fla., Inc.*, 751 So. 2d 1289, 1290 (Fla. Dist. Ct. App. 2000) (doctrine barred plaintiffs' recovery of allegedly excessive late charges where plaintiffs were informed that charges would be incurred for late payments). This is particularly true here, where Plaintiff met with one of his attorneys in this case *after* he admittedly became aware of the automatic charges and chose a lawsuit over simply having the suggested, non-mandatory charges removed. Fox Dep. 26:1–9, 44:4–8, 90:12–19. Accordingly, Plaintiff's claims are completely barred by the voluntary payment doctrine.

## D.    Plaintiff Lacks Article III Standing.

To establish standing under Article III of the Constitution, Plaintiff must show: (1) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (2) that the injury was likely caused by the defendant; and (3) that the injury would likely be redressed by judicial relief. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). Just

as Plaintiff has not proven that he suffered any damages caused by Ritz-Carlton for purposes of his FDUTPA claims, he cannot show that he suffered a particularized and concrete injury caused by Ritz-Carlton's actions.  He therefore lacks standing under Article III, and Ritz-Carlton is also entitled to summary judgment on this basis alone.

**E.      Plaintiff's Counsel Tacitly Conceded this Case Lacks Merit by Dismissing Three Copy-Cat Lawsuits Asserting the Same FDUTPA Claims.**

Plaintiff's counsel's dismissal of three copy-cat lawsuits asserting the same two FDUTPA claims further shows that Plaintiff's claims here are meritless.  In those cases, Plaintiff's counsel represented a single plaintiff against three global hotel companies: Hyatt, Marriott, and Hilton.[7]  Just as here, the plaintiff there received notice on all menus, bills, and receipts.  Based on the notices the plaintiff received, the hotels all filed dispositive motions.  Given the similarities among the cases, the *Hyatt* court stayed that case pending decisions in *Marriott* and *Hilton* (which were presided over by the same court).  At the hearing in the *Hilton* case, the Court strongly suggested it was skeptical of the claim that the plaintiff was somehow deceived.  Watstein Decl., Ex. B at 33:24–25 (stating "I do see here copies of the receipt and the menu, and I do see the notice provided on both documents.").)  To avoid adverse rulings on the motions, which had been pending from six to nine months, Plaintiff's counsel chose to dismiss all three on the same day, October 4, 2021—just three days after filing a motion for class certification in this case.  By dismissing these copy-cat lawsuits in the hopes of leveraging a class settlement here before this Court dismissed his claims, Plaintiff's counsel tacitly conceded all four cases—including Plaintiff's here—lack merit.[8]

---

[7]      *See* Watstein Decl., Exs. C–D, which are true and accurate copies of the Voluntary Dismissals in the following three cases: *Germak v. Hyatt*, No. 20-CV-24341, ECF 59 (S.D. Fla.); *Germak v. Marriott*, No. 20-CV-24533, ECF 53 (S.D. Fla.); *Germak v. Hilton*, No. 20-CV-24511, ECF 49 (S.D. Fla.).  The Court may take judicial notice of these dismissals because they are "public records . . . 'capable of accurate and ready determination by resort to sources whose accuracy [can]not reasonably be questioned.'"  *See, e.g.*, *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) (finding district court properly took judicial notice of documents from plaintiff's other case).

[8]      In a last-ditch and dishonest attempt to salvage Plaintiff's claims, Plaintiff's counsel attempted to change Plaintiff's deposition testimony through a sham declaration attached to Plaintiff's Reply in Support of Class Certification (thereby depriving Ritz-Carlton of the

## V.   CONCLUSION

As explained herein, this lawsuit is an opportunistic hit job based on allegations that have turned out to be demonstrably false.  For the multiple, independent reasons set forth above, there are no genuine issues of material fact for trial and the Court should grant summary judgment to Ritz-Carlton on all of Plaintiff's claims.

Respectfully submitted this 3rd day of December, 2021.

/s/ *Ryan D. Watstein*
Ryan D. Watstein
GA Bar No. 266019/FL Bar No. 0093945
**KABAT CHAPMAN & OZMER LLP**
171 17th Street, NW, Suite 1550
Atlanta, Georgia 30363
Tel: (404) 400-7300
Fax: (404) 400-7333
Attorney for The Ritz-Carlton Hotel
Company, LLC

---

ability to respond to it without leave of Court).  *See generally*, ECF 35-9.  However, the declaration is so noncommittal it never manages to rebut Ritz-Carlton's evidence that all three menus in use at the time, in fact include notices of the automatic suggested gratuity and, thus, fails to create a dispute of material fact sufficient to preclude summary judgment on any argument discussed herein.  *See, e.g.*, *Pace v. Capobianco*, 283 F.3d 1275, 1279 (11th Cir. 2002) (in holding district court erred by finding witness' statement sufficient to create a fact issue, explaining that a declaration "stating only that the [declarant] 'believes' a certain fact exists is insufficient to defeat summary judgment by creating a genuine issue of fact about the existence of that certain fact").  Accordingly, Ritz-Carlton does not fully address the declaration in this motion but does so in its simultaneously filed motion to exclude Plaintiff's declaration and errata and its Section 1927 motion for sanctions.

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that, on December 3, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

By: <u>/s/ *Ryan D. Watstein*   </u>
Ryan D. Watstein

21