```
 1                   UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
 2
                       CASE NO. 17-CV-24284-MGC
 3
     MICHAEL FOX,
 4   on behalf of himself and
     all others similarly situated,
 5                                        Miami, Florida

 6            Plaintiff(s),
                                          December 9, 2021
 7            vs.

 8   THE RITZ-CARLTON HOTEL
     COMPANY, LLC,
 9
              Defendant(s).        Pages 1 - 19
10   ------------------------------------------------------------

11                         MOTION HEARING
                TRANSCRIBED FROM DIGITAL AUDIO RECORDING
12             BEFORE THE HONORABLE JOHN J. O'SULLIVAN
                   UNITED STATES MAGISTRATE JUDGE
13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1    APPEARANCES:

 2    FOR THE PLAINTIFF(S):   JAMES A. FRANCIS, ESQ.
                              FRANCIS & MAILMAN, P.C.
 3                            100 South Broad Street
                              Philadelphia, PA 19110
 4                            (215) 735-8600
                              jfrancis@consumerlawfirm.com
 5

 6                            LEWIS J. SAUL, ESQ.
                              EDWARD A. COLEMAN, ESQ.
 7                            LEWIS SAUL & ASSOCIATES, P.C.
                              29 Howard Street
 8                            New York, NY 10013
                              212-376-8450
 9                            lsaul@lewissaul.com
                              ecoleman@lewissaul.com
10

11                            DAVID M. MARCO, ESQ.
                              SMITHMARCO, P.C.
12                            55 W. Monroe Street
                              Chicago, IL 60603
13                            (312) 546-6539
                              dmarco@smithmarco.com
14

15
      FOR THE DEFENDANT(S):   RYAN D. WATSTEIN, ESQ.
16                            ABIGAIL L. HOWD, ESQ.
                              KABAT CHAPMAN & OZMER LLP
17                            171 17th Street NW
                              Atlanta, GA 30363
18                            (404) 400-7300
                              rwatstein@kcozlaw.com
19                            ahowd@kcozlaw.com

20

21

22    TRANSCRIBED BY:         Joanne Mancari, RPR, CRR, CSR
                              Court Reporter
23                            jemancari@gmail.com

24

25
```

1    Thereupon,

2    the following proceedings were held by telephone:

3            THE COURT:  Good morning.  This is Judge O'Sullivan.

4    We are here in the case today of Michael Fox v. The Ritz

5    Carlton Hotel Company, case No. 17 Civil 24284.

6            Can I have appearances for the plaintiff first.

7            MR. FRANCIS:  Yes.  Good morning, your Honor.  This is

8    Jim Francis for the plaintiff.  With me is my cocounsel Lewis

9    Saul, Ed Coleman, and David Marco.

10           THE COURT:  OK.  Good.

11           Who is here for the defendant?

12           MR. WATSTEIN:  Good morning, your Honor.  This is Ryan

13   Watstein for Ritz Carlton, and I have my colleague Abigail Howd

14   on the line as well.

15           THE COURT:  OK.  Good.

16           All right.  This was set by the plaintiff, right?

17   What is the problem?

18           MR. FRANCIS:  Correct.

19           THE COURT:  Who wants to address the court?

20           MR. FRANCIS:  Your Honor, this is Jim Francis.  I am

21   happy to address the court.

22           THE COURT:  OK.  Good.  Go ahead.

23           MR. FRANCIS:  Did you want me to proceed, your Honor?

24           THE COURT:  Yes, please.

25           MR. FRANCIS:  OK.  So, your Honor, we are here in

1    connection with a motion to quash a subpoena and/or a motion

2    for protective order relating to a subpoena that was served

3    upon a third party in this case by the name of Meredith

4    Silverman.

5          Just by way of some quick background, this is a class

6    action that has been brought against the Ritz challenging its

7    imposition of automatic gratuities in violation of a Miami-Dade

8    ordinance as well as FDUTPA.

9          The case has been around for a while.  It's been back

10   from the Eleventh Circuit.  We have taken discovery.  Discovery

11   closed on November 12th.  During the last couple of weeks of

12   discovery, the defendant Ritz served a subpoena upon

13   Ms. Silverman, again, who is a third party, who at the

14   plaintiff's deposition was identified as his girlfriend at that

15   time, as of -- within the last month.

16         The subpoena --

17         THE COURT:  I'm sorry.  When you say "at that time,"

18   you mean at the time of the depo or at the time that he got the

19   check that had the automatic gratuity?

20         MR. FRANCIS:  Great question, your Honor.  He

21   identified that she was his girlfriend at the time of the

22   deposition, within the last month, not at the time that he was

23   at the Ritz in April of 2017.  That is one of the reasons that

24   the subpoena seeks completely irrelevant information.  That

25   time period, he did not know her then and they weren't

1    acquainted at all.  She was not around.  She wasn't a part of

2    that experience and she knows nothing about that transaction.

3           I would also point out to your Honor that in addition

4    to the fact that she is his girlfriend now, and she wasn't

5    then, a day before the Ritz served the subpoena they

6    supplemented their initial disclosures with 41 new witnesses.

7    That is not germane to this particular motion, but they have

8    never identified this person, this witness, even though they

9    knew about her.  So they did not think, pursuant to Rule

10   26(a)(1)(A)(i), that she was somebody who had knowledge about

11   the claims or defenses in the case.  So that is another reason.

12          In addition, the Ritz has asserted to us that their

13   basis for seeking her deposition was in connection with finding

14   out the plaintiff's tipping habits.  First, number one, the

15   plaintiff's tipping habits aren't at issue in this case.  This

16   case is not about the disgorgement of voluntary tips; it is

17   about the disgorgement of automatic gratuities.  So it has

18   nothing to do with the plaintiff's tipping practices.

19          Finally, the --

20          THE COURT:  Let me ask you a question while you are on

21   that point.  Wouldn't that go to damages?  In other words, if

22   you are putting a 20 percent automatic gratuity and he would

23   have tipped 25 percent, wouldn't that diminish any damages to

24   any member of the class?

25          MR. FRANCIS:  We don't think so, your Honor, because

1    we think the case law provides that where there is improper or

2    no notice given, it is the full amount of the gratuity or,

3    excuse me, the service charge that gets returned.  So we do not

4    think it is relevant to damages.

5        We are happy to brief that, but I think there is also

6    another reason why the motion to quash should be granted and/or

7    the motion for protective order granted, and that is that the

8    best evidence -- even if the plaintiff's tipping habits are

9    relevant to damages, as your Honor just inquired about, they

10   have gotten the best evidence.  They asked him at his

11   deposition.  He answered those questions about what his tipping

12   habits were and are.  So they have it from the direct source.

13       THE COURT:  That is not a very good argument because

14   you, of course, get to test the veracity of the deponent,

15   especially when he is a party in the case.  If the plaintiff

16   gets up or the defendant says I did nothing wrong, you

17   shouldn't be able to take any other depositions because they

18   said they didn't do anything wrong?  No, you get to depose

19   other people to see whether or not what the person is saying is

20   corroborated or is truthful or is not.

21       So that is not a very persuasive argument, that you

22   asked my client, when you need to take what he said as being

23   true.  I don't think anyway.  That is the whole purpose of

24   cross-examination, is to attack people's credibility, and one

25   way to do that is by having another source who said something

1    different.  I don't know what she is going to say.

2              Go ahead.

3              MR. FRANCIS:  So as I said, your Honor, I think the

4    fact they didn't even disclose her as a witness that they think

5    would be helpful to their defenses, and so we think under Rule

6    26(a)(1)(A)(i) they can't take her deposition.

7              There is also a less-intrusive means by doing this, if

8    the court finds that there is even a basis for them to get any

9    information from her.  They could certainly propound written

10   interrogatories pursuant to Rule 30(c).

11             THE COURT:  I don't understand.  Maybe there is a

12   reason why she shouldn't be deposed.  We could do that for

13   every deponent.  We don't do that except for in very special

14   circumstances, where maybe the person is sick or not available

15   or is busy running the country or running a business.

16             Just because she doesn't want to be deposed -- I mean,

17   deposition is the normal way to go unless there is some

18   exception why I should allow written interrogatories or written

19   deposition questions.

20             MR. FRANCIS:  No, I understand.

21             THE COURT:  That would be the case with every witness.

22   Why take any live depositions, just send them the questions and

23   then the lawyer can look at it, discuss it with them, and give

24   them the answers.

25             MR. FRANCIS:  No, your Honor, I totally understand

1   that, which is why I think I led with the fact she didn't even

2   know him at the time in question.  So whatever his tipping

3   habits were, even if relevant, whatever his tipping habits are

4   now has nothing to do with what has happening at the time.

5           THE COURT:  Got it.

6           What does the defendant say?

7           MR. WATSTEIN:  Yes, your Honor.  This is Ryan

8   Watstein.

9           Let me just give you a little bit of background.  I

10  will try to keep it as short as possible.  It is important

11  because this issue is connected with five motions that we filed

12  last Friday, including a motion for sanctions.

13          So this case is about -- the plaintiff claims he was

14  damaged when Ritz Carlton automatically charged him 18 percent

15  gratuity charges without providing notice.  He said on

16  information and belief, and without ever having stepped foot in

17  another Ritz Carlton in Florida, that Ritz routinely misled

18  Florida customers by imposing these charges without notice at

19  30 or so restaurants.

20          The case has been pending for four years.  Plaintiff

21  took virtually no discovery, no effort to determine whether the

22  information and belief allegations were true, didn't depose a

23  single hotel employee, didn't depose a single class member, a

24  single Ritz Carlton customer, didn't interview a single Ritz

25  Carlton customer from any hotel throughout the State of

1    Florida.

2          Ritz, on the other hand, did engage in discovery,

3    spending an exorbitant amount of money to prove plaintiff's own

4    account of his experiences at Ritz Carlton as well as his

5    information and belief allegations about class members'

6    experiences were patently false.  I won't go into detail on

7    that.  We have explained all this in our pending motion for

8    summary judgment and our class certification briefing.

9          I will note that we obtained over 300 pages of

10   declarations from class members and hotel employees with

11   personal knowledge, all of which show that no one was misled or

12   damaged.  Plaintiff has done nothing at all to rebut this.

13         As a result of our evidence and their failure to do

14   discovery, they have been forced to engage in a litany of

15   improper evidentiary tactics, all of which are outlined in our

16   pending motion for sanctions, which we filed last week.

17         THE COURT:  What does that have to do with whether or

18   not this woman should be deposed?  I don't want to hear about

19   what has gone on otherwise.

20         MR. WATSTEIN:  Sure.

21         THE COURT:  I want to hear about why this woman is

22   relevant to your defenses in this case or to the plaintiff's

23   claims.

24         MR. WATSTEIN:  Understood, and I just wanted to kind

25   of set that up because this is mentioned in that motion that

1    is, I believe, ultimately going to be before your Honor.

2            Skipping ahead to why we are here today, so relevant

3    to this particular hearing, here is the piece of what we call

4    the evidentiary shell game that relates to today's hearing.  So

5    despite plaintiff being the named plaintiff in a multimillion

6    dollar class action and forcing us to spend four years,

7    hundreds of thousands of dollars on litigation expenses, in a

8    case that is all about gratuity practices and whether he paid

9    more than he otherwise would have as a result of this alleged

10   lack of notice on a restaurant menu, he refused to identify in

11   discovery responses a single restaurant that he dined at in the

12   last four years, and he also claimed that no one had knowledge

13   of his tipping or dining practices.

14           He also failed to produce, despite our request, a

15   single restaurant receipt over the last four years that would

16   show his normal gratuity practices.  Then when we took his

17   deposition, we found out why.

18           He destroyed and didn't preserve a single restaurant

19   receipt, despite having admitted dining out over 100 times or

20   over 200 times since filing this lawsuit.  In other words, he

21   spoliated the sole evidence that would show us, without needing

22   to depose a third party, what his regular gratuity practices

23   were.

24           THE COURT:  Well, that evidence is available

25   otherwise, most likely, assuming that he paid by credit card.

1   You just subpoena the credit card company and you will see what

2   he signed.

3        MR. WATSTEIN:  Well, right.

4        THE COURT:  We are not here on a spoliation.  You seem

5   to be veering off.  I know you think I am going to do this

6   sanctions motion.  I am not going to do it and I will tell you

7   why, because I am going to be no longer working after a month

8   from today.  So I am not going to be doing your sanctions

9   motion.  So you don't have to warm me up for the sanctions

10  motion.  What you need to do is convince me why this woman's

11  testimony is relevant and why you should be permitted to depose

12  her.

13       MR. WATSTEIN:  Sure.  Understood.

14       What I'm getting at here is we didn't have another way

15  to get this information.  By the way, we asked him in

16  deposition about the credit card and he basically said that,

17  well, the gratuities aren't on the credit card, just the total

18  amount of the charge.  So we did think about that and look into

19  doing that.

20       THE COURT:  So then you have no spoliation.  What did

21  he spoil?  If he didn't add the tip to the receipt, he can do

22  whatever he wants with the receipt because if he is leaving a

23  cash tip, it is whatever he remembers.  There is no record of

24  it.

25       Anyway, let's get focused on her rather than these

1    other things that you contend he did that wasn't correct.

2    MR. WATSTEIN: Yes. Let me just tell you, then, the

3    seven and the related reasons why we think plaintiff's request

4    for relief should be denied.

5    THE COURT: OK.

6    MR. WATSTEIN: Number one, Ms. Silverman failed to

7    appear for her deposition without requesting any relief or

8    raising a single objection herself. All that was filed before

9    her deposition, which was scheduled for November 12th, was an

10   improper motion by the plaintiff, that he didn't have standing

11   to file and that was stricken for failure to comply with the

12   court rules. We took a notice of nonappearance for her. They

13   didn't even attempt to contact your Honor's chambers until

14   after they didn't show up for the deposition. So that is

15   number one.

16   Number two, they didn't seek relief within 15 days of

17   the occurrence as the grounds for relief, as required by your

18   Honor's standing order. We told them we would be taking her

19   deposition on 10/28. They didn't appear for her deposition and

20   didn't contact your Honor's chambers until 11/16 at the

21   earliest.

22   Let's skip to substance because that is the most

23   important.

24   Substantively, assuming they had standing, assuming

25   they had properly noticed or properly challenged the

1    deposition, plaintiff can't show that an incredibly short, like

2    hour-long remote deposition would in any way burden

3    Ms. Silverman.  It would take an hour or so out of her life and

4    we can do it whenever is most convenient for her.

5         The subpoena's also narrowly tailored to discover

6    information that is critically relevant to this case.  Your

7    Honor not knowing anything about the case identified a couple

8    of the main reasons why we think her testimony is relevant, and

9    that is what we have been telling the other side for over a

10   month.

11        So what are some of the ways?  Well, it is undisputed

12   she dined with plaintiff numerous times, and this lawsuit is

13   all about plaintiff's dining and tipping practices, and she is

14   also the closest person to plaintiff.  So her testimony could

15   show that he can't prove causation or damages on his FDUTPA

16   claim if, for example, he routinely tips more than the 18

17   percent automatic gratuity that was imposed.

18        THE COURT:  They say that the measure of damages is

19   the automatic gratuity, not the difference between what would

20   have been paid.  Do you disagree with that?

21        MR. WATSTEIN:  Absolutely we disagree with that, and

22   that is an issue that is currently before the district court in

23   a bunch of pending motions.  They can make that legal argument

24   if they want, but we're allowed to take discovery to support

25   our legal argument.

```
 1          THE COURT:  OK.  Let me ask you another question.
 2   When did these folks start dating?
 3          MR. WATSTEIN:  I believe they started dating several
 4   years ago.  I understand that they were not dating in 2017 when
 5   he visited the Ritz Carlton, but my tipping practices haven't
 6   changed in two decades.
 7          THE COURT:  Do you know when?  Did they start dating
 8   last week, four years after the event --
 9          MR. WATSTEIN:  No, no.
10          THE COURT:  -- or did they start dating in 2018, one
11   year after the event?
12          MR. WATSTEIN:  They have been dating for several years
13   and they have lived together for around two years.
14          THE COURT:  OK.
15          MR. WATSTEIN:  So I mean, there is a reason -- we only
16   took plaintiff's deposition in this case.  It is not like we
17   are trying to harass them with dozens of depositions.  We have
18   taken one deposition in four years in a multimillion dollar
19   class action.  The only other person we want to depose is the
20   one person who has knowledge of the named plaintiff's dining
21   practices.  That's it.
22          THE COURT:  All right.  What does the plaintiff say?
23          Go ahead if you want to finish up.
24          MR. WATSTEIN:  Well, I was going to list some more
25   ways that her testimony could be relevant.
```

```
1              THE COURT:  OK.  Go ahead.  Tell me then.
2              MR. WATSTEIN:  Yes.  Well, for example, to impugn his
3     credibility, for example, he claimed that Ms. Silverman didn't
4     know about the lawsuit, but it's strange logic that a
5     significant other who lives with you for several years doesn't
6     know that you are the named plaintiff in a class action
7     lawsuit.  There are various things that she might say that
8     would impugn his credibility, potentially expose biases, could
9     expose the true extent of plaintiff's relationship with
10    Mr. Saul, one of plaintiff's attorneys in this case, who we
11    found out dined with plaintiff during his stay at the Ritz
12    Carlton, the very stay that led to this lawsuit.  So it could
13    help expose that this whole lawsuit was a setup, as we believe
14    to be the case.  Of course, we don't know until we take the
15    deposition.
16             Then I would just point out as another independent
17    reason that we should be allowed to take this deposition, we
18    were prevented from obtaining this evidence sooner and through
19    other sources because they didn't even disclose in their
20    discovery responses any of the restaurants that plaintiff dined
21    at, which discovery we served so we could do exactly what your
22    Honor suggested, which is send subpoenas to restaurants and
23    credit card companies asking for information.  But they refused
24    to provide any -- they have asked for hundreds of thousands of
25    pages of documents for Ritz Carlton, but they couldn't even
```

1    take the time to identify a few restaurants that plaintiff has

2    dined at, and they also didn't preserve any of the receipts.

3    So we are forced into this situation of having to take a

4    deposition of this one person with knowledge.

5          The last thing I would say is that courts routinely

6    permit third-party depositions in situations where there is

7    much less potential relevant information that they might

8    possess.  I mean, one example is the Rodgers v. Herbalife case,

9    where the plaintiff's spouse was deposed in a putative class

10   action and the motion to quash that she filed, unlike here

11   where plaintiff filed it, was denied.

12         So for all these independent reasons we believe the

13   court should allow us to take a short, remote deposition of

14   Ms. Silverman.

15         THE COURT:  OK.  For the plaintiff, anything further?

16         MR. FRANCIS:  Yes, your Honor.  I mean, we have veered

17   into a lot of different tangential matters that I don't think

18   have anything to do with the particular hearing and/or matters

19   before the court today, but I just have to respond to a couple

20   of your Honor's questions and a couple of counsel's statements.

21         First of all, it is not true that we did not depose

22   anybody and that we didn't do anything in four years.  In fact,

23   as Mr. Watstein just said, we have been pouring through written

24   discovery for months and months and months and months, have

25   been prosecuting this case and litigating this case for four

1    years.  We took it to the Eleventh Circuit.  We got a reversal.

2    We're back.  We immediately, promptly started discovery.  He

3    might not know about that because he only became counsel in

4    this case within the last couple of months.  Prior to that it

5    was Holland & Knight, and both sides were working very

6    cooperatively.  There were no motions to compel.  There were no

7    discovery issues.  Everything was very cooperative.  We had

8    three mediations.  All of the sudden the case has taken a veer

9    in the last two months for whatever reason.

10        They mentioned that the plaintiff didn't identify any

11   restaurants.  Well, Mr. Watstein just said they had his

12   discovery responses months and months, if not before that.

13   They could have brought this matter to the court's attention

14   other than waiting until the last two weeks.  So some of this

15   crying foul falls on deaf ears, and we are going to deal with

16   the motion for sanctions independently in our own way and

17   appreciate your Honor telling us, and sorry to hear or happy

18   for you, if you're not going to be involved in our case, but

19   let me just respond.

20        Your Honor did ask counsel a pointed question and he

21   was not familiar with the testimony.  The testimony is that

22   Mr. Fox did not begin dating Ms. Silverman until 2018.  That's

23   clear.  It is in the record.  It is in the deposition

24   transcript.

25        In terms of some of the other points, the spoliation

1    issue is a complete red herring, nonissue, and false.  I don't

2    know about your Honor, but I don't keep every receipt from

3    every restaurant I dine at year after year.  I just don't.  The

4    only thing I have is I have stuff, credit cards if I want to

5    see where I dined.  I don't keep those receipts.

6         There was no request by the defendant to ask the

7    plaintiff to preserve every receipt for every restaurant he ate

8    at.  That is a nonissue.  If they certainly thought there was

9    spoliation, this firm knows how to file those motions as well,

10   and they never did.

11        So again, this witness, the burden of her testifying

12   here, because she is not going to provide any information that

13   is germane to the claims or defenses in this case and, as I

14   said, they never even identified her as a witness.  So if they

15   thought she had discoverable information, they would have

16   included her in the list of supplemented witnesses that they

17   served on us with the other 41 new witnesses a day before they

18   subpoenaed her.  So they don't think that she is a witness with

19   knowledge, otherwise, they would have identified her.

20        THE COURT:  OK.  All right.  Your motion to quash or

21   for protective order is denied.  I find that Ms. Silverman may

22   have information that is relevant to the claims, in particular,

23   the most glaring is what his tipping habits are.

24        The deposition actually indicates that he began dating

25   her in 2017.  I'm quoting him:  Maybe early 2018.  I'm not

 1   exactly sure.  Although he may not have been dating her in

 2   April of 2017, he was shortly thereafter.

 3           Whether the judge is going to allow that in as

 4   evidence, I don't know.  I'm sure you can make an argument that

 5   what he was doing in 2018 isn't relevant to what he was doing

 6   in 2017, and the trial judge will make that decision.

 7           I find that she does have or may have information that

 8   is relevant to the matters in this case and I am going to allow

 9   her deposition.

10           I am being frank.  I'm very surprised that I'm even

11   addressing this motion.  It seems pretty clear to me that she

12   has relevant information and a short deposition is going to

13   occur.  Anyhow, that is my ruling.

14           Good luck to you guys.

15           Stop fighting with each other, by the way.

16           MR. WATSTEIN:  Thank you, your Honor.

17           MR. FRANCIS:  Thank you, your Honor.

18           THE COURT:  Bye.

19           (Adjourned)

20

21

22

23

24

25

C E R T I F I C A T E


    I hereby certify that the foregoing is an accurate

transcription to the best of my ability of the digital audio

recording in the above-entitled matter.


December 11, 2021        s/ Joanne Mancari
                         Joanne Mancari, RPR, CRR, CSR
                         Court Reporter
                         jemancari@gmail.com

MR. FRANCIS: [12]  3/7 3/18 3/20 3/23
3/25 4/20 5/25 7/3 7/20 7/25 16/16
19/17
MR. WATSTEIN: [16]  3/12 8/7 9/20
9/24 11/3 11/13 12/2 12/6 13/21 14/3
14/9 14/12 14/15 14/24 15/2 19/16
THE COURT: [28]

**1**

10/28 [1]  12/19
100 [2]  2/3 10/19
10013 [1]  2/8
11 [1]  20/8
11/16 [1]  12/20
12th [2]  4/11 12/9
15 [1]  12/16
16 [1]  12/20
17 [1]  3/5
17-CV-24284-MGC [1]  1/2
171 [1]  2/17
17th [1]  2/17
18 [2]  8/14 13/16
19 [1]  1/9
19110 [1]  2/3

**2**

20 [1]  5/22
200 [1]  10/20
2017 [5]  4/23 14/4 18/25 19/2 19/6
2018 [4]  14/10 17/22 18/25 19/5
2021 [2]  1/6 20/8
212-376-8450 [1]  2/8
215 [1]  2/4
24284 [1]  3/5
25 [1]  5/23
26 [2]  5/10 7/6
28 [1]  12/19
29 [1]  2/7

**3**

30 [2]  7/10 8/19
300 [1]  9/9
30363 [1]  2/17
312 [1]  2/13

**4**

400-7300 [1]  2/18
404 [1]  2/18
41 [2]  5/6 18/17

**5**

546-6539 [1]  2/13
55 [1]  2/12

**6**

60603 [1]  2/12
6539 [1]  2/13

**7**

7300 [1]  2/18
735-8600 [1]  2/4

**8**

8450 [1]  2/8
8600 [1]  2/4

**A**

ABIGAIL [2]  2/16 3/13
ability [1]  20/5

able [1]  6/17
about [13]  5/2 5/9 5/10 5/16 5/17 6/9
6/11 8/13 9/5 9/18 9/21 10/8 11/16
11/18 13/7 13/13 15/4 17/3 18/2
above [1]  20/6
above-entitled [1]  20/6
Absolutely [1]  13/21
account [1]  9/4
accurate [1]  20/4
acquainted [1]  5/1
action [5]  4/6 10/6 14/19 15/6 16/10
actually [1]  18/24
add [1]  11/21
addition [2]  5/3 5/12
address [2]  3/19 3/21
addressing [1]  19/11
Adjourned [1]  19/19
admitted [1]  10/19
after [5]  11/7 12/14 14/8 14/11 18/3
again [2]  4/13 18/11
against [1]  4/6
ago [1]  14/4
ahead [5]  3/22 7/2 10/2 14/23 15/1
ahowd [1]  2/19
all [15]  1/4 3/16 5/1 9/7 9/11 9/12 9/15
10/8 12/8 13/13 14/22 16/12 16/21 17/8
18/20
allegations [2]  8/22 9/5
alleged [1]  10/9
allow [4]  7/18 16/13 19/3 19/8
allowed [2]  13/24 15/17
also [8]  5/3 6/5 7/7 10/12 10/14 13/5
13/14 16/2
Although [1]  19/1
am [7]  3/20 11/5 11/6 11/7 11/8 19/8
19/10
amount [3]  6/2 9/3 11/18
another [7]  5/11 6/6 6/25 8/17 11/14
14/1 15/16
answered [1]  6/11
answers [1]  7/24
any [13]  5/23 5/24 6/17 7/8 7/22 8/25
12/7 13/2 15/20 15/24 16/24 17/10 18/12
anybody [1]  16/22
Anyhow [1]  19/13
anything [5]  6/18 13/7 16/15 16/18 16/22
anyway [2]  6/23 11/25
appear [2]  12/7 12/19
appearances [2]  1/13 3/6
appreciate [1]  17/17
April [2]  4/23 19/2
are [18]  3/4 3/25 5/20 5/22 6/5 6/8 6/12
8/3 9/15 10/2 11/4 13/11 14/17 15/6
15/7 16/3 17/15 18/23
aren't [2]  5/15 11/17
argument [5]  6/13 6/21 13/23 13/25 19/4
around [3]  4/9 5/1 14/13
as [24]
ask [4]  5/20 14/1 17/20 18/6
asked [4]  6/10 6/22 11/15 15/24
asking [1]  15/23
asserted [1]  5/12
ASSOCIATES [1]  2/7
assuming [3]  10/25 12/24 12/24
at [25]
ate [1]  18/7
Atlanta [1]  2/17
attack [1]  6/24
attempt [1]  12/13
attention [1]  17/13

attorneys [1]  15/10
audio [2]  4/11 20/5
automatic [6]  4/7 4/19 5/17 5/22 13/17
13/19
automatically [1]  8/14
available [2]  7/14 10/24

**B**

back [2]  4/9 17/2
background [2]  4/5 8/9
basically [1]  11/16
basis [2]  5/13 7/8
be [18]  6/6 6/17 7/5 7/12 7/16 7/21 9/18
10/1 11/5 11/7 11/8 11/11 12/4 12/18
14/25 15/14 15/17 17/18
became [1]  17/3
because [12]  5/25 6/13 6/17 7/16 8/11
9/25 11/7 11/22 12/22 15/19 17/3 18/12
been [11]  4/6 4/9 4/9 8/20 9/14 13/9
13/20 14/12 16/23 16/25 19/1
before [8]  1/12 5/5 10/1 12/8 13/22
16/19 17/12 18/17
began [1]  18/24
begin [1]  17/22
begin [1]  17/22
behalf [1]  1/4
being [3]  6/22 10/5 19/10
belief [3]  8/16 8/22 9/5
believe [4]  10/1 14/3 15/13 16/12
best [3]  6/8 6/10 20/5
between [1]  13/19
biases [1]  15/8
bit [1]  8/9
both [2]  15/6 17/5
brief [1]  6/5
briefing [1]  9/8
Broad [1]  2/3
brought [2]  4/6 17/13
bunch [1]  13/23
burden [2]  13/2 18/11
business [1]  7/15
busy [1]  7/15
but [10]  5/7 6/5 13/24 14/5 15/4 15/23
15/25 16/19 17/18 18/2
Bye [1]  19/18

**C**

call [1]  10/3
can [6]  3/6 7/23 11/21 13/4 13/23 19/4
can't [3]  7/6 13/1 13/15
card [5]  10/25 11/1 11/16 11/17 15/23
cards [1]  18/4
CARLTON [11]  1/8 3/5 3/13 8/14 8/17
8/24 8/25 9/4 14/5 15/12 15/25
case [28]
cash [1]  11/23
causation [1]  13/15
certainly [2]  7/9 18/8
certification [1]  9/8
certify [1]  20/4
challenged [1]  12/25
challenging [1]  4/6
chambers [2]  12/13 12/20
changed [1]  14/6
CHAPMAN [1]  2/16
charge [2]  6/3 11/18
charged [1]  8/14
charges [2]  8/15 8/18
check [1]  4/19
Chicago [2]  2/12
Circuit [2]  4/10 17/1

## C

circumstances [1]  7/14
Civil [1]  3/5
claim [1]  13/16
claimed [2]  10/12 15/3
claims [5]  5/11 8/13 9/23 18/13 18/22
class [10]  4/5 5/24 8/23 9/5 9/8 9/10
 10/6 14/19 15/6 16/9
clear [2]  17/23 19/11
client [1]  6/22
closed [1]  4/11
closest [1]  13/14
cocounsel [1]  3/8
COLEMAN [2]  2/6 3/9
colleague [1]  3/13
companies [1]  15/23
company [3]  1/8 3/5 11/1
compel [1]  17/6
complete [1]  18/1
completely [1]  4/24
comply [1]  12/11
connected [1]  8/11
connection [2]  4/1 5/13
consumerlawfirm.com [1]  2/4
contact [2]  12/13 12/20
contend [1]  12/1
convenient [1]  13/4
convince [1]  11/10
cooperative [1]  17/7
cooperatively [1]  17/6
correct [2]  3/18 12/1
corroborated [1]  6/20
could [8]  7/9 7/12 13/14 14/25 15/8
 15/12 15/21 17/13
couldn't [1]  15/25
counsel [2]  17/3 17/20
counsel's [1]  16/20
country [1]  7/15
couple [5]  4/11 13/7 16/19 16/20 17/4
course [2]  6/14 15/14
court [10]  1/1 2/22 3/19 3/21 7/8 12/12
 13/22 16/13 16/19 20/9
court's [1]  17/13
courts [1]  16/5
credibility [3]  6/24 15/3 15/8
credit [6]  10/25 11/1 11/16 11/17 15/23
 18/4
critically [1]  13/6
cross [1]  6/24
cross-examination [1]  6/24
CRR [2]  2/22 20/8
crying [1]  17/15
CSR [2]  2/22 20/8
currently [1]  13/22
customer [1]  8/24 8/25
customers [1]  8/18
CV [1]  1/2

## D

Dade [1]  4/7
damaged [2]  8/14 9/12
damages [6]  5/21 5/23 6/4 6/9 13/15
 13/18
dating [9]  14/2 14/3 14/4 14/7 14/10
 14/12 17/22 18/24 19/1
DAVID [2]  2/11 3/9
day [2]  5/5 18/17
days [1]  12/16
deaf [1]  17/15
deal [1]  17/15

decades [1]  14/6
December [2]  1/6 20/6
decision [1]  19/6
declarations [1]  9/10
defendant [7]  1/9 2/15 3/11 4/12 6/16
 8/6 18/6
defenses [4]  5/11 7/5 9/22 18/13
denied [3]  12/4 16/11 18/21
depo [1]  4/18
deponent [2]  6/14 7/13
depose [7]  6/18 8/22 8/23 10/22 11/11
 14/19 16/21
deposed [4]  7/12 7/16 9/18 16/9
deposition [26]
depositions [4]  6/17 7/22 14/17 16/6
despite [3]  10/5 10/14 10/19
destroyed [1]  10/18
detail [1]  9/6
determine [1]  8/21
did [15]  3/23 4/25 5/9 6/16 9/2 11/18
 11/20 12/1 14/2 14/7 14/10 16/21 17/20
 17/22 18/10
didn't [20]  6/18 7/4 8/1 8/22 8/23 8/24
 10/18 11/14 11/21 12/10 12/13 12/14
 12/16 12/19 12/20 15/3 15/19 16/2 16/22
 17/10
difference [1]  13/19
different [2]  7/1 16/17
digital [2]  1/11 20/5
diminish [1]  5/23
dine [1]  18/3
dined [6]  10/11 13/12 15/11 15/20 16/2
 18/5
dining [4]  10/13 10/19 13/13 14/20
direct [1]  6/12
disagree [2]  13/20 13/21
disclose [2]  7/4 15/19
disclosures [1]  5/6
discover [1]  13/5
discoverable [1]  18/15
discovery [14]  4/10 4/10 4/12 8/21 9/2
 9/14 10/11 13/24 15/20 15/21 16/24 17/2
 17/7 17/12
discuss [1]  7/23
disgorgement [2]  5/16 5/17
district [3]  1/1 1/1 13/22
dmarco [1]  2/13
do [19]  5/18 6/3 6/18 6/25 7/12 7/13 8/4
 9/13 9/17 11/5 11/6 11/10 11/21 13/4
 13/20 14/7 15/21 16/18 16/18 16/22
documents [1]  15/25
does [4]  8/6 9/17 14/22 19/7
doesn't [2]  7/16 15/5
doing [5]  7/7 11/8 11/19 19/5 19/5
dollar [2]  10/6 14/18
dollars [1]  10/7
don't [15]  5/25 6/23 7/1 7/11 7/13 9/18
 11/9 15/14 16/17 18/1 18/2 18/3 18/5
 18/18 19/4
done [1]  9/12
dozens [1]  14/17
during [2]  4/11 15/11

## E

each [1]  19/15
earliest [1]  12/21
early [1]  18/25
ears [1]  17/15
ecoleman [1]  2/9
Ed [1]  3/9

EDWARD [1]  2/6
effort [1]  8/2
Eleventh [2]  4/10 17/1
employee [1]  8/23
employees [1]  9/10
engage [2]  9/2 9/14
entitled [1]  20/6
especially [1]  6/15
ESQ [6]  2/2 2/6 2/6 2/11 2/15 2/16
even [11]  5/8 6/8 7/4 7/8 8/1 8/3 12/13
 15/19 15/25 18/14 19/10
event [2]  14/8 14/11
ever [1]  8/16
every [6]  7/13 7/21 18/2 18/3 18/7 18/7
Everything [1]  17/7
evidence [7]  6/8 6/10 9/13 10/21 10/24
 15/18 19/4
evidentiary [2]  9/15 10/4
exactly [2]  15/21 19/1
examination [1]  6/24
example [4]  13/16 15/2 15/3 16/8
except [1]  7/13
exception [1]  7/18
excuse [1]  6/3
exorbitant [1]  9/3
expenses [1]  10/7
experience [1]  5/2
experiences [2]  9/4 9/6
explained [1]  9/7
expose [3]  15/8 15/9 15/13
extent [1]  15/9

## F

fact [4]  5/4 7/4 8/1 16/22
failed [2]  10/14 12/6
failure [2]  9/13 12/11
falls [1]  17/15
false [2]  9/6 18/1
familiar [1]  17/21
FDUTPA [2]  4/8 13/15
few [1]  16/1
fighting [1]  19/15
file [2]  12/11 18/9
filed [5]  8/11 9/16 12/8 16/10 16/11
filing [1]  10/20
Finally [1]  5/19
find [2]  18/21 19/7
finding [1]  5/13
finds [1]  7/8
finish [1]  14/23
firm [1]  18/9
first [3]  3/6 5/14 16/21
five [1]  8/11
FLORIDA [5]  1/1 1/5 8/17 8/18 9/1
focused [1]  11/25
folks [1]  14/2
following [1]  3/2
foot [1]  8/16
forced [2]  9/14 16/3
forcing [1]  10/6
foregoing [1]  20/4
foul [1]  17/15
found [2]  10/17 15/11
four [8]  8/20 10/6 10/12 10/15 14/8
 14/18 16/22 16/25
FOX [3]  1/3 3/4 17/22
FRANCIS [4]  2/2 2/2 3/8 3/20
frank [1]  19/10
Friday [1]  8/12
full [1]  6/2

**F**

further [1]  16/15

**G**

GA [1]  2/17
game [1]  10/4
germane [2]  5/7 18/13
get [5]  6/14 6/18 7/8 11/15 11/25
gets [2]  6/3 6/16
getting [1]  11/14
girlfriend [3]  4/14 4/21 5/4
give [2]  7/23 8/9
given [1]  6/2
glaring [1]  18/23
gmail.com [2]  2/23 20/9
go [7]  3/22 5/21 7/2 7/17 9/6 14/23 15/1
going [13]  7/1 10/1 11/5 11/6 11/7 11/8
14/24 17/15 17/18 18/12 19/3 19/8 19/12
gone [1]  9/19
good [8]  3/3 3/7 3/10 3/12 3/15 3/22
6/13 19/14
got [3]  4/18 8/5 17/1
gotten [1]  6/10
granted [2]  6/6 6/7
gratuities [3]  4/7 5/17 11/17
gratuity [9]  4/19 5/22 6/2 8/15 10/8 10/16
10/22 13/17 13/19
Great [1]  4/20
grounds [1]  12/17
guys [1]  19/14

**H**

habits [7]  5/14 5/15 6/8 6/12 8/3 8/3
18/23
had [8]  4/19 5/10 10/12 12/24 12/25
17/7 17/11 18/15
hand [1]  9/2
happening [1]  8/4
happy [3]  3/21 6/5 17/17
harass [1]  14/17
has [13]  4/6 4/9 5/12 5/17 8/4 8/4 8/20
9/12 9/19 14/20 16/1 17/8 19/12
have [35]
haven't [1]  14/5
having [4]  6/25 8/16 10/19 16/3
he [42]
hear [3]  9/18 9/21 17/17
hearing [4]  1/11 10/3 10/4 16/18
held [1]  3/2
help [1]  15/13
helpful [1]  7/5
her [26]
Herbalife [1]  16/8
here [9]  3/4 3/11 3/25 10/2 10/3 11/4
11/14 16/10 18/12
hereby [1]  20/4
herring [1]  18/1
herself [1]  12/8
him [5]  6/10 8/2 8/14 11/15 18/25
himself [1]  1/4
his [19]  4/14 4/21 5/4 6/10 6/11 8/2 8/3
9/4 9/4 10/13 10/16 10/16 10/22 13/15
15/2 15/8 15/11 17/11 18/23
Holland [1]  17/5
Honor [21]
Honor's [4]  12/13 12/18 12/20 16/20
HONORABLE [1]  1/12
hotel [5]  1/8 3/5 8/23 8/25 9/10
hour [2]  13/2 13/3
hour-long [1]  13/2
how [1]  18/9
Howard [1]  2/7
HOWD [2]  2/16 3/13
hundreds [2]  10/7 15/24

**I**

I'm [7]  4/17 11/14 18/25 18/25 19/4
19/10 19/10
identified [6]  4/14 4/21 5/8 13/7 18/14
18/19
identify [3]  10/10 16/1 17/10
if [15]  5/21 6/8 6/15 7/7 8/3 11/21 11/22
13/16 13/24 14/23 17/12 17/18 18/4 18/8
18/14
IL [1]  2/12
immediately [1]  17/2
important [2]  8/10 12/23
imposed [1]  13/17
imposing [1]  8/18
imposition [1]  4/7
improper [3]  6/1 9/15 12/10
impugn [1]  15/2 15/8
in [60]
included [1]  18/16
including [1]  8/12
incredibly [1]  13/1
independent [2]  15/16 16/12
independently [1]  17/16
indicates [1]  18/24
information [14]  4/24 7/9 8/16 8/22 9/5
11/15 13/6 15/23 16/7 18/12 18/15 18/22
19/7 19/12
initial [1]  5/6
inquired [1]  6/9
interrogatories [2]  7/10 7/18
interview [1]  8/24
into [4]  9/6 11/18 16/3 16/17
intrusive [1]  7/7
involved [1]  17/18
irrelevant [1]  4/24
is [92]
isn't [1]  19/5
issue [4]  5/15 8/11 13/22 18/1
issues [1]  17/7
it [26]
it's [2]  4/9 15/4
its [1]  4/6

**J**

JAMES [1]  2/2
jemancari [2]  2/23 20/9
jfrancis [1]  2/4
Jim [2]  3/8 3/20
Joanne [3]  2/22 20/8 20/8
JOHN [1]  1/12
judge [4]  1/12 3/3 19/3 19/6
judgment [1]  9/8
just [15]  4/5 6/9 7/16 7/22 8/9 9/24 11/1
11/17 12/2 15/16 16/19 16/23 17/11
17/19 18/3

**K**

KABAT [1]  2/16
kcozlaw.com [2]  2/18 2/19
keep [3]  8/10 18/2 18/5
kind [1]  9/24
knew [1]  5/9
Knight [1]  17/5
know [11]  4/25 7/1 8/2 11/5 14/7 15/4
15/6 15/14 17/3 18/2 19/4

knowing [1]  13/7
knowledge [6]  5/10 9/1 9/10 14/20
16/4 18/19
knows [2]  5/2 18/9

**L**

lack [1]  10/10
last [12]  4/11 4/15 4/22 8/12 9/16 10/12
10/15 14/8 16/5 17/4 17/9 17/14
law [1]  6/1
lawsuit [6]  10/20 13/12 15/4 15/7 15/12
15/13
lawyer [1]  7/23
leaving [1]  11/22
led [2]  8/1 15/12
legal [2]  13/23 13/25
less [2]  7/7 16/7
less-intrusive [1]  7/7
let [5]  5/20 8/9 12/2 14/1 17/19
let's [1]  11/25 12/22
LEWIS [3]  2/6 2/7 3/8
lewissaul.com [2]  2/9 2/9
life [1]  13/3
like [2]  13/1 14/16
likely [1]  10/25
line [1]  3/14
list [2]  14/24 18/16
litany [1]  9/14
litigating [1]  16/25
litigation [1]  10/7
little [1]  8/9
live [1]  7/22
lived [1]  14/13
lives [1]  15/5
LLC [1]  1/8
LLP [1]  2/16
logic [1]  15/4
long [1]  13/2
longer [1]  11/7
look [2]  7/23 11/18
lot [1]  16/17
lsaul [1]  2/9
luck [1]  19/14

**M**

MAGISTRATE [1]  1/12
MAILMAN [1]  2/2
main [1]  13/8
make [3]  13/23 19/4 19/6
Mancari [3]  2/22 20/8 20/8
MARCO [2]  2/11 3/9
matter [2]  17/13 20/6
matters [3]  16/17 16/18 19/8
may [3]  18/21 19/1 19/7
maybe [3]  7/11 7/14 18/25
me [12]  3/8 3/23 5/20 6/3 8/9 11/9 11/10
12/2 14/1 15/1 17/19 19/11
mean [5]  4/18 7/16 14/15 16/8 16/16
means [1]  7/7
measure [1]  13/18
mediations [1]  17/8
member [2]  5/24 8/23
members [1]  9/10
members' [1]  9/5
mentioned [2]  9/25 17/10
menu [1]  10/10
Meredith [1]  4/3
MGC [1]  1/2
Miami [2]  1/5 4/7
Miami-Dade [1]  4/7

## M

MICHAEL [2]  1/3 3/4
might [3]  15/7 16/7 17/3
misled [2]  8/17 9/11
money [1]  9/3
Monroe [1]  2/12
month [4]  4/15 4/22 11/7 13/10
months [8]  16/24 16/24 16/24 16/24 17/4
 17/9 17/12 17/12
more [3]  10/9 13/16 14/24
morning [3]  3/3 3/7 3/12
most [4]  10/25 12/22 13/4 18/23
motion [18]  1/11 4/1 4/1 5/7 6/6 6/7 8/12
 9/7 9/16 9/25 11/6 11/9 11/10 12/10
 16/10 17/16 18/20 19/11
motions [4]  8/11 13/23 17/6 18/9
Mr. [4]  15/10 16/23 17/11 17/22
Mr. Fox [1]  17/22
Mr. Saul [1]  15/10
Mr. Watstein [2]  16/23 17/11
Ms. [7]  4/13 12/6 13/3 15/3 16/14 17/22
 18/21
Ms. Silverman [7]  4/13 12/6 13/3 15/3
 16/14 17/22 18/21
much [1]  16/7
multimillion [1]  10/5 14/18
my [6]  3/8 3/13 6/22 14/5 19/13 20/5

## N

name [1]  4/3
named [3]  10/5 14/20 15/6
narrowly [1]  13/5
need [2]  6/22 11/10
needing [1]  10/21
never [3]  5/8 18/10 18/14
new [3]  2/8 5/6 18/17
no [18]  1/2 3/5 6/2 6/18 7/20 7/25 8/21
 8/21 9/11 10/12 11/7 11/20 11/23 14/9
 14/9 17/6 17/6 18/6
nonappearance [1]  12/12
nonissue [2]  18/1 18/8
normal [2]  7/17 10/16
not [30]
note [1]  9/9
nothing [5]  5/2 5/18 6/16 8/4 9/12
notice [5]  6/2 8/15 8/18 10/10 12/12
noticed [1]  12/25
November [2]  4/11 12/9
now [2]  5/4 8/4
number [4]  5/14 12/6 12/15 12/16
numerous [1]  13/12
NW [1]  2/17
NY [1]  2/8

## O

O'SULLIVAN [2]  1/12 3/3
objection [1]  12/8
obtained [1]  9/9
obtaining [1]  15/18
occur [1]  19/13
occurrence [1]  12/17
off [1]  11/5
OK [10]  3/10 3/15 3/22 3/25 12/5 14/1
 14/14 15/1 16/15 18/20
on [17]  1/4 3/14 4/11 5/20 8/15 9/2 9/6
 9/19 10/7 10/10 11/4 11/17 11/25 12/19
 13/15 17/15 18/17
one [13]  4/23 5/14 6/24 9/11 10/12 12/6
 12/15 14/10 14/18 14/20 15/10 16/4 16/8
only [4]  14/15 14/19 17/3 18/4

or [30]
order [4]  4/2 6/7 12/18 18/21
ordinance [1]  4/8
other [14]  5/21 6/17 6/19 9/2 10/20 12/1
 13/9 14/19 15/5 15/19 17/14 17/25 18/17
 19/15
others [1]  1/4
otherwise [4]  9/19 10/9 10/25 18/19
our [8]  9/7 9/8 9/13 9/15 10/14 13/25
 17/16 17/18
out [7]  5/3 5/14 10/17 10/19 13/3 15/11
 15/16
outlined [1]  9/15
over [5]  9/9 10/15 10/19 10/20 13/9
own [2]  9/3 17/16
OZMER [1]  2/16

## P

P.C [3]  2/2 2/7 2/11
PA [1]  2/3
pages [3]  1/9 9/9 15/25
paid [3]  10/8 10/25 13/20
part [1]  5/1
particular [4]  5/7 10/3 16/18 18/22
party [5]  4/3 4/13 6/15 10/22 16/6
patently [1]  9/6
pending [4]  8/20 9/7 9/16 13/23
people [1]  6/19
people's [1]  6/24
percent [4]  5/22 5/23 8/14 13/17
period [1]  4/25
permit [1]  16/6
permitted [1]  11/11
person [7]  5/8 6/19 7/14 13/14 14/19
 14/20 16/4
personal [1]  9/11
persuasive [1]  6/21
Philadelphia [1]  2/3
piece [1]  10/3
plaintiff [24]
plaintiff's [14]  4/14 5/14 5/15 5/18 6/8 9/3
 9/22 12/3 13/13 14/16 14/20 15/9 15/10
 16/9
please [1]  3/24
point [3]  5/3 5/21 15/16
pointed [1]  17/20
points [1]  17/25
possess [1]  16/8
possible [1]  8/10
potential [1]  16/7
potentially [1]  15/8
pouring [1]  16/23
practices [8]  5/18 10/8 10/13 10/16
 10/22 13/13 14/5 14/21
preserve [3]  10/18 16/2 18/7
pretty [1]  19/11
prevented [1]  15/18
Prior [1]  17/4
problem [1]  3/17
proceed [1]  3/23
proceedings [1]  3/2
produce [1]  10/14
promptly [1]  17/2
properly [2]  12/25 12/25
propound [1]  7/9
prosecuting [1]  16/25
protective [4]  4/2 6/7 18/21
prove [2]  9/3 13/15
provide [2]  15/24 18/12
provides [1]  6/1

providing [1]  8/15
purpose [1]  9/23
pursuant [2]  5/9 7/10
putative [1]  16/9
putting [1]  5/22

## Q

quash [4]  4/1 6/6 16/10 18/20
question [5]  4/20 5/20 8/2 14/1 17/20
questions [4]  6/11 7/19 7/22 16/20
quick [1]  4/5
quoting [1]  18/25

## R

raising [1]  12/8
rather [1]  11/25
reason [6]  5/11 6/6 7/12 14/15 15/17
 17/9
reasons [4]  4/23 12/3 13/8 16/12
rebut [1]  9/12
receipt [6]  10/15 10/19 11/21 11/22 18/2
 18/7
receipts [2]  16/2 18/5
record [2]  11/23 17/23
recording [2]  1/11 20/6
red [1]  18/1
refused [2]  10/10 15/23
regular [1]  10/22
related [1]  12/3
relates [1]  10/4
relating [1]  4/25
relationship [1]  15/9
relevant [14]  6/4 6/9 8/3 9/22 10/2 11/11
 13/6 13/8 14/25 16/7 18/22 19/5 19/8
 19/12
relief [4]  12/4 12/7 12/16 12/17
remembers [1]  11/23
remote [2]  13/2 16/13
Reporter [2]  2/22 20/9
request [3]  10/14 12/3 18/6
requesting [1]  12/7
required [1]  12/17
respond [2]  16/19 17/19
responses [3]  10/11 15/20 17/12
restaurant [6]  10/10 10/11 10/15 10/18
 18/3 18/7
restaurants [5]  8/19 15/20 15/22 16/1
 17/11
result [2]  9/13 10/9
returned [1]  6/3
reversal [1]  17/1
right [5]  3/16 3/16 11/3 14/22 18/20
RITZ [18]  1/8 3/4 3/13 4/6 4/12 4/23 5/5
 5/12 8/14 8/17 8/17 8/24 8/24 9/2 9/4
 14/5 15/11 15/25
RITZ-CARLTON [1]  1/8
Rodgers [1]  16/8
routinely [3]  8/17 13/16 16/5
RPR [2]  2/22 20/8
Rule [3]  5/9 7/5 7/10
rules [1]  12/12
ruling [1]  19/13
running [2]  7/15 7/15
rwatstein [1]  2/18
RYAN [3]  2/15 3/12 8/7

## S

said [9]  6/18 6/22 6/25 7/3 8/15 11/16
 16/23 17/11 18/14
sanctions [6]  8/12 9/16 11/6 11/8 11/9

## S

sanctions... [1] 17/16
SAUL [4] 2/6 2/7 3/9 15/10
say [7] 4/17 7/1 8/6 13/18 14/22 15/7 16/5
saying [1] 6/19
says [1] 6/16
scheduled [1] 12/9
see [3] 6/19 11/1 18/5
seek [1] 12/16
seeking [1] 5/13
seeks [1] 4/24
seem [1] 11/4
seems [1] 19/11
send [2] 7/22 15/22
served [5] 4/2 4/12 5/5 15/21 18/17
service [1] 6/3
set [2] 3/16 9/25
setup [1] 15/13
seven [1] 12/3
several [3] 14/3 14/12 15/5
she [20] 4/21 5/1 5/1 5/2 5/4 5/4 5/10 7/1 7/12 7/16 8/1 13/12 13/13 15/7 16/10 18/12 18/15 18/18 19/7 19/11
shell [1] 10/4
short [4] 8/10 13/1 16/13 19/12
shortly [1] 19/2
should [7] 6/6 7/18 9/18 11/11 12/4 15/17 16/13
shouldn't [2] 6/17 7/12
show [6] 9/11 10/16 10/21 12/14 13/1 13/15
sick [1] 7/14
side [1] 13/9
sides [1] 17/5
signed [1] 11/2
significant [1] 15/5
Silverman [8] 4/4 4/13 12/6 13/3 15/3 16/14 17/22 18/21
similarly [1] 1/4
since [1] 10/20
single [8] 8/23 8/23 8/24 8/24 10/11 10/15 10/18 12/8
situated [1] 1/4
situation [1] 16/3
situations [1] 16/6
skip [1] 12/22
Skipping [1] 10/2
SMITHMARCO [1] 2/11
smithmarco.com [1] 2/13
so [32]
sole [1] 10/21
some [6] 4/5 7/17 13/11 14/24 17/14 17/25
somebody [1] 5/10
something [1] 6/25
sooner [1] 15/18
sorry [2] 4/17 17/17
source [2] 6/12 6/25
sources [1] 15/19
South [1] 2/3
SOUTHERN [1] 1/1
special [1] 7/13
spend [1] 10/6
spending [1] 9/3
spoil [1] 11/21
spoliated [1] 10/21
spoliation [4] 11/4 11/20 17/25 18/9
spouse [1] 16/9
standing [3] 12/10 12/18 12/24

start [3] 14/2 14/7 14/10
started [2] 15/3 15/2
State [1] 8/25
statements [1] 16/20
STATES [2] 1/1 1/12
stay [2] 15/11 15/12
stepped [1] 8/16
Stop [1] 19/15
strange [1] 15/4
Street [4] 2/3 2/7 2/12 2/17
stricken [1] 12/11
stuff [1] 18/4
subpoena [7] 4/1 4/2 4/12 4/16 4/24 5/5 11/1
subpoena's [1] 13/5
subpoenaed [1] 18/18
subpoenas [1] 15/22
substance [1] 12/22
Substantively [1] 12/24
sudden [1] 17/8
suggested [1] 15/22
summary [1] 9/8
supplemented [2] 5/6 18/16
support [1] 13/24
sure [4] 9/20 11/13 19/1 19/4
surprised [1] 19/10

## T

tactics [1] 9/15
tailored [1] 13/5
take [11] 6/17 6/22 7/6 7/22 13/3 13/24 15/14 15/17 16/1 16/3 16/13
taken [3] 4/10 14/18 17/8
taking [1] 12/18
tangential [1] 16/17
telephone [1] 3/2
tell [3] 11/6 12/2 15/1
telling [2] 13/9 17/17
terms [1] 17/25
test [1] 6/14
testifying [1] 18/11
testimony [6] 11/11 13/8 13/14 14/25 17/21 17/21
than [4] 10/9 11/25 13/16 17/14
Thank [2] 19/16 19/17
that [115]
That's [2] 14/21 17/22
their [5] 5/6 5/12 7/5 9/13 15/19
them [6] 7/8 7/22 7/23 7/24 12/18 14/17
then [8] 4/25 5/5 7/23 10/16 11/20 12/2 15/1 15/16
there [14] 6/1 6/5 7/7 7/8 7/11 7/17 11/23 14/15 15/7 16/6 17/6 17/6 18/6 18/8
thereafter [1] 19/2
Thereupon [1] 2/24
these [4] 8/18 11/25 14/2 16/12
they [48]
thing [2] 16/5 18/4
things [2] 12/1 15/7
think [16] 5/9 5/25 6/1 6/4 6/5 6/23 7/3 7/4 7/5 8/1 11/5 11/18 12/3 13/8 16/17 18/18
third [4] 4/3 4/13 10/22 16/6
third-party [1] 16/6
this [48]
those [3] 6/11 18/5 18/9
though [1] 5/8
thought [2] 18/8 18/15
thousands [2] 10/7 15/24

three [1] 17/8
through [2] 15/18 16/23
throughout [1] 8/25
time [10] 4/15 4/17 4/18 4/18 4/21 4/22 4/25 8/2 8/4 16/1
times [3] 10/19 10/20 13/12
tip [2] 11/21 11/23
tipped [1] 5/23
tipping [11] 5/14 5/15 5/18 6/8 6/11 8/2 8/3 10/13 13/13 14/5 18/23
tips [2] 5/16 13/16
today [4] 3/4 10/2 11/8 16/19
today's [1] 10/4
together [1] 14/13
told [1] 12/18
took [5] 8/21 10/16 12/12 14/16 17/1
total [1] 11/17
totally [1] 7/25
transaction [1] 5/2
TRANSCRIBED [2] 1/11 2/22
transcript [1] 17/24
transcription [1] 20/5
trial [1] 19/6
true [6] 6/23 8/22 15/9 16/21
truthful [1] 6/20
try [1] 8/10
trying [1] 14/17
two [5] 12/16 14/6 14/13 17/9 17/14

## U

ultimately [1] 10/1
under [1] 7/5
understand [4] 7/11 7/20 7/25 14/4
Understood [2] 9/24 11/13
undisputed [1] 13/11
UNITED [2] 1/1 1/12
unless [1] 7/17
unlike [1] 16/10
until [5] 12/13 12/20 15/14 17/14 17/22
up [5] 6/16 9/25 11/9 12/14 14/23
upon [2] 4/3 4/12
us [6] 5/12 10/6 10/21 16/13 17/17 18/17

## V

various [1] 15/7
veer [1] 17/8
veered [1] 16/16
veering [1] 11/5
veracity [1] 6/14
very [7] 6/13 6/21 7/13 15/12 17/5 17/7 19/10
violation [1] 4/7
virtually [1] 8/21
visited [1] 14/5
voluntary [1] 5/16

## W

waiting [1] 17/14
want [8] 3/23 7/16 9/18 9/21 13/24 14/19 14/23 18/4
wanted [1] 9/24
wants [2] 3/19 11/22
warm [1] 11/9
was [27]
wasn't [3] 5/1 5/4 12/1
WATSTEIN [5] 2/15 3/13 8/16 16/23 17/11
way [8] 4/5 6/25 7/17 11/14 11/15 13/2 17/16 19/15
ways [2] 13/11 14/25

**W**

we [53]
we're [2]  13/24 17/2
week [2]  9/16 14/8
weeks [2]  4/11 17/14
well [11]  3/14 4/8 9/4 10/24 11/3 11/17
 13/11 14/24 15/2 17/11 18/9
were [11]  3/2 6/12 8/3 8/22 9/6 10/23
 14/4 15/18 17/5 17/6 17/6
weren't [1]  4/25
what [23]
whatever [5]  8/2 8/3 11/22 11/23 17/9
when [8]  4/17 6/15 6/22 8/14 10/16 14/2
 14/4 14/7
whenever [1]  13/4
where [6]  6/1 7/14 16/6 16/9 16/11 18/5
whether [5]  6/19 8/21 9/17 10/8 19/3
which [7]  8/1 9/11 9/15 9/16 12/9 15/21
 15/22
while [2]  4/9 5/20
who [9]  3/11 3/19 4/13 4/13 5/10 6/25
 14/20 15/5 15/10
whole [2]  6/23 15/13
why [13]  6/6 7/12 7/18 7/22 8/1 9/21
 10/2 10/17 11/7 11/10 11/11 12/3 13/8
will [5]  8/10 9/9 11/1 11/6 19/6
within [4]  4/15 4/22 12/16 17/4
without [5]  8/15 8/16 8/18 10/21 12/7
witness [6]  5/8 7/4 7/21 18/11 18/14
 18/18
witnesses [3]  5/6 18/16 18/17
woman [2]  9/18 9/21
woman's [1]  11/10
won't [1]  9/6
words [2]  5/21 10/20
working [2]  11/7 17/5
would [16]  5/3 5/22 7/5 7/21 10/9 10/15
 10/21 12/18 13/2 13/3 13/19 15/8 15/16
 16/5 18/15 18/19
wouldn't [2]  5/21 5/23
written [4]  7/9 7/18 7/18 16/23
wrong [2]  6/16 6/18

**Y**

year [3]  14/11 18/3 18/3
years [12]  8/20 10/6 10/12 10/15 14/4
 14/8 14/12 14/13 14/18 15/5 16/22 17/1
Yes [6]  3/7 3/24 8/7 12/2 15/2 16/16
York [1]  2/8
you [34]
you're [1]  17/18
your [28]