UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 17-CV-24284-COOKE

MICHAEL FOX,
on behalf of himself and all
others similarly situated,

      Plaintiff,

v.

THE RITZ-CARLTON HOTEL
COMPANY, LLC,

      Defendant.

_____/

## REPORT & RECOMMENDATION ON
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 98]

THIS CAUSE is before the Court on Defendant, Ritz-Carlton's ("Defendant" or "Ritz-Carlton"), Motion for Summary Judgment (the "Motion"), filed December 3, 2021. [ECF No. 98]. This matter is before the undersigned pursuant to an Endorsed Order of Referral by United States District Judge Marcia G. Cooke. [ECF No. 123]. *See* 28 U.S.C.§ 636(b)(1)(B).

The undersigned has considered the Motion, the Response [ECF No. 107 (the "Response")], and the Reply thereto [ECF No. 120 (the "Reply")], as well as the documents submitted in support of the parties' filings, including Ritz-Carlton's Statement of Material Facts ("Ritz SMF") and Mr. Fox's Responses thereto ("Fox SMF") [ECF Nos. 99, 108], the pertinent portions of the record, and all relevant authorities, and is otherwise fully advised in the premises. For the following reasons, the undersigned recommends that Defendant's Motion for Summary Judgment [ECF No. 98] be granted in part and denied in part.

## I.   BACKGROUND

Plaintiff, Michael Fox ("Plaintiff" or "Mr. Fox"), filed this consumer class action on behalf of himself and all others similarly situated against Ritz-Carlton for its alleged violations of the Florida Unfair and Deceptive Trade Practices Act, Section 501.202, *et seq.*, Florida Statutes ("FDUTPA"), based on violations of Section 509.214 of the Florida Statutes, which requires every public food establishment[1] that includes an automatic gratuity or service charge in the price of the meal to provide notice of the automatic gratuity on both the food menu and on the face of the bill provided to the customer, and of Section 8A-110.1 of the Miami-Dade County Code, which requires that if a restaurant in Miami-Dade County adds an automatic tip, it must post a notice "conspicuously, either on a sign or in a statement on the business's menu or price listing in the same form and manner as the other items on the menu or price listing, and written in a legible manner in English, Spanish and Creole."

Counts One and Two of the Amended Complaint allege *per se* and traditional violations of FDUTPA, respectively, for Ritz-Carlton's alleged violations of Section 509.214, and Counts Four and Five seek a declaratory judgment and injunctive relief under FDUTPA, respectively.[2] [ECF No. 18].

Ritz-Carlton avers that it is entitled to summary judgment as to all of Plaintiff's claims in the Amended Complaint.

---

[1] "Public food service establishment" means any building, vehicle, place, or structure, or any room or division in a building, vehicle, place, or structure where food is prepared, served, or sold for immediate consumption on or in the vicinity of the premises; called for or taken out by customers; or prepared prior to being delivered to another location for consumption. Fla. Stat. § 509.013.

[2] Count Three, alleging violations of the Florida Administrative Code, was dismissed. *See* ECF Nos. 31, 39.

The background and facts relevant to Mr. Fox's allegations in this lawsuit are detailed in previous orders entered by the undersigned. *See* ECF Nos. 127, 130-132. Only those facts relevant to the determination of the Motion now before the Court are set forth below.

### A.  Relevant Material Facts

From April 4 through April 7, 2017, Mr. Fox stayed at the Ritz-Carlton Key Biscayne in Miami, Florida, and, while there, he ordered food and beverages from three separate public food service establishments located on the hotel property: Lightkeepers, Cantina Beach, and Key Pantry. Ritz SMF at ¶ 9. It is undisputed that during the time Mr. Fox stayed at the Ritz-Carlton Key Biscayne, all food and beverage outlets on the property added an 18% automatic suggested gratuity (which appears on bills presented to customers as an "18% Service Charge" or "Added Grat %") to all bills. Ritz SMF at ¶¶ 1, 22, 30; Fox SMF at ¶ 1. Ritz-Carlton claims that since it began adding the automatic gratuity, it has been the policy and practice of all Ritz-Carlton Key Biscayne restaurants to give customers notice of the automatic gratuity on menus, bills, and receipts. Ritz SMF at ¶ 3. Mr. Fox disputes that Ritz-Carlton Key Biscayne gives notice on all menus, bills, and receipts on grounds that at least one menu in use during his stay did not provide any notice of the automatic gratuity and that the notices that were given were inadequate. Fox SMF at ¶ 4.

It is undisputed that Mr. Fox did not ask to modify or remove the automatic gratuities either at the time he signed his bills (in which he charged his meals to his room) or at the time he checked out of the hotel and paid his final bill. Ritz SMF at ¶¶ 35, 39; Fox SMF at ¶¶ 35-40. And Mr. Fox does not dispute that by the time he checked out of the hotel, he was aware that automatic gratuities had been added to his restaurant checks. Ritz SMF at ¶ 38; Fox SMF at ¶ 38. Mr. Fox does dispute, however, whether he was aware that there was anything he

could do about the charges or whether it was possible to have them removed from his restaurant bills or his final hotel bill. Fox SMF at ¶¶ 36-40.

Mr. Fox alleges that each of the Ritz-Carlton Key Biscayne establishments failed to provide adequate notice of automatic gratuities or services charges on its menus and bills in violation of Section 509.214, Florida Statutes, and Section 8A-110.1 of the Miami-Dade County Code. Mot. at 3.

### B. Procedural Background

Mr. Fox filed the original complaint on November 28, 2017, and, after Ritz-Carlton filed a motion to dismiss, Fox filed the operative Amended Complaint on February 15, 2018. [ECF No. 17]. On January 22, 2019, District Judge James Lawrence King dismissed the case *sua sponte* for lack of subject-matter jurisdiction on grounds Mr. Fox lacked standing to sue on behalf of customers who paid automatic gratuities at Ritz-Carlton restaurants that Mr. Fox did not visit and because Mr. Fox's class claims did not meet the $5 million threshold amount of damages for jurisdiction under the Class Action Fairness Act ("CAFA"). [ECF No. 31]. Mr. Fox appealed the dismissal order. [ECF No. 32].

The United States Court of Appeals for the Eleventh Circuit reversed the order dismissing Counts One, Two, Four, and Five, affirmed the dismissal of Count Three, and remanded the case for further proceedings. *See* ECF No. 39 at 22. The Eleventh Circuit held that Mr. Fox had alleged standing for each of his claims because he alleged he was injured by the Ritz-Carlton when it charged him illegal automatic gratuities. *Id.* at 12. The Eleventh Circuit also held that Mr. Fox has standing to bring claims on behalf of the class even though he himself did not dine at the other Ritz-Carlton restaurants in Florida because his alleged injuries and the injuries allegedly suffered by the class are identical. *Id.* at 12-13. The court

also held that Mr. Fox sufficiently alleged, in good faith, that the class damages were more than $5 million. *Id.* at 16.

The case was reassigned to Judge Cooke after remand. [ECF No. 41].

On December 3, 2021, both parties filed motions for summary judgment. [ECF Nos. 92, 98]. In his Motion for Partial Summary Judgment [ECF No. 98], Mr. Fox argued that he is entitled to judgment as a matter of law as to his claims based on violations of the Miami-Dade County Ordinance because it is undisputed that Ritz-Carlton's menus used during the time Mr. Fox visited the Key Biscayne restaurants did not comply with the requirements of the County Ordinance by failing, for example, to include notices of the gratuities in the same form and manner as the items listed on its menus. In a separate Report and Recommendation, the undersigned recommended denying Mr. Fox's Motion because the County Ordinance is preempted by state law and, therefore, cannot serve as a predicate for a FDUTPA claim. [ECF No. 135 at 9].

In the Motion now at issue, Ritz-Carlton moves for summary judgment as to all of Mr. Fox's claims. *See* Mot. at 1-2.

## II.     APPLICABLE LEGAL STANDARDS

### A.  *Summary Judgment*

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* In reviewing a motion for summary judgment, the Court is "required to view the evidence and all factual inferences therefrom in the light most favorable to the non-moving party, and

resolve all reasonable doubts about the facts in favor of the non-movant." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013) (quoting *Skop v. City of Atlanta*, 485 F.3d 1130, 1143 (11th Cir. 2007)). Importantly, "at the summary judgment stage the judge's function is not himself [or herself] to weigh the evidence and determine the truth of the matter," but only "to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Summary judgment may be appropriate where the only issue presented is purely a question of law. *See Austin v. Judge*, 851 F. App'x. 173, 174 (11th Cir. 2021) (citing *Groendyke Transp., Inc. v. Davis*, 406 F.2d 1158, 1162 (5th Cir. 1969)).

### B. FDUTPA

The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") provides: "Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Fla. Stat. § 501.204(1). FDUTPA provides for individual rights of action to "obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part." Fla. Stat. § 501.204(1).

To prevail on a FDUTPA claim, a plaintiff must show (1) a deceptive act or unfair practice, (2) causation, and (3) actual damages. *Dolphin LLC v. WCI Communities, Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013). "The first element may be satisfied in one of two ways: a *per se* violation or a traditional violation." *State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1326 (S.D. Fla. 2017) (Moore, C.J.) (citing *Parr v. Maesbury Homes*, Inc., No. 609CV-1268-ORL-19GJK, 2009 WL 5171770, at *7 (M.D. Fla. Dec. 22, 2009)). A traditional violation requires a showing that a defendant "engaged in '[u]nfair methods of competition, unconscionable acts or practices, and unfair or

deceptive acts or practices in the conduct of any trade or commerce.'" *State Farm Mut. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 315 F. Supp. 3d 1291, 1300 (S.D. Fla. 2018) (citing *Hucke v. Kubra Data Transfer, Corp.*, 160 F. Supp. 3d 1320, 1328 (S.D. Fla. 2015) and Fla. Stat. § 501.204(10)).

"A *per se* violation is established in one of two ways: (1) if the 'law, statute, rule, regulation, or ordinance' expressly constitutes a violation of the FDUTPA or (2) the statute, rule, or ordinance proscribes unconscionable, deceptive, or unfair acts or practices and therefore operates as an implied FDUTPA predicate." *Id.* (citing Fla. Stat. § 501.203(3)(c)).

Here, Ritz-Carlton argues that Mr. Fox fails to adequately allege either a *per se* violation or a traditional violation of FDUTPA.

## III.   DISCUSSION

Ritz-Carlton argues that it is entitled to judgment as a matter of law as to all of Mr. Fox's claims on four grounds: First, Ritz-Carlton claims that FDUTPA's safe harbor provision bars all of Mr. Fox's claims because Ritz-Carlton disclosed the automatic gratuity on its menus and bills as required by State law. Mot. at 1. Second, Ritz-Carlton alleges that the undisputed evidence confirms that Mr. Fox cannot prove any of his his FDUTPA claims for various reasons. *Id.* at 1-2. Third, Ritz-Carlton asserts that all of Mr. Fox's claims are barred by Florida's voluntary payment doctrine, which precludes recovery of sums paid voluntarily with full knowledge of the surrounding circumstances. *Id.* at 3. Fourth, Ritz-Carlton argues that Mr. Fox lacks Article III standing to bring his claims. *Id.* The undersigned addresses each argument in turn. Because the fourth issue raised by Ritz-Carlton, lack of standing, goes to this Court's jurisdiction, the undersigned addresses it first. *See Stalley ex rel.*

*United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (the issue of standing is jurisdictional).

### A. Whether Mr. Fox Has Standing

Ritz-Carlton argues that it is entitled to summary judgment because Mr. Fox lacks Article III standing to bring the claims asserted because he cannot show that he suffered a concrete and particularized injury that is fairly traceable to Ritz-Carlton. Mot at 18-19. Mr. Fox responds that because his claims are based on amounts he involuntarily paid as the result of Ritz-Carlton charging him automatic gratuities without adequate notice, he suffered economic injuries which qualify as concrete injuries for purposes of Article III standing. Resp. at 14. He also argues that this issue was already addressed and resolved by the Eleventh Circuit's decision in this case. *Id.* In its Reply, Ritz-Carlton contends the Eleventh Circuit did not address the same standing issue raised here (Mr. Fox's own standing), but, instead, only addressed Mr. Fox's standing to assert claims on behalf of the class. Reply at 10 n.10.

Article III of the Constitution limits the Court's authority to deciding "Cases" and "Controversies." U.S. Const. art. III, § 2. "[T]he traditional understanding of a case or controversy" requires a plaintiff to demonstrate "[s]tanding to sue." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To satisfy the individual standing prerequisites of the case or controversy requirement, a plaintiff must show: "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).

As Ritz-Carlton contends, the issue before the Eleventh Circuit was whether Mr. Fox has standing to represent class members who paid automatic gratuities at Ritz-Carlton

8

restaurants that Mr. Fox did not personally visit. *See Fox v. Ritz-Carlton Hotel Co., LLC*, 977 F.3d 1039, 1046-47 (11th Cir. 2020). However, in reaching its decision regarding whether Mr. Fox had standing to represent the class, the court explained: "[T]o determine whether a class representative has standing to represent a class . . .  the class representative must [first] satisfy the individual standing prerequisites of the case or controversy requirement." *Id*. at 1046 (internal quotations omitted).

The Eleventh Circuit further explained, "No one disputes that Fox suffered an individual injury-in-fact fairly traceable to Ritz-Carlton's allegedly deceptive practices" and that a "favorable judicial decision would likely redress that injury by awarding Fox damages against Ritz-Carlton." *Id*. at 1047. Thus, contrary to Ritz-Carlton's assertion, the Eleventh Circuit did find, based on Mr. Fox's allegations in the Amended Complaint, that Mr. Fox has demonstrated individual standing to bring the claims asserted.

That being said, the Eleventh Circuit's analysis was based solely on the pleadings, whereas the issue is now before the Court on a motion for summary judgment. "In response to a summary judgment motion . . . the plaintiff can no longer rest on . . . mere allegations, but must 'set forth' by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (internal quotations omitted). Thus, consideration of Mr. Fox's evidence regarding whether he has individual standing is warranted.

Mr. Fox argues he suffered an economic injury as the result of the involuntary payment of automatic gratuity charges of which he claims he was given inadequate notice. *See* Response at 12. The Eleventh Circuit has already determined that this type of injury is sufficient to establish standing under Article III of the Constitution. *Fox*, 977 F.3d at 1047

(citing *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1084 (11th Cir. 2019) ("Certainly, an economic injury qualifies as a concrete injury."). The issue now before the Court, then, is whether Mr. Fox has set forth, by affidavits and other evidence, facts to support his claim of economic injury.

In support of his claim of economic injury, Mr. Fox cites his own deposition testimony and receipts from his stay. *See* Exhibit K to Declaration of James A. Francis in Support of Plaintiff's Opposition to Defendant Motion for Sanctions [ECF No. 114-1] (excerpts of the deposition transcript of Plaintiff Michael Fox), at 77:14-78:12, 80:21-81:04, 91:19-92:25, 105:08-19, 179:05-10; Declaration of Michael Fox in Support of Plaintiff's Reply in Support of Class Certification [ECF No. 85-9] at ¶¶ 15-16, 19-21; and Exhibits 3 & 5 to the Declaration of James A. Francis in Support of Plaintiff's Motion for Class Certification [ECF Nos. 67-3, 67-5] (receipts from Mr. Fox's meals at Ritz-Carlton restaurants)). The undersigned finds that the evidence presented by Mr. Fox does support his allegations of economic injuries.

It is undisputed that Mr. Fox dined at Ritz-Carlton Key Biscayne restaurants and that he was charged automatic gratuities at those restaurants. Therefore, Mr. Fox's alleged injuries are traceable to Ritz-Carlton because they occurred at Ritz-Carlton's restaurants. Moreover, Mr. Fox's injuries may be redressed by a favorable decision requiring the return of the charges paid. *See Fox*, 977 F.3d at 1047 (citing *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012) ("Plaintiffs allege a monetary injury and an award of compensatory damages would redress that injury.")); *see also Fox v. Loews Corp.*, 309 F. Supp. 3d 1241, 1247 (S.D. Fla. 2018) (Altonaga, J.) (holding that involuntary payment of improperly disclosed automatic gratuities may be fairly traceable to hotel that imposed the charges (citing *Deere Constr., LLC v. Cemex Constr. Materials Fla., LLC*, 198 F. Supp. 3d 1332, 1340 (S.D. Fla. 2016)). Thus, although there

may be a dispute regarding whether Mr. Fox was given proper or adequate notice of the automatic gratuities and whether he could have avoided injury by not paying those gratuities, there is no dispute that he has incurred economic injuries traceable to Ritz-Carlton that may be redressed by a favorable decision requiring the return of the charges paid. Moreover, as a matter of law, the type of injury he alleges is sufficient to establish standing under Article III of the Constitution.  *See Debernardis*, 942 F.3d at 1084.

Therefore, the undersigned recommends that Ritz-Carlton's Motion for Summary Judgment be denied insofar as it is based on the argument that Mr. Fox lacks standing to assert the claims in the Amended Complaint.

### B.  *Whether FDUTPA's Safe Harbor Provision Applies To Bar Mr. Fox's Claims*

Ritz-Carlton argues that there is no dispute that it complied with Section 509.214, Florida Statutes, by giving notice on its menus and customer checks of the automatic gratuity, and that, therefore, FDUTPA's safe harbor provision applies and bars Mr. Fox's FDUTPA claims. Motion at 8-9. In response, Mr. Fox argues that the safe harbor provision does not apply to the conduct that he challenges as deceptive in this case. Resp. at 6.

### 1.  FDUPTA's Safe Harbor

The FDUTPA contains a safe harbor provision that provides that the Act does not apply to "[a]n act or practice required or specifically permitted by federal or state law." Fla. Stat. § 501.212(1). In *Ezcurra v. Monsanto Co.*, 9:20-CV-80524, 2020 WL 5491428 (S.D. Fla. Aug. 7, 2020) (Middlebrooks, J.), the court observed that there is not a significant amount of caselaw on FDUTPA's safe harbor provision, and most caselaw that does exist addresses whether labels or statements (typically advertisements) approved by government agencies may serve as the basis for FDUTPA claims. More often than not, the answer is "no"—

because those labels and statements were pre-approved by a government agency and fall within a heavily regulated industry and are thus considered to have been "specifically permitted by federal or state law." *See, e.g., Kuenzig v. Hormel Foods Corp.*, 505 F. App'x 937 (11th Cir. 2013) (affirming dismissal of FDUTPA claim pursuant to safe harbor provision where challenged labels complied with federal regulations and were approved by the FDA).

Courts in Florida have applied FDUTPA's safe harbor provision to bar claims in other contexts not involving approval of labels by state or federal agencies. *See, e.g., Eirman v. Olde Discount Corp.*, 697 So. 2d 865 (Fla. 4th DCA 1997) (affirming dismissal of FDUTPA claim based on defendant's "deceptive omission" to disclose that he retained "order flow payments" because, at the time, receipt of order flow payments was permitted by federal law); *3B TV, Inc. v. State, Office of Atty. Gen.*, 794 So. 2d 744, 748 (Fla. 1st DCA 2001) (lawful game promotion under Florida law cannot constitute a FDUTPA violation because of safe harbor provision).

The moving party (that is, the party seeking to invoke the safe harbor provision) carries the burden of demonstrating that the challenged conduct falls within the safe harbor. *See State of Fla., Off. of Atty. Gen., Dep't of Legal Affs. v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288, 1310 (S.D. Fla. 2005) (Seitz, J.).

### 2.  Florida's Statute Governing Notice Of Automatic Gratuities

The statutory provision at issue in this case, Section 509.214, Florida Statutes, requires only that if a public food service establishment includes an automatic service charge or gratuity in the price of the meal, the establishment "shall include on the food menu and on the face of the bill provided to the customer notice that an automatic gratuity is included." The statute contains no style, format or typeface restrictions, nor does it provide any further

requirements regarding wording or content. Additionally, there is no indication that the notice requirements nor the use of automatic service charges or gratuities is otherwise regulated by the State.

### 3. Ritz-Carlton's Compliance With The Applicable Statute

In the Motion, Ritz-Carlton argues that it disclosed automatic gratuity charges on its menus and bills and, therefore, it complied with the requirements of Section 509.214, Florida Statutes. Mot. at 8. Thus, Ritz-Carlton claims "as a threshold matter, FDUTPA's safe harbor requires summary judgment in Ritz-Carlton's favor on both Plaintiff's *per se* and traditional FDUTPA claims." *Id.* at 9.

Mr. Fox does not dispute that Ritz-Carlton disclosed the automatic gratuity charges on its menus and bills at two of the three restaurants he visited. *See* ECF Nos. 67-2 – 67-5 (menus and receipts from Mr. Fox's meals at Lightkeepers and Cantina Beach). He does dispute that there was any notice given on the menu at the Key Pantry. However, Mr. Fox argues that FDUTPA's safe harbor does not bar his claims because his claims are not based on "the required act of including notice of an automatic service charge on the menu" or "the content of that disclosure," but, instead, his claims are based on the manner in which the disclosures were made, which he alleges were "inconspicuous and deceptive." Resp. at 3. In reply, Ritz-Carlton reasserts that its notices complied with the plain text of the statute and that Mr. Fox's focus on the manner of notice is nothing more than an attempt to read additional requirements into the statute. Reply at 2.

### 4. Application Of The Safe Harbor Provision

The question presented is whether Ritz-Carlton's notice, which technically complied with the requirements of the applicable statute, was "specifically permitted or required" by

13

the statute. Unlike a label which contains specifically required content and is approved by a regulatory agency before use, Ritz-Carlton's notice simply complied with the general and non-specific requirements of a statute requiring only that notice be provided and not that it be approved by any government or regulatory entity before use.

There does not appear to be any precedent directly on point, and the parties cite none. As indicated above, much of the case law analyzing FDUTPA's safe harbor provision involves government-approved or highly regulated labels. Where labels comply with specific requirements and have been approved by regulatory agencies, courts generally hold that challenges to those labels fall within the safe harbor. *See e.g.*, *Ezcurra*, 2020 WL 5491428 (S.D. Fla. Aug. 7, 2020) (finding claims that label was deceptive for omitting information about risks of product fall within safe harbor because the label had been approved by the EPA and is extensively governed by comprehensive federal regime that governs labeling of the products); *Kuenzig,* 505 F. App'x at 939 (claims that labels were deceptive because of how they were presented fell within safe harbor because the labels were approved by regulatory agency and complied with applicable regulatory requirements).  The cases applying the safe harbor to preclude claims tend to turn on whether there is government regulation, approval, and oversight over the challenged conduct. Given that the notice at issue in this case was not approved by any regulatory agency nor subject to oversight or regulation, these cases do not necessarily fit the circumstances presented here.

In a different series of decisions from courts in this District, the courts have concluded that claims are not precluded by the safe harbor provision where the challenged conduct was not specifically authorized by a federal or state law nor approved by a regulatory agency.

In *Tenet Healthcare Corp.*, the plaintiffs alleged the defendant violated FDUTPA by failing to disclose that it was grossly inflating charges for certain procedures. The defendant argued that the plaintiff's FDUTPA claims were barred by the safe harbor because it complied with federal Medicare regulations by accurately disclosing the costs it was actually charging. Judge Seitz framed the issue for the court as follows:

> [T]he relevant analysis for this Court is whether [defendant], as the moving party, has demonstrated that a specific federal or state law affirmatively authorized it to engage in the conduct alleged in the Complaints, *not* whether Plaintiffs have demonstrated that [defendant]'s conduct violates a specific rule or regulation.

420 F. Supp. 2d at 1310 (emphasis in original) (internal citations omitted). The court went on to find that the defendant had not satisfied its burden because, although defendant had allegedly complied with the regulations requiring accurate billing statements, it did not "identify any federal statute or regulation that 'specifically permitted' it to grossly inflate its charges for outlier procedures . . . ." *Id*. Thus, in the *Tenet* case, which did not involve any conduct pre-approved by a government agency, the challenged conduct fell outside the safe harbor.

Likewise, in *Herazo v. Whole Foods Mkt., Inc.*, No. 14-61909-CIV, 2015 WL 4514510, at *4 (S.D. Fla. July 24, 2015) (Moreno, J.), the district court held that even though the defendant, which sells homeopathic medicines, complied with FDA regulations requiring it to use labels on its products that provide certain information, its conduct did not fall within FDUTPA's safe harbor. The plaintiff alleged the defendant's labels were deceptive because, although they contained the information required by the applicable regulations, they did not inform consumers that the products do not do what they are marketed for. Judge Moreno explained the analysis, which is the same as that applied by Judge Seitz in *Tenet*, as follows:

> The relevant inquiry for the Court is whether Whole Foods, as the moving party, has shown that a specific federal or state law affirmatively authorized it to engage in the conduct alleged in the complaint, not whether Whole Foods violated a specific rule or regulation. *Id.,* 490 F.Supp.2d at 1234. To fall within the purview of the safe harbor, the *Prohias* court wrote that the defendant had to show the Food and Drug Administration viewed and approved the misleading advertising.
>
> In this case, Whole Foods has generally shown that it is required to provide labels on its homeopathic products and the products' Indications for Use. Whole Foods, however, has not met its burden to show that the Food and Drug Administration specifically authorized the labels at issue in this case []. The Court, therefore, cannot presume that the Food and Drug Administration viewed and approved the homeopathic product labels and declines to apply Florida's safe harbor provision absent that showing from Defendant.

*Id.* (citing *Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1233 (S.D. Fla. 2007) (Jordan, J.) (finding defendants' conduct using deceptive labels and marketing did not fall within safe harbor because their labels and advertisements, although compliant with FDA requirements, were not approved by the FDA)).

The undersigned finds the foregoing decisions persuasive. As indicated above, this case is different from the decisions in which courts typically apply the safe harbor because, unlike those cases in which the challenged conduct was approved by regulatory agencies or heavily regulated and reviewed, this case does not involve conduct that was approved by a state or federal agency, and, as such, does not involve conduct that is *specifically* permitted or required by state or federal law.

The undersigned is mindful of Ritz-Carlton's argument that Mr. Fox is seeking a result that would add requirements into the statute beyond those that are already there. That is, however, not the case. The text of the statute itself *does not specifically require or permit* Ritz-Carlton to give its notices in any particular manner, least not in such a manner that they are illegible or unnoticeable, and it is the manner in which they printed the notice that Mr. Fox

16

alleges is deceptive. The court's analysis of the circumstances in *Marty v. Anheuser-Busch Co., LLC,* 43 F. Supp. 3d 1333 (S.D. Fla. 2014) (O'Sullivan, J.), is informative on this point.

In *Marty*, the plaintiff asserted FDUTPA claims alleging that the required labeling on bottles and cans of Beck's beer was misleading because it was "ambiguous and difficult, if not impossible, to read." 43 F. Supp. 3d at 1343. The defendant argued that the claims should be dismissed because they fell within the safe harbor provision on the grounds that the labels had been approved by the regulatory agency prior to their use and were, therefore, specifically permitted. *Id.* Judge O'Sullivan held that the safe harbor provision was not triggered in that case, despite the prior approval of the labels by a government agency, because the approved labels were used in a way that they were not visible to the consumer at the time of purchase. *Id.* at 1344. In so holding, Judge O'Sullivan distinguished other cases in which courts found labels presumptively lawful because they complied with federal labeling requirements and passed government agency inspections and explained that whereas the plaintiffs' claims in other cases were based on misrepresentations contained on the approved labels, the plaintiff's claims in the *Marty* case were not based on the approved labels (which were used in a manner such that they were basically illegible) but on other misleading information contained on the beer bottles and cartons. *Id.* at 1344-45 (distinguishing *In re: Anheuser-Busch Beer Labeling Litig.*, No. 1:13-md-02448-DCN, Dkt No. 25, Memorandum Opinion and Order (N.D. Oh. June 2, 2014), and *Kuenzig*, 505 F. App'x at 939)).

The analysis in *Marty* is relevant here. Although Ritz-Carlton did use notices that comply with Florida's applicable statute, making them similar to agency approved labels, Mr. Fox alleges it then used those notices in a deceptive way by printing them in smaller print or in a part of the menu or bill that made them difficult to see or understand. Under the analysis

17

in *Marty*, the statutorily compliant notices do not trigger the safe harbor because it is not a violation of the Florida statute or the content of the notices that Mr. Fox alleges is deceptive. As Judge Seitz explained in *Tenet*: "[T]he relevant analysis for this Court is whether [defendant], as the moving party, has demonstrated that a specific federal or state law affirmatively authorized it to engage in the conduct alleged in the Complaints, *not* whether Plaintiff have demonstrated that [defendant]'s conduct violates a specific rule or regulation." 420 F. Supp. 2d at 1310 (emphasis in original) (internal citations omitted).

As in *Tenet*, Mr. Fox does not need to and has not alleged that Ritz-Carlton violated Section 501.204. Instead, Mr. Fox alleges in the Amended Complaint that Ritz-Carlton placed the required notices in a manner that made them were illegible or unnoticeable and, thus, deceptive. Ritz-Carlton, on the other hand, has not demonstrated that a specific federal or state law affirmatively authorized it to engage in that conduct.

Based on the foregoing, the undersigned finds that Ritz-Carlton has not satisfied its burden of demonstrating that FDUTPA's safe harbor applies as to any of the FDUTPA claims in the Amended Complaint. Genuine issues of material fact[3] preclude a finding as a matter of law that the safe harbor applies to Mr. Fox's claims based on the notices given at the Key Pantry, and Ritz-Carlton has not demonstrated that it was permitted or required to engage in

---

[3] Mr. Fox also argues that "whether the notice at issue is deceptive under FDUTPA is a question of fact" and thus not appropriate for summary judgment. Resp. at 5. The undersigned agrees that the question of whether Ritz-Carlton's conduct was deceptive is a question of fact. However, that question does not preclude summary judgment on the issue of whether the safe harbor applies. The court must first decide, as a threshold matter, whether the safe harbor provision applies before turning to the question of liability for the alleged claims. *See Ezcurra*, 9:20-CV-80524, 2020 WL 5491428, at *5 ("FDUTPA does not apply when the allegedly deceptive conduct at issue is 'required or specifically permitted by federal or state law.'" (quoting Fla. Stat. 501.212(1)). If the safe harbor applies, then the analysis ends; no deeper inquiry is required. *Id*.

the conduct challenged by Mr. Fox, and, therefore, the undersigned recommends summary judgment be denied to the extent it is based on application of the safe harbor.

### C. Whether Ritz-Carlton Is Entitled To Summary Judgment Based On The Merits Of Mr. Fox's FDUTPA Claims

Ritz-Carlton argues that even if the safe harbor provision does not apply, the Court should enter summary judgment because Mr. Fox cannot prove any of his *per se* or traditional FDUTPA claims. Mot. at 9.

Ritz-Carlton argues that Mr. Fox's *per se* FDUTPA claim fails because Section 509.214, Florida Statutes, and Section 8A-110.1, Miami-Dade County Ordinance, cannot serve as FDUPTA predicates. Mot. at 10. Ritz-Carlton also argues that Mr. Fox's traditional claim fails because he cannot show that Ritz-Carlton engaged in any "deceptive act or unfair practice" and that both the traditional and *per se* claims fail because he did not suffer any actual damages as a result of the allegedly deceptive practice he identifies. *Id.* at 9-10.

### 1. Count I: Mr. Fox's Claims Based On *Per Se* FDUTPA Violations

In Count 1 of the Amended Complaint, Mr. Fox asserts claims based on a *per se* violation of FDUTPA. A *per se* FDUTPA violation requires a violation of a predicate statute. *Id.* A violation of any "law, statute, rule, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices" may serve as a predicate for a FDUTPA claim. *State Farm Mut. Auto. Ins. Co.*, No. 609CV-1268-ORL-19GJK, 2009 WL 5171770, at *7; *see also* Fla. Stat. § 501.203(3)(c). "A *per se* violation is established in one of two ways: (1) if the 'law, statute, rule, regulation, or ordinance' expressly constitutes a violation of the FDUTPA or (2) the statute, rule, or ordinance proscribes unconscionable, deceptive, or unfair acts or practices and therefore operates as an implied FDUTPA

predicate." *de Lara v. Edition Mgmt. LLC*, No. 18-22630-CIV, 2019 WL 11321026, at *5 (S.D. Fla. Feb. 5, 2019) (Maritnez, J.) (citing Fla. Stat. § 501.203(3)(c)).

Ritz-Carlton argues that neither the Florida Statute, Section 509.214, nor the Miami-Dade County Ordinance, Section 8A-110.1, can serve as a predicate statute because they do not "proscribe[] unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices." Mot. at 10-11 (quoting Fla. Stat. § 501.203(3)(c)). Rather than proscribe deceptive acts, Ritz-Carlton argues the statute and ordinance "affirmatively require restaurants to 'include on the food menu and on the face of the bill provided to the customer notice that an automatic gratuity is included[.]'" *Id.* (quoting Fla. Stat. § 509.214). Ritz-Carlton also argues that the County Ordinance cannot serve as a FDUTPA predicate for the additional reason it is preempted by Florida law. *Id.* at 12.

Mr. Fox argues, in his Response, that the statute and ordinance are proper predicates because, he contends, the legislative history and plain language of both "make it clear that both measures proscribe unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices." Resp. at 8 (citing Fla. Stat. § 501.203(3)(c)). He also argues that the County Ordinance is not preempted. *Id.* at 9-10.

a. <u>Preemption of the Miami-Dade County Ordinance</u>

The undersigned first addresses Ritz-Carlton's argument that Miami-Dade County Ordinance, Section 8A-110.1, cannot serve as a predicate for a FDUTPA violation because it is preempted by Florida law. On July 29, 2022, the undersigned addressed this issue in a Report and Recommendation in the context of Plaintiff's Motion for Partial Summary Judgment. *See* ECF No. 135. In that Report and Recommendation, the undersigned found that the Miami-Dade County Ordinance is preempted by Florida law, and, therefore, that the

Ordinance cannot serve as a predicate for a FDUTPA violation. *See id*. at 9. Thus, the undersigned recommended that the Motion for Partial Summary Judgment be denied because Mr. Fox sought summary judgment on the grounds it was undisputed that Ritz-Carlton had violated the County Ordinance that the undersigned determined is preempted.

For the reasons set forth in the July 29, 2022, Report and Recommendation, the undersigned maintains and again finds that Miami-Dade County Ordinance, Section 8A-110.1, is preempted by Florida law and, therefore, is not a valid predicate for a FDUTPA violation. Based on this finding, the undersigned recommends that Ritz-Carlton's Motion for Summary Judgment be granted as to Mr. Fox's claims to the extent they are based on violations of Miami-Dade County Ordinance, Section 8A-110.1.

Therefore, the undersigned will address Ritz-Carlton's arguments in support of summary judgment as it pertains to claims based on the Florida Statute.

b. *Per Se* Violation Based On Violation Of An Express FDUTPA Predicate

Mr. Fox does not allege in the Amended Complaint nor in his Response to the Motion that the Florida Statute (nor the County Ordinance) expressly state that a violation constitutes a violation of FDUTPA. Therefore, the undersigned addresses only whether Mr. Fox has demonstrated that he may proceed with his FDUTPA claims based on an implied FDUTPA predicate.

c. *Per Se* Violation Based On Violation Of An Implied FDUTPA Predicate

Ritz-Carlton argues it is entitled to summary judgment because Section 509.214 does not proscribe any acts or practices but, instead, affirmatively requires restaurants to act by including notices on menus and customer bills. Mot. at 10. Therefore, Ritz-Carlton argues, the Statute cannot serve as a FDUTPA implied predicate. *Id*. In support, Ritz-Carlton relies

on the decision in *de Lara v. Edition Mgmt. LLC*, No. 18-22630-CIV, 2019 WL 11321026, at *5 (S.D. Fla. Feb. 5, 2019), in which Judge Martinez held that Section 509.214 is not a valid FDUTPA predicate.

Mr. Fox responds that the court should disregard the holding in *de Lara* because "the legislative history and language of Fla. Stat. § 509.214" make it clear that "both measures proscribe 'unfair methods of competition, or unfair, deceptive, unconscionable acts or practices' (Fla. Stat. § 501.203(3)(c)) and may serve as predicates for a *per se* FDUTPA violation." Resp. at 8.

In *de Lara*, the plaintiff brought virtually identical claims as Mr. Fox asserts in this case — alleging that the defendant, a hotel and public food service establishment, committed *per se* FDUTPA violations by "unlawfully including an automatic gratuity or service charge for food and/or beverages without providing the statutorily required notice and/or presenting the notice of an automatic gratuity or service charge in small, hard to read type" in violation of Section 509.214, Florida Statutes. No. 18-22630-CIV, 2019 WL 11321026, at *5. Based on a review of the plain language of Section 509.214, Judge Martinez found that it could not serve as a FDUTPA predicate because it fails to proscribe an unfair and deceptive trade practice, relying on "Black's Law Dictionary [which] defines 'proscribe' as '[t]o outlaw or prohibit; to forbid officially[.]'" *Id*. at *6.

The undersigned agrees with Judge Martinez's reading and interpretation of Section 501.203(3)(c) and rejects Mr. Fox's urging that the Court, instead, interpret the legislative history of the statute. "It is a well-known maxim of statutory construction that a court must begin 'with the language of the statute itself.'" *Fed. Election Com'n v. Reform Party of U.S.*, 479 F.3d 1302, 1308 (11th Cir. 2007) (internal citations omitted). "The first rule in statutory

construction is to determine whether the 'language at issue has a plain and unambiguous meaning with regard to the particular dispute.'" *Id*. (internal citations omitted); *see also Diamond Aircraft Indus., Inc. v. Horowitch*, 107 So. 3d 362, 367 (Fla. 2013) ("Our statutory analysis begins with the plain meaning of the actual language of the statute, as we discern legislative intent primarily from the text of the statute.") (internal citations omitted).

The text of section 501.203(3)(c) is clear; a violation of FDUTPA can be based on a violation of "[a]ny law, statute, rule, regulation, or ordinance which *proscribes* unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices." Fla. Stat. § 501.203(3)(c) (emphasis added). Reviewing the plain language of section 509.214, as the court did in *de Lara*, the undersigned finds that the statute does not *proscribe* an unfair method of competition, or an unfair, deceptive, or unconscionable act or practice. *See de Lara*, No. 18-22630-CIV, 2019 WL 11321026, at *6-7 (employing the foregoing canons of statutory construction to find that plaintiff failed to allege a *per se* violation of FDUTPA arising under section 509.213).

The undersigned is also not persuaded by Mr. Fox's citation to certain FTC rules for the proposition that laws requiring affirmative disclosures, such as Section 509.214, may serve as FDUTPA predicates. *See* Resp. at 9. Mr. Fox cites several FTC rules that require affirmative disclosures, such as in connection with the labeling and sale of used cars, home insultation, and funeral services, to show that laws requiring affirmative actions can serve as FDUTPA predicates.[4] *Id*. However, the precedential value of these FTC cases to support the argument that Section 509.214 may serve as a *per se* FDUTPA predicate is significantly

---

[4] The undersigned notes that Mr. Fox does not cite any cases in which these FTC rules were actually used as a basis for FDUTPA predicates for *per se* violations.

diminished because FDUTPA expressly provides that a violation of the Act may be based on a violation of "any rules promulgated pursuant to the Federal Trade Commission Act." Fla. Stat. 501.203(3)(a). FDUTPA does not expressly incorporate any other laws or rules. Other than specifying violations of FTC rules as predicates, the statute generally provides that violations of a "law, statute, rule [not promulgated by the FTC], regulation, or ordinance" that proscribes "unfair, deceptive, or unconscionable acts or practices" may serve as FDUTPA predicates. Fla. Stat. 501.203(3)(c).

In other words, any cases finding a *per se* violation of FDUTPA based on violation of a rule promulgated by the FTC has no bearing on whether a violation of any other statute or rule that affirmatively requires specific acts or practices falls within Section 501.203(3)(c)'s requirements for FDUTPA predicates.[5]

For the foregoing reasons, the undersigned finds that Section 501.203 is not a *per se* FDUTPA predicate, as a matter of law, and, therefore, the undersigned recommends granting Defendant's Motion for Summary Judgment as to Count I of the Amended Complaint.

### 2.  Count II: Mr. Fox's Claims Based On Traditional FDUTPA Violations

In Count II of the Amended Complaint, Mr. Fox asserts claims based on traditional violations of FDUTPA. To prevail on a traditional FDUTPA claim, a plaintiff must show (1)

---

[5] Another familiar canon of statutory construction is "*expressio unius est exclusio alterius*," which explains that "the mention of one thing implies the exclusion of another." *LaCroix v. Town of Fort Myers Beach, Fla.*, 38 F.4th 941, 949 (11th Cir. 2022) (citing *Young v. Progressive Se. Ins. Co.*, 753 So. 2d 80, 85 (Fla. 2000) (quotation marks omitted). If the Florida legislature intended that other statutes or rules that only affirmatively require conduct and do not proscribe conduct also be included as FDUTPA predicates, it would have included those other statutes or rules in the Act. Alternatively, if the legislature intended for other statutes or rules that do not actually proscribe conduct be included as FDUTPA predicates, it would not have specified one such rule and left the remaining language in the provision general.

a deceptive act or unfair practice, (2) causation, and (3) actual damages. *Dolphin LLC v. WCI Communities, Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013).

Ritz-Carlton argues that Mr. Fox cannot show that it engaged in any "deceptive act or unfair practice" nor that he suffered any actual damages as a result of the allegedly deceptive practice he identifies. Mot. at 9-10. Mr. Fox responds that he has presented sufficient evidence to support a finding that Ritz-Carlton did engage in deceptive acts and unfair practices and that the determination of whether Ritz-Carlton has violated FDUTPA is not appropriate for determination on summary judgment. Resp. at 6-10.

### a. Deceptive Act Or Unfair Practice

For purposes of determining traditional FDUTPA violations, a "deceptive act" requires "a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances," to the consumer's "detriment." *Zlotnick v. Premier Sales*, 480 F.3d 1281, 1284 (11th Cir. 2007). And that requires a showing of "probable, not possible, deception that is likely to cause injury to a reasonable relying consumer." *Id.* "[A]n unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Hucke v. Kubra Data Transfer Corp.*, 160 F. Supp. 3d 1320, 1328 (S.D. Fla. 2015) (Rosenberg, J.).

Ritz-Carlton argues that the undisputed evidence shows that the automatic gratuities applied to Mr. Fox's bills were not deceptive. Mot. at 13. Specifically, it argues that its restaurants provided notice to Mr. Fox about the automatic gratuities on each of the three menus it provided to Mr. Fox, on each bill Mr. Fox received, and on each receipt Mr. Fox signed. *Id.* However, Mr. Fox disputes that Ritz-Carlton included notice on all the menus at issue. Resp. at 11. Mr. Fox alleges that the menu he saw at Key Pantry contained no notice

of the automatic gratuity and that the menus at the other two restaurants and bills from all three restaurants failed to provide clear and conspicuous notice as required by FDUTPA because the notices were in "small, italicized, difficult to read type buried on the bottom or side of a multipage menu." *Id*.

At the summary judgment stage, the judge's function is not to weigh the evidence but only to determine if there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Viewing the evidence and all factual inferences therefrom in the light most favorable to Mr. Fox, as the Court is required to do at this stage, the undersigned finds that there is a genuine issue as to whether the notice given to Mr. Fox was deceptive because of the alleged absence of any notice on at least one of the menus and the allegedly smaller type and different font used in the notices in comparison to the rest of the text on the menus and bills.

b.  <u>Causation And Actual Damages</u>

Ritz-Carlton also claims that any damages Mr. Fox suffered in the form of payment of automatic gratuities was not a direct result of Ritz's-Carlton's failure to adequately disclose those charges because Mr. Fox paid them after becoming aware they were included on his bills. Mot. at 15-16. On this point, Ritz-Carlton refers to Mr. Fox's deposition testimony, in which he states that he became aware of the automatic gratuity charges during his stay at the Ritz-Carlton before he checked out. Fox Dep. 36:18–20. Thus, Ritz-Carlton contends that Mr. Fox would have paid the disputed amounts regardless of Ritz-Carlton's particular practices, and he therefore cannot show he suffered a loss "as a result" of those practices. Mot. at 16.

However, Mr. Fox's testimony creates a genuine issue of fact as to whether he knew he could amend the charges after he had signed the bills and left the restaurants. *Compare* Fox

Dep. at 36:8-37:14; 177:6-17. (Mr. Fox stating he knew about the automatic charges before checking out of the hotel) *with* ECF No. 85-9 (the "Fox Declaration") at ¶¶ 15-16, 20-21; Fox Dep. at 91:19-92:25 (stating that when he checked out, "at that point it had already been done" and not recalling whether he reviewed a bill for his stay prior to leaving the hotel.).[6]

The undersigned finds that the conflicting evidence presented by the parties regarding whether Ritz-Carlton's conduct caused the damages incurred by Mr. Fox demonstrates there are genuine issues of material fact regarding whether Mr. Fox suffered actual damages and whether those damages were a direct result of Ritz's-Carlton's failure to adequately disclose the automatic gratuity charges. This precludes summary judgment.

Accordingly, the undersigned recommends that Defendant's Motion for Summary Judgment be denied as to Mr. Fox's claims of traditional violations of FDUTPA in Count II of the Amended Complaint.

### D.  Whether Florida's Voluntary Payment Doctrine Bars Mr. Fox's Claims

Ritz-Carlton also argues that all of Mr. Fox's claims are barred as a matter of law by Florida's voluntary payment doctrine. Mot. at 17. Mr. Fox responds that Ritz-Carlton has failed to meet its burden with respect to its voluntary payment defense. Resp. at 13.

The voluntary payment doctrine provides that "money voluntarily paid upon claim of right, with full knowledge of all the facts, cannot be recovered back merely because the party, at the time of payment, was ignorant, or mistook the law, as to his liability." *Jefferson Cty. v.*

---

[6] Furthermore, on at least two occasions, Mr. Fox paid both an additional gratuity and the automatic gratuity charge. Mr. Fox testified that the "additional gratuity" amounts he added on both occasions were the total tip he intended to leave, and it is these duplicative gratuity charges that Mr. Fox seeks to recover in this case. *See* Fox Dep. at 75:12-21, 83:10-84:1. The undersigned finds this testimony also corroborates Mr. Fox's claim that he was not aware of the automatic gratuities when he paid the bills at the restaurants and that Ritz-Carlton's allegedly deceptive conduct caused his damages.

*Hawkins*, 23 Fla. 223 (Fla. 1887); *see also City of Miami v. Keton*, 115 So.2d 547, 551 (Fla. 1959) ("[W]here one makes a payment of any sum under a claim of right with knowledge of the facts, such a payment is voluntary and cannot be recovered.").

According to Mr. Fox, the voluntary payment doctrine requires Ritz-Carlton to show that Mr. Fox had full knowledge of the relevant facts, including the allegedly wrongful conduct, at the time payment was made. *See* Resp. at 13. Mr. Fox asserts that by the time he became aware of the automatic gratuity charges, it was his understanding that he had already paid and it was too late to change them because he had already signed the receipt and left the restaurant. *Id*. Thus, he argues his payments were made without knowledge of all relevant facts and the voluntary payment doctrine does not apply. *Id*. at 13-14.

In reply, Ritz-Carlton argues that, for purposes of the voluntary payment doctrine, it is not necessary that Mr. Fox had any subjective knowledge of the supposedly illegal nature of the gratuity charges, just that he knew about the charges and paid them. *See* Reply at 9 ("He knew about the charges and paid them. Those are the relevant facts."). In support of this argument, Ritz-Carlton cites to two Florida District Court of Appeal cases: *Hassen v. Mediaone of Greater Fla., Inc.*, 751 So. 2d 1289, 1289 (Fla. 1st DCA 2000), and *Hall v. Humana Hosp. Daytona Beach*, 686 So. 2d 653, 655-57 (Fla. 5th DCA 1996).[7] In *Hassen*, the court affirmed summary judgment for the defendant based upon the voluntary payment doctrine, where

---

[7] Ritz-Carlton also cites *Kissner v. McDonald's Corp.*, in which the court granted a motion to dismiss an unjust enrichment claim and noted that, even if it been sufficiently pled, the claim would be barred by the voluntary payment doctrine because "where one makes a payment of any sum under a claim of right with knowledge of the facts, such a payment is voluntary and cannot be recovered." No. 18-CV-61026, 2018 WL 5832979, at *4 (S.D. Fla. Nov. 2, 2018) (Dimitrouleas, J.) (internal quotations omitted). As generally discussed below, the undersigned finds that the reasoning in *Kissner* supports Mr. Fox's argument, not Ritz-Carlton's.

plaintiffs asserted a claim for money obtained by imposition based on their payment of late fees on their cable bill, which they later decided were excessive and disproportionate to the actual costs defendant incurred for the late payments. 751 So. 2d at 1290. Similarly, in *Hall*, the court affirmed summary judgment based on the voluntary payment doctrine where plaintiffs paid allegedly overcharged hospital bills and later brought actions for imposition. 686 So. 2d at 655-58.

The cases cited by Ritz-Carlton in support of its arguments are factually and legally distinct from the circumstances at issue here. In both *Hassan* and *Hall*, the plaintiffs asserted claims for imposition, which is an action to recover payments *coercively* exacted from a plaintiff where only reasonable compensation is allowed. *Hall*, 686 So. 2d at 654. Perhaps more importantly, both cases involve plaintiffs who knowingly paid charges they thought to be excessive at the time of payment. In the instant case, on the other hand, Mr. Fox asserts he was not aware of the automatic gratuity added to his bills until after he left the restaurants and that by the time he did learn that he had paid the automatic gratuities, he did not know whether he could amend the charges after he had signed the bills and left the restaurants. Resp. at 13.

Other courts in this District have found that Florida's voluntary payment doctrine only applies where the payor has "full knowledge of the facts." *Brink v. Raymond James & Assocs., Inc.*, 341 F. Supp. 3d 1314, 1320 (S.D. Fla. 2018) (Dimitrouleas, J.) (denying summary judgment based on the voluntary payment doctrine because plaintiff made allegedly excessive payments to defendant without knowledge of the factual circumstances rendering them excessive or illegal); *see also Cox v. Porsche Fin. Servs., Inc.*, 342 F. Supp. 3d 1271, 1290 (S.D. Fla. 2018) (Gayle, J.) (denying summary judgment because of a factual dispute regarding

plaintiff's knowledge of the factual circumstances); *Jefferson Cty.*, 223 Fla. at 231 (money voluntarily paid upon claim of right, *with full knowledge of all the facts*, cannot be recovered back[.]" (emphasis and alterations added)).

In the instant case, Mr. Fox's declaration and deposition testimony create a genuine issue of fact regarding whether he had full knowledge that Ritz-Carlton included automatic gratuity in his bills when he signed those payments and whether he could amend the charges after he had already signed the bills and left the restaurants. *See* Fox Dep. at 36:8-37:14; 177:6-17. (Mr. Fox stating he knew about the automatic charges before checking out of the hotel) *with* ECF No. 85-9 (the "Fox Declaration") at ¶¶ 15-16, 20-21 (Mr. Fox not recalling whether he reviewed a bill for his stay prior to leaving the hotel); Fox Dep. at 91:19-92:25 (stating that when he checked out, "at that point it had already been done."). After consideration of the record as whole and viewing the evidence in the light most favorable to Mr. Fox, the undersigned finds that there is a genuine issue of material fact as to whether Mr. Fox was aware the restaurant checks were not "paid" at the time of the meal and thus could be altered at the end of his stay. These issues of fact preclude summary judgment.

Therefore, the undersigned recommends Defendant's Motion for Summary Judgment on the basis of Florida's voluntary payment doctrine be denied.

### E.  Voluntary Dismissal Of Three Similar Lawsuits By Mr. Fox's Counsel

Finally, Ritz-Carlton argues that the dismissal by Mr. Fox's counsel of three lawsuits asserting similar FDUTPA claims against other hotel chains shows that Mr. Fox's claims are meritless. Mot at 19. The undersigned finds that counsel's actions in separate, unrelated lawsuits has no bearing on the determination of the issues before the court.

## IV.    RECOMMENDATION

Accordingly, for the reasons set forth above, the undersigned respectfully recommends that Defendant's Motion for Summary Judgment [ECF No. 98] be **GRANTED IN PART AND DENIED IN PART** as follows:

1. Ritz-Carlton's Motion for Summary Judgment should be denied insofar it is based on the argument that Mr. Fox lacks standing;

2. The Motion should be denied to the extent it is based on application of the safe harbor;

3. The Motion should be granted as to Count I of the Amended Complaint alleging *per se* violations of FDUTPA;

4. As to Count II of the Amended Complaint, the Motion should be granted as to Miami Dade County Ordinance Section 8A-110.1, which is preempted by Florida law, and the Motion should be denied as to the remaining allegations of Count II alleging traditional violations of FDUTPA.

5. The Motion should be denied as to Counts IV and V of the Amended Complaint.

The parties will have fourteen (14) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Marcia G. Cooke, United States District Court Judge. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida this <u>11th</u> day of August 2022.

_____
MELISSA DAMIAN
UNITED STATES MAGISTRATE JUDGE

cc:   The Honorable Marcia G. Cooke
      Counsel of Record