UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:17-CV-24284-COOKE/REID

MICHAEL FOX,
on behalf of himself and all
others similarly situated,

        *Plaintiff*,

    v.

THE RITZ-CARLTON
HOTEL COMPANY, LLC,

        *Defendant*.

---

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION TO DISQUALIFY PETER VALORI**

Dated: November 28, 2022

**SMITHMARCO, P.C.**
David M. Marco
IL Bar No. 6273315/FL Bar No. 125266
SMITHMARCO, P.C.
7204 Kyle Ct.
Sarasota, Florida 34240
Telephone: (312) 546-6539
Facsimile: (888) 418-1277
E-Mail: dmarco@smithmarco.com

**FRANCIS MAILMAN SOUMILAS, P.C.**
James A. Francis (*pro hac vice*)
1600 Market Street, Suite 2510
Philadelphia, PA 19103
T: (215) 735-8600

**LEWIS SAUL & ASSOCIATES, P.C.**
Lewis J. Saul (*pro hac vice*)
Edward A. Coleman (*pro hac vice*)
29 Howard Street, 3rd Floor
New York, NY 10013
T: (212) 376-8450

*Attorneys for Plaintiff and the Class*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................. ii

I.   INTRODUCTION ............................................................................................ 1

II.   STATEMENT OF FACTS ............................................................................ 1

III.   ARGUMENT.................................................................................................. 4

   A.  Legal Authority..................................................................................... 4

   B.  Valori Should Be Disqualified as Counsel in this Case................................................. 6

      1.  There is No Overriding Need for Valori to Appear in this Case ...................... 6

      2.  The Timing of Valori's Late Appearance Strongly Favors Disqualification ... 8

      3.  Ritz Will Not Be Prejudiced by Valori's Disqualification .............................. 9

      4.  Fox Will Be Prejudiced if Valori is Not Disqualified.................................... 10

      5.  Valori's Appearance Results in a Significant Waste of Judicial Resources... 11

      6.  Valori's Appearance Will Contribute to Mistrust of the Judicial System ...... 12

IV.   CONCLUSION.............................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Grievance Adm'r v. Fried*,
456 Mich. 234, 570 N.W.2d 262, 267 (1997)............................................................. 5

*Hunters Run Apts. Ltd. v. WCA Waste Corp.,*
2016 WL 9086970 (N.D. Ala. Apr. 25, 2016)...................................................... 13

*In re BellSouth Corp.*,
334 F.3d 941 (11th Cir. 2003) ................................... 4, 5, 6, 9, 10, 11, 12

*In re F.C.C.*,
208 F.3d 137 (2nd Cir. 2000)................................................. 4, 5, 6, 12, 13

*In re RFC and Rescap Liquidating Trust Lit.*,
2016 WL 7177706 (D. Minn., Dec. 8, 2016)...................................... 5, 6

*McCuin v. Texas Power & Light Co.*,
714 F.2d 1255 (5th Cir. 1983) ......................................... 4, 5, 11, 12, 14

*Robinson v. Boeing Co.*,
79 F.3d 1053 (11th Cir. 1996) ...................................... 4, 5, 6, 8, 9, 10, 11

*UCP International Company Limited v. Balsam Brands Inc.*,
261 F. Supp. 3d 1056 (N.D. Cal. 2017) ............................................ 5, 13

*United States v. Dinitz*,
538 F.2d 1214 (5th Cir. 1976) ................................................................ 4

*United States v. Phillips*,
59 F. Supp. 2d 1178 (D.Utah 1999)............................................................. 5

## STATUTES

Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. 501.201 *et seq*........................ 1

## I.       INTRODUCTION

After nearly five years of litigation, and shortly after Magistrate Judge Damian denied several motions filed by Defendant The Ritz-Carlton Hotel Company, LLC ("Ritz"), including a motion for summary judgment, Ritz retained Peter Valori, a co-founding partner of the firm Damian & Valori LLP. Judge Damian was "Of Counsel" at Damian & Valori for over nine years, working for the firm immediately before her appointment as a magistrate judge. Valori's appearance in the case, entered four days before Ritz's opposition to Plaintiff's renewed motion for class certification was initially due, resulted in Judge Damian's nearly immediate recusal. Valori does not appear to have expertise in class action cases or claims made under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. 501.201 *et seq*. ("FDUTPA"), which forms the basis for Plaintiff's claims. Valori does not appear to have ever represented Ritz before, either. Valori does not appear to add anything to Ritz's defense team that another attorney, whose appearance would not result in Judge Damian's recusal, could provide.

The firm Kabat Chapman & Ozmer LLP ("KCO") entered the case in September 2021. Apparently unsatisfied with Judge Damian's rulings thus far, KCO and Ritz have engaged in conduct that amounts to a form of judge shopping by manufacturing Judge Damian's recusal by retaining the co-founder of her former firm. Ritz's manufactured recusal of a magistrate judge shortly after that judge denied multiple motions filed by Ritz is inappropriate. Most importantly, it disrupts the efficient resolution of this case, significantly burdens this Court's judicial resources, and threatens to undermine public trust in the judicial process. These considerations outweigh Ritz's right to retain Valori. Clearly, Valori must be disqualified from the case and Judge Damian should be reassigned back to the case in which she has already committed so much time and effort.

## II.       STATEMENT OF FACTS

In November 2017, Plaintiff filed this lawsuit against Ritz alleging violations of FDUTPA in connection with automatic gratuities and/or service charges applied to customer checks without notice or with inadequate notice prior to the imposition of those charges. *See* Class Action Complaint, ECF 1. In response, Ritz filed a motion to dismiss. *See* ECF 16. Plaintiff filed an Amended Class Action Complaint (ECF 17) and Ritz again filed a motion to dismiss. ECF 22. This Court initially granted Defendant's motion based on a *sua sponte* review of the record, finding the Court lacked subject matter jurisdiction. *See* ECF 31 at 4. Plaintiff successfully appealed to the

Eleventh Circuit, which reversed the Court's decision with the exception of the dismissal of a claim related to the refund of Florida sales taxes. *See* ECF 39 at 22.

On January 11, 2022, Magistrate Judge Melissa Damian was assigned as the magistrate in this case. ECF 122. The following day, the Court referred Plaintiff's initial class certification motion, Plaintiff's motion for partial summary judgment, as well as the above referenced motions filed by Defendant, to Judge Damian. ECF 123. On June 15, 2022, Judge Damian denied Defendant's motion to exclude the declaration of Plaintiff's counsel James Francis in support of his initial class certification motion. ECF 127. On July 12, 2022, Judge Damian denied Defendant's motion to exclude the reply declaration of Plaintiff and Plaintiff's deposition errata. ECF 131. On July 18, 2022, Judge Damian denied Defendant's motion for sanctions. ECF 132. On August 11, 2022, Judge Damian filed a Report and Recommendation granting the portion of Defendant's summary judgment motion regarding Plaintiff's *per se* FDUTPA claims, but otherwise denying the motion. ECF 137. On August 17, 2022, Chief Judge Altonaga issued a *sua sponte* Order setting a deadline for the parties to file objections to Judge Damian's Orders and Reports. ECF 138. This Order also denied without prejudice Plaintiff's initial motion for class certification as premature, stating a new deadline for filing a renewed motion for class certification would issue after objections to all outstanding motions were resolved. ECF 138.

Defendant filed objections to Judge Damian's denials of its motions to exclude Plaintiff's reply declaration and deposition errata (ECF 139), and for sanctions (ECF 140), as well as Judge Damian's Report and Recommendation largely denying its motion for summary judgment (ECF 141). On September 26, 2022, the Court rejected each of Defendant's objections, affirming and adopting Judge Damian's Orders and the Report and Recommendation regarding summary judgment. ECF 150, 151, 152.

Notwithstanding Chief Judge Altonaga's Order regarding a renewed motion for class certification, on October 10, 2022, Defendant filed a motion requesting that the Court rule on class certification based on the parties initial briefing, which had been denied as premature. *See* ECF 155. On October 11, 2022, the Court denied that motion and set forth deadlines for renewed class certification briefing, with Plaintiff's renewed motion for class certification to be filed on or before twenty (20) days from the date of the Order, Defendant's response due within twenty (20) days of the filing of Plaintiff's motion, and Plaintiff's reply to be filed within fourteen (14) days of Defendant's response. ECF 156.

On October 31, 2022, Plaintiff timely filed his Renewed Motion for Class Certification ("Renewed Class Cert Motion"). ECF 158. On November 2, 2022, Judge Damian scheduled a hearing on Plaintiff's Renewed Class Cert Motion for December 20, 2022. ECF 159. On November 16, 2022, five days before its response to Plaintiff's Renewed Class Cert Motion was due, counsel for Defendant from KCO contacted Plaintiff requesting, "as a professional courtesy," a seven-day extension of Ritz's time to file its opposition. *See* Ex. A to Declaration of James Francis ("Francis Decl.") at 1. Counsel for Plaintiff responded later that afternoon stating "we are concerned about whether the Court will have sufficient time to review the briefing prior to the hearing" scheduled by Judge Damian for December 20. *See id*. at 2. Notwithstanding that concern, counsel for Plaintiff stated they were not opposed to Defendant's request for enlargement of time, "but would like to see the motion first." *See id*.

Later, on the evening of November 16, 2022, counsel from KCO sent a draft of Defendant's motion for an extension of the deadline to file Defendant's opposition to Plaintiff's Renewed Class Cert Motion. *See id*. at 4. That draft motion included a signature block featuring only the names of KCO counsel, and with minor edits, Plaintiff's counsel approved the motion for extension. *See* Ex B. to Francis Decl. at 2.

On November 17, 2022, a Notice of Appearance was filed by Peter Valori of the law firm Damian & Valori LLP, to appear on behalf of Defendant. ECF 163. Valori is the co-founder and managing partner of the firm, focusing his practice on "complex corporate, contract, real estate, employment, professional negligence, and trademark litigation."[1] Valori's firm profile also states he has "significant experience with breach of fiduciary, fraud and professional liability cases." *See id*. A search conducted by Plaintiff does not reveal any significant history that Valori has relating to class action cases or cases involving FDUTPA claims. *See* Francis Decl. at ¶ 5. A profile page for Magistrate Judge Melissa Damian on the website LinkedIn states that prior to her appointment as a magistrate judge, she was "Of Counsel" at Damian & Valori LLP for over 9 years.[2]

On the evening of November 17, 2022, immediately after Valori entered his appearance in the case, Defendant filed its motion requesting an extension of time to file its opposition to Plaintiff's Renewed Class Cert Motion. ECF 164. The motion was signed by Valori, rather than the attorneys for KCO whose names appeared on the draft provided to Plaintiff for approval. *Id*. at

---

[1]      https://dvllp.com/attorneys-2/peter-f-valori/

[2]      https://www.linkedin.com/in/mdvisconti/

2. On the morning of November 18, 2022, Judge Damian recused herself from the case, which the Clerk of the Court reassigned to Magistrate Judge Lisette Reid. ECF 165. Later that day, the Court granted Defendant's unopposed motion for an extension to file its response to Plaintiff's Renewed Class Cert Motion (ECF 166) and referred that motion to Judge Reid (ECF 167).

## III.   ARGUMENT

### A.  Legal Authority

A magistrate judge must disqualify herself from consideration of a case in any proceeding in which her impartiality might reasonably be questioned. 28 U.S.C. § 455(a). While a party has a right to be represented by counsel, ordinarily implying a right to a lawyer of its choice, such a right does not "entail absolute freedom of choice." *McCuin v. Texas Power & Light Co.*, 714 F.2d 1255, 1262 (5th Cir. 1983). District judges have broad discretion to determine the attorneys that practice before them and to monitor the conduct of those who do. *See Robinson v. Boeing Co.*, 79 F.3d 1053, 1055 (11th Cir. 1996) (citing *United States v. Dinitz*, 538 F.2d 1214, 1219 (5th Cir. 1976)). The disqualification of a judge "implicates several factors informing the judge's discretion, like judicial time spent, the court's docket, and the potential for manipulation." *Id*. In fact, a delay in proceedings "for *any* reason is sufficient" to bring the rejection of additional counsel within the court's discretion. *Id*.

Disqualification of counsel is an extreme remedy that is not imposed lightly, however, the "right to counsel of one's choice may be overridden when 'compelling reasons exist.'" *McCuin*, 714 F.2d at 1263. This right "should be balanced in cases in which it is challenged against the right to 'untainted prosecution of the lawsuit' and society's need to maintain the highest ethical standards of professional responsibility," as well as "the needs of effective administration of justice." *Id*. The Eleventh Circuit has affirmed a trial court's finding that "a sham hiring for the purpose of forcing the judge's recusal is a sufficiently compelling reason." *In re BellSouth Corp.*, 334 F.3d 941, 946 (11th Cir. 2003).

It is well settled that attorneys are not permitted to enter a case to manipulate the orderly administration of justice by forcing a judge's recusal, and that such attorneys should be disqualified. *See McCuin*, 714 F.2d at 1264; *In re BellSouth*, 334 F.3d at 946. The Second Circuit explained the reasoning for this position stating, "tactical abuse becomes possible if a lawyer's appearance can influence the recusal of a judge." *In re F.C.C.*, 208 F.3d 137, 139 (2nd Cir. 2000). The Eleventh Circuit has stated that although there is limited case law on this issue, "it has been

4

said that 'attempts to manipulate the random case assignment process are subject to universal condemnation,' and that "litigants and lawyers also have a duty to disavow and avoid manipulations of the random assignment system."[3] *In re BellSouth*, 334 F.3d at 958 (quoting *United States v. Phillips*, 59 F. Supp. 2d 1178, 1180 (D.Utah 1999)).

The Eleventh Circuit has developed a list of factors to evaluate attorney disqualification when a new appearance results in judicial recusal including a party's right to counsel, the court's docket, injury to the opposing party, the delay caused in the proceedings, the judicial time invested, the expense that will be caused to the objecting party, and the potential for manipulation of the judicial process. *See Robinson*, 79 F.3d at 1055. The "most significant factor" of these being whether the appearance results in possible "manipulation of the random assignment system." *In re BellSouth*, 334 F.3d at 962.

Importantly, the weight of authority in this and other circuit courts holds that a showing of bad faith is not required to disqualify counsel whose appearance results in the recusal of a judge. *See Robinson*, 79 F.3d at 1054 (disqualification not based on motive but on age of the pending action); *In re F.C.C.*, 208 F.3d at 139 (*sua sponte* order directing counsel whose appearance caused recusal of appellate judge to withdraw its appearance, despite "no finding as to good faith or intent" on the part of the disqualified law firm); *In re RFC and Rescap Liquidating Trust Lit.*, 2016 WL 7177706, at *6 (D. Minn., Dec. 8, 2016) (opposing party need not prove intent to engage in judge-shopping to disqualify counsel causing recusal); *UCP International Company Limited v. Balsam Brands Inc.*, 261 F. Supp. 3d 1056, 1059 (N.D. Cal. 2017) (applying the Eleventh Circuit's objective test to avoid attorney-client privilege issues with determining motive, prevent even the appearance of manipulation, and to avoid the waste of judicial resources).

Courts recognize "no amount of scrutiny would ever yield 'a confession' or a 'smoking gun' indicating that a particular firm was hired with the intent of forcing the judge to relinquish the case." *In re BellSouth*, 334 F.3d at 944 (discussing *Robinson*). The party causing a judge's recusal can always put forth seemingly plausible reasons to retain new counsel, resulting in the "practical impossibility of proving a party's true motive." *In re RFC*, 2016 WL 7177706, at *6

---

[3]     This issue also raises ethical considerations, as the Eleventh Circuit noted when it cited the Supreme Court of Michigan stating, "A lawyer who joins a case as co-counsel, and whose principal activity on the case is to provide the recusal, is certainly subject to discipline." *In re BellSouth*, 334 F.3d at 958 (quoting *Grievance Adm'r v. Fried*, 456 Mich. 234, 570 N.W.2d 262, 267 (1997)).

(quoting *In re BellSouth*, 334 F.3d at 947). The appearance of judge shopping, even without proof of ill intent, warrants disqualification so that litigants and the public can trust the random assignment of judges will not be manipulated with manufactured recusals. *Id.*

In fact, the age of the pending action when a counsel's appearance causes a judicial recusal, alone, can override a party's choice of counsel. *See Robinson*, 79 F.3d at 1054-55 (disqualification of counsel ordered because case had been pending for 15 months when conflicting attorney appeared). Similarly, even the possibility of tactical abuse of the judicial system, is sufficient, by itself, to override a party's choice of counsel. *See In re F.C.C.*, 208 F.3d at 139. As the Eleventh Circuit has stated, a party's choice of counsel cannot override the need to protect against the appearance that a party is manipulating the court's random assignment system. *See In re BellSouth*, 334 F.3d at 956. Where the objective factors weigh in favor of disqualification, the party resisting disqualification must show an "overriding need" for that counsel, "rather than just convenience, a need that would reflect upon the litigant's ability to have its case fairly presented, rising to constitutional due process concerns," in order to "trump both time delay and the loss of prior judicial activity." *Robinson*, 79 F.3d at 1056.

**B. <u>Valori Should Be Disqualified as Counsel in this Case</u>**

Based on binding Eleventh Circuit precedent, as well as case law in other circuits across the country, courts use objective factors to decide the issue of disqualification of counsel, including a party's right to counsel, the court's docket, the injury to the opposing party, the delay caused in the proceedings, the judicial time invested, the expense that will be caused to the objecting party, and the potential for manipulation of the judicial system through the appearance of "judge shopping." *See In re BellSouth*, 334 F.3d at 944. Each of these factors weighs heavily in favor of disqualifying Valori.

**1. There is No Overriding Need for Valori to Appear in this Case**

The Eleventh Circuit requires a party adding counsel late in a litigation, as is the case here, to show an <u>overriding need</u> to retain that particular law firm if the appearance results in a judge's recusal. *See Robinson*, 79 F.3d at 1055; *In re BellSouth*, 334 F.3d at 944. Since September 2021, when Holland & Knight was replaced as Ritz's counsel, KCO has represented Defendant. Ryan Watstein, Ritz's lead counsel, is the partner in charge of his firm's commercial litigation and consumer class action defense team, claiming that he has defended companies in more than 100

6

national class actions.[4] In fact, Watstein's law firm profile states that in the hundred-plus class action cases he has defended, no class has been certified, "for settlement purposes or otherwise." *See id.* Ritz is also represented by two other KCO attorneys, Alex Terepka and Abigail Howd, whose practices focus on defense of consumer class actions.[5]

In contrast, there is no mention of consumer class action or FDUTPA claim experience on Valori's attorney profile page for his law firm.[6] Damian & Valori LLP's website does not list consumer class action defense among the services offered by the firm.[7] Additionally, Valori does not appear to have ever represented Ritz before. *See* Francis Decl. at ¶ 5. It appears only one attorney profile on Damian & Valori's website includes "class actions" among the practice areas that the attorney focuses on.[8] Another partner and the firm's co-founder, Melanie Damian, whose practice largely involves serving as a court appointed Receiver and as counsel to court appointed Receivers, states on her attorney profile page for the law firm that she has been a court-appointed class counsel in several cases.[9]

Valori does not appear to have unique expertise in the area of class actions or FDUTPA cases. Even if he has class action experience, that would still not show an overriding need for his appearance. Ritz has been represented by KCO since September of 2021, through motion practice of critical import in the litigation, including the initial motion for class certification and Ritz's motion for summary judgment. It was not until little over a week ago, 5 years into the litigation, and in the midst of briefing on Plaintiff's Renewed Class Cert Motion that was referred to Judge Damian, that Valori was added to Ritz's legal team. There is nothing that suggests Valori brings specialized expertise to this case, especially this late in the litigation where the only issue to be decided before preparing for trial is Plaintiff's Renewed Class Cert Motion.

Certainly, the KCO attorneys with extensive class action defense experience, including Watstein who has apparently never had a class certified in a case he defended against, are able to

---

[4]     https://www.kcozlaw.com/ryan-d-watstein/

[5]     https://www.kcozlaw.com/alexander_d_terepka/; https://www.kcozlaw.com/abigail-howd/

[6]     https://dvllp.com/attorneys-2/peter-f-valori/

[7]     https://dvllp.com/business-litigation/

[8]     https://dvllp.com/attorneys-2/russell-landy/

[9]     https://dvllp.com/attorneys-2/melanie-e-damian/

handle Ritz's opposition to Plaintiff's Renewed Class Cert Motion. However, to the extent Ritz requires additional counsel, there is no lack of excellent firms in Miami who can be added to Ritz's legal team without causing Judge Damian to recuse herself from the case at this very late stage. Further, Valori has entered his appearance as co-counsel, not lead counsel, and has not actively participated in the case other than appending his signature to an unopposed motion for an extension of time and a motion to extend the parties' page limits for Plaintiff's Renewed Class Cert briefing.[10] *See* ECF 163, 164. In fact, during the parties' written meet and confer exchanges and during the parties' November 28, 2022 meet and confer by telephone, Defendant did not identify a reason for Valori entering an appearance in the case. *See* Francis Decl. at ¶ 6.

Valori does not add anything to Ritz's defense that could not be handled by its current attorneys at KCO, or by other counsel that would not result in Judge Damian's recusal. Plaintiff has no doubt Valori is a capable attorney, but he is certainly not indispensable to Ritz's defense in this case and at this time. If he were, Ritz would not have waited nearly five years to retain him, near the end of the litigation.

### 2. The Timing of Valori's Late Appearance Strongly Favors Disqualification

The timing of an appearance by an additional counsel is heavily scrutinized by the Eleventh Circuit when it results in the recusal of a judge. Courts carefully guard against the possibility that a party is adding counsel to cause the judge's recusal, especially after finding itself unhappy with that judge's rulings. In *Robinson v. Boeing*, the district court refused to allow the addition of a new law firm to represent a party in the case where that appearance would have resulted in the judge's recusal. 79 F.3d at 1054.

The court in *Robinson* determined that the timing of the attorney's appearance, which was 15 months into the litigation, was enough to disqualify the attorney, without the need to prove motive. *Id*. Mindful of the likelihood that no amount of scrutiny or discovery would "likely result in a confession or 'smoking gun'" showing that the newly appearing attorney was hired with the intent to force the judge's recusal, the Eleventh Circuit affirmed the District Court's conclusion that disqualification of counsel was warranted due to the late stage of the litigation. *Id*. at 1055. As the court stated in *Robinson*, "[w]hen there has been a passage of fifteen months, the problem is

---

[10]     Notably, as discussed below in section III(B)(6), Plaintiff requested to see Ritz's motion for an extension prior to agreeing to not oppose the requested relief. Ritz provided Plaintiff a motion signed by Watstein of KCO, but subsequently filed the motion bearing Valori's signature.

exacerbated. When there has been such a passage of time, the burden to establish the right" for a firm that would cause a judge's recusal to join the litigation is greater. *Id*.

The Eleventh Circuit stated that a party's "midstream change of counsel" gives rise to a greater cause for suspicion than a party's initial decision in hiring counsel to avoid allowing a party to "'test the waters' with a judge and, having found preliminary rulings not to its liking, stage a conflict so as to try its luck with a replacement judge." *In re BellSouth*, 334 F.3d at 961. The Eleventh Circuit's reasoning for such scrutiny is on display in this case. Following a series of motions filed by Ritz that were decided largely in Plaintiff's favor by Judge Damian (and which were later affirmed and adopted by the District Court following Ritz's objections), it certainly appears that Ritz retained Valori in an attempt to manipulate which magistrate judge will issue a Report and Recommendation on Plaintiff's Renewed Class Cert Motion. The fact that Ritz, now, retained Valori, after years of litigation and shortly after receiving multiple unfavorable rulings from Judge Damian, is great cause for suspicion and should lead to Valori's disqualification from the case.

Whether Ritz acted with ill intent or bad motive or not does not alter the fact that Valori's appearance at this late stage of the litigation, together with Judge Damian's immediate recusal, requires heightened scrutiny. If allowed to proceed, it will reward Ritz for successfully manipulating the magistrate assigned to the case and will foster mistrust of the judicial system.

### 3.   Ritz Will Not Be Prejudiced by Valori's Disqualification

There is no prejudice to Ritz if Valori is disqualified from the case. Ritz will continue to be represented by the attorneys at KCO, who have been involved with the case since September 2021. Ritz relied on the KCO attorneys to engage in significant motion practice in that time, including Plaintiff's initial motion for class certification and dispositive summary judgment motions. It was not until Judge Damian made several determinations against Ritz, which were affirmed and adopted by the District Court, and days before its initial deadline to file opposition to Plaintiff's Renewed Class Cert Motion, that Ritz retained Valori.

It is not credible for Ritz to claim it will be prejudiced by the disqualification of an attorney who entered his appearance in the case little more than a week ago. It is also difficult for Ritz to argue prejudice as it was fully aware that Judge Damian was the assigned magistrate in the case for the past ten months and had been referred Plaintiff's already filed Renewed Motion for Class

Certification when it retained Valori, the co-founding partner of the firm where Judge Damian was of counsel for more than nine years immediately prior to becoming a magistrate.

Any claim of prejudice by Ritz, who retained Valori at this late stage of the litigation when it knew his appearance would result in Judge Damian's recusal, should be afforded little consideration when balanced against the prejudice to Fox, who has done nothing to cause delay to the proceedings. *See In re BellSouth*, 334 F.3d at 947-48. In *BellSouth*, the District Court found that BellSouth's knowledge that its retention of the disqualifying attorney would result in the judge's recusal put it on notice that hiring the attorney "would subject it to court scrutiny," and pointed towards manipulation and disqualification of the attorney and his firm, despite alleged prejudice to BellSouth and minimal prejudice to the plaintiff. *Id*.

In fact, Ritz can only credibly claim prejudice in this situation if it retained Valori with the intent to manufacture the recusal of Judge Damian. Otherwise, there is no harm to Ritz in having KCO continue to represent it, or to choose a capable attorney with class action defense experience that would not result in Judge Damian's recusal. As the District Court in *Robinson* stated, "[i]f the issue is truly not one of 'judge shopping,'" disqualifying the attorney who manufactured the recusal of a judge will not adversely affect the party that retained them. 79 F.3d at 1055.

#### 4.  Fox Will Be Prejudiced if Valori is Not Disqualified

The delay that will necessarily be caused by Valori's appearance in the case, and Judge Damian's recusal as a result, merits the disqualification of Valori and his firm at this late stage of the litigation. *See id.* (delay for *any* reason is sufficient to bring the case within the exercise of a court's discretion to disqualify counsel). Judge Damian has been involved in the case for ten months and gained considerable knowledge of the factual background of the case, the parties' positions, and the relevant issues to be decided. Judge Damian scheduled a hearing on Plaintiff's Renewed Class Cert Motion to take place just two weeks after briefing was initially scheduled to be completed. ECF 159, 162. Though that timeframe may have been altered by the Court's granting of Ritz's request for an extension of time to file its opposition, it is not unfathomable that the newly assigned magistrate may require additional time to familiarize herself with the case and consider the motion papers.

Valori's appearance will, therefore, result in a delay to the resolution of Plaintiff's Class Cert Motion and the litigation. Plaintiff has devoted substantial time and financial resources in the case. Valori's late appearance in the case, manufacturing Judge Damian's recusal, has already

caused additional unnecessary expense to Plaintiff, as evidenced by the need to file this motion. The most efficient path to resolving this case is to disqualify Valori, reassign Judge Damian to the case, and allow Judge Damian to issue a Report and Recommendation on Plaintiff's Renewed Class Cert Motion. Anything less prejudices Plaintiff.

### 5.   Valori's Appearance Results in a Significant Waste of Judicial Resources

The Eleventh Circuit has also found that, when deciding disqualification after recusal, a relevant consideration is the reality that "[j]udicial resources in this country are limited." *Robinson*, 79 F.3d at 1055. It is incumbent on lawyers as officers of the court, as well as judges, to guard against the useless expenditure of judicial time, which comes at the public's expense. *Id*.

Effective case management requires that judges are familiar with the cases on their docket, and that they use their understanding of the case to manage it to conclusion. Allowing late appearances that result in the recusal of the presiding judge undermines effective judicial administration and threatens litigation fairness. As the Fifth Circuit explained:

> If a party who is offended by a judge's ruling could disqualify the judge by employing new counsel after the case had been pending before that judge for years, he could force on other litigants and the courts the penalty of starting over before a new judge. Both effective judicial administration and economy of litigation costs require that a case be assigned as soon as possible after it is filed to a single judge who will become fully familiar with the issues and exercise effective control over the pleadings, discovery, pretrial, and trial. . . . If, after seeing who the judge is or weighing his rulings for a period of years, a litigant could in effect veto the allotment and obtain a new judge by the expedient of finding one of the judge's relatives who is willing to act as counsel, it would become possible for any party to disrupt [the final resolution of the case].

*McCuin*, 714 F.2d at 1263-64.

Eleventh Circuit precedent also requires consideration of the impact on the Court's docket in ruling on a request to disqualify an attorney whose appearance results in judicial recusal. *See In re BellSouth,* 334 F.3d at 948. Case management issues generally do not lend themselves to specific factual arguments, but rather are left to the court to consider in light of what it knows about the amount of time a judge might have spent in ruling on already decided matters, and on the condition of crowded dockets and priorities on other judge's calendars. But there can be no serious question that Judge Damian has expended substantial effort in digesting the hundreds of pages of briefing and exhibits presented in the six motions she has already ruled upon in this matter, and in writing six detailed decisions totaling 96 pages. Many of the same factual and legal issues

are presented in Plaintiff's Renewed Class Cert Motion. If Valori's late appearance is permitted to stand, it will require significant duplicative judicial efforts by Judge Reid to come up to speed on the prior proceedings, to which Judge Damian has already devoted substantial time at public expense.

All judges in this district are busy and judicial resources scarce. While Plaintiff has no doubt that any judge in this district is fully capable of ruling on Plaintiff's Renewed Class Cert Motion and supervising this case through pretrial proceedings, the impact on Judge Reid's docket and investment of her time to learn this case is not needed given Judge Damian's substantial knowledge of this matter.

### 6. Valori's Appearance Will Contribute to Mistrust of the Judicial System

A court's inherent power to disqualify an attorney is rooted in concern for the integrity of the judiciary and the public's perception thereof. *See In re BellSouth*, 334 F.3d at 959-60. The facts of this case raise real concerns about the integrity of the judicial process. Ritz's retention of Valori leaves the appearance of "judge shopping" and it can only foster mistrust of our judicial system.

The Fifth Circuit considered the detrimental effect on the judicial system caused by mid-case appearances that result in judicial recusal in *McCuin*. 714 F.2d at 1265. There, the Court sternly warned it would not allow mid-case appearances when the facts even *suggest* that counsel was retained for the purpose of recusing a judge. *Id.* The *McCuin* Court noted that litigants have the right to hire lawyers of their choice, but that right must be overridden when counsel appears to have been selected for the purpose of disqualifying the judge. *Id.* The Fifth Circuit was concerned that any other rule would "contribute to skepticism about and mistrust of our judicial system." *Id.*

The Eleventh Circuit relied on the same reasoning in *Robinson* and *In re BellSouth*, recognizing that gamesmanship and manipulation of a purportedly neutral process of case assignment "is disruptive of the orderly administration of justice[.]" *In re BellSouth*, 334 F.3d at 959-60 (citing *McCuin* and *Robinson*).

The need to avoid even the appearance of impropriety requires disqualification, and the Court need not find that Ritz actually engaged in "judge picking" or acted in bad faith to order Valeri disqualified. *In re FCC*, 208 F.3d at 139. There can be no serious question that Ritz knew or should have known that Judge Damian would recuse herself when it engaged the co-founder of the firm to which she was of counsel before joining the bench, which raises the strong inference that Ritz is intentionally seeking to disqualify Judge Damian after she repeatedly ruled against

them. On these facts, courts have insisted that new counsel be disqualified so the judge can remain presiding over the case. As the Second Circuit put it:

> [T]actical abuse becomes possible if a lawyer's appearance can influence the recusal of a judge known to be on a panel. Litigants might retain new counsel for rehearing for the very purpose of disqualifying a judge who ruled against them. **As between a judge already assigned to a panel, and a lawyer who thereafter appears in circumstances where the appearance might cause an assigned judge to be recused, the lawyer will go and the judge will stay.** This practice preserves the neutral and random assignment of judges to cases, and it implements the inherent power of this Court to manage and control its docket.

208 F.3d at 139 (emphasis added).

In highly similar circumstances where a party engaged the judge's former law partner immediately after receiving an adverse decision, the Second Circuit disqualified the new firm, finding that it "could not have escaped [the newly added firm's] attention" that its appearance would lead to recusal. *Id.* The same is true here – it cannot have escaped Ritz's attention that its new counsel practices at a firm sharing the judge's name and would likely lead to her recusal. As between Judge Damian, who has expended substantial public resources in becoming familiar with the detailed record and complex legal issues presented in this matter, and Valori who has been counsel of record for a week and lacks relevant experience, Valori must go and Judge Damian must stay. [11]

In this case, the behavior of Ritz counsel, KCO, immediately prior to Valori entering his appearance further suggests that this was done with the explicit purpose of manufacturing Judge Damian's recusal. Counsel for Ritz informed Plaintiff it would be requesting an extension of time to file its opposition to Plaintiff's Renewed Class Cert Motion. *See* Ex. A at 1. Plaintiff requested to see Ritz's motion for an extension prior to agreeing to not oppose the requested relief. *Id*. at 2. When Ritz provided Plaintiff the motion, it featured the signature block of Watstein from KCO. *See* Ex. B at 2. However, following the filing of Valori's notice of appearance in the case, the

---

[11]     Although this matter has already been reassigned to Judge Reid, the typical practice when a court disqualifies counsel whose late appearance caused a recusal is to return the case to the docket of the previous judge. *See Hunters Run Apts. Ltd. v. WCA Waste Corp.,* No. 1:15–cv–00151–MP–GRJ, 2016 WL 9086970, at *4 (N.D. Ala. Apr. 25, 2016) (disqualifying newly entered firm in similar circumstances and referring case back to original judge); *UCP Int'l Co. Ltd. et al v. Balsam Brands Inc. et al*, No. 3:16-cv-07255 (N.D. Cal.) at ECF 106 (referring case back to original judge on same date as new counsel was disqualified).

motion that was filed bore Valori's signature. *See* ECF 164 at 2. While proof of intent is unnecessary here, the bait-and-switch by Ritz suggests it did not want to tip Plaintiff off to the manufactured recusal that was coming.

Cases should be decided to conclusion by the assigned judge, unless there is a legitimate reason to change judges. No party should be allowed to manufacture a judicial recusal to avoid further decisions by a judge who has previously made adverse rulings, or to delay judicial proceedings. Whether or not that was Ritz's intent in this case, the appearance of Ritz retaining Valori only after Judge Damian issued multiple decisions adverse to Ritz, which Ritz was unsuccessful in overturning before Judge Cooke, gives the plain appearance of judicial manipulation. If Valori is not disqualified, the Court will be signaling to losing litigants that they can live to fight another day if they hire the judge's prior firm to effectuate a recusal. The skepticism generated by Ritz's late addition of Valori outweighs the benefit of Valori's continued participation in this case where Judge Damian is well-versed in the central issues in the case and poised to decide class certification issues based on the same facts and claims.

The Court should rule that disqualification of counsel on these facts is more than justified because "[t]o permit a litigant to blackball a judge merely by invoking a talismanic 'right to counsel of my choice' would contribute to skepticism about and mistrust of our judicial system." *McCuin*, 714 F.2d at 1265. In short, Valori must be disqualified and the case returned to Judge Damian's docket so litigants and the public can have faith that the random assignment of judges cannot be manipulated with manufactured recusals.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant Plaintiff's motion to disqualify Peter Valori from the case, reassign Magistrate Judge Damian to the case and any further relief the Court deems appropriate.

## RULE 7.1 CERTIFICATION

Pursuant to Local Rule 7.1(a)(3), I certify that Plaintiff's counsel conferred with Defendant's counsel in a good faith effort to resolve the issues raised in the motion and has been unable to do so.

On November 22, 2022, Plaintiff informed Defendant, by email, of his intention to file this motion and offered to meet and confer to discuss. Defendant responded by email stating there was

no basis for the motion, but Defendant would like to meet and confer on it. Defense counsel never asserted any reason for adding Valori so late to the litigation. Plaintiff responded by email on November 23, 2022, seeking to schedule a time to meet and confer on Friday, November 25. Later on November 23, 2022, Defendant declined to propose any times to meet and confer on Friday, and responded instead that Mr. Valori would be joining the parties' meet and confer and proposed 2:00pm or 4:00pm on Monday, November 28, 2022, for the parties to confer. Plaintiff confirmed 2:00pm for the parties to meet and confer by telephone. During the parties' meet and confer call on November 28, 2022, counsel for Defendant repeated its view that the instant motion had no basis, and that it was highly unlikely Defendant would consent to Plaintiff's requested relief to disqualify Valori and reassign the case to Judge Damian. During the phone call, Valori never spoke, and defense counsel never offered any reason, compelling or otherwise, why Valori was added to the case.  Defense counsel stated they would be having a call with Defendant following the parties' meet and confer to discuss and that counsel thinks Defendant would oppose the motion. Plaintiff gave defense counsel until 5:00pm to discuss with Defendant and respond before moving forward with filing. Defendant did not respond to Plaintiff.

Plaintiff feels it is appropriate to file the motion at this time to put this important issue before the Court and attempt to avoid unnecessary delays in the case, to the extent possible, resulting from Judge Damian's recusal. If, after filing, Defendant responds that it agrees to any or all of Plaintiff's requested relief, Plaintiff will notify the Court and withdraw the portions of the motion that are resolved through Defendant's agreement. No other parties or non-parties will be affected by the relief sought in this motion.

Respectfully submitted,

Dated: November 28, 2022

s/ David M. Marco
**SMITHMARCO, P.C.**
David M. Marco
IL Bar No. 6273315/FL Bar No. 125266
SMITHMARCO, P.C.
7204 Kyle Ct.
Sarasota, Florida 34240
Telephone: (312) 546-6539

15

Facsimile: (888) 418-1277
E-Mail: dmarco@smithmarco.com

**FRANCIS MAILMAN SOUMILAS, P.C.**
James A. Francis (*pro hac vice*)
1600 Market Street, Suite 2510
Philadelphia, PA 19103
T: (215) 735-8600
F: (215) 940-8000
jfrancis@consumerlawfirm.com


**LEWIS SAUL & ASSOCIATES, P.C.**
Lewis J. Saul (*pro hac vice*)
Edward A. Coleman (*pro hac vice*)
29 Howard Street, 3rd Floor
New York, NY 10013
T: (212) 376-8450
F: (212) 376-8447
lsaul@lewissaul.com
ecoleman@lewissaul.com

*Attorneys for Plaintiff and the Classes*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on November 28, 2022, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via CM/ECF.


*/s/ David M. Marco*

David M. Marco