UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:17-CV-24284-COOKE/REID

MICHAEL FOX, on behalf of himself
and all others similarly situated,

      Plaintiff,

v.

THE RITZ-CARLTON HOTEL
COMPANY, LLC,

      Defendant.

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO DISQUALIFY**

## **TABLE OF CONTENTS**

I.     INTRODUCTION...................................................................................... 1

II.    BACKGROUND ...................................................................................... 3

    A.  Plaintiff Files a Meritless Lawsuit. ...................................................... 3

    B.  The Case Is Assigned to Judge Cooke After Remand in 2020. ........................... 4

    C.  Judge Damian Rules in Ritz-Carlton's Favor on Numerous Critical Issues......... 5

    D.  Ritz-Carlton Moves the Court to Rule on the Original Certification Motion Without Delay, Which Plaintiff Opposed. ........................................................... 7

    E.  Various District Judges Rule on Motions in the Case....................................... 7

    F.  Ritz-Carlton Retains Peter Valori as Local Counsel. .......................................... 8

    G.  Ritz-Carlton Files an Opposition to the Renewed Certification Motion that Heavily Relies on the Court's Orders Adopting Judge Damian's Rulings. .......... 9

III.   LEGAL STANDARD ............................................................................... 10

IV.  ARGUMENT: DISQUALIFICATION SHOULD BE DENIED UNDER THE ELEVENTH CIRCUIT'S FACTORS....................................................... 11

    A.  Mr. Valori's Appearance Has Not Caused Delay............................................. 11

    B.  No Judicial Time Was Been Invested in a Motion that Was Still Being Briefed. 13

    C.  The Court's Docket Is Unaffected. .................................................................. 13

    D.  There Is No Additional Expense to Plaintiff. .................................................... 14

    E.  There Is No Injury to Plaintiff....................................................................... 14

    F.  There Is No Appearance of Potential for Manipulation or Impropriety, Except if Plaintiff's Motion Were Granted................................................................... 15

    G.  Disqualification Would Deny Ritz-Carlton's Fundamental Right to Counsel. ... 19

V.    CONCLUSION ...................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                         **Page(s)**

*Baptiste-Alkebul-Lan v. Smith*,
   2022 WL 1150861 (M.D. Fla. Mar. 28, 2022) ............................................................16

*Bell v. U.S. Bank Nat'l Ass'n*,
   793 F. App'x 989 (11th Cir. 2020)................................................................................ 6

*EEOC v. Ryan's Fam. Steak Houses*,
   2006 WL 8436776 (N.D. Ala. Apr. 6, 2006)................................................................10

*Huff v. Standard Life Ins.*,
   683 F.2d 1363 (11th Cir. 1982) ...................................................................................16

*In re BellSouth Corp.*,
   334 F.3d 941 (11th Cir. 2003) ...............................................................................*passim*

*In re F.C.C.*,
   208 F.3d 137 (2d Cir. 2000) ................................................................................. 15, 17

*McCuin v. Texas Power*,
   714 F.2d 1255 (5th Cir. 1983) .....................................................................................15

*Mitchell v. Hunt*,
   2017 WL 1157897 (M.D. Fla. Jan. 9, 2017) ......................................................... 10, 20

*Norton v. Tallahassee Memorial*,
   689 F.2d 938 (11th Cir. 1982) .....................................................................................10

*Otto v. Abbott*,
   2015 WL 9698992 (C.D. Cal. Sept. 29, 2015)............................................................. 6

*Robinson v. Boeing Co.*,
   79 F.3d 1053 (11th Cir. 1996) ......................................................................... 15, 17, 18

*Robinson v. Boeing Co.*,
   1995 WL 17061021 (11th Cir. Feb. 14, 1995) .............................................................18

*Smart Commc'ns v. Glob. Tel-Link*,
   590 F. Supp. 3d 758 (M.D. Pa. 2022).........................................................................12

*Sullivan v. Suncoast RV*,
   2011 WL 13228764 (N.D. Ala. Mar. 16, 2011) .............................................. 12, 13, 14

*United States v. Hernandez*,
   2013 WL 5313311 (S.D. Fla. Sept. 20, 2013)..............................................................10

*United States v. Price*,
    724 F. App'x 923 (11th Cir. 2018)................................................................10

*Upjohn v. United States*,
    449 U.S. 383 (1981).........................................................................................15

*Vega v. T-Mobile USA, Inc.*,
    564 F.3d 1256 (11th Cir. 2009) ...............................................................1, 6

*Zlotnick v. Premier Sales*,
    480 F.3d 1281 (11th Cir. 2007) ................................................................. 6

**Rules**

Fed. R. Civ. P. 23 .............................................................................................2, 6

Fed. R. Civ. P. 30 .............................................................................................. 5

Fed. R. Civ. P. 72 ............................................................................... 13, 14, 15

Fed. R. Evid. 408 .............................................................................................. 5

**Statutes**

28 U.S.C. § 455 .......................................................................................... 9, 16, 18

28 U.S.C. § 636 ................................................................................................14

28 U.S.C. § 1927 ............................................................................................... 7

## I.   <u>INTRODUCTION</u>

In this putative FDUTPA class action, Plaintiff claims that Ritz-Carlton deceived him by charging automatic suggested gratuities on hotel restaurant purchases with no or inadequate notice.  But throughout discovery, the evidence confirmed that Plaintiff's claims lack merit: He was provided notice of the gratuities at least *12 times* on menus, bills, and receipts he signed.  And the notices worked.  Plaintiff confirmed at deposition that he *knew* about the automatic gratuities before he voluntarily chose to pay them.  Plaintiff's putative class claims lack merit too.  Hundreds of pages of declarations confirm that Ritz-Carltons across Florida transparently disclosed automatic gratuities in various ways (*e.g.*, on menus, bills, receipts, and verbally).  Identifying a *single* customer who claims to have been deceived like Plaintiff (if any even exist) would require a highly individual inquiry, precluding certification under binding authority.  Indeed, Plaintiff is the only person who has *ever* claimed to have been deceived among dozens of Ritz-Carlton customers who attested to the opposite.

In late 2021, litigation on the meritlessness of Plaintiff's individual and class claims came to a head.  The parties briefed various critical motions, including cross motions for summary judgment, the original class certification motion, a motion to sanction Plaintiff, and motions to exclude improper declarations Plaintiff filed in support of certification.  Judge Cooke referred those motions to Magistrate Judge Damian.  Although Plaintiff's motion suggests that Ritz-Carlton lost before Judge Damian and was thus "unsatisfied" with the Court's rulings, the opposite is true.  Ritz-Carlton *won* the majority of the key issues Judge Damian resolved.  For example, Judge Damian outright denied Plaintiff's partial motion for summary judgment and granted Ritz-Carlton summary judgment on *two out of three* of Plaintiff's claims.  And she excluded the improper, speculative attorney declaration Plaintiff submitted as the *only* evidence to support multiple requirements for certification.

Not only were these major victories for Ritz-Carlton, Judge Damian's reports also previewed denial of the most significant motion in the case: Plaintiff's motion for class certification.  In finding that disputes of fact require a trial on individualized aspects of Plaintiff's claim, Judge Damian confirmed that no class could ever be certified.  Just as Plaintiff's unique experiences with the various notices Ritz-Carlton provided have "a direct impact on" his ability "to establish liability," so too would "every class member's" claim require "individualized proof." *Vega v. T-Mobile USA, Inc.,* 564 F.3d 1256, 1270 (11th Cir.

1

2009).   Under Judge Damian's rulings, then, this case is "not suitable for" certification because he could never show predominance, Rule 23's most important requirement.  *Id.*

In any event, with everything but the original certification motion resolved, Ritz-Carlton moved the Court in October 2022 to decide that motion without delay.  Plaintiff opposed, arguing that certification should be re-briefed despite the additional delay and expense that would cause.  The Court agreed with Plaintiff, and ordered the parties to re-brief certification.  In the meantime, several additional district judges began signing orders on behalf of Judge Cooke, the assigned district judge.

Ritz-Carlton was thus at a crossroads in the case.  No motion was fully briefed and under submission with the Court.  The last remaining substantive motion to be decided was the renewed certification motion.  The case would then go to trial regardless, because the Court found triable disputes of fact on one of Plaintiff's claims.  But Ritz-Carlton only had out-of-town counsel (KCO).  And, it was presented with the unusual circumstance of other district judges signing orders for the assigned judge, leaving Ritz-Carlton unsure of its judicial audience.  So Ritz-Carlton retained "local" counsel, a legitimate, commonplace practice to "acquir[e] knowledge" about "local courts."  HON. REGGIE B. WALTON, BUS. & COM. LITIG. FED. CTS. § 47:5 (5th ed. 2022).  It chose Mr. Valori, a preeminent litigator with decades of experience in this jurisdiction, and thus the ideal candidate for local counsel.  Not only is he more than qualified for the local counsel role, Mr. Valori also has a wealth of relevant substantive experience, including as lead counsel in FDUTPA, hospitality, and class action matters.  Judge Damian then recused *sua sponte*, without the input of either party, and Judge Reid became the assigned magistrate judge.  Judge Cooke remains the assigned district judge in this case.

Plaintiff now moves to disqualify Ritz-Carlton's chosen local counsel, accusing Ritz-Carlton of judge shopping.  But Plaintiff has not come close to carrying his heavy burden for that extreme remedy, under binding authority.  To begin, Plaintiff's motion is based on several demonstrably false representations.  For example, Plaintiff attacks Mr. Valori as "adding nothing" to the case.  But he is the only local counsel assisting Ritz-Carlton's out-of-town counsel as the case heads to trial, and he is eminently qualified for that role.  Nor did Ritz-Carlton lose before Judge Damian—Plaintiff did.

And not one of the factors in the binding Eleventh Circuit test for disqualification favor

it here.    Mr. Valori's appearance did not delay the case; Plaintiff's unnecessary disqualification motion did.   The Court's docket was also unaffected.   No judicial time was invested in the renewed certification motion when Mr. Valori appeared either, because that motion was still being re-briefed.   Nor has Plaintiff been injured, particularly because the assigned district judge *has not changed*, and that judge will review the last significant pre-trial matter (certification) *de novo* and then preside over the trial in this matter.   Plaintiff cites no authority for disqualification in that circumstance, and the cases he does cite confirm that his motion should be denied.   In any event, there is no appearance of potential impropriety from the routine practice of retaining highly qualified local counsel as a case heads to trial.   And disqualification would deny Ritz-Carlton's fundamental right to counsel.   Indeed, Plaintiff has complained before about Ritz-Carlton's choice of counsel.   But Plaintiff does not get to choose Ritz-Carlton's lawyers for it.

Not only has Plaintiff failed to establish *any* of the disqualification factors (much less enough of them to warrant his extreme request), the "potential for strategic abuse" *from Plaintiff's motion* further confirms that it should be denied.   *In re BellSouth Corp.*, 334 F.3d 941, 943 (11th Cir. 2003).   Plaintiff vehemently complains that Mr. Valori's appearance will cause delay.   But it is Plaintiff's motion that has caused the December hearing on certification to be moved to January.   And granting Plaintiff's motion would cause even more delay by resulting in a judicial reassignment.   His self-defeating motion thus suggests an ulterior motive: attempting to malign Ritz-Carlton to distract from the meritlessness of the renewed certification motion and burden Ritz-Carlton with unnecessary motion practice while it was briefing certification.   Whatever the case may be, the potential for strategic abuse from Plaintiff is apparent.   The motion should be denied.

## II.   BACKGROUND

### A.  Plaintiff Files a Meritless Lawsuit.

Plaintiff filed this putative FDUTPA class action in 2017.   The Complaint claims that Ritz-Carlton deceived Plaintiff by charging automatic suggested gratuities on hotel restaurant purchases with no or inadequate notice.   But the evidence revealed in discovery, including Plaintiff's own testimony, confirms that Plaintiff was not deceived and the allegations in the Complaint are false: He was provided notice of the automatic suggested gratuities at least *12 times* on menus, bills, and receipts he signed.   These undisputed notices preclude Plaintiff from

3

proving that he was deceived, many times over. And the notices worked. Plaintiff confirmed at deposition that he knew about the automatic gratuities before he voluntarily chose to pay them. Plaintiff also could not remember whether he ever looked at a menu for three out of his four meals, and he obviously can't prove that menus he can't remember looking at somehow deceived him. And although Plaintiff claimed for years that he paid four automatic gratuities for four restaurant purchases, the undisputed evidence is that two of his four purchases were *free breakfasts*, so he didn't pay anything for them, gratuity or otherwise. *See generally* ECF 172 at 3–6.

**B.   The Case Is Assigned to Judge Cooke After Remand in 2020.**

The case was originally assigned to Judge King, who *sua sponte* dismissed the case for lack of subject matter jurisdiction at the pleadings stage in 2019. ECF 31. Plaintiff appealed, and the Eleventh Circuit affirmed the dismissal of one of Plaintiff's claims but reversed the conclusion that the Court lacked subject matter jurisdiction over his FDUTPA claims. ECF 39. When the case was remanded in 2020, Judge King recused *sua sponte* and without explanation. ECF 40. The case was then assigned to Judge Cooke on November 2, 2020. *Id.* The following day, Magistrate Judge Becerra transferred the case to then Chief Magistrate Judge O'Sullivan. ECF 41.

Judge Cooke then supervised and managed the case as the parties worked to complete discovery and prepare key motions, including dispositive motions and a class certification motion. The Court set the initial scheduling order for the case, including the close of discovery and trial dates. ECF 48. With the parties' input, Judge Cooke later modified the scheduling order to allow additional time for discovery. ECF 53. When the parties requested an extension of time to disclose experts and submit briefing on class certification, the Court held a status conference to discuss the scheduling issues. ECF 72. Following the conference, Judge Cooke adjusted the original class certification briefing schedule to extend the time and page limits for opposition and reply. ECF 71.

Kabat Chapman & Ozmer, LLP (KCO) formally took over as Ritz-Carlton's counsel from Holland & Knight in September 2021, in the midst of discovery. ECF 60. Since then, Plaintiff has repeatedly complained about Ritz-Carlton's choice of counsel. Plaintiff has complained to the Court, for example, that "[i]t was not until KCO was substituted as counsel" that Ritz-Carlton "harass[ed]" him with such simple things as serving subpoenas on

two fact witnesses and offering him the opportunity to settle his meritless case by walking away before incurring further potential liability under FDUTPA's fee shifting statute. ECF 104 at 15. Suffice it to say, there is nothing to Plaintiff's complaints about Ritz-Carlton's choice of counsel. Judge O'Sullivan, for example, noted on the record that the Court was "very surprised" Plaintiff sought to quash a deposition subpoena Ritz-Carlton served because it was "clear" the deposition was "relevant." ECF 101; ECF 102 at 19:10–13. Indeed, Ritz-Carlton (through KCO) deposed only two witnesses in this entire class action case even though the Federal Rules provide for ten. Fed. R. Civ. P. 30(a)(2). There is nothing harassing about that. Nor is there anything harassing about a compromise offer that warns Plaintiff about the very real possibility that he will ultimately be required to pay Ritz-Carlton's fees in this meritless case. Fed. R. Evid. 408.

In any event, with Judge Cooke presiding, the parties completed discovery. And in late 2021 and early 2022, the parties briefed several motions, including Plaintiff's original class certification motion, cross motions for summary judgment, and Ritz-Carlton's motion to exclude an attorney declaration filed as the sole support to carry Plaintiff's burden on numerous elements of certification. ECF 92, 94, 98. Judge O'Sullivan retired around the time these motions were briefed, and Magistrate Judge Damian was assigned to take his place. ECF 122. Judge Cooke then referred these pending motions to Judge Damian. ECF 123.

## C. Judge Damian Rules in Ritz-Carlton's Favor on Numerous Critical Issues.

In an attempt to paint Ritz-Carlton as "unsatisfied" with Judge Damian's rulings, Plaintiff's motion suggests that Judge Damian ruled against Ritz-Carlton on virtually every referred motion. That is demonstrably false. Plaintiff's account *entirely omits* multiple reports in Ritz-Carlton's favor. Judge Damian recommended denying Plaintiff's partial motion for summary judgment in its entirety (which the Court adopted). ECF 135, 142. Judge Damian also granted Ritz-Carlton's motion to exclude two prior declarations that Plaintiff's counsel (Coleman) submitted as the sole support for multiple requirements for certification. ECF 130. In doing so, Judge Damian found that the declarations were "replete with inferences, opinions, and arguments by counsel" masquerading as evidence. ECF 130 at 10.

In addition to entirely omitting multiple Ritz-Carlton wins before Judge Damian, Plaintiff understates his loss in perhaps the most significant ruling to date: Judge Damian's report recommending summary judgment in favor of Ritz-Carlton on *two out of three* of

5

Plaintiff's claims.  ECF 137 at 19–24.  That report, which the Court adopted, recommended summary judgment for Ritz-Carlton on both of Plaintiff's *per se* FDUTPA claims, leaving only a single traditional FDUTPA claim.[1]  ECF 150.

Not only did Judge Damian's reports eliminate the majority of Plaintiff's claims, they previewed the denial of class certification.[2]  The Court's decision to exclude Coleman's improper attorney declarations, for example, effectively required denying the original certification motion because they were the *only* support for multiple elements of certification. ECF 94 at 4.  And Judge Damian's summary judgment reports eliminated two of three of Plaintiff's putative classes.  *See* ECF 67 at 6–8 (original certification motion with two of three putative classes for per se claims that Judge Damian's reports eliminated).  They also confirmed that no class can be certified.  The denial of summary judgment on Plaintiff's traditional FDUTPA claim held that the evidence about Plaintiff's individual experiences requires a trial on the merits of all three elements of the claim (*i.e.*, deceptive practice, causation, and damages) to resolve various disputes of fact.  A fact finder must resolve, for example, dispositive disputes of fact about what notices Plaintiff received (including what menus were provided) and whether he knowingly paid the charges, among other issues.  That means no class can be certified.  Just as Plaintiff's individual experiences have "a direct impact on" his ability "to establish liability" that require a trial to resolve, "every class member's" claim would likewise require a trial with different evidence about their unique experiences at different restaurants.  *Vega*, 564 F.3d at 1270.  That "clearly fails the Rule 23(b)(3) predominance requirement," *Otto v. Abbott*, 2015 WL 9698992, at *6 (C.D. Cal. Sept. 29, 2015), confirming that this case is "not suitable for" certification, *Vega*, 564 F.3d at 1270.

Finally, Plaintiff also ignores that even his "wins" before Judge Damian were narrow and skeptical of Plaintiff's case.  For example, Ritz-Carlton moved to sanction Plaintiff on the ground that he unreasonably and vexatiously expanded the proceedings by moving for

---

[1] For a "per se" claim, a violation of another law may serve as a predicate to establish the first element of FDUTPA.  *Hucke*, 160 F. Supp. 3d at 1328.  Without a predicate, a plaintiff can only pursue a "traditional" FDUTPA claim, which requires "a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances." *Zlotnick v. Premier Sales*, 480 F.3d 1281, 1284 (11th Cir. 2007).

[2] Ritz-Carlton objected to some reports because that is required to preserve the issues for appeal.  *Bell v. U.S. Bank Nat'l Ass'n*, 793 F. App'x 989, 990 (11th Cir. 2020).

certification with no evidentiary support other than a sham reply declaration that contradicted his deposition testimony (and a false, speculative declaration from his own counsel that the Court excluded). *See* ECF 96; 28 U.S.C. § 1927. Ritz-Carlton also separately moved to exclude Plaintiff's sham reply declaration. Although Judge Damian's reports recommended against excluding that declaration (and sanctions), Judge Damian noted that Plaintiff "modified his deposition testimony" and "changed his responses" to key questions in a way that "a jury may" find "diminish his persuasiveness" and "credibility." ECF 131.

In any event, the Court chose not to rule on the original class certification motion when it ruled on other pending motions. The Court instead denied the original certification motion without prejudice to refiling and stated it would set a schedule for a renewed certification motion after all other outstanding motions were resolved. ECF 138 at 2.

### D. Ritz-Carlton Moves the Court to Rule on the Original Certification Motion Without Delay, Which Plaintiff Opposed.

Shortly after the Court adopted Judge Damian's reports without modification, Ritz-Carlton moved the Court to rule on the original certification motion without delay. ECF 155. By the time it did so, the original motion had been fully briefed and pending for more than 10 months. To avoid any additional time before a ruling, Ritz-Carlton thus moved the Court to simply decide the fully briefed motion after permitting each side to file expedited 5-page supplemental briefs about new developments in the case, including the Court's rulings on other motions. But Plaintiff opposed the motion and insisted that the parties should completely re-brief certification, despite the significant delay (and unnecessary expense) it would necessarily entail. In any event, the Court denied Ritz-Carlton's motion, set a schedule to brief the renewed certification motion in November and December 2022, and referred the motion to Judge Damian once briefing was completed. ECF 156, 169.

### E. Various District Judges Rule on Motions in the Case.

Since mid-January 2022, a number of district judges have signed orders for Judge Cooke in this matter. Judge Williams has signed several orders on Judge Cooke's behalf, for example, including orders adopting the magistrate judge's reports on the parties' cross motions for summary judgment, among others. ECF 129, 142, 149, 150, 151, 152, 156, 167. Chief Judge Altonaga has also signed orders on Judge Cooke's behalf, and so has Judge Gayle. ECF 134, 138, 160. These various orders did not say why other judges were signing

orders in Judge Cooke's stead.  In all, nine judicial officers have ruled on matters in this case.

**F.   Ritz-Carlton Retains Peter Valori as Local Counsel.**

With its request for the Court to decide the original certification motion denied, the case was at a crossroads in November 2022.  No substantive motion was briefed and under submission before any judicial officer.  But briefing on the most important motion in the case was coming up in light of the order to fully re-brief class certification.  And with Ritz-Carlton's summary judgment motion denied on the traditional FDUTPA claim, the case would be headed to trial no matter the outcome of that motion.  This critical substantive crossroads put Ritz-Carlton in the common position where it made sense to consider additional counsel that could provide insight into the jurisdiction's local practices as the case headed for trial.  So did the unusual situation of various judges signing orders for Judge Cooke for an extended period of time, which left Ritz-Carlton in a difficult position where it did not know who the ultimate decision maker or makers are.  The need for local insight was especially stark because Ritz-Carlton's lead counsel is not located in this jurisdiction.  The ideal candidate to fill this role on Ritz-Carlton's legal team, of course, would be a lawyer who is a preeminent member of the jurisdiction's bar, has at least some relevant substantive experience, and can provide a wealth of insight from years of experience in the jurisdiction, potentially including insight into the assigned judicial officers and the circumstance of many district judges signing orders.

That lawyer is Peter Valori.  Mr. Valori, the Co-Founder and Managing Partner of Damian & Valori, LLP, has been litigating in the Southern District of Florida for 27 years.  Declaration of Peter Valori ("Valori Decl.") ¶¶ 1–2.  He heads the firm's complex business litigation practice.  *Id.* at ¶ 1.  Mr. Valori has been widely recognized for his accomplishments in the field.  For example, he received an AV Preeminent Rating from Martindale-Hubbell Peer Review Ratings and was identified as one of "The Best Lawyers in America" in 2021, one of the "Most Effective Lawyers" by the Daily Business Review in 2020, a "Super Lawyer" every year from 2006 through 2022, a "Legal Elite" lawyer by Florida Trend Magazine every year from 2006 to 2011 and in 2017, and a "Top Attorney" in Florida in 2012 by the Wall Street Journal and Miami Magazine.  *Id.* at ¶ 3.  He has also served as the President of the Miami Beach Bar Association and as Chair in numerous county and state bar committees.  *Id.* at ¶ 4.  Mr. Valori is thus the perfect fit to fill the role of local counsel that was missing from Ritz-Carlton's team as the final critical motion would be decided and as Ritz-Carlton

prepares for trial.

Not only is Mr. Valori eminently qualified to serve as local counsel, he also has relevant substantive experience in the hospitality industry, and in defending FDUTPA claims and class action lawsuits. *Id.* at ¶ 5. He has handled approximately 10–20 cases involving FDUTPA claims, for example, and served as lead counsel in numerous class actions. *Id.*

At the time of Mr. Valori's appearance, there were no motions or other matters pending before Judge Damian. Plaintiff's renewed class certification motion was being briefed. And nothing in the federal recusal statute (28 U.S.C. § 455), the Court's Local Rules, or its Internal Operating procedures indicated that Judge Damian would be required to recuse merely because a former colleague appeared in the case—a routine practice given the number of judges who come from large firms. Judge Damian nevertheless recused *sua sponte* with no input from either party shortly after Mr. Valori's appearance. ECF 165. The order did not explain the reason for the recusal. The same order referred the renewed certification motion to Judge Reid to issue a report and recommendation after briefing is completed. Judge Reid then set a hearing on the renewed certification motion on December 19, a day earlier that it was previously scheduled, before moving the hearing to January 25 so it could resolve this motion first. ECF 175. In any event, Judge Cooke has remained the assigned district judge with ultimate responsibility to decide certification and all dispositive issues since November 2, 2020.

### G. Ritz-Carlton Files an Opposition to the Renewed Certification Motion that Heavily Relies on the Court's Orders Adopting Judge Damian's Rulings.

Ritz-Carlton then filed its response to the renewed certification motion, for which Mr. Valori provided substantive and strategic input.[3] Ritz-Carlton's response to the renewed motion heavily relies on the Court's orders adopting Judge Damian's reports on multiple matters. The introduction of Ritz-Carlton's response to the renewed certification motion, for example, devotes two full paragraphs to the report on its summary judgment motion and the point that it shows no class can be certified. ECF 172 at 2. That report identified several disputes of fact on Plaintiff's individual claim that must be resolved at a trial. *Id.* The Court would need to repeat that trial hundreds of thousands of times to resolve similar disputes

---

[3] The details of Mr. Valori's involvement, of course, are protected under the attorney-client privilege and work product doctrines.

about the unique experiences of every putative class member, precluding a showing of predominance and certification. *See also* above at 6 (discussing that summary judgment report previewed denial of certification motion). And Ritz-Carlton's response likewise relied on the order excluding the improper attorney declarations Plaintiff filed as "evidence" in support of certification because Plaintiff violated that order by attempting to support his renewed motion with still another improper declaration from the same attorney, as Ritz-Carlton will more fully explain in a forthcoming motion to exclude. In any event, the renewed class certification motion was in the middle of being briefed when Plaintiff filed this motion.

## III.   LEGAL STANDARD

The right to choose one's own counsel is an "essential part" of the Sixth Amendment right to counsel. *United States v. Hernandez*, 2013 WL 5313311, at *3 (S.D. Fla. Sept. 20, 2013); *accord United States v. Price*, 724 F. App'x 923, 923 (11th Cir. 2018) (citation omitted). Parties are thus presumptively entitled to counsel of their choice, including in civil cases. *In re BellSouth Corp.*, 334 F.3d 941, 961 (11th Cir. 2003). Because "[d]isqualification of counsel is an extreme remedy," it "will not be imposed lightly." *Mitchell v. Hunt*, 2017 WL 1157897, at *3 (M.D. Fla. Jan. 9, 2017), *report and recommendation adopted*, 2017 WL 1135296 (M.D. Fla. Mar. 27, 2017) (citation omitted). "[C]ounsel of choice is a right that may be overridden only if compelling reasons exist." *Id.* (citing *In re BellSouth*, 334 F.3d at 946). That is so because "[d]isqualification" is "harsh," "often working substantial hardship on the client." *Norton v. Tallahassee Memorial*, 689 F.2d 938, 941 n.4 (11th Cir. 1982). It also risks, as the Eleventh Circuit has cautioned, harming the disqualified attorney's "reputation." *EEOC v. Ryan's Fam. Steak Houses*, 2006 WL 8436776, at *8 (N.D. Ala. Apr. 6, 2006). Disqualification thus "should be resorted to sparingly." *Norton*, 689 F.2d at 941 n.4.

The party moving to disqualify counsel bears the "heavy burden" of proving that such an extreme remedy is warranted. *In re BellSouth*, 334 F.3d at 943 (citation omitted). Motions to disqualify are disfavored and "subject to exacting review" because of the "potential for strategic abuse" by the moving party. *Id.* (citation omitted). The burden is *not* on Ritz-Carlton to show an "overriding need" for its chosen counsel, as Plaintiff contends (at 6–7). *See id.* Rather, the burden is on Plaintiff to show that the following factors the Eleventh Circuit set forth show a compelling reason to override Ritz-Carlton's counsel of choice: (1) "the delay in reaching decision," (2) "the judicial time invested," (3) "the court's docket," (4) "the expense

to the parties objecting," (5) "the injury to the plaintiff," (6) "the potential for manipulation or impropriety," and (7) "the fundamental right to counsel."  *Id.* at 962 (citing *Robinson v. Boeing Co.*, 79 F.3d 1053, 1055 (11th Cir. 1996)).

## IV.  ARGUMENT: DISQUALIFICATION SHOULD BE DENIED UNDER THE ELEVENTH CIRCUIT'S FACTORS

All the factors in the Eleventh Circuit's binding test for disqualification weigh against disqualifying Mr. Valori as Ritz-Carlton's chosen local counsel.  Plaintiff thus has not come close to carrying his heavy burden for his extreme motion.  It should be denied.

### A.  Mr. Valori's Appearance Has Not Caused Delay.

Plaintiff makes much of a purported "delay" from Mr. Valori's appearance.  *See generally* ECF 170 (referring to purported "delay" at least ten times).  But his involvement didn't cause delay—Plaintiff's unnecessary motion did.  And in the event that Plaintiff's motion is *granted*, there would be further delay still.  This factor thus strongly weighs against disqualification.

And of course there is no reason for Mr. Valori's involvement to cause delay.  He appeared *while the parties were still briefing the renewed certification motion*, and about a month before the motion would be fully briefed.  So no judicial officer considered the motion before Mr. Valori's appearance or Judge Damian's recusal.  Plaintiff has not offered any credible reason that any judicial officer in this District cannot equally consider a certification motion that no judge has ever considered, or why Mr. Valori's appearance under these circumstances should cause delay.  Indeed, shortly after Mr. Valori appeared, the Court moved the hearing on certification to the day *before* the hearing was previously scheduled.  *See* ECF 162, 175 (moving hearing date from December 20 to December 19).  Plaintiff merely speculates that "*it is not unfathomable* that the newly assigned magistrate judge *may* require additional time to familiarize herself with the case."  ECF 170 (emphasis added).  Such speculative claims cannot carry his heavy burden.

Plaintiff's complaints about delay are especially hollow because he has repeatedly delayed the progress of this case.  Plaintiff opposed Ritz-Carlton's motion asking the Court to rule on the original certification motion without delay after it decided other motions, for example.  *See* above at 7.  If granted, the motion would have saved the parties significant time and expense. As Ritz-Carlton explained, the original "certification briefing took months to

complete" at "massive expense" to submit "hundreds of pages of briefing and exhibits to the Court." ECF 155 at 1, 6. Plaintiff did not (and could not) disagree with those points, but he nevertheless "wholly object[ed]" to Ritz-Carlton's motion and insisted on "new class certification briefing deadlines." ECF 154 at 2. Plaintiff thus caused more than two months' delay in deciding certification by urging the Court to order a new briefing schedule. *See* ECF 156 (setting new briefing schedule), 175 (scheduling hearing for 70 days after Ritz-Carlton filed its motion to rule on prior briefing).

Plaintiff's motion to disqualify has also caused the very delay about which he purports to complain because it resulted in the Court moving the certification hearing from December 2022 to early 2023. Any delay was thus caused by Plaintiff's motion, and not by the appearance of Mr. Valori. But for the Plaintiff filing his motion, certification would have been decided on December 19, 2022, or shortly thereafter.

Granting Plaintiff's requested "reassignment to another judge" would cause still more delay and expense and "result[] in a further investment of judicial resources" now that the renewed certification motion has been fully briefed. *Smart Commc'ns v. Glob. Tel-Link*, 590 F. Supp. 3d 758, 767 (M.D. Pa. 2022). The time this Court has spent considering the renewed certification motion, for example, will need to be repeated if the case is reassigned again. So will the preparation the parties and the Court do for the hearing. In any event, Plaintiff suggests in a footnote (at 13 n.11) that it is "typical" to refer cases back to the previously assigned judge. That is wrong, and for good reason. *See Smart*, 590 F. Supp. 3d at 762 (denying motion to reassign cases back to recused judge following disqualification). In addition to the delay and disruption it would cause, allowing a matter to proceed before a judge who has already determined that his or her "impartiality might reasonably be questioned" would necessarily raise an appearance of impropriety, as that determination cannot be undone. 28 U.S.C § 455(a); ECF 165 (recusal order citing § 455(a)). Nor is there any statutory authority for one judge to effectively reverse another another's recusal decision by reassigning the case back to the recused judge who already decided that further participation would be improper.

In sum, because there "should be no delay" from Mr. Valori's appearance, this factor weighs against disqualification. *See Sullivan v. Suncoast RV*, 2011 WL 13228764, at *4 (N.D. Ala. Mar. 16, 2011).

**B.   No Judicial Time Was Invested in a Motion that Was Still Being Briefed.**

Plaintiff also contends (at 11) that Mr. Valori's appearance resulted in "a significant waste of judicial resources."   That is also wrong, so the factor considering whether "judicial time has been invested" weighs against disqualification.   *See In re BellSouth*, 334 F.3d at 962.

As discussed above, Mr. Valori appeared while the parties were still briefing the renewed certification motion.   That means, of course, that no judge had invested any "judicial time" in the motion when Mr. Valori joined Ritz-Carlton's legal team.   This factor therefore weighs against disqualification.

Nor is the judicial time that may have been invested in the Plaintiff's original certification motion relevant.   The Court denied that motion without prejudice as premature without any ruling on the merits, and it did so because it wanted certification decided on a clean slate.   ECF 138 at 2.   It then set a schedule for a renewed certification motion that is now fully briefed.   The Court is considering that renewed motion, with the full benefit of new briefing, for the first time well *after* Mr. Valori's appearance.   That briefing, of course, includes the parties' positions on how the Court's prior rulings on matters like summary judgment affect issues related to certification.   ECF 158, 172, 180.   Any judicial officer in this District is equally capable of reviewing that briefing and the Court's prior decisions and ruling on a yet-to-be considered certification motion.   Indeed, a district judge who had not previously made any merits rulings in the case conducted *de novo* review of hundreds of pages of briefing on dispositive issues like summary judgment in just a few weeks.   *See, e.g.*, ECF 150.   Certification, by contrast, is a distinct procedural issue that can be decided independent of the merits of the named Plaintiff's claim.   And the merits proceedings after the certification, including trial, will all be conducted by the assigned district judge, who hasn't changed.   In any event, the "potential for the loss of some judicial time," if any, is "not a sufficient danger to warrant" disqualifying counsel.   *Sullivan*, 2011 WL 13228764, at *4.

Because no judicial time was invested in Plaintiff's renewed certification motion at the time of Mr. Valori's appearance, this factor weighs heavily against disqualification.

**C.   The Court's Docket Is Unaffected.**

Just as Mr. Valori's appearance has had no effect on the "judicial time invested" on a motion that was still being briefed, it likewise has little, if any, effect on the Court's docket. *See In re BellSouth*, 334 F.3d at 962.   This factor thus weighs against disqualification.   Judge

13

Cooke's docket has not changed at all because the case remains assigned to her.  The renewed certification motion has again been referred to the assigned magistrate judge, now Judge Reid, for a report and recommendation.  So the District's magistrate judge docket has not been affected either.  And no matter who authors the report, the assigned district judge will review it *de novo*.  Fed. R. Civ. P. 72(b).  The Court's docket is therefore the same regardless of Mr. Valori's appearance: The same motion will be heard before the assigned magistrate judge, who will issue a report, subject to *de novo* review.  "The potential for disruption" from Mr. Valori's appearance "on the court's docket as a whole is minimal," at most, and certainly does not disrupt the docket in a way that would warrant Plaintiff's extreme request for disqualification of counsel. *Sullivan*, 2011 WL 13228764, at *3.  Indeed, the only material disruption has been Plaintiff's filing of this unnecessary motion.

### D.   There Is No Additional Expense to Plaintiff.

Mr. Valori's appearance has likewise not caused any "additional expense" to Plaintiff. *See In re BellSouth*, 334 F.3d at 962.   Regardless of his appearance, Plaintiff would be required to undertake the expense of briefing the renewed certification motion, participating in a hearing before the assigned magistrate judge, and briefing objections to the report to the extent either side files any.  And Plaintiff asked for that expense.  As discussed above at 7, he opposed Ritz-Carlton's motion requesting that the Court decide the original certification motion without delay and without re-briefing.  Plaintiff should not be heard to complain about an additional expense he asked for, and on which Mr. Valori's appearance had no effect.  Indeed, the only "additional expense" Plaintiff even attempts to identify (at 11) is the purported "need to file" this meritless motion to disqualify.  But that is obviously entitled to no weight.  It cannot be that the very expense of filing of a motion to disqualify, no matter how meritless, weighs in favor of granting that motion. *See Sullivan*, 2011 WL 13228764, at *4 (considering only additional expenses, if any, other than disqualification motion itself).

In sum, Mr. Valori's involvement caused no additional expense to Plaintiff, and this factor weighs heavily against disqualification.

### E.   There Is No Injury to Plaintiff.

Plaintiff contends (at 10–11) that he was prejudiced by the purported delay and additional expense Mr. Valori's appearance caused him.  But that is not true, and this factor thus weighs against disqualification.

14

As discussed above at 11–12 and 14, there is no delay or additional expense to Plaintiff (except the expense Plaintiff chose to incur preparing this meritless motion). The recusal of Judge Damian could not injure Plaintiff for the additional reason that the assigned district judge has not changed. The district judge will review the report *de novo* regardless of which magistrate judge authors it. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(b); (emphasis added), 4(b) (requiring the district judge to review *de novo* the magistrate judge's proposed findings or recommendations); Fed. R. Civ. P. 72(b). Because the ultimate "disposition" of the renewed certification motion will be "by the District Judge," Plaintiff has not identified (and cannot identify) any reason that a report by any magistrate judge would not be as good as another. Local Magistrate Judge Rules 1(d). If anything, *granting* Plaintiff's motion would injure Plaintiff because reassigning the case again would cause delay and additional expense, as discussed above at 12.

In sum, Mr. Valori's appearance did not injure Plaintiff, and this factor weighs against disqualification.

### F. There Is No Appearance of Potential for Manipulation or Impropriety, Except if Plaintiff's Motion Were Granted.

Mr. Valori's representation of Ritz-Carlton does not create an appearance or potential for manipulation or impropriety, and this factor weighs against disqualification. Plaintiff's motion, on the other hand, suggests the "potential for strategic abuse" on Plaintiff's part, independently confirming that his motion should be denied.[4]

Mr. Valori's involvement does not give rise to "potential manipulation or impropriety," much less the "appearance" of it, because the assigned district judge has not changed. The assigned district judge, not magistrate judge, will be the ultimate decider after *de novo* review of the renewed certification motion—the sole dispositive motion left before trial. *See* above at 13. There is thus a crucial difference between the circumstances here and those in the cases Plaintiff cites, which all involve the recusal of a *district judge* who would be

---

[4] As Plaintiff concedes (at 5–6), the analysis of this factor is objective and focuses on whether there is an *appearance* of any impropriety to avoid intruding into privileged attorney-client communications and work product. *In re BellSouth*, 334 F.3d at 944 (citing *Robinson*, 79 F.3d at 1056); *Upjohn v. United States*, 449 U.S. 383, 389 (1981) ("The lawyer–client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out.") (citation omitted).

the ultimate decider of issues in the case. *In re BellSouth*, 334 F.3d at 961 (recusal of district judge); *Robinson*, 79 F.3d at 1055 (same); *McCuin v. Texas Power*, 714 F.2d 1255, 1258 (5th Cir. 1983) (same); *see also In re F.C.C.*, 208 F.3d 137, 138 (2d Cir. 2000) (recusal of panel member assigned to hear appeal of panel's prior decision). So Plaintiff fails to cite *any* authority for the relief he seeks here.

There is also no appearance of impropriety because Ritz-Carlton did not move for Judge Damian's recusal after Mr. Valori's appearance. Judge Damian independently decided to recuse *sua sponte* even though 28 U.S.C. § 455 and Eleventh Circuit authority do not require it. *See* ECF 165; *Baptiste-Alkebul-Lan v. Smith*, 2022 WL 1150861, at *1 (M.D. Fla. Mar. 28, 2022) (explaining that "case law establishes that '[a] judge's former affiliation with a firm representing a party, without more, is not grounds for disqualification'" and denying motion to disqualify on that basis) (collecting cases); *see also Huff v. Standard Life Ins.*, 683 F.2d 1363, 1370 (11th Cir. 1982) (fact that judge was a former law partner of the firm representing one of the parties in the action did not create a risk of impartiality that would contribute to mistrust of the judicial system). There cannot be an appearance of impropriety from a *sua sponte* recusal Ritz-Carlton didn't ask for and that was not required.

Setting these dispositive points aside, Plaintiff's speculative claims about an alleged appearance of impropriety grasp at straws. Plaintiff makes much of Mr. Valori's "signature block" on an extension motion. Plaintiff cites no authority that such a ministerial thing as a signature block on a routine extension motion could show an appearance of impropriety. Nor could he. When Ritz-Carlton sent its draft motion to Plaintiff for conferral purposes, Mr. Valori hadn't made an appearance in the case yet. So of course his signature wasn't on it. He did not begin signing papers until after he appeared. ECF 163. And his signature would not be a basis to oppose the routine extension request anyway.

Plaintiff also speculates (at 8) that Ritz-Carlton "f[ound] itself unhappy" with Judge Damian's reports, so the timing of Mr. Valori's appearance appears improper. That is absurd. As discussed above, Plaintiff entirely ignores multiple Ritz-Carlton wins before Judge Damian in his motion and understated his losses on summary judgment. *See* above at 5–7. The record thus shows Ritz-Carlton had no reason to be "unhappy" with Judge Damian's reports. On the contrary, Ritz-Carlton is now heavily relying on Judge Damian's reports to oppose the renewed certification motion. For example, the introduction of Ritz-Carlton's

opposition spent two paragraphs explaining that Judge Damian's report (which the Court adopted) confirms that certification must be denied:

> In any event, adjudicating liability for each putative class member's claims would require tens of thousands of mini-trials on individual restaurant experiences and tipping habits. Plaintiff's claims illustrate this point: The Court denied summary judgment on Plaintiff's traditional FDUTPA claim because, it held, the evidence about Plaintiff's individual experiences requires a trial on the merits of all three elements (*i.e.*, deceptive practice, causation, and damages). A fact finder must resolve, the Court explained, dispositive disputes of fact about what notices he received (including what menus were provided) and whether he knowingly and voluntarily paid the charges, among other issues.

> "[A] fact intensive process such as this clearly fails the Rule 23(b)(3) predominance requirement." *Otto v. Abbott*, 2015 WL 9698992, at *6 (C.D. Cal. Sept. 29, 2015). And "just as" the Court's summary judgment order shows that Plaintiff's individual claim presents "a triable issue of fact, individualized inquiries would be required for each class member as well," because they all had unique experiences too…. Plaintiff thus could never meet his burden to establish that common issues predominate—the most important requirement for certification.

ECF 172 at 2; *see also id.* at 10–11.

The cases Plaintiff cites likewise show that Plaintiff cannot establish an appearance of impropriety, so his motion should be denied. This case is not "highly similar" to *In re F.C.C.*, for example. 208 F.3d at 138. In that case, a litigant in an appeal before the Second Circuit hired one of the three-judge panel's former law firms after losing before that panel on appeal. *Id.* at 138–39. The judge on the panel with the relationship to the new law firm recused, and the litigant filed a petition for rehearing of the panel's prior decision. Nothing of the sort happened here. The analogy would be a litigant who (1) lost a dispositive motion before a district judge, (2) immediately hired the district judge's former firm, and (3) then moved for reconsideration of its loss before a newly assigned district judge. In direct contrast here, no judicial officer has ever ruled on certification, Ritz-Carlton largely won before Judge Damian, and Mr. Valori appeared at a time when *nothing* was briefed and under submission with the Court.

The other cases on which Plaintiff relies, *Robinson* and *In re BellSouth*, likewise show there is no appearance of impropriety here. Both involve a long "history of suspicious recusals" of the same district judge (Judge Clemon) in the Northern District of Alabama following appearances by his nephew's firm. *In re BellSouth*, 334 F.3d at 947 (noting *fifteen*

recusals of Judge Clemon because of the same nephew in a two-and-a-half-year period); *accord Robinson*, 79 F.3d at 1054. These recusals occurred so often that the district adopted a "Standing Order" to prevent it. *Id. In re Bellsouth* thus "placed significant reliance upon Bellsouth's history in Northern District of Alabama litigation of retaining [the nephew] *only* in circumstances involving cases before his uncle" in affirming disqualification. *Id.* at 965.

*Robinson* is even more far afield. That case was one of four separate employment discrimination cases against Boeing arising out of the same Huntsville, Alabama, plant filed in short succession. Appellee Br., *Robinson v. Boeing Co.*, No. 94-6712, 1995 WL 17061021, at *5–6 (11th Cir. Feb. 14, 1995). Tellingly, the only case among the four in which Boeing sought to add new counsel was the case assigned to Judge Clemon, the sole black judge presiding over one of the discrimination cases. *Id.* at *6–9. This, along with the fact Boeing already had local counsel and the case was in the midst of extensive class discovery during which there was no apparent need for new counsel, raised the appearance of an egregious, racially-motivated impropriety. *Id.* at *5, 19–20.

The circumstances here could not be more different, confirming that Plaintiff's motion should be denied. There is no egregious pattern of recusal, no local rule to address that egregious pattern, no appearance of counsel that *required* recusal based on a family relationship (28 U.S.C. § 455(b)(5)), no redundant hiring of a second local counsel, and no recusal of the district judge. Instead of all that, Ritz-Carlton hired Mr. Valori as local counsel at a crossroads in the case when it made perfect sense to do so. *See* above at 8–9. Indeed, there was no need for local counsel sooner, because dispositive motions that could have ended the case without trial were pending throughout much of 2022. And Ritz-Carlton did not have *any* local counsel when Mr. Valori joined its legal team. It had only out-of-town lead counsel. There is thus no appearance of impropriety: With the parties re-briefing class certification, the case heading to trial regardless of the outcome, and facing an unusual situation of many district judges signing orders, Ritz-Carlton obtained local counsel to provide local insight at the moment in the case that it made sense to do so.

Finally, not only has Plaintiff failed to show an appearance of impropriety from Mr. Valori joining Ritz-Carlton's legal team, the "potential for strategic abuse" *from Plaintiff's motion* confirms that it should be denied. *In re BellSouth*, 334 F.3d at 943. Plaintiff vociferously complains that Mr. Valori's appearance will cause delay. But Plaintiff previously opposed

Ritz-Carlton's efforts to avoid delay by having certification decided as originally briefed last year. *See* above at 7. And Mr. Valori's appearance hasn't delayed things anyway. Instead, the relief Plaintiff seeks will cause the very delay he complains about because it would result in a judicial reassignment. *See* above at 12. Plaintiff's motion is thus self-defeating. That suggests an ulterior motive. The record indicates that Plaintiff's motive may be to attempt to distract from the meritlessness of the renewed certification motion or burden Ritz-Carlton with unnecessary motion practice immediately before the certification hearing. Whatever the case may be, this potential for strategic abuse from Plaintiff confirms that his disqualification motion should be denied.

Because there is no appearance of the potential for manipulation or impropriety on Ritz-Carlton's part (only on Plaintiff's), this factor weighs heavily against disqualification.

### G. Disqualification Would Deny Ritz-Carlton's Fundamental Right to Counsel.

Disqualifying Ritz-Carlton's choice of local representation would deny Ritz-Carlton's fundamental right to counsel. This factor thus strongly weighs against Plaintiff's motion.

It is well recognized that "significant consideration should be afforded to the strategic retention of local counsel." HON. REGGIE B. WALTON, BUS. & COM. LITIG. FED. CTS. § 47:5 (5th ed. 2022). "Out-of-town counsel usually retain local trial counsel in a matter primarily for the purpose of acquiring knowledge" about "issues in dealing with local courts." *Id.* That is precisely what Ritz-Carlton did here. And it did so when the need for local counsel was stark: (1) Ritz-Carlton was at a crossroads in the case with no motions under submission before any judicial officer; (2) the parties were ordered to re-brief certification, after which the case will go to trial; and (3) it was presented with the unusual situation of various judges signing orders for the assigned district judge. *See* above at 7–9.

Plaintiff's attempts to second-guess Ritz-Carlton's choice of local counsel by attacking Mr. Valori's qualifications are demonstrably false. Plaintiff claims (at 7) that Mr. Valori "does not appear" to have relevant FDUTPA or class action experience. Mr. Valori has relevant substantive experience not only in defending FDUTPA claims and class action lawsuits, but also in the hospitality industry. *See* above at 8–9; Valori Decl. ¶ 5. This experience includes defending hotels in consumer class actions. *Id.* In any event, Mr. Valori's substantive experience is a red herring because he joined in a local counsel role, for which he is eminently qualified. Throughout the 27 years Mr. Valori has practiced in Florida, he has gained

considerable knowledge about the local judiciary and its practices.  *See* above at 8–9; Valori Decl. ¶¶ 3–4. And his reputation in this forum (and the state) speaks for itself, as evidenced by both his numerous awards and his involvement in a plethora of county, state, and national bar associations and committees.  *See* above at 8–9; Valori Decl. ¶¶ 3–4.

Plaintiff also argues that Ritz-Carlton does not need Mr. Valori's services because KCO has represented it since late 2021.  That is wrong.  Mr. Valori and KCO have different roles on Ritz-Carlton's legal team.  Ritz-Carlton did not have local counsel until Mr. Valori joined the case.  KCO is out-of-town counsel that Ritz-Carlton retained as lead counsel because of its extensive experience and track record in defending consumer class actions nationwide.  KCO does not have any offices in Florida.  Mr. Valori's office, by contrast, is located less than a mile from the courthouse.  That, plus his preeminent qualifications in the jurisdiction, show that Mr. Valori is the ideal candidate to provide "[o]ut-of-town counsel" insight on "issues in dealing with local courts."  HON. REGGIE B. WALTON, BUS. & COM. LITIG. FED. CTS. § 47:5 (5th ed. 2022).

## V.      CONCLUSION

In sum, Ritz-Carlton's "right to counsel of choice" means that it is entitled to choose its own counsel, not Plaintiff.  *Mitchell*, 2017 WL 1157897, at *2 (citation omitted).  Yet Plaintiff has repeatedly complained to this Court about the counsel Ritz-Carlton chose.  First he complained about its choice to have KCO take over as lead counsel.  *See* above at 4–5. Now he complains about its choice of local counsel and seeks the "extreme remedy" of disqualification.  *Mitchell*, 2017 WL 1157897, at *2.  There is no basis for that.  All factors in the Eleventh Circuit's binding test weigh against disqualification.  The assigned district judge who will decide all dispositive matters *de novo* has not changed.  No case has ever disqualified counsel after a magistrate judge's recusal.  And there appears to be a "potential for strategic abuse" on Plaintiff's part, not Ritz-Carlton's, because his motion has already caused the very delay about which he purports to vociferously complain and granting his motion will cause still further delay.  *In re BellSouth*, 334 F.3d at 943.

The motion to disqualify should be denied.

Respectfully submitted December 19, 2022.

/s/ Ryan D. Watstein
Ryan D. Watstein
Florida Bar No. 93945
Alexander D. Terepka (*pro hac vice*)
KABAT CHAPMAN & OZMER LLP
17th Street NW, Suite 1550
Atlanta, Georgia 30363
T: (404) 400-7300
F: (404) 400-7333
E: rwatstein@kcozlaw.com
E: aterepka@kcozlaw.com

/s/ Peter F. Valori
Peter F. Valori
Florida Bar No. 43516
DAMIAN & VALORI LLP
1000 Brickell Avenue, Suite 1020
Miami, Florida 33131
T: (305) 371-3960
F: (305) 371-3965
E: pvalori@dvllp.com

*Counsel for The Ritz-Carlton Hotel Company, LLC*

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that, on December 19, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Peter F. Valori*
Peter F. Valori

1