UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:17-CV-24284-COOKE/Reid

MICHAEL FOX,
on behalf of himself and all
others similarly situated,

    *Plaintiff*,

v.

THE RITZ-CARLTON
HOTEL COMPANY, LLC,

    *Defendant*.

PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISQUALIFY PETER VALORI

| | |
|---|---|
| Dated: December 29, 2022 | **SMITHMARCO, P.C.**<br>David M. Marco<br>IL Bar No. 6273315/FL Bar No. 125266<br>SMITHMARCO, P.C.<br>7204 Kyle Ct.<br>Sarasota, Florida 34240<br>Telephone: (312) 546-6539<br>Facsimile: (888) 418-1277<br>E-Mail: dmarco@smithmarco.com<br><br>**FRANCIS MAILMAN SOUMILAS, P.C.**<br>James A. Francis (*pro hac vice*)<br>1600 Market Street, Suite 2510<br>Philadelphia, PA 19103<br>T: (215) 735-8600<br><br>**LEWIS SAUL & ASSOCIATES, P.C.**<br>Lewis J. Saul (*pro hac vice*)<br>Edward A. Coleman (*pro hac vice*)<br>29 Howard Street, 3rd Floor<br>New York, NY 10013<br>T: (212) 376-8450<br><br>*Attorneys for Plaintiff and the Class* |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

I.   INTRODUCTION ........................................................................................................... 1

II.  ARGUMENT .................................................................................................................. 1

    A. Plaintiff Brought Meritorious Claims And Pursued Them Diligently
        And In Good Faith ................................................................................................. 1

    B. Ritz Misrepresents The Record To Distract From The Issue At Hand ........................ 3

    C. Disqualification Is Warranted Under The Eleventh Circuit's Objective Standard ....... 7

    D. The Case Should Be Returned To Judge Damian ...................................................... 10

IV.  CONCLUSION ............................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Baptiste-Alkebul-Lan v. Smith*,
  2022 WL 1150861 (M.D. Fla. Mar. 28, 2022) .......................................................................... 8

*Draper v. Reynolds*,
  369 F.3d 1270 (11th Cir. 2004) ............................................................................................... 8

*Fox v. Ritz-Carlton Hotel Co., L.L.C.*,
  977 F.3d 1039 (11th Cir. 2020) ............................................................................................... 2

*Huff v. Standard Life Ins.*,
  683 F.2d 1363 (11th Cir. 1982) ............................................................................................... 8

*In re BellSouth Corp.*,
  334 F.3d 941 (11th Cir. 2003) ............................................................................................. 7, 9

*McCuin v. Texas Power & Light Co.*,
  714 F.2d 1255 (5th Cir.1983) .................................................................................................. 9

*Robinson v. Boeing Corp.*,
  79 F.3d 1053 (11th Cir. 1996) ............................................................................................. 7, 9

*Smart Commc'ns v. Glob. Tel-Link*,
  590 F. Supp. 3d 758 (M.D. Pa. 2022) .................................................................................... 10

## I. INTRODUCTION

The response by Defendant The Ritz-Carlton Hotel Company ("Ritz") to the motion to disqualify its newly-entered counsel Peter Valori fails to address the heart of this issue: that Mr. Valori is the co-founder and managing partner of the firm where Judge Damian was "Of Counsel" for over nine years immediately prior to her appointment as a magistrate judge. Despite submitting an affidavit in support of the response, Mr. Valori says nothing whatsoever on the central issue of this relationship. He fails to provide any indication of the relationship between Judge Damian and his firm's co-founder, Melanie Damian, who continues to be Mr. Valori's partner. Ritz is also entirely silent on whether it knew that Mr. Valori's appearance would lead to Judge Damian's recusal.

Ritz in fact appears to concede that it wanted to influence the judicial assignment here, by stating that concerns regarding the identity of the decisionmaker were a motivating factor behind Mr. Valori's appearance. This concession, and Ritz's failure to make any effort to address its knowledge of the relationship between its new counsel and Judge Damian, make clear that the most important factor in considering a disqualification motion is met here: the objective appearance of impropriety and potential for manipulation of the justice system.

Rather than address the substance of the motion, which plainly shows that disqualification is warranted under the Eleventh Circuit precedent, Ritz instead seeks to repeat its prior unsuccessful arguments which mischaracterize the record in this case wholly unrelated to the instant motion. While Mr. Valori is certainly a qualified and highly experienced practitioner, there can be no question that there are equally qualified trial litigators in Miami, at firms other than the one sharing a name with the assigned magistrate judge.

## II. ARGUMENT

### A. Plaintiff Brought Meritorious Claims And Pursued Them Diligently And In Good Faith

Ritz uses its opposition as both an improper sur-reply to Plaintiff's Renewed Motion for Class Certification, and to reassert its recent unsuccessful argument that Plaintiff's case is meritless. This argument has been repeatedly rejected, and this Court closed the door on the issue with the rulings on Ritz's motions for summary judgment and sanctions. Refusing to take no for an answer, however, Ritz continues to restate the argument, hoping to make it so through sheer repetition and volume. The record clearly shows Plaintiff's claims are meritorious.

First, as Judge Damian noted in her Order denying Ritz's motion for sanctions, "considering that Mr. Fox has survived numerous challenges to his claims and evidence thus far, it can hardly be said that his claims lack any legal support." ECF 132 at 10. Plaintiff successfully appealed a *sua sponte* Order by the first assigned district judge finding a lack of subject-matter jurisdiction that was premised on faulty presumptions and a conflation of "the requirements of individual standing with those for a class representative." *Fox v. Ritz-Carlton Hotel Co., L.L.C.*, 977 F.3d 1039, 1047 (11th Cir. 2020). Nowhere did the 11th Circuit question the merits of Plaintiff's claims; rather, it reversed, and allowed the claims to move forward. Upon remand from the Eleventh Circuit, Ritz "abandoned its 12(b)(6) challenge and instead answered the Amended Compliant," and failed to "file a motion for judgment on the pleadings or exercise any other legal challenge to the sufficiency of [Plaintiff's] claims." ECF 132 at 9.

Following the close of discovery, Ritz filed motions for sanctions and summary judgment, again arguing Plaintiff's claims were baseless. Judge Damian issued an Order denying sanctions, finding no support for Ritz's claims that Plaintiff's counsel engaged in "unreasonable and vexatious" conduct. *See id*. Rather, Judge Damian found Ritz failed to challenge Plaintiff's pleadings or motion for class certification under Rule 11, which would have been "the appropriate cause of action," and that Ritz's arguments, lodged more than three years after the start of the lawsuit were "not well taken." *Id*. at 11, 9-10. Judge Damian also found Ritz's arguments for sanctions were "belied by the record" and lacked merit. *Id*. at 10, 11. Judge Damian also issued a Report and Recommendation denying summary judgment on Plaintiff's traditional FDUTPA claims, hardly the result to be expected for a case that is supposedly meritless. *See* ECF 137 at 31.

Second, Plaintiff's FDUTPA claims were brought because a Florida statute and Miami-Dade County ordinance were directly on point, both requiring notice of automatic service charges to restaurant customers in advance of their meal by placing that notice on menus, and the latter requiring additional disclosures (in 3 separate languages).[1] No menu produced to date by Ritz

---

[1] Sec. 8A-110.1(3) of the Miami-Dade Ordinance states: Each business shall provide notice of (A) whether the business includes an automatic tip in its bill, and if so, the amount or method of calculation of the automatic tip; and (B) the following language: "IT IS ILLEGAL IN MIAMI-DADE COUNTY FOR ANY BUSINESS TO CONDONE IN ANY MANNER TIPPING BASED ON THE RACE, COLOR, RELIGION, ANCESTRY, NATIONAL ORIGIN, AGE, SEX, SEXUAL ORIENTATION, PREGNANCY, DISABILITY, MARITAL STATUS OR FAMILIAL STATUS OF THE PERSON OR PERSONS GIVING OR RECEIVING THE TIP. If

includes the required language from the ordinance. Whether the statute and ordinance were valid FDUTPA *per se* predicates had never been addressed by Florida courts before. Likewise, whether the Miami-Dade County ordinance was pre-empted by Florida law was another uncertain legal issue; certainly not the type of clear-cut situation that would call into question the merit of the claim. While the Court ultimately determined that both statutes were not *per se* predicates because they affirmatively require notice of automatic charges rather than proscribe conduct, it cannot be said Plaintiff's claims lack merit when they were bolstered by a valid Florida statute and local ordinance governing the conduct at issue and directly on point.

Finally, as Plaintiff noted in his opposition to Ritz's unsuccessful and baseless motion for sanctions, prior to the involvement in the case of Ritz's current counsel at Kabat Chapman & Ozmer LLP ("KCO"), Plaintiff had a professional and productive relationship with Ritz's first counsel in the case, Holland & Knight. *See* ECF 104 at 2-6. Plaintiff and Holland & Knight engaged in multiple mediation sessions in an attempt to resolve the litigation, which would not have occurred if Ritz and its prior counsel believed Plaintiff's claims were meritless. This argument only arose after KCO entered the case, and it has become a crusade that forms the backbone of Ritz's strategy ever since, despite the Court repeatedly rejecting the premise.

It is difficult to accept that Ritz truly believes it was successful before Judge Damian, considering she repeatedly rejected Ritz's main argument that Plaintiff's claims are without merit. Once the Court wholly adopted Judge Damian's sanctions Order and summary judgment Report and Recommendation, the rejection of Ritz's argument that Plaintiff's claims are without merit is the law of the case, yet Ritz continues to argue to the contrary.

### B. Ritz Misrepresents The Record To Distract From The Issue At Hand

While Plaintiff would prefer to limit the instant briefing to the matter at hand, there are numerous misrepresentations by Ritz about the record that require a response. Ritz argues: (1) Plaintiff caused delay in the case by opposing its motion to decide class certification on the original briefing, despite the Court previously dismissing without prejudice that briefing as premature given the other rulings in the case; (2) Plaintiff has "repeatedly complained" about Ritz's choice

---

you have a complaint, you may call the Miami-Dade County Consumer Services Department Hotline at (305) 375-3677." This notice shall be posted conspicuously, either on a sign or in a statement on the business's menu or price listing in the same form and manner as the other items on the menu or price listing, and written in a legible manner in English, Spanish and Creole.

3

of counsel, supported by citation to Plaintiff's opposition to Ritz's baseless motion for sanctions; (3) it won before Judge Damian and had no reason to be unsatisfied with her rulings; and (4) Valori's appearance was entirely innocent because at the time "there were no motions or other matters pending before Judge Damian." ECF 184 at 9. Plaintiff addresses each of these points, in turn.

First, Ritz's argument that Plaintiff caused delay in the case by opposing Ritz's motion to decide class certification on the original briefing completely misrepresents the record. Following rulings by Judge Damian denying Ritz's motion to exclude Plaintiff's declaration and motion for sanctions, Ritz sought an extension of time to object to those orders until 21 days after Judge Damian issued decisions on all referred motions. *See* ECF 138 at 1. The Court granted the motion in part, allowing 14 days after Judge Damian's decisions to file any appeals of her Orders and Reports and Recommendations. ECF 134. After Judge Damian issued Reports and Recommendations on the parties' summary judgment motions, the Court issued an Order, *sua sponte*, that denied without prejudice Plaintiff's original motion for class certification as premature, noting a decision on that motion "may depend on the final resolution of the Magistrate's Order and Reports." *Id*. at 2. The Order by Chief Judge Cecilia Altonaga explicitly stated that a "new deadline for filing a motion for class certification will issue after all outstanding motions are resolved." *Id*.

Nevertheless, Ritz filed a motion seeking to have the Court instead decide class certification on the parties' previous briefing. ECF 155. When Plaintiff was informed of Ritz's intention to file this motion, he indicated to Ritz and the Court that he would be opposed to this unwarranted motion because it was contrary to a clear prior order of the court mandating renewed class certification briefing. *See* ECF 154. However, after Ritz followed through and filed the motion to decide class certification on the already dismissed briefing, the Court denied Ritz's motion and set a new briefing schedule for Plaintiff's renewed motion for class certification the very next day, without Plaintiff ever having to file anything in opposition. ECF 156. Therefore, Plaintiff did nothing to cause any delay, as the Court immediately denied Ritz's motion "in light of the numerous Court Orders directly affecting the arguments and evidence in support of the prior class certification motion and responses thereto." *Id*. at 2. Instead, it was Ritz that filed a motion in contradiction to the Court's previous Orders, which the Court summarily rejected. Ritz's suggestion that Plaintiff caused delay on this point is more than disingenuous – it is patently false.

4

Second, Ritz similarly misrepresents the record by claiming Plaintiff has "repeatedly complained" about Ritz's choice of counsel, including "[Ritz's] choice to have KCO take over as lead counsel." ECF 184 at 4, 20. Ritz attempts to frame Plaintiff's statements regarding KCO as spontaneous complaints about Ritz's chosen counsel; however, in support of this claim, Ritz cites to Plaintiff's opposition to *Ritz's* baseless motion for sanctions. *See id*. at 5. In that filing, Plaintiff was compelled to set forth a detailed background on the history of the litigation, contrasting the progress in the case before and after KCO took over as counsel for Ritz, to show he has pursued his meritorious claims in good faith. *See* ECF 104 at 2-12. The only other "complaint" made by Plaintiff regarding Ritz counsel is the present motion seeking to disqualify Mr. Valori after his appearance led to Judge Damian's immediate recusal. The record shows that Ritz's suggestion that Plaintiff has repeatedly complained about its counsel, without reason, is false.

Third, in an effort to persuade the Court that it had no motive to have Judge Damian recused or otherwise influence the proceedings, Ritz falsely portrays the record as suggesting that it was pleased with Judge Damian's rulings. This argument is belied by the fact that Ritz objected, unsuccessfully, to each of Judge Damian's decisions in Plaintiff's favor, and in fact, insultingly described her reasoning as "absurd" on multiple occasions. *See* ECF 139-141.

In its objection to the Order denying Ritz's motion to exclude Plaintiff's reply declaration and deposition errata, Ritz described Judge Damian's decision as "clearly erroneous and contrary to law," dismissing her reasoning as an "attempt to be diplomatic," "thereby sending a patently frivolous case to a jury at enormous expense to Ritz-Carlton." ECF 139 at 1.

In challenging Judge Damian's Order denying its motion for sanctions, Ritz attempted to diminish the effect of the Order and lower the standard of review for its objection by unilaterally and incorrectly asserting the Order was, instead, a Report and Recommendation. *See* ECF 140. Ritz went on to argue that rather than decide the motion for sanctions in its favor, Judge Damian improperly "focused on procedural minutiae irrelevant to Section 1927, including that the case has been pending for over 4.5 years, Rule 11 might offer another ground for sanctions, and Plaintiff's claims had supposedly 'survived numerous challenges.'" ECF 140 at 14-15. Ritz further stated Judge Damian "ignored all of the key, independent grounds for sanctions" and "entirely failed to address" one of its arguments. ECF 140 at 3.

In response to Plaintiff's assertions in the present motion that Ritz was unhappy with Judge Damian's rulings in the case, Ritz states bluntly: "That is absurd." *See* ECF 184 at 16.

5

Coincidentally, that is also how Ritz characterized several of Judge Damian's analyses in her Report and Recommendation largely denying its motion for summary judgment. On the issue of the safe-harbor provision of FDUTPA that was rejected by Judge Damian, Ritz distorted her reasoning by stating, "Nor would it make sense to effectively conclude that 'state or federal law' only 'require[s]' something if a state or federal *agency* says so. The circumstances here show why **that interpretation is absurd**." ECF 141 at 10 (italics in original, other emphasis added). Ritz further described Judge Damian's reasoning on this point by saying it "makes no sense, in addition to being entirely untethered to the text of the safe-harbor statute." *Id*. Similarly, regarding Judge Damian's rejection of the applicability of the voluntary payment doctrine because there is a "genuine issue of material fact as to whether [Plaintiff] was aware the restaurant checks were not 'paid' at the 'time of the meal,'" Ritz stated, "**That is absurd**." *Id*. at 18 (emphasis added).

Now that Judge Damian has recused herself from the case, Ritz wants to bury its prior statements about her decisions in the case, attempting to characterize itself as entirely satisfied with her rulings. However, Ritz not only objected to each ruling Judge Damian made that did not go in its favor, but it also disrespectfully belittled her decision-making.

Finally, Ritz contends that Mr. Valori's appearance in the case was innocent because, at the time, the case was at a "crossroads in November of 2022" and "there were no motions or other matters pending before Judge Damian." ECF 184 at 8-9. Ritz asserts further that it needed "insight" into the "jurisdiction's local practices as the case headed to trial" and the "assigned judicial officers and the circumstance of many district judges signing orders." This is false. The case was not at a crossroads at all. When Mr. Valori entered his appearance on November 17, 2022, Plaintiff had already submitted his Renewed Motion for Class Certification and Ritz's response was due four days later. *See* ECF 158, 156. Not only was Plaintiff's renewed class certification briefing underway, but the motion had already been referred to Judge Damian for a report and recommendation. ECF 156 at 2. Everyone knew that Judge Damian would be deciding the motion for class certification. Moreover, there was no trial date, impending or otherwise, and Ritz has never asserted that Mr. Valori will be trial counsel.

In addition, as for needing "insight into local practices", as set forth above, Ritz's lead counsel in the case, Ryan Watstein, is barred in Florida and has litigated dozens of cases in Florida federal district courts, including at least twelve cases in the Southern District, making local counsel unnecessary. Mr. Watstein is no doubt familiar with the district's local rules and practices. Ritz's

6

professed need for the "insight" that it was seeking at the time Mr. Valori entered his appearance in the case remains unclear, and highly dubious; it is certainly not sufficient to overcome its presumptive taint.

Ritz argues that since the same District Judge is assigned to the case as the ultimate decision maker, Judge Damian's recusal is irrelevant, however, this rings hollow in light of the Court previously adopting all of Judge Damian's well-reasoned Orders and Reports in their entirety. Given the fact that briefing on the crucial issue of class certification was already underway and had been referred to Judge Damian for a report and recommendation, the claim that Mr. Valori's appearance must be seen as innocent is another attempt to distort the record and strip away common-sense context of the situation.

### C. Disqualification Is Warranted Under The Eleventh Circuit's Objective Standard

The Eleventh Circuit has held that the "most significant factor" in determining whether an attorney whose late appearance leads to a judge's recusal should be disqualified is "the potential for manipulation or impropriety" if the recusal stands. *In re BellSouth Corp.*, 334 F.3d 941, 962 (11th Cir. 2003) (quoting *Robinson v. Boeing Corp.*, 79 F.3d 1053, 1055 (11th Cir. 1996)). The analysis of both the *BellSouth* and *Robinson* decisions is telling and should control the result here. The Eleventh Circuit in *BellSouth* affirmed the district court's finding that the impact of losing "only one of its several attorneys" shortly after his appearance "would be minimal when weighed against the considerable prospect of improper manipulation of the judiciary" and upheld the disqualification order. *In re BellSouth*, 334 F.3d at 962. Similarly, the *Robinson* Court found that "the fact that a case has been pending a considerable period of time lends itself to potential abuse after there has been an opportunity for considering rulings, discussions, etc. of a trial judge…. When there has been such a passage of time, the burden to establish the right to join a disqualifying firm is greater." 79 F.3d at 1055. The *Robinson* court also noted that there "is no shortage of law firms available to replace" late-joining counsel whose appearance would lead to disqualification and found that "if the issue is truly not one of 'judge shopping,'" then choosing one of those other firms would not adversely affect the party. *Id.*

The same is true here: there is no shortage of well-qualified trial counsel in Miami, who could have entered this case without leading to Judge Damian's recusal, after she has read and written hundreds of pages regarding this dispute. If Ritz is truly not seeking to judge shop (either by getting Judge Damian recused, or seeking favorable treatment, by entering the appearance of

7

the founding partner of the firm at which she worked less than a year ago), then it will not be prejudiced by choosing other local counsel.[2]

The inescapable conclusion is that Ritz is, in fact, seeking to judge-shop. Indeed, it virtually concedes as much in its response to the disqualification motion by noting that Mr. Valori's appearance was motivated in part by uncertainty regarding the identity of the decisionmaker, referencing the fact that different district judges have signed orders on behalf of Judge Cooke. But entering the appearance of new counsel which would obviously lead to the assigned magistrate's recusal would not address this inconsequential signature variation, and would in fact *undermine* certainty by leading to a new random assignment.

In reality, this admission makes clear that Ritz knew exactly who the decisionmaker was, and either sought her favor, or sought to replace her. Even Ritz's purported explanation that Mr. Valori will add value by providing insight about practices within this district and judicial perspectives holds no water: such insight could have been gained by reading the local rules, or by retaining Mr. Valori for consultation without entering his appearance. Furthermore, despite touting Mr. Valori's experience (which consists largely of Fair Labor Standards Act collective actions, not Rule 23 class actions like this case), there is no indication that he will argue any motion or take over as lead trial counsel. It is telling that Ritz places quotation marks around the word local when it describes Mr. Valori as "local" counsel, acknowledging that he is not truly acting in that role in the case.

Nor do any of Ritz's cited legal authorities dispel the clear appearance of judicial manipulation here. *Baptiste-Alkebul-Lan v. Smith*, 2022 WL 1150861, at *1 (M.D. Fla. Mar. 28, 2022) was a *pro se* motion to disqualify the judge, not addressing a late-entering counsel. And the authorities that case relied on entirely undermine Ritz's arguments here, since they discuss recusal being warranted under circumstances highly similar to those presented here. *Id.* (citing *Draper v. Reynolds*, 369 F.3d 1270, 1281 & n.18 (11th Cir. 2004) (two year recusal period for judge formerly associated with firm appearing in the case is generally reasonable where the judge is no longer receiving financial payment from a former law firm)); *Huff v. Standard Life Ins.*, 683 F.2d 1363, 1370 (11th Cir. 1982) ("nor did any member of the judge's family retain any relationship with his

---

[2] For example, Ritz could have chosen to again work with attorneys of Levine & Partners or Ford & Harrison LLP, the two Miami firms that worked with its KCO attorneys to defend the *Germak v. Marriott Int'l, Inc. et al.* case, No. 20-cv-24533 (S.D. Fla.).

8

former law firm"). Judge Damian departed Mr. Valori's firm for the bench less than a year ago, and Mr. Valori is notably silent on any continuing relationship.

The additional factors set forth in *Robinson* and *BellSouth* also weigh in favor of disqualification. Ritz relies heavily on its "fundamental right to counsel," but Eleventh Circuit authority is clear that the right to counsel is not a trump card. Such a right does not extend to adding new counsel months or years into litigation that leads to recusal of the assigned judge. *Robinson*, 79 F.3d at 1055 (upholding refusal to allow new counsel after 15 months that would require judicial recusal does not abridge right to counsel of choice); *In re BellSouth*, 334 F.3d at 955 ("well established" that right to counsel is not absolute); *see also McCuin v. Texas Power & Light Co.*, 714 F.2d 1255, 1262 n. 21 (5th Cir.1983) ("While the right to counsel is fundamental, there is no absolute right to a particular lawyer[.]").

Ritz attempts to distinguish this binding authority by pointing out that Judge Damian is a magistrate rather than a district judge, but that is a distinction without a difference, particularly where, as here, Judge Damian's detailed substantive and procedural rulings have all been adopted in full, despite Ritz's attacks.

Ritz argues that Mr. Valori's appearance has not caused any delay, or that the delay is attributable to the filing of Plaintiff's motion. These arguments are both baseless and insufficient to overcome the obvious appearance of impropriety and manipulation here. First, Ritz's argument that Mr. Valori's appearance did not lead to delay because it occurred before the class certification motion was fully briefed ignores the reality that Judge Damian would bring her substantial history and understanding of the evidence and issues in this matter to bear on her review of briefing on the renewed motion, and would not need to spend additional time familiarizing herself with the record. Second, although Judge Reid promptly scheduled a hearing on class certification, chambers indicated this motion for disqualification will be addressed first, resulting in the cancellation of the hearing on class certification. ECF 182. Judge Reid then scheduled a hearing on this motion that will take place in early February, thus delaying a ruling on class certification. ECF 185. Furthermore, given the complexity of the Rule 23 issues here and the degree to which Ritz continues to raise prior arguments, the risk of a delayed ruling while Judge Reid fully reviews the extensive factual record remains. Finally, Ritz's suggestion that Plaintiff's motion and not Mr. Valori's appearance is the cause of any delay here ignores reality: no motion practice would be necessary if Ritz had chosen any of the plethora of other well-qualified counsel available to it, and

9

Plaintiff should not be required to ignore attempted judicial manipulation in the name of a speedy resolution.

### D. The Case Should Be Returned To Judge Damian

The appropriate remedy in this case, to avoid further delay and to avoid any potential for impropriety or perception that litigants can influence case outcomes through midstream attorney appearances, is Mr. Valori's disqualification and the return of this matter to Judge Damian for resolution of the class certification motion and pretrial proceedings. Ritz's suggestion that another reassignment would take up additional court resources again ignores the reality that such duplication would not have been necessary but for its suspect addition of Mr. Valori as counsel after years of litigation and the obvious connection between Mr. Valori's firm and Judge Damian. The citation to *Smart Commc'ns v. Glob. Tel-Link*, 590 F. Supp. 3d 758, 767 (M.D. Pa. 2022) is entirely unhelpful given that in *Smart*, the original judge had not issued any substantive orders at the time of the entry of the disqualified lawyer. If the case is not reassigned back to Judge Damian, even after Mr. Valori's disqualification, Ritz will still have achieved its goal. There is no doubt that Judge Reid is fully capable of acting as magistrate in the case and has worked quickly to move things along, but given the amount of work Judge Damian has already done it is a waste of judicial resources to force a duplication of efforts. Where disqualification is warranted because of the appearance or reality of attempted manipulation of the neutral judicial process, the results of that manipulation cannot stand simply because the new judge acted diligently in getting up to speed.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant Plaintiff's motion to disqualify Peter Valori from the case, reassign Magistrate Judge Damian to the case and any further relief the Court deems appropriate.

Respectfully submitted,

Dated: December 29, 2022

*s/ David M. Marco*
**SMITHMARCO, P.C.**
David M. Marco
IL Bar No. 6273315/FL Bar No. 125266
SMITHMARCO, P.C.
7204 Kyle Ct.
Sarasota, Florida 34240

Telephone: (312) 546-6539
Facsimile: (888) 418-1277
E-Mail: dmarco@smithmarco.com

**FRANCIS MAILMAN SOUMILAS, P.C.**
James A. Francis (*pro hac vice*)
1600 Market Street, Suite 2510
Philadelphia, PA 19103
T: (215) 735-8600
F: (215) 940-8000
jfrancis@consumerlawfirm.com

**LEWIS SAUL & ASSOCIATES, P.C.**
Lewis J. Saul (*pro hac vice*)
Edward A. Coleman (*pro hac vice*)
29 Howard Street, 3rd Floor
New York, NY 10013
T: (212) 376-8450
F: (212) 376-8447
lsaul@lewissaul.com
ecoleman@lewissaul.com

*Attorneys for Plaintiff and the Classes*

## **CERTIFICATE OF SERVICE**

    **I HEREBY CERTIFY** that on December 29, 2022, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via CM/ECF.

                                                                  */s/ David M. Marco*  
                                                                  David M. Marco