UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-CV-24284-SINGHAL/REID

MICHAEL FOX, on behalf of himself
and all others similarly situated,

Plaintiff,

v.

THE RITZ-CARLTON HOTEL
COMPANY, LLC,

Defendant.
_______________________________________/

**ORDER AND RECOMMENDATION ON PLAINTIFF'S**
**MOTION TO DISQUALIFY COUNSEL**

This cause is before the Court on Plaintiff's Motion to Disqualify Peter F. Valori ("Mr. Valori") as counsel for Defendant Ritz-Carlton Hotel Company, LLC (the "Motion"), which has been referred to me for a ruling. [ECF No. 170, 177]. For the following reasons, Plaintiff's Motion is **GRANTED in part**, but for the reasons explained in this Order it is **RECOMMENDED** that the case not be reassigned to Magistrate Judge Melissa Damian who has recused herself from handling any matter in this case.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

This case involves a putative class action in which Plaintiff asserts claims for violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. 501.201, *et seq.* ("FDUTPA"). For the purposes of this Order, however, the Court is not called upon to address the merits of Plaintiff's claims. Rather, this Court must address whether Attorney Peter Valori, who

has recently filed a Notice of Appearance in this case representing Defendant Ritz-Carlton Hotel Company, LLC, should be disqualified.

This case was filed in 2017 and has a long procedural history. As such, the Court will recite only the facts relevant to the underlying Motion to Disqualify. Pertinently, Defendant, The Ritz-Carlton Hotel Company, LLC ("Defendant" or "Ritz-Carlton") was originally represented by local attorneys from the law firm of Holland & Knight LLP. In September 2021, attorneys from the law firm Kabat Chapman & Ozmer LLP ("KCO") based in Atlanta, Georgia, took over the case as counsel of record. [ECF No. 60].

On January 11, 2022, not long after KCO's appearance in this matter, the presiding District Court Judge at the time, Judge Marcia Cooke[1], referred a number of motions to Magistrate Judge Melissa Damian, including: Plaintiff's initial Motions for Class Certification [ECF Nos. 67;69], Defendant's Motion to Exclude Unfiled Declaration of James Francis [ECF No. 79], Defendant's Motion to Exclude Reply Declaration of Plaintiff [ECF No. 95], Defendant's Motion for Sanctions [ECF No. 96], Plaintiff's Motion for Partial Summary Judgment [ECF No. 92], and Defendant's Motion for Summary Judgment [ECF No. 98]. *See* [ECF No. 122, 123]. Between June 15, 2022, and August 11, 2022, Judge Damian issued four written orders and two reports and recommendations on these matters, totaling approximately 96 pages of written work. *See generally* [ECF Nos. 127; 130; 131; 132; 135; 137].

Following the applicable objections period for Judge Damian's orders and reports and recommendations, Plaintiff filed a Renewed Motion for Class Certification on October 31, 2022, a motion important to the success of his case. [ECF No. 158]. Judge Damian scheduled a hearing on Plaintiff's Renewed Motion for Class Certification for December 20, 2022. [ECF No. 159].

[1] Judge Raag Singhal is now the presiding district judge on this case. *See* [ECF No. 187].

On November 17, 2022, however, matters became complicated. On that date Mr. Valori filed a Notice of Appearance on behalf of Ritz Carlton to serve as co-counsel with KCO. [ECF No. 163]. Importantly, Mr. Valori, a Miami attorney, is the co-founder and managing partner of Damian & Valori LLP. Just prior to becoming a magistrate judge in January 2022, Judge Damian had been "Of Counsel" at Damian & Valori for approximately nine years.

Not surprisingly, on November 18, 2022, the day after Mr. Valori appeared in the case, Judge Damian recused from the case. [ECF No. 165]. The Clerk of Court subsequently reassigned the case to me [*Id.*], and Plaintiff's Renewed Motion for Class Certification was referred to me. [ECF No. 167]. Ten days later, on November 28, 2022, Plaintiff filed the instant Motion to Disqualify Mr. Valori as Defendant's counsel contending that Defendant had purposefully hired Mr. Valori to obtain Judge Damian's recusal because Judge Damian's rulings had been favorable to Plaintiff. [ECF No. 170]. Plaintiff requested that Mr. Valori be disqualified from representing Ritz Carlton and "Judge Damian [] be reassigned back to the case in which she has already committed so much time and effort." [ECF No. 170 at 4].

After the issue was fully briefed, I held a hearing on the Motion to Disqualify on February 3, 2023. *See* [ECF Nos. 188; 197]. Following the hearing, I instructed the parties to provide supplemental briefing on "the following issue: If Attorney Valori *is* disqualified from representing Defendant in this case, may the case then be returned to Magistrate Judge Damian to rule on Plaintiff's pending Renewed Motion for Class Certification and any other pretrial motions." [ECF No. 191]. The parties filed supplemental briefing on February 13, 2023. *See* [ECF Nos. 193; 194].

**LEGAL STANDARD**

Generally, the Fifth Amendment Due Process Clause affords a civil litigant the right to counsel of its choosing in civil actions. *In re BellSouth Corp.*, 334 F.3d 941, 955 (11th Cir. 2003);

*see also Smart Commc'ns, Holding, Inc. v. Global Tel-Link Corp.*, 590 F. Supp. 3d 758, 763 (M.D. Pa. 2022) (noting that the Fifth Amendment "guarantees civil litigants the right to retained counsel, which ordinarily includes the right to be represented by counsel of their choice). Yet, this right is not absolute and a "litigant's freedom to hire the lawyer of his choice can be overridden if a court finds that the choice would interfere with the orderly administration of justice." *In re BellSouth Corp.*, 334 F.3d at 955–56. In *Robinson v. Boeing Co.*, the Eleventh Circuit set forth a multi-factor test to determine when the disqualification of an attorney is necessary. 79 F.3d 1053, 1055 (11th Cir. 1996). Some factors courts should consider in deciding whether to exercise their discretion to allow additional counsel are: (1) the fundamental right to counsel; (2) the court's docket; (3) the injury to the plaintiff; (4) the delay in reaching decision; (5) the judicial time invested; (6) the expense to the parties objecting; and (7) the potential for manipulation or impropriety. *Id.* "Where the balance of these objective factors favors disqualification, the party resisting such disqualification must show an overriding need for its choice of counsel." *Smart Commc'ns, Holding, Inc.*, 590 F. Supp. 3d at 763 (citing *Robinson*, 79 F.3d at 1054–56). "An overriding need is defined as "a need that would reflect upon the litigant's ability to have its case fairly presented, rising to constitutional due process concerns." *Id.* (quoting *Robinson*, 79 F.3d at 1056).

## DISCUSSION

As discussed below, the parties' competing arguments revolve around the various *Robinson* factors. As such, each factor will be addressed. Additionally, the Court will evaluate the parties' arguments regarding whether the case should be reassigned to Judge Damian.

### A. Fundamental Right to Counsel and Potential for Manipulation and Appearance of Impropriety

In this case, the parties' arguments surrounding the fundamental right to counsel and the "potential for manipulation and impropriety" factors set forth in *Robinson*, are most appropriately

considered together, because the two are inextricably linked. As an initial matter, although civil litigants are generally entitled to choose their own attorneys, this right "can be overridden where the choice of counsel interferes with the orderly administration of justice." *Smart Commc'ns, Holding, Inc.*, 590 F. Supp. 3d at 763. Attempts to manipulate the random assignment of judges or to "judge shop," or the creation of an appearance of impropriety resulting in a judge's recusal clearly constitute "a threat to the orderly administration of justice." *Id.*

Here, Mr. Valori's Notice of Appearance resulted in Magistrate Judge Damian's recusal. Ritz Carlton's lawyers claim Mr. Valori's entrance in the case was necessary. Defendant needed local Miami counsel at this juncture because "briefing on the most important motion in the case was coming up in light of the order to fully re-brief class certification," and the case was "headed to trial no matter the outcome of that motion" since the Court had already denied Ritz Carlton summary judgment on one claim, the FDUTPA claim [ECF No. 184 at 8]. Defendant claimed that insight into the Court's local practice was necessary to prepare for trial. Additionally, KCO attorneys had noticed that several different district judges had been signing orders in the case for District Judge Cooke and found the situation to be "unusual," although they later learned, after Judge Cooke's passing, that she had been gravely ill at the time. [*Id.*]. In explaining why they chose Mr. Valori, KCO attorneys claim Mr. Valori was chosen because he is "eminently qualified," was referred by a trusted source, they "liked him" more than other lawyers being considered for the position, he has "a deep knowledge of the local practices and the local bench," has prior experience in FDUTPA cases in the hospitality industry, he comes from a boutique litigation firm as opposed to large national law firm (which they prefer), and he has "a wonderful reputation before the [local] bench, which is really what [Defendant] needed at a time when [it] felt [it was not] necessarily getting the attention of any specific judge." [*Id.* at 15–16].

With this explanation, however, Defendant essentially invites this Court to ignore the elephant in the room: of all the qualified attorneys admitted in this District, why did Defendant choose the one whose appearance would almost certainly lead to either a judge's recusal or a motion by Plaintiff to disqualify counsel? Once Mr. Valori noticed his appearance in this case, Judge Damian was left with few options. While Ritz-Carlton points out that Judge Damian was not required to recuse herself pursuant to 28 U.S.C. § 455(b), § 455(a) provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." This "catch all" provision aims to ensure that judicial officers are cognizant of instances where their presence on a case may lead to questions regarding their impartiality, and therefore the integrity of the proceedings. Here, it appears Judge Damian recused herself for this reason.

An objective observer could fairly question the impartiality of Judge Damian's rulings where the named partner of the small boutique law firm she was associated with for more than nine years, and which she had very recently left to join the bench as a magistrate judge, represented a party in the case. Judge Damian's prior association with Mr. Valori's firm—less than a year before Mr. Valori's appearance—is the sort of fact that § 455(a) aims to leave to a judge's discretion to determine whether their continued assignment on a case would raise the specter of impropriety. Judge Damian's decision in this regard cannot reasonably be characterized as some sort of unlikely or unforeseeable consequence of Mr. Valori's appearance. To the contrary, it is one that if not likely, was certainly foreseeable. Because of Judge Damian's close and recent work relationship with Mr. Valori, Defendant and its counsel should have been aware that Mr. Valori's appearance would have either caused Plaintiff to request Mr. Valori's removal from the case or Judge Damian's recusal. Either option would have resulted in delay and Judge Damian's recusal

would require a duplication of effort that would affect the use of judicial resources. All of this is a long way of saying that Mr. Valori and KCO unreasonably failed to take into consideration the possibility that Mr. Valori's appearance in the case may result in Judge Damian's recusal or the *appearance* of impropriety. *See In re F.C.C.*, 208 F.3d 137, 139 (2d Cir. 2000) (noting that courts expect "that lawyers will take pains to avoid appearing in any case in which their appearance may cause disqualification of a judge assigned to the case" and that "the failure of counsel to consider in advance the known or knowable risk of a judge's recusal may result in rejection of the appearance by that lawyer or firm").

Both sides accuse the other of ulterior motives. Plaintiff claims Defendant purposefully acted in a manner to cause Judge Damian's recusal "shortly after receiving multiple unfavorable rulings from Judge Damian." [ECF No. 170 at 9]. Plaintiff points out that in reviewing Defendant's summary judgment motion, Judge Damian did uphold Plaintiff's *per se* FDUTPA claim against Defendant and that many of the judge's rulings, including a motion for sanctions, had largely been in Plaintiff's favor. [ECF No. 170 at 2, 9]. Defendant challenges that Judge Damian ruled in its favor on "numerous critical issues" because Judge Damian recommended denying Plaintiff's partial motion for summary judgment, recommended granting summary judgment in Defendant's favor on two out of three of Plaintiff's claims, and her rulings "previewed the denial of class certification." [ECF No. 184 at 5-6]. Defendant argues that Plaintiff's motion to disqualify Mr. Valori was filed only to harass and malign Defendant. [ECF No. 194 at 5]. In any event, this Court need not make any specific finding that Mr. Valori or Ritz Carlton subjectively *intended* to cause Judge Damian's recusal or "judge shop." *See Robinson*, 79 F.3d at 1056 (noting that the "potential for manipulation or impropriety may be considered, without making specific findings"). All that is necessary for disqualification is the conclusion that Mr. Valori's addition to the case can

reasonably be viewed as having caused the appearance of impropriety or having been done to manipulate the random assignment of judges. That is certainly present here.

Defendant further argues that Plaintiff relies too heavily (or almost entirely) on the appearance of impropriety or potential for manipulation factor. The Court disagrees. The *Robinson* factors are non-exhaustive, and given the facts of any case, different factors will be accorded different weight. Here, the Court gives significant weight to the appearance of impropriety or potential for manipulation factor. It cannot be overstated how important the integrity and appearance thereof are to the federal judiciary and this District. Even the *appearance* of impropriety is sufficient to trigger both a judge's recusal and an attorney's disqualification. The issue speaks to the very trust the judiciary has with the community it serves.

Defendant seeks to distinguish the cases Plaintiff relies on from the facts of this case by pointing out that: those cases involved district court judges rather than magistrate judges, involved either repeated instances of a judge recusing themselves because of a particular attorney's appearance, or an attorney that was a relative of the judge thereby triggering mandatory recusal. *See, e.g., In re BellSouth*, 334 F.3d 941 (11th Cir. 2003) (involving repeated instances of recusal in racial discrimination lawsuits of the only African-American district judge in the Northern District of Alabama at the time triggered by the routine appearance of a law firm in which the judge's nephew was a partner); *Robinson*, 79 F.3d at 1054–56 (involving recusal of the same judge as in *In re BellSouth* because of his nephew's firm's appearance in a racial discrimination lawsuit); *McCuin v. Texas Power*, 714 F.2d 1255, 1258 (5th Cir. 1983) (noting disqualification was appropriate where defendants in numerous cases retained the brother-in-law of the judge presiding over those cases).

The facts giving rise to an appearance of impropriety will differ greatly in each case, however, and cannot simply be boiled down to a few similar fact patterns. While the facts here are certainly different than the cases Defendant cites, the appearance of impropriety is no less troubling. They were apparently troubling enough to cause Judge Damian's *sua sponte* recusal. Whether intentional or not, Mr. Valori's presence in this case created the appearance of impropriety. Under these circumstances, Ritz Carlton's claim that they simply "liked" Mr. Valori more than other lawyers they may have chosen as local counsel is insufficient. There are many other highly qualified local lawyers—whose appearance would not have triggered Judge Damian's recusal—that Defendant could have chosen to serve as local counsel in this case.

Lastly, it should be noted that the parties quibble over, and Defendant focuses heavily on, which party Judge Damian's rulings and recommendations favored. The answer to this, however, does not greatly impact this Court's analysis. Whether Judge Damian's rulings were favorable to Defendant or not, the appearance of impropriety—such that Judge Damian recused herself—is apparent. If the Court were to conclude that Judge Damian's rulings were in Defendant's favor, there is a strong appearance of impropriety because one could reasonably perceive that Defendant was attempting to curry favor with Judge Damian by hiring a former colleague with whom she had quite recently worked. On the other hand, if Judge Damian's rulings did not favor Defendant then we would be faced with the appearance of impropriety and manipulation through what could reasonably be viewed as judge shopping. Either way, the appearance of impropriety is compelling. As such, this factor strongly favors disqualification.

**B. The Court's Docket, Delay, and Judicial Time Invested**

Ritz-Carlton argues that retaining Mr. Valori has not resulted in any delay, rather "Plaintiff's unnecessary motion did." [ECF No. 184 at 15]. Ritz-Carlton further contends that

granting Plaintiff's Motion to Disqualify would cause further delay, and that Plaintiff's "complaints about delay are especially hollow because he has repeatedly delayed the progress of this case." [*Id.* at 15–16]. Defendant, however, misses the mark. Defendant chose to retain an attorney who it should have reasonably anticipated might cause Judge Damian to recuse herself or risk the appearance of impropriety. This choice, *not* Plaintiff's Motion, ultimately resulted in the delay. This Court had to consider the Motion, hold a hearing, and reschedule a hearing on Plaintiff's Motion for Renewed Class Certification until this issue had been resolved.

Judge Damian had invested considerable time and effort acquiring knowledge and insight into the unique factual and legal issues in this case. Undoubtedly, one of the chief concerns courts have in evaluating disqualification motions is a particular judge expending tremendous time, energy, and judicial resources on a matter only to have to recuse themselves because of an attorney's appearance. The Eleventh Circuit instructs in *Robinson* that "[i]t is incumbent on lawyers as officers of the court, as well as judges, to guard against actions and procedures to avoid the useless expenditure of judicial time." *Robinson*, 79 F.3d at 1055. Another judicial officer must spend additional time familiarizing themselves with the facts and law in this case, work which Judge Damian had already done. This sort of duplicative effort is a drain on the judiciary's resources.

It should also be noted that Defendant repeatedly asserts Mr. Valori's appearance has not caused any waste of judicial resources, effort, or delay because the only issue left to be addressed was the Renewed Motion for Class Certification, which was still being briefed at the time of Mr. Valori's appearance. Thus, Defendant reasons that there is no delay because the time required to be spent to draft a Report and Recommendation on Plaintiff's class certification motion would be the same regardless of which magistrate judge would handle it. This reasoning is faulty. The

significant work Judge Damian had done on this case made her particularly well-versed in the legal and factual issues of this multi-issue class action case. Her recusal will undoubtedly cause delay. As such, this factor weighs in favor of disqualification.

**C. The Prejudice and Expense Mr. Valori's Appearance Has Caused to Plaintiff**

Plaintiff contends that Judge Damian's recusal has unnecessarily delayed the Court's decision on the important issue of class certification and the case in general and, unless Mr. Valori is disqualified and the case reassigned to Judge Damian, Plaintiff will be prejudiced. *See generally* [ECF No. 170 at 13–14]. Additionally, Plaintiff argues Defendant will suffer no prejudice by Mr. Valori's disqualification because Mr. Valori has only appeared in the case at this late stage, that KCO will still be on the case, and that Defendant "can only credibly claim prejudice in this situation if it retained Valori with the intent to manufacture the recusal of Judge Damian." [*Id.* at 12–13].

Defendant counters that Mr. Valori's appearance in this case has not caused Plaintiff any additional expense or prejudice. As Defendant sees it, regardless of Mr. Valori's appearance "Plaintiff would be required to undertake the expense of briefing the renewed certification motion, participat[e] in a hearing before the assigned magistrate judge, and brief[] objections to the report to the extent either sides files any." [ECF No. 184 at 18]. Further, Defendant contends the only additional cost Plaintiff has incurred is the cost of filing the instant "meritless" Motion to Disqualify. [*Id.*]. Defendant also avers that Plaintiff has suffered no prejudice because there has been no delay and that "[t]he recusal of Judge Damian could not injure Plaintiff for the additional reason that the assigned district judge has not changed … [and the] district judge will review the report *de novo* regardless of which magistrate judge authors it." [*Id.* at 19].

Despite Defendant deeming the Motion "meritless," Plaintiff's Motion raises valid legal and factual arguments—and the cost incurred in filing the Motion was a foreseeable and legitimate expense resulting from Mr. Valori's appearance in this case. Nonetheless, while delay has occurred, given the years-long protracted litigation in this case, the prejudice to Plaintiff caused by this delay is not severe. Thus, while this factor ultimately favors Plaintiff, it only barely does so, and compared to the other factors, has relatively little weight on this Court's decision.

**D. Overriding Need**

Having determined that the balance of the *Robinson* factors weigh in favor of disqualification, Defendant now bears the burden of establishing an overriding need to keep Mr. Valori on the case. *See Smart Commc'ns, Holding, Inc.*, 590 F. Supp. 3d at 763 (citing *Robinson*, 79 F.3d at 1054–56) (explaining that "[w]here the balance of these objective factors favors disqualification, the party resisting such disqualification must show an overriding need for its choice of counsel"). The Eleventh Circuit has explained that an of overriding need is more than mere convenience, but rather is "a need that would reflect upon the litigant's ability to have its case fairly presented, rising to constitutional due process concerns[.]" *Robinson*, 79 F.3d at 1056. Defendant has not met this burden.

Defendant has explained that one of the reasons it (and lead counsel KCO) chose to retain Mr. Valori as local counsel was because they needed a local attorney to explain "the unique situation that was baffling to [KCO] of multiple district judges signing orders in this case, none of whom included Judge Cooke." [ECF No. 197 at 14:5–8]. Defendant wanted to hire a local attorney with knowledge about this District, its judges, and local practices. [*Id.* at 14–15

Undoubtedly, Mr. Valori is a highly qualified, experienced, and well-respected attorney in this District. In nearly any other circumstance, his presence on a case would greatly benefit a client.

While his experience and qualifications are noteworthy, Defendant has not shown—nor does this Court find—that there is an overriding need for his appearance in this case. Notwithstanding Mr. Valori's unique qualifications, there certainly are many other equally qualified attorneys and law firms in this District who Defendant could have retained. As such, Defendant has failed to show that Mr. Valori's disqualification from this case would result in the loss of its ability to have its case fairly presented.

While Defendant attested that Mr. Valori has already rendered some assistance and advice during the short time he has been in the case and had some input into the Renewed Motion for Class Certification, the Court notes that the Renewed Motion was signed by Mr. Valori only nine days after he appeared in the case and Defendant has yet to state why he specifically is essential to their ability to fairly present their case. Consequently, Mr. Valori must be disqualified from representing Defendant in this matter.

**E. Recommendation Regarding Reassignment**

The final issue before the Court is Plaintiff's request that the case be reassigned to Judge Damian. Given that the appearance of impropriety that necessitated Judge Damian's recusal cannot be undone, reassignment is not appropriate. I recommend that the case *not* be reassigned.

Further, Plaintiff contends that because this is a pre-trial non-dispositive matter referred to me for a ruling, that it "necessarily follows … [that I have] the inherent authority to return the case to the status quo and order reassignment to the original magistrate." [ECF No. 193 at 3–4]. Alternatively, Plaintiff argues that if there is any doubt of my authority to order reassignment of the case to Judge Damian, I can "issue a Report and Recommendation to Judge Singhal for the reassignment to be made." [*Id.* at 4].

Defendant claims "Mr. Valori has been substantively involved in the case for more than *four months*, including on [Defendant's] Opposition and Sur-Reply to Plaintiff's pending Renewed Certification Motion." [ECF No. 194 at 3]. As such, reassignment is inappropriate where "as here, it has been determined that 'the impartiality of the judge' could be 'reasonably questioned' and recusal is required, it is 'clear' that 'the propriety of continuing the proceedings before this … judge' is 'irrevocably tainted.'" [*Id.* at 4] (quoting *Fredonia Broad. Corp. v. RCA Corp.*, 569 F.2d 251, 255 (5th Cir. 1978)). Additionally, Defendant avers that the "federal recusal statute (28 U.S.C. § 455) does not authorize the Court to overrule another judge's decision to recuse by reassigning the case to the same judge." [*Id.* at 5]. Lastly, Defendant notes that this District's Internal Operating Procedures prohibit such reassignment, and provide: "[i]n the event of recusal in any matter, the assigned Judge shall enter the fact of recusal on the record and refer the matter to the Clerk of the Court for **permanent reassignment** to another Judge in accordance with the blind random assignment system." [*Id.* at 5] (quoting IOP 2.16.00) (emphasis in original).

In this instance, Defendant has the better of the argument. Reassignment to Judge Damian is inappropriate. Not only would doing so undermine her decision to recuse, but Defendant is correct that Mr. Valori's involvement in the case thus far and his involvement in drafting the Renewed Motion would make reassignment infeasible. Additionally, doing so would conflict with the policy underpinning 28 U.S.C. § 455 and this District's Local Rules and Internal Operating Procedures regarding recusal. In any event, the Clerk of the Court has assigned me as the magistrate judge in the case. Further, even if the assignment of a magistrate judge to a particular case may be determined by the Clerk of Court, the referral of a matter to a magistrate judge is a decision properly left to the presiding district judge. Thus, I recommend solely, for the reasons

previously stated, that the case *not* be reassigned by the Clerk of the Court to Magistrate Judge Damian.

Finally, and related to this issue, it is important to address Defendant's arguments that since Judge Damian cannot be reassigned to the case, Plaintiff's Motion to Disqualify is essentially moot. Defendant contends that because "[t]he case [cannot] go back to an already-recused judge," denying Defendant its choice of counsel and disqualifying Mr. Valori would be "pointless." [ECF No. 194 at 7]. This argument is telling and necessarily fails. Defendant's argument essentially boils down to "the damage has been done," so no consequence should follow. But both commonsense and the reasoning driving the Eleventh Circuit's decision in *Robinson* dictates that in this instance, where the Defendant's actions so clearly created a situation they knew or should have known would result in a waste of judicial resources, ignoring Defendant's actions would open the door to the sort of gamesmanship courts deplore. The Court must exercise its discretion to disqualify Mr. Valori from representing the Defendant in this case.

**CONCLUSION**

For the foregoing reasons Plaintiff's Motion to Disqualify Peter Valori [ECF No. 170] is **GRANTED in part**. The **Clerk of Court is INSTRUCTED** to remove Mr. Peter F. Valori as counsel for Defendant. Additionally, it is **RECOMMENDED** that Clerk of the Court not reassign Magistrate Judge Melissa Damian, who has recused, as the Magistrate Judge in this case.

**DONE AND ORDERED** in Chambers at Miami, Florida this 8th day of March 2023.

LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

cc: **All Counsel of Record**