UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-24284-CIV-SINGHAL

MICHAEL FOX, on behalf of himself and all
others similarly situated,

    Plaintiff,

v.

THE RITZ-CARLTON HOTEL COMPANY, L.L.C.,

    Defendant.
_____/

## ORDER

**THIS CAUSE** is before the Court on Plaintiff's Renewed Motion for Class Certification ("Motion") (DE [224]). For the reasons discussed below, the Motion is denied.[1]

### I.    INTRODUCTION

In 2017, Plaintiff Michael Fox ("Plaintiff" of "Fox") filed a class action lawsuit against Defendant The Ritz-Carlton Hotel Company, L.L.C. ("Defendant" or "Ritz-Carlton"), alleging violations of The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). In his lawsuit, Fox claims that Ritz-Carlton owned restaurants throughout the state of Florida either provided no-notice or inadequate notice that it was automatically adding an 18% gratuity charge to each customer's bill. Fox asserts that Ritz-Carlton's practice violates FDUTPA and seeks damages on behalf of himself and all other individuals who were subjected to this practice.

---

[1] Since the Court denies Plaintiff's motion to certify the classes with prejudice, it need not rule on (DE [192]) Defendant's "Motion for Leave to File Sur-Reply to Respond to New Arguments Raised for First Time in Certification Reply" and (DE [199]), Defendant's "Motion to Exclude Attorney Declaration Filed as Sole Evidentiary Support for Multiple Elements of Class Certification." Both those motions are dismissed as moot.

In light of the numerous motions, orders, and appeals since Fox filed the class action complaint, there is no need to over-recite the facts.  The issue squarely before the Court today is whether to certify two classes of individuals who have dined at Ritz-Carlton restaurants in Florida.  Fox has defined those two classes as follows:

> **(1) No Notice Class:** All persons who, from November 28, 2013 through the conclusion of this case, (i) dined at any public food service establishment in the state of Florida owned and/or operated by Defendant; (ii) were presented with a menu that provided no notice that an automatic gratuity or service charge would be added to the check; (iii) the check contained an automatic gratuity or service charge; and, (iv) the person paid the check in full.
>
> **(2) Inadequate Notice Class:** All persons who, from November 28, 2013 through the conclusion of this case, (i) dined at any public food service establishment in the state of Florida owned and/or operated by Defendant; (ii) were presented with a menu that provided inadequate notice that an automatic gratuity or service charge would be added to the check; (iii) the check contained an automatic gratuity or service charge; and, (iv) the person paid the check in full.

(DE [224] at 12).  Fox seeks class certification pursuant to Rule 23(b)(3).  (DE [161] at 12-13).  Ritz-Carlton opposes class certification.

## II.     Legal Standard

The plaintiff bears the burden of proving all the necessary elements for class certification.  *Gilchrist v. Bolger*, 733 F.2d 1551, 1556 (11th Cir. 1984).  Before certifying a class, a district court must rigorously analyze plaintiff's claims to ensure that he has satisfied Rule 23(a)'s prerequisites.  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982).  This rigorous analysis often "involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978).  If a plaintiff satisfies Rule 23(a) and Rule 23(b)'s requirements, a district court is left with no choice but to certify the class.  *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398–400 (2010).

III.     Discussion

Federal Rule of Civil Procedure 23 controls class certification. The proposed class must satisfy the factors set forth in Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

The Rule 23(a) factors have commonly been synthesized to demand the following requirements in a proposed class: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy.  But before evaluating whether a plaintiff has satisfied the Rule 23(a) requirements, a district court must ensure that the Class Representative has demonstrated that the proposed class or classes are "adequately defined and clearly ascertainable." *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302 (11th Cir. 2021); *see also Little v. TMobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012).  This requirement logically flows from Rule 23(a) as it would be impossible for a district court to evaluate whether a proposed class satisfies Rule 23(a)'s requirements if the class is not adequately defined and clearly ascertainable.  *See id.*

### a. Both of Fox's Proposed classes are adequately defined and clearly ascertainable.

In *Cherry*, the 11th Circuit clarified the adequately defined and clearly ascertainable inquiry.  "A proposed class is ascertainable if it is adequately defined such that its membership is capable of determination" through clear and objective criteria. *Morris v. Walmart Inc.*, 2022 WL 1590474, at *6 (N.D. Ala. Mar. 23, 2022) (quoting *Cherry*, 986 F.3d at 1304).  Determining the actual members of that class need not be easy or

3

convenient, it just must be possible. *See Cherry*, 986 F.3d at 1303. Importantly, the 11th Circuit further clarified that a class need not be "administrative[ly] feasibl[e]" to be adequately defined and clearly ascertainable. *Cherry*, 986 F.3d at 1302–03.[2]

Since the Eleventh Circuit eliminated the administrative feasibility requirement from the clearly ascertainable analysis, district courts have been quick to dismiss arguments that are rebranded administrative feasibility arguments. *See, e.g., McCullough v. City of Montgomery*, 2021 WL 2044900, at *11-12 (M.D. Ala. May 21, 2021) (rejecting as rebranded "administrative feasibility" arguments, arguments that a class was not ascertainable because individual inquiries would be necessary to determine class membership); *see also Haines v. Fid. Nat'l Title of Fla., Inc.*, 2022 WL 1095961, at *8 (M.D. Fla. Feb. 17, 2022). And while the full scope of what district courts should be considering at the adequately defined and clearly ascertainable stage of the certification process in a post-*Cherry* world is not yet clear, a few non-disputed principles have emerged. First, the district court must find that the proposed class be defined using clear and objective criteria and not defined with vague and subjective criteria. *Cherry*, 986 F.3d at 1302–03. Second, it must find that the class is capable of being determined; it is not relevant, at least at this stage, how the plaintiff proposes to apply the class criteria and actually identify its members. *McCullough*, 2021 WL 2044900 at *11.

---

[2] An administrative feasibility requirement would require the class representative, before certification, to demonstrate how the district court can successfully locate the remainder of the class after certification. *Cherry*, 986 F.3d at 1303. But after *Cherry*, plaintiffs no longer need to demonstrate administrative feasibility at this stage in the certification process.

In Rule 23(b)(3) cases, however, administrative feasibility is relevant in helping a court determine whether a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *Cherry*, 986 F.3d at 1302 (stating that, in a 23(b)(3) analysis, a court "must consider the likely difficulties in managing a class action" and that includes evaluating the difficult in identifying class members). Since Fox seeks to certify the class under Rule 23(b)(3), administrative feasibility would be relevant in evaluating whether to certify the proposed class at that stage in the certification process. But since the general issues raised in this class action do not predominate over individual issues and class counsel has a conflict of interest, the Court need not address whether a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

Here, Fox has met his burden in adequately defining a clearly ascertainable class through clear and objective criteria. Each of his proposed classes contain four clear requirements that are defined by objective means. The classes include all individuals who, from November 28, 2013 and onward, (1) dined at a Florida-based Ritz-Carlton establishment, (2) were presented with a menu that contained either inadequate or no notice, (3) their check contained an automatic gratuity or service, and (4) the individual paid in full. The four class requirements are all premised on clear, historical facts that don't require any level of subjectivity to ascertain. Even though a jury may be necessary to determine whether a menu had inadequate notice, once that question is answered Fox's proposed classes are capable of being determined. *See Cherry*, 986 F.3d at 1302–03.

Ritz-Carlton's arguments to the contrary are irrelevant in a post-*Cherry* world. Its arguments detail how it would be difficult to locate individuals who satisfy the four requirements in the proposed classes. *See* (DE [174-1] at 26-27). These arguments, at their core, contend that it would be administratively difficult to locate the members of the class. But since administrative feasibility is a non-factor in the adequately defined and clearly ascertainable analysis, Ritz-Carlton's arguments are off point. *See McCullough*, 2021 WL 2044900, at *11-12. As such, Fox's two proposed classes are adequately defined and clearly ascertainable.

### b. **Rule 23(a) Factors**

After determining that the proposed classes are adequately defined and clearly ascertainable, we turn to the Rule 23(a) factors, the core analysis of the class-certification process: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy.

#### i. **Numerosity**

A proposed class is numerous when "joinder of all members is impracticable."

*Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001).  Numerosity is not simply a numbers game, but generally "less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986).

Here, Fox's proposed classes clearly satisfy the numerosity requirement.  Fox has demonstrated that there are at least thousands of transactions at issue, (DE [161] at 16), which easily surpass a simple numbers test.  *See Cox*, 784 F.2d at 1553.  Joinder of all the individuals behind those transactions would logically be impracticable.  Fox's proposed class thus passes Rule 23(a)'s numerosity requirement.

### ii. Commonality and Typicality

The commonality and typicality requirements typically go hand in hand.  These requirements are generally easy to satisfy, with the Eleventh Circuit defining commonality as a "low hurdle," *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1356 (11th Cir. 2009), and district courts defining typicality as "permissive." *See, e.g.*, *Melton v. Century Arms, Inc.*, 2018 WL 6980715, at *8 (S.D. Fla. Nov. 28, 2018) (citing *In re Checking Account Overdraft Litig.*, 275 F.R.D. 666, 674 (S.D. Fla. 2011)).  "Commonality refers to the group characteristics of the class as a whole, while typicality refers to the individual characteristics of the named plaintiff in relation to the class," but they both focus on whether there exists a sufficient nexus "between the legal claims of the named class representatives and those of individual class members to warrant class certification." *Piazza*, 273 F.3d at 1346.  This nexus exists "if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012) (citing *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984)).

Here, Fox's claims and the claims of the two proposed classes arise from the "same event or pattern or practice and are based on the same legal theory." *See id.* Fox claims that Ritz-Carlton has employed a practice of deceptively charging an automatic gratuity—whether through inadequately notifying customers on the menu or by not notifying customers at all—that violates FDUTPA. *E.g.*, (DE [161] at 11-12). It does not matter that the restaurants where Ritz-Carlton is charged with providing inadequate notice have different menus and bills with different styles and methods for charging the gratuity. What matters for the commonality and typicality analysis is that there is a common thread amongst all the menus and bills that each provided inadequate or no notice to customers. *Cf. Fox v. Ritz-Carlton Hotel Co., L.L.C.*, 977 F.3d 1039, 1047 (11th Cir. 2020) (determining that Fox has standing to represent the class because he had the same interest and suffered the same injury; he did not need to suffer the same "injury at the same place and on the same day as the class members"). As such, Fox's proposed classes pass Rule 23(a)'s commonality and typicality requirements.

### iii. Adequacy

Rule 23(a) last demands that the class representative adequately represent the class as a whole. A district court must satisfy itself that the "the class representative has common interests with unnamed class members and will vigorously prosecute the interests of the class through qualified counsel." *Piazza*, 273 F.3d at 1346. This "adequacy of representation" analysis "encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003). The Court finds that class

counsel has a conflict of interest and is therefore inadequate.[3]

Ritz-Carlton claims that Fox's counsel has a conflict of interest. In arguing that Fox's counsel has a conflict, Ritz-Carlton relies on *Krim v. pcOrder.com, Inc.*, 210 F.R.D. 581, 589 (W.D. Tex. 2002) to claim that counsel is inadequate if they agree to drop one class action for a more lucrative one. *See* (DE [174] at 28). As relevant to this case, one business day after originally moving for class-certification in 2021, Fox's counsel voluntarily dismissed three copy-cat lawsuits asserting the same FDUTPA claims against three global hotel companies. (DE [214] at 28) (citing *See Germak v. Hyatt.*, No. 20-CV-24341, DE [59] (S.D. Fla.); *Germak v. Marriott,* No. 20-CV-24533, DE [53] (S.D. Fla.); *Germak v. Hilton*, No. 20-CV-24511, DE [49] (S.D. Fla.)). Ritz-Carlton further alleges that these cases were dismissed to prevent an adverse ruling that could implicate this case. *See, e.g.*, (DE [172-1] Ex. B at 33:24–25) (excerpts from a hearing in front of District Judge Aileen Cannon where Judge Cannon stated "I do see here copies of the receipt and the menu, and I do see the notice provided on both documents"). Ritz Carlton concludes that "[c]ounsel's willingness to abandon *three different classes* demonstrates that they place their own financial and personal interests over the classes' interests and they have not and will not act with the required "'unwavering and complete loyalty to class members.'" (DE [214] at 28-29) (citing *Krim*, 210 F.R.D. at 589) (emphasis in original).[4]

Fox does not dispute that the cases were dismissed just one business day after

---

[3] Because the Court finds that Counsel has a conflict of interest, it does not need to address whether Fox would adequately prosecute the case.

[4] Fox contends that *Krim* is inapposite since the class action counsel in *Krim* was involved in multiple lawsuits in multiple venues against the same defendant while counsel here are no longer involved in multiple lawsuits that were also against different defendants. 210 F.R.D. at 589–90. That may be so, but Fox is drawing a distinction without a difference. The central issue in *Krim* was that counsel had dropped a lower-dollar state action but remained involved in more lucrative cases. 210 F.R.D. at 590 ("Counsel quickly dropped the class in the lower-dollar state action but decided to stay involved in this and the New York Litigation, both potentially more lucrative."). Regardless of whether there are multiple cases against the same defendant or multiple cases against different ones, the concern that counsel will drop the less lucrative cases for more promising ones is present in both.

moving for filing certification in this case but argues that they were not dismissed to avoid an adverse ruling. Instead, Fox assures this court that it was done for other reasons that it cannot divulge because of the attorney client privilege. But whether that is true is irrelevant. Even the appearance of having divided loyalties or acting without the best interests of the class in mind can render counsel incompetent. *Nat'l Air Traffic Controllers Ass'n. v. Dental Plans, Inc.*, 2006 WL 584760, at *4 (N.D. Ga. Mar. 10, 2006) ("[C]lass counsel must act with unwavering and complete loyalty to the class members they represent, and the responsibility of class counsel to absent class members whose control over their attorneys is limited *does not permit even the appearance of divided loyalties*." (emphasis added)) (citations omitted). Dismissing three similar cases on the same day, which just so happens to be one business day after Fox first moved for class certification in this case, does not appear to be acting in the best interests of a class. Class counsel must act with unwavering and complete loyalty to the class members they represent, and it just does not appear to the court that it is. As such, because Fox's counsel has a conflict of interest, the Court cannot certify the two classes.

   c. **Rule 23(b)(3).**

If a plaintiff can prove each of the Rule 23(a) factors, it must then demonstrate entitlement to class relief under one of the three provisions in Rule 23(b). *Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1279 (11th Cir. 2000). Fox seeks to certify the two proposed classes under Fed. R. Civ. P. 23(b)(3). (DE [161] at 12-13). Rule 23(b)(3) provides that the class may be certified if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." While Fox's failure to satisfy the Rule 23(a) factors is enough to deny class-certification, his proposed classes also independently fail

9

Rule 23(b)(3)'s predominance requirement.[5]

### i. Individualized Issues Predominate Over Issues Subject to Generalized Proof.

A plaintiff seeking to certify a class through Rule 23(b)(3) must show that "the issues . . . that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1557–58 (11th Cir.1989) (citations omitted). The predominance requirement is a more demanding "commonality" requirement. It requires not only that the class members have common issues of fact or law, but also that those common issues predominate over any individualized issues in the litigation. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 624 (1997). A class will not proceed past Rule 23(b)(3)'s predominance requirement if each of the plaintiff's claims will require distinct, case-specific inquiries into the facts surrounding each allegation. *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1006 (11th Cir. 1997). The Eleventh Circuit has further described the predominance test as follows:

> Where, after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3). . . . [I]f common issues truly predominate over individualized issues in a lawsuit, then the addition or subtraction of any of the plaintiffs to or from the class [should not] have a substantial effect on the substance or quantity of evidence offered. Put simply, if the addition of more plaintiffs to a class requires the presentation of significant amounts of new evidence, that strongly suggests that individual issues (made relevant only through the inclusion of these new class members) are important. If, on the other hand, the addition of more plaintiffs leaves the quantum of evidence introduced by the plaintiffs as a whole relatively undisturbed, then common issues are likely to predominate.

---

[5] Because questions of law or fact common to class members do not predominate over any questions affecting only individual members, the Court need not address whether a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

*Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1270 (11th Cir. 2009) (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1252 (11th Cir. 2004).

"To determine whether common issues predominate, a district court must first 'identify the parties' claims and defenses and their elements' and 'then classify these issues as common questions or individual questions by predicting how the parties will prove them at trial.'" *Sellers v. Rushmore Loan Mgmt. Servs., LLC*, 941 F.3d 1031, 1040 (11th Cir. 2019) (quoting *Brown v. Electrolux Home Prods., Inc.,* 817 F.3d 1225, 1234 (11th Cir. 2016)).  The predominance analysis therefore begins with the elements of the underlying cause of action.

In this case, Fox is making a state-law claim under FDUTPA.  FDUTPA is a consumer protection statute that declares unlawful any "unfair or deceptive acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.204(1).  To successfully bring a claim under FDUTPA, a plaintiff must show: (1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages.  *Dolphin LLC v. WCI Cmtys., Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013).  The parties disagree as to whether individual issues would predominate during the resolution of a FDUTPA claim on a class-wide basis.

Ritz-Carlton argues that individual issues predominate for each of the three elements of a FDUTPA claim.  (DE [174] at 12-20).  Specifically, it contends that an individualized inquiry will be necessary to evaluate whether each member of the class was deceived by the restaurant's menu and whether each class member received notice by other means.  Ritz-Carlton further argues that individual inquiries will abound when Fox is required to prove that each class member suffered damages traceable to a deceptive act performed by Ritz-Carlton.

Fox contends that it is unnecessary to conduct individualized inquiries in a

11

FDUTPA class action claim because the legal standard does not require Fox to prove individualized FDUTPA violations. (DE [183] at 1-2). Rather, Fox argues a plaintiff need only show that an act was unfair or deceptive and that it was "was likely to deceive a consumer acting reasonably in the same circumstances." *Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*, 332 F. App'x 565, 567 (11th Cir. 2009) (citing *State, Office of the Att'y Gen. v. Commerce Comm. Leasing, LLC*, 946 So.2d 1253, 1258 (Fla. 1st DCA 2007)). A reasonable consumer test, Fox contends, by its definition does not entail any individualized inquiries. *See* (DE [183] at 1-2). Fox further argues that a FDUTPA class action claim does not require a plaintiff to demonstrate "actual reliance on the alleged misconduct," so individual issues of causation and damage will not arise. *See* (DE [183] at 7-9).

Fox is correct that the proper standard to evaluate the FDUTPA claim is whether the deceptive act "was likely to deceive a consumer acting reasonably in the same circumstances." *See Cold Stone Creamery*, 332 F. App'x at 567. But Fox is wrong that simply because the reasonable consumer standard applies that individualized proof will not predominate in *this* case. In this case, individualized inquiries into the practices of each of the twenty-four restaurants at issue will be necessary to determine whether a particular restaurant was deceptively charging an automatic gratuity. And these twenty-four separate inquiries will also predominate over any general issues common to the case.

To demonstrate that individual issues will predominate, it is useful to review the evidence that will eventually be used at trial to prove or defend against the FDUTPA claim to see if it is generalized or individualized in nature. But before doing so, it's first important to explain how this class-action case would play out at trial, especially in comparison to

how Fox portrays it.  Fox claims that Ritz-Carlton has "common practices" of deceptively charging an automatic gratuity at twenty-four restaurants across Florida that can be evaluated on a class-wide basis.  *See* (DE [183] at 3); (DE [224] at 3).  He says the common practice manifests into two generalized acts of deception: (1) Ritz-Carlton's use of menus with no-notice of the automatic gratuity and (2) its use of menus that have inadequate notice. (DE [224] at 12).  Once a jury resolves whether the no-notice and inadequate notice menus deceived consumers and after it reviews the receipts to determine whether they provided sufficient notice, Fox claims that the jury's resolution can be applied on a class-wide basis to the members of the two respective classes.  (DE [183] at 3).  To summarize Fox's view in more basic terms, the only evidence relevant to Ritz-Carlton's alleged deception are the menus and receipts, which he would also characterize as general or common to the whole class.

Fox's view, however, is overly simplistic of the issues in the case and what is ultimately needed to prove deception at trial.  As Fox correctly pointed out, the standard for Ritz-Carlton to be found liable under FDUTPA is whether the deception is likely to "deceive a consumer acting reasonably in the *same* circumstances."  *See Cold Stone Creamery*, 332F. App'x at 567 (emphasis added).  That standard demands consideration of not just whether the menus and receipts provided inadequate notice of the gratuity.  Rather, it also requires consideration of the notice on the menus and the receipts in the context of the restaurant's other practices and any other method in which the restaurant provided notice.  *See id.*  Only after consideration of all those factors can a jury determine whether a restaurant's practice of providing notice would deceive a consumer acting reasonably in the same circumstances.

FDUTPA's command to consider a restaurant's entire set of practices and not just

its receipts and menus also logically makes sense and can be illustrated with the following hypothetical scenario. Consider a restaurant that applies an automatic 18% gratuity to every check or bill but does not include a notice of the charge on the menu. Instead, it provides notice of the charge through massive signs on the wall that state "an 18% gratuity will be added to every table's bill." The restaurant further provides notice on the check, which states "an 18% gratuity has already been added to your bill. You are free to leave an additional tip if you wish." And finally, each waiter is trained to tell each table that the 18% tip is included in the check and that each waiter in fact says this to the consumer. It is clear that in this scenario, even though nowhere on the menu does it state that the restaurant automatically includes an 18% gratuity to the check (which, by the way, would not comply with Fla. Stat. 509.214[6]), that the restaurant is not engaging in a deceptive or unscrupulous business practice. But a trier of fact might come to a different conclusion were it not able to consider anything but the notice the restaurant provided on its menu and its receipts. There is thus zero doubt that when evaluating traditional FDUTPA claims—and when counting the evidence that will be used in this case—we must consider any relevant practices, policies, and procedures that depict a restaurant's communication of the automatic gratuity.[7]

---

[6] Fla. Stat. 509.214 provides: "Notification of automatic gratuity charge. — Every public food service establishment which includes an automatic gratuity or service charge in the price of the meal shall include on the food menu and on the face of the bill provided to the customer notice that an automatic gratuity is included."

[7] Fox appears to disagree with this point, intimating that reviewing these considerations would be tantamount to impermissibly injecting a reliance argument into the FDUTPA analysis. (DE [183] at 2); *see also* (DE [183] at 3) (claiming that a jury can decide after only reviewing the menus and receipts for a particular restaurant and that "[i]nadequate disclosure on menus is not cured by adequate disclosure on receipts or by oral representations, as the Florida Legislature clearly requires notice at the outset of the transaction by mandating notice appear on restaurant menus"). But the reasonable consumer standard requires consideration of more than just the menus and receipts.

Separately, Fox's arguments appear to be a thinly disguised attempt to revive his previously dismissed *per se* FDUTPA claims under Fla. Stat. 509.214. *See* (DE [150]) (adopting Judge Damian's Report and Recommendation (DE [137]), which held that Fla. Stat. 509.214 cannot serve as a *per se* predicate for a FDUTPA violation). To be sure, Ritz-Carlton's alleged non-compliance with Fla. Stat. 509.214 is relevant,

The final thing to note about this reasonable-consumer inquiry is that it must be conducted on a restaurant-by-restaurant basis, as the twenty-four restaurants at issue are not carbon-copies of each other. As a review of the menus and the restaurants indicate, the only apparent similarities among these twenty-four restaurants are that they are (1) restaurants, (2) owned by Ritz-Carlton, and (3) located in Ritz-Carlton hotels in Florida. Otherwise, these are twenty-four independently managed restaurants that each offer a different dining experience, ambience, menu, cuisine, and service, among other things. *See, e.g.*, (DE [172-16] Ex. A) (containing menus from each of the restaurants at issue). Because of all these differences between the twenty-four restaurants, the manner in which each one provides notice of the automatic gratuity will be different.[8] As such, to determine whether a reasonable consumer would be deceived under "the same circumstances," *see Cold Stone Creamery*, 332 F. App'x at 567, each of the twenty-four restaurants must be independently analyzed to determine whether its practices, collectively, would deceive a reasonable consumer.

That it will be necessary to conduct twenty-four separate inquiries into each of the twenty-four restaurants' practices—who have little in common with each other—shows how individualized issues will predominate in Fox's proposed class action. It is even more clear when one considers the actual evidence that will likely be used at trial. To start, the different menus and receipts from each of these restaurants—which we have already discussed vary from restaurant to restaurant—will be evidence considered by the trier of fact. A jury will then have to review any other method or means by which the restaurant

---

and perhaps even persuasive, evidence that Ritz-Carlton violated FDUTPA. But when dealing with a traditional FDUTPA claim, evidence of compliance or non-compliance with § 509.214 is not dispositive. *See Cold Stone Creamery*, 332 F. App'x at 567. For the reasons stated above, the inquiry demands more.
[8] For example, at least one customer stated that it saw a notice on the wall while another indicated that he received notice about the gratuity through his club membership agreement. (DE [214] at 9).

provided notice, including whether the restaurant posted notice on the wall, whether it trained its servers to disclose the gratuity, and any other evidence relevant to how it provides notice (like circling the charge on the check). *See, e.g.*, (DE [172-20] ¶ 3); (DE [172-25] ¶ 7; (DE [172-45] ¶ 3; (DE [172-35] ¶ 6). It is not hard to imagine that, in presenting this evidence, a jury will review sample receipts from that particular restaurant and listen to testimony from customers, waiters, and restaurant management. And once the jury is done reviewing that information and determining whether one restaurant provided inadequate notice, it has to do it all over again for the rest of the twenty-four restaurants; testimony from a customer or waiter at one restaurant about the restaurant's practice of providing notice will be irrelevant as to whether another restaurant provided notice. Thus, when actually considering the relevant evidence that will be used at trial, it is evident that issues individualized to each restaurant will predominate over questions of law or fact common to class members.[9] Therefore, Fox's proposed classes cannot be certified because it also does not meet Rule 23(b)(3)'s predominance requirement.[10] Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff's Renewed Motion for Class Certification ("Motion") (DE [224]) is **DENIED**.

It is further **ORDERED AND ADJUDGED** that the Clerk of Court shall **CLOSE** this

---

[9] To be sure, Ritz-Carlton appears to have certain policies in place that it employs across all its establishments. However, those policies differ in practice at each of the restaurants. For example, Ritz-Carlton has a practice of providing "notice of the gratuity on menus, [though] the language used, the typeface, and the placement on the menu differ by restaurant and time period." (DE [174-1] at 7). It also requires that and for each hotel's servers to "verbally inform customers of any applied gratuity," but some had written procedures while others also received notice through contracts or golf club agreements. (DE [174-1] at 7). Ritz-Carlton also appeared to have a uniform policy of providing notice of "any automatic suggested gratuity on bills and receipts," but each restaurant had different ways in which it did it so. *Id.*

[10] The conclusion today is also consistent with the Eleventh Circuit's explanation of the predominance requirement in *Vega*, as the inclusion of each additional restaurant requires the presentation of a whole new set of facts and evidence related to that restaurant. *See Vega*, 564 F.3d at 1270 ("[I]f the addition of more plaintiffs to a class requires the presentation of significant amounts of new evidence, that strongly suggests that individual issues (made relevant only through the inclusion of these new class members) are important.")

case. Any pending motions are **DENIED AS MOOT** and all deadlines and hearings are **CANCELLED**.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 4th day of January 2024.

Copies furnished counsel via CM/ECF

_____
RAAG SINGHAL
UNITED STATES DISTRICT JUDGE